UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DONALD HESS and ELIZABETH PADILLA, individually and on behalf of all others similarly situated,<br><br>          Plaintiffs,<br><br>    -against-<br><br>BED BATH & BEYOND INC.,<br><br>          Defendant. | Case No. 21-cv-04099(AT)(RWL) |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ...................................................................................................... 1

STATEMENT OF FACTS ............................................................................................................. 1

ARGUMENT ................................................................................................................................. 3

I.     MOTION TO DISMISS STANDARD ................................................................................ 3

    A.    12(b)(1) Motion to Dismiss Standard.................................................................... 3

    B.    12(b)(6) Motion to Dismiss Standard.................................................................... 3

II.    AS PLAINTIFFS DO NOT ALLEGE ARTICLE III STANDING,
      THEIR CLAIMS MUST BE DISMISSED PURSUANT TO FRCP 12(b)(1)................... 4

    A.    Because They Were Paid Their Full Wages, Plaintiffs Have Not Pleaded a Concrete,
        Actual, or Imminent Injury ................................................................................... 5

    B.    Plaintiffs Have Failed To Allege a Particularized Injury................................... 7

    C.    Merely Pleading a Violation of a State Statute is Not Sufficient to ConferArticle III
        Standing ............................................................................................................... 8

    D.    Pleading a Class-Wide Violation of a Statute Does Not Obviate Plaintiffs'
        Requirement to Plead Standing Individually ..................................................... 9

    E.    Plaintiffs Have Not Adequately Pleaded Time Value of Money ...................... 9

III.   NYLL § 191 DOES NOT CONFER UPON PLAINTIFFS A PRIVATE
      RIGHT OF ACTION ....................................................................................................... 11

    A.    The Plain Language of NYLL § 191 Does Not Authorize A Private Right
        of Action .............................................................................................................. 11

    B.    The History of NYLL § 191 Establishes That There is No Private Right
        of Action .............................................................................................................. 16

    C.    There is Likewise No Basis To Imply A Private Right of Action ................................. 17

CONCLUSION............................................................................................................................. 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

Agerbrink v. Model Serv. LLC,
   No. 14-cv-7841, 2015 WL 3750674 (S.D.N.Y. June 16, 2015) ...............................................18

Air Espana v. Brien,
   165 F.3d 148 (2d Cir.1999)...............................................................................................6

Allee v. Medrano,
   416 U.S. 802 (1974)...........................................................................................................9

Allen v. Wright,
   468 U.S. 737 (1984)...........................................................................................................8

Amidax Trading Grp. v. S.W.I.F.T. SCRL,
   671 F.3d 140 (2d Cir. 2011)..............................................................................................3

Ashcroft v. Iqbal,
   556 U.S. 662 (2009).......................................................................................................3, 4

Aurecchione v. Schoolman Transp. Sys., Inc.,
   426 F.3d 635 (2d Cir. 2005)..............................................................................................3

Awan v. Durrani,
   No. 14-cv-4562, 2015 WL 4000139 (E.D.N.Y. July 1, 2015)..........................................21

Belizaire v. RAV Investigative & Sec. Servs. Ltd.,
   61 F. Supp. 3d 336 (S.D.N.Y. 2014)...............................................................................16

Bell Atl. Corp. v. Twombly,
   550 U.S. 544 (2007).......................................................................................................3, 4

Bldg. Trades Employs. Educ. Ass'n v. McGowan,
   311 F.3d 501 (2d Cir. 2002)............................................................................................20

Bostock v. Clayton Cnty., Ga.,
   140 S. Ct. 1731 (2020)...............................................................................12, 15, 17, 21

Carter v. HealthPort Techs., LLC,
   822 F.3d 47 (2d Cir. 2016)................................................................................................3

Chevron U.S.A., Inc. v. Nat. Res. Defense Council, Inc.,
   467 U.S. 837 (1984).........................................................................................................20

Firm:54448185

Chuk on Chan v. Good Chows Inc.,
      No. 16-cv-2794, 2017 WL 6550689 (S.D.N.Y. Dec. 21, 2017)..............................................21

City of Bangor v. Citizens Commc'ns Co.,
      532 F.3d 70 (1st Cir. 2008)............................................................................................20

Coley v. Vannguard Urban Improvement Ass'n,
      No. 12CV5565, 2018 WL 1513628 (E.D.N.Y. Mar. 27, 2018) ............................................16

Commonwealth of N. Mar. I. v. Canadian Imperial Bank of Commerce,
      21 N.Y.3d 55 (NY 2013) .........................................................................................12, 17

Dep't of Revenue of Ore. v. ACF Indus., Inc.,
      510 U.S. 332 (1994)...........................................................................................................14

Dress v. Cap. One Bank (USA), N.A.,
      No. 1:19-CV-00343, 2019 WL 3451304 (E.D. Va. July 30, 2019), aff'd, 849
      F. App'x 55 (4th Cir. 2021) ...........................................................................................10

EEOC v. Vamco Sheet Metals, Inc.,
      No. 13 Civ. 6088, 2014 WL 2619812 (S.D.N.Y. June 5, 2014)...........................................18

Epstein v. JPMorgan Chase & Co.,
      No. 13 CIV. 4744, 2014 WL 1133567 (S.D.N.Y. Mar. 21, 2014) .................................6, 9, 10

Hill v. City of New York,
      136 F. Supp. 3d 304 (E.D.N.Y. 2015), amended & supplemented by
      No. 13CV6147 (E.D.N.Y. Apr. 29, 2019) ..............................................................................21

Hollingsworth v. Perry,
      570 U.S. 693 (2013)...........................................................................................................8

Hunter v. C.I.R.,
      No. 09 Civ. 4268, 2010 WL 2605715 (S.D.N.Y. June 29, 2010), Report and
      Recommendation Adopted by 2010 WL 2927160 (S.D.N.Y. July 23, 2010) ..........................6

Hunter v. Planned Bldg. Servs., Inc.,
      No. 715053/2017, 2018 WL 3392476
      (N.Y. Sup. Ct. Queens Cnty. June 20, 2018) .......................................................................16

Hussain v. Pakistan Int'l Airlines Corp.,
      No. 11-CV-932, 2012 WL 5289541 (E.D.N.Y. Oct. 23, 2012)...........................................16

Kawa Orthodontics, LLP v. Sec'y, U.S. Dep't of the Treasury,
      773 F.3d 243 (11th Cir. 2014) ...........................................................................................10

Konkur v Utica Acad. of Sci. Charter Sch.,
      181 A.D.3d 1271 (4th Dep't 2020)........................................................................................21

Firm:54448185

Lewis v. Casey,
    518 U.S. 343 (1996) .................................................................................9

Linda R.S. v. Richard D.,
    410 U.S. 614 (1973) .................................................................................8

Lujan v. Defs. of Wildlife,
    504 U.S. 555 (1992) ..............................................................................4, 7

Makarova v. United States,
    201 F.3d 110 (2d Cir. 2000) ....................................................................3

Maraia v. Orange Reg'l Med. Ctr.,
    63 A.D.3d 1113 (2d Dep't 2009) ...........................................................18

Morrison v. Nat'l Austl. Bank Ltd.,
    547 F.3d 167 (2d Cir. 2008) ....................................................................3

New Creation Fellowship of Buffalo v. Town of Cheektowaga, N.Y.,
    164 F. App'x 5 (2d Cir.2005) .................................................................10

Policemen's Annuity and Benefit Fund of Chicago v. Bank of Am., NA,
    907 F.Supp.2d 536 (S.D.N.Y.2012) ........................................................9

Porsch v. LLR, Inc.,
    380 F. Supp. 3d 418 (S.D.N.Y. 2019) (J. Cote) ....................................10

Yaniveth R. ex rel. Ramona S. v. LTD Realty Co.,
    27 N.Y.3d 186 (NY 2016) .....................................................................13

Ross v. AXA Equitable Life Ins. Co.,
    115 F. Supp. 3d 424 (S.D.N.Y. 2015), aff'd, 680 F. App'x 41 (2d Cir. 2017)....................6, 8

Schwartz v. HSBC Bank USA, N.A.,
    No. 14 CIV. 9525, 2017 WL 95118 (S.D.N.Y. Jan. 9, 2017), aff'd, 750 F.
    App'x 34 (2d Cir. 2018) ...........................................................................5

Scott v. Whole Foods Mkt. Grp., Inc.,
    No. 18-cv-0086, 2019 WL 1559424 (E.D.N.Y. Apr. 9, 2019) .............16, 17, 21, 24

Skidmore v. Swift & Co.,
    323 U.S. 134 (1944) ...............................................................................21

Sokolowski v. Metro. Transp. Auth.,
    723 F.3d 187 (2d Cir. 2013) ....................................................................3

Southside Fair Hous. Comm. v. City of New York,
    928 F.2d 1336 (2d Cir.1991) ...................................................................9

iv

Spokeo, Inc. v. Robins,
    578 U.S. 330 (2016).................................................................................4, 5

State v. Dep't of Justice,
    951 F.3d 84 (2d Cir. 2020), cert. dismissed, 141 S. Ct. 1291 (2021) ......................................13

Strubel v. Comenity Bank,
    842 F.3d 181 (2d Cir. 2016).................................................................................7

Taylor v. Fed. Aviation Admin.,
    351 F. Supp. 3d 97 (D.D.C. 2018) .................................................................................11

Matter of Tommy and Tina, Inc. v. Dep't of Consumer Affairs,
    95 A.D.2d 724 (1st Dep't 1983), aff'd, 62 N.Y.2d 671 (NY 1984) ......................................20

LaPierre ex rel. Town of Yorktown v. DiBartolo,
    No. 12–CV–1996, 2013 WL 656313 (S.D.N.Y. Feb. 21, 2013) ......................................8

TransUnion LLC v. Ramirez,
    141 S. Ct. 2190 (2021).................................................................................5

U.S. v. Shellef,
    756 F. Supp. 2d 280 (E.D.N.Y. 2011), aff'd, 718 F.3d 94 (2d Cir. 2013)..............................15

U.S. v. Worldwide Indus. Enters., Inc.,
    220 F. Supp. 3d 335 (E.D.N.Y. 2016) .................................................................11, 12, 17

Valley Forge Christian Coll. v.
    Ams. United for Separation of Church & State, Inc., 454 U.S. 464 (1982) ..............................7

Vega v. CM & Assoc. Constr. Mgmt., LLC,
    175 A.D.3d 1144 (1st Dep't 2019) .................................................................16, 17, 21, 24

White v. First Am. Registry,
    230 F.R.D. 365 (S.D.N.Y. 2005) .................................................................................6

Wood v. Mut. Redevelopment Houses, Inc.,
    No. 14CIV07535, 2016 WL 11720460 (S.D.N.Y. Mar. 31, 2016), reconsid.
    denied in part, granted in part, 2017 WL 11589600 (S.D.N.Y. Mar. 1, 2017)..........................5

**Statutes and Rules**

Fed. R. Civ. P. 12.................................................................................3, 4

N.Y. Gen. Laws, Ch. 32, Art. 1 § 11 .................................................................................22

N.Y. Lab. Law § 191 ................................................................................. passim

N.Y. Lab. Law § 218(1).................................................................................18, 20, 24

v

N.Y. Labor Law § 198 .............................................................................................. *passim*

Session Law 1890, Ch. 388 §§ 1–2..................................................................................22

## Other Authorities

Mirriam Webster Dictionary, https://www.merriam-
    webster.com/dictionary/underpay (last visited November 1, 2021) .......................................13

Firm:54448185

## PRELIMINARY STATEMENT

Plaintiff Donald Hess ("Hess") was a part-time employee at a Bed Bath & Beyond Inc. ("BBB") store in West Babylon, New York as both a Stock Associate and Sales Associate. Plaintiff Elizabeth Padilla ("Padilla") was an Overnight Department Manager at a BBB store on the Upper East Side of Manhattan, New York. Both have brought a single claim against BBB on behalf of allegedly similarly situated manual workers who claim they should have been paid weekly instead of bi-weekly pursuant to New York Labor Law ("NYLL") Section 191. Plaintiffs' claims are flawed, and should thus be dismissed for two reasons: first, this Court does not have jurisdiction over the claims because Plaintiffs have not adequately alleged Article III Standing; and, second, Plaintiffs lack an explicit or implied right to sue under NYLL § 191. Defendant informed Plaintiffs of these fatal deficiencies, which Plaintiffs attempted to cure through their First Amended Complaint ("FAC"); however, their amendments failed to cure the pleading deficiencies.

## STATEMENT OF FACTS

Plaintiff Hess worked as an employee at a Bed Bath & Beyond Inc. ("BBB") store in West Babylon, New York as both a Stock Associate and Sales Associate. (FAC ¶¶11-12). Hess alleged that he spent at least 25 percent of his working time engaged in physical labor, which qualified him as a "manual worker" for purposes of the NYLL. (FAC ¶¶ 16, 18). Hess alleged that rather than weekly, he was paid bi-weekly. (FAC ¶¶ 20, 21). Accordingly, Hess alleged, "BBB paid [him] the wages earned in the first workweek of each bi-weekly pay period later than seven calendar days after the end of the week in which such wages were earned." (FAC ¶22). Importantly, Hess did not allege that he was not paid all the wages owed to him; rather only that Defendant paid half of his bi-weekly wages a week late. (FAC ¶¶1-34).

In connection with his frequency of pay claim, Plaintiff Hess superficially alleges that:

> Plaintiff Hess and the members of the Retail Stock [and Sales] Associate Class were injured and harmed by Defendant BBB's violation of NYLL § 191 as, inter alia, they were not timely paid their wages and were thus deprived of the timely receipt and ability to use their money.  In such circumstances, Courts have determined that the exact amount of monetary damages is difficult to determine and thus Plaintiffs and the members of the Retail Stock Associate Class are entitled to liquidated damages in the amount of the late paid wages.

(FAC ¶¶78, 89).

Plaintiff Padilla was an Overnight Department Manager at a BBB store on the Upper East Side of Manhattan, New York. (FAC ¶¶25-26).  Padilla alleged that she spent at least 25 percent of her working time engaged in physical labor, which qualified her as a "manual worker" for purposes of the NYLL. (FAC ¶¶ 29, 30).  Padilla alleged rather than weekly, she was paid bi-weekly" (FAC ¶¶ 31, 32).  Accordingly, Padilla alleged, "BBB paid [her] the wages earned in the first workweek of each bi-weekly pay period later than seven calendar days after the end of the week in which such wages were earned." (FAC ¶33).  Importantly, Padilla did not allege that she did not receive all the wages owed to her; rather only that Defendant paid half of her bi-weekly wages a week late. (FAC ¶¶1-34).  Padilla pleaded the same alleged injury as Hess in that she and other Overnight Department Managers "were injured and harmed by Defendant BBB's violation of NYLL § 191 as, inter alia, they were not timely paid their wages and were thus deprived of the timely receipt and ability to use their money."  (FAC ¶100).

With all of the class allegations, Plaintiffs only sought "liquidated damages," not back or unpaid wages. (FAC ¶Prayer for Relief (c-e)).  Plaintiffs did not allege any other wage violations, including but not limited to any underpayment or non-payment of wages.  (FAC ¶¶1-102).

Firm:54448185

**ARGUMENT**

I.     **MOTION TO DISMISS STANDARD**

    A.     **12(b)(1) Motion to Dismiss Standard**

"[A] district court may properly dismiss a case for lack of subject matter jurisdiction under Rule 12(b)(1) if it lacks the statutory or constitutional power to adjudicate it." Aurecchione v. Schoolman Transp. Sys., Inc., 426 F.3d 635, 638 (2d Cir. 2005) (internal quotation marks and citations omitted); accord Sokolowski v. Metro. Transp. Auth., 723 F.3d 187, 190 (2d Cir. 2013). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000) (citation omitted).

In resolving a Rule 12(b)(1) motion to dismiss, "[t]he court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of [the] plaintiff, but jurisdiction must be shown affirmatively, and that showing [may] not [be] made by drawing from the pleadings inferences favorable to the party asserting it." Morrison v. Nat'l Austl. Bank Ltd., 547 F.3d 167, 170 (2d Cir. 2008) (internal citation and quotation marks omitted).

If "the Rule 12(b)(1) motion is facial, *i.e.*, based solely on the allegations of the complaint or the complaint and exhibits attached to it (collectively the "Pleading") ... [t]he task of the district court is to determine whether the Pleading 'allege[s] facts that affirmatively and plausibly suggest that [the plaintiff] has standing to sue.'" Carter v. HealthPort Techs., LLC, 822 F.3d 47, 56 (2d Cir. 2016) (quoting Amidax Trading Grp. v. S.W.I.F.T. SCRL, 671 F.3d 140, 145 (2d Cir. 2011)).

    B.     **12(b)(6) Motion to Dismiss Standard**

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient factual allegations in the complaint that, accepted as true, "'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S.

544, 570 (2007) (internal quotation marks omitted)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). A plaintiff is not required to provide "detailed factual allegations" in the complaint, but must assert "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. (citation omitted). Ultimately, the facts pleaded in the complaint "must be enough to raise a right to relief above the speculative level." Id. (citation omitted).

## II. AS PLAINTIFFS DO NOT ALLEGE ARTICLE III STANDING, THEIR CLAIMS MUST BE DISMISSED PURSUANT TO FRCP 12(b)(1)

To satisfy the "irreducible constitutional minimum" of Article III standing, a plaintiff bears the burden of establishing (i) "injury in fact," (ii) a "causal connection" between that injury and the complained-of conduct, and (iii) a likelihood "that the injury will be redressed by a favorable decision." Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992) (internal quotation marks and citations omitted); accord Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016).

"Where, as here, a case is at the pleading stage, the plaintiff must clearly allege facts demonstrating each element" of standing. Id. (internal quotation marks and citations omitted).

The injury must be an "injury in fact," meaning it is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." Lujan, 504 U.S. at 560 (internal quotation marks and citations omitted). To be "particularized," "the injury must affect the plaintiff in a personal and individual way," id. at 560 n.1, and to be "concrete," the injury "must be de facto; that is, it must actually exist." Spokeo, 578 U.S. at 340 (internal quotation marks and citation omitted) ("When we have used the adjective 'concrete,' we have meant to convey the usual meaning of the term—'real,' and not 'abstract.'") (citation omitted). "Congress is well positioned to identify intangible harms that meet minimum Article III requirements." Id. at 341. However,

Firm:54448185

"a bare procedural violation, divorced from any concrete harm" is insufficient; even in the context of a statutory violation, a concrete injury is necessary. Id. (citation omitted).

The Supreme Court "has rejected the proposition that 'a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'" TransUnion LLC v. Ramirez, 141 S. Ct. 2190, 2205 (2021) (citation omitted). "'Article III standing requires a concrete injury even in the context of a statutory violation.'" Id. (citation omitted). "[U]nder Article III, an injury in law is not an injury in fact." Id. Plaintiffs have failed to allege the first prong of this test, an injury in fact that is concrete and particularized.

### A.    Because They Were Paid Their Full Wages, Plaintiffs Have Not Pleaded a Concrete, Actual, or Imminent Injury

Plaintiffs make vague and conclusory allegations that they suffered harm notwithstanding the fact that they were paid their full wages for the entirety of the statutory period. See Schwartz v. HSBC Bank USA, N.A., No. 14 CIV 9525, 2017 WL 95118, at *7–8 (S.D.N.Y. Jan. 9, 2017), aff'd, 750 F. App'x 34 (2d Cir. 2018) (dismissing complaint with prejudice where Plaintiff failed to plead a concrete injury); see also Wood v. Mut. Redevelopment Houses, Inc., No. 14CIV07535, 2016 WL 11720460, at *10 (S.D.N.Y. Mar. 31, 2016), reconsid. denied in part, granted in part, 2017 WL 11589600 (S.D.N.Y. Mar. 1, 2017) (J. Torres) (finding no standing where Plaintiffs were part of the group granted protections by the statute). Yet, Plaintiffs' allegations that they were deprived of "the timely receipt and ability to use their money," do not constitute concrete injuries. Rather, Plaintiffs' reference to "timely receipt" is merely the recital of a statutory right, and their reference to an "ability to use their money" does not establish a concrete harm. As the Supreme Court pronounced in Spokeo, "[w]hen we have used the adjective 'concrete,' we have meant to convey the usual meaning of the term—'real,' and not 'abstract.'" 578 U.S. at 340. But, "ability

to use" is just that: an abstract concept that does not state anything real, i.e., what Plaintiffs would have done with their money in the intervening period of time, or how Plaintiffs had otherwise treated the money they received bi-weekly.

Courts have rejected similar claims in other contexts. For example, in the consumer credit card context, where plaintiffs alleged an injury based on breach of a credit card agreement by a bank, despite having been ultimately reimbursed for their economic damages, Judge Failla held:

> All damages alleged in the Complaint flow from this breach. Defendants have, however, provided Plaintiff with a cashier's check that reimburses Plaintiff for all economic damage he incurred as a result of the alleged breach, a fact that Plaintiff does not dispute. (Epstein Decl. ¶ 13). That Plaintiff received the Refund Check demonstrates the absence of any "actual" injury on which Plaintiff's standing could be established.

Epstein v. JPMorgan Chase & Co., No. 13 CIV. 4744, 2014 WL 1133567, at *7 (S.D.N.Y. Mar. 21, 2014) (citation omitted) (J. Failla). See also Air Espana v. Brien, 165 F.3d 148, 153 (2d Cir.1999) (upholding dismissal of claims related to canceled fines imposed by the defendant); Hunter v. C.I.R., No. 09 Civ. 4268, 2010 WL 2605715, at *4 (S.D.N.Y. June 29, 2010), Report and Recommendation Adopted by 2010 WL 2927160 (S.D.N.Y. July 23, 2010) (dismissing plaintiff's claim for lack of subject matter jurisdiction where plaintiff had received the refund for which he filed suit); White v. First Am. Registry, 230 F.R.D. 365, 368–69 (S.D.N.Y. 2005) (holding, in context of class certification motion, that plaintiff did not have standing where defendant had remedied the alleged wrongful conduct prior to plaintiff filing suit). To be sure, the foregoing decisions can be distinguished from the instant litigation where Plaintiffs here are seeking liquidated damages pursuant to the NYLL; however liquidated damages are not an independent "injury in fact" necessary to confer Article III standing. See Ross v. AXA Equitable Life Ins. Co., 115 F. Supp. 3d 424, 434 (S.D.N.Y. 2015), aff'd, 680 F. App'x 41 (2d Cir. 2017) (pleading a state law violation is not sufficient to confer Article III standing).

Firm:54448185

In addition, neither Plaintiff is currently employed by BBB (FAC ¶¶10, 23), and the Company maintains a variance from the New York State Department of Labor ("NYSDOL") allowing it to pay any purported "manual workers" on a bi-weekly basis since November 13, 2018. (FAC ¶23, 34).  Accordingly, there is no "imminent" injury as neither employee could potentially be paid bi-weekly on a going forward basis.  Indeed, Plaintiffs have failed to allege a concrete injury because the concepts they pleaded are, at best, nebulous and conclusory.  They cannot allege actual injury because they have already been paid their full wages prior to filing the suit.

### B.     Plaintiffs Have Failed To Allege a Particularized Injury

The allegations in the FAC that Plaintiffs personally and individually suffered an injury based on an alleged NYLL violation are conclusory and inadequately pleaded.   To be particularized for purposes of satisfying Article III standing, "the injury must affect the plaintiff in a personal and individual way." Lujan, 504 U.S. at 560 n.1 (emphasis added); see also Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc., 454 U.S. 464, 472 (1982) ("[T]he party who invokes the court's authority [must] show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant.") (internal quotation marks and citation omitted); Strubel v. Comenity Bank, 842 F.3d 181, 191 n.10 (2d Cir. 2016) ("[P]articularity requires that one sustain a grievance distinct from the body politic, not a grievance unique from that of any identifiable group of persons.") (citation omitted).

There is no better demonstration of generalized pleading that lacks the requisite particularity of injury when one compares the identical language pleaded in paragraphs 78, 89 and 100 of the FAC.  The exact words (save for the name of the Plaintiff used) is recycled: "Plaintiff [insert name] and the members of the [employee group] Class were injured and harmed by Defendant BBB's violation of NYLL § 191 as, inter alia, they were not timely paid their wages and were thus deprived of the timely receipt and ability to use their money" (FAC ¶¶78,89, 100).

Firm:54448185

There is no particularity in this pleading.  It is rote, non-specific, conclusory, and fails to provide any indicia of any actual or otherwise particularized injury in fact.

### C.     Merely Pleading a Violation of a State Statute is Not Sufficient to Confer Article III Standing

The mere allegation of a technical violation of a state statute, without a more specific pleading regarding injury is not sufficient to confer Article III Standing.  "[State] courts may afford litigants standing to appear where federal courts would not, but the fact that a state court would permit a plaintiff to assert an action has no bearing on the plaintiff's standing under Article III." LaPierre ex rel. Town of Yorktown v. DiBartolo, No. 12–CV–1996, 2013 WL 656313, at *3 (S.D.N.Y. Feb. 21, 2013) (citation omitted).  The limitations on standing "serve[ ] vital interests going to the role of the Judiciary in our system of separated powers," Hollingsworth v. Perry, 570 U.S. 693, 715 (2013), and are "founded in concern about the proper—and properly limited—role of the courts in a democratic society." Allen v. Wright, 468 U.S. 737, 750 (1984) (internal quotation marks and citation omitted). It follows that "[s]tates cannot alter that role simply by issuing to private parties who otherwise lack standing a ticket to the federal courthouse." Hollingsworth, 570 U.S. at 715; Ross, 115 F. Supp. 3d at 434 ("the Court is not aware of (and Plaintiffs do not cite) any authority suggesting that a state legislature can confer Article III standing upon a plaintiff who suffers no concrete harm merely by authorizing a private right of action based on a bare violation of a state statute.").

Here, Congress has not granted Plaintiffs the right to sue in Federal court through creation of a specific statute conferring standing in its text.  See, e.g., Linda R.S. v. Richard D., 410 U.S. 614, 617 n.3 (1973) ("Congress may enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute.") (citations omitted).

Firm:54448185

Rather, here, Plaintiffs pleaded an exclusively state law statutory violation. This alone is insufficient to establish standing.

### D. Pleading a Class-Wide Violation of a Statute Does Not Obviate Plaintiffs' Requirement to Plead Standing Individually

Class-wide pleading does not save Plaintiffs' failure to adequately plead standing on an individualized basis. Courts have made clear "that the standing requirement cannot be dispensed with by styling the complaint as a class action." Policemen's Annuity and Benefit Fund of Chicago v. Bank of Am., NA, 907 F.Supp.2d 536, 545 (S.D.N.Y. 2012) (citation omitted); see also Lewis v. Casey, 518 U.S. 343, 357 (1996) ("That a suit may be a class action adds nothing to the question of standing.…"); Allee v. Medrano, 416 U.S. 802, 829 (1974) (Burger, C.J., concurring in part and dissenting in part) ("Standing cannot be acquired through the back door of a class action.") (citations omitted). The "plaintiff [still] must allege 'a distinct and palpable injury to himself, even if it is an injury shared by a large class of other possible litigants.'" Southside Fair Hous. Comm. v. City of New York, 928 F.2d 1336, 1341 (2d Cir.1991) (citation omitted); see also Lewis, 518 U.S. at 357 ("[E]ven named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'") (citations omitted).

### E. Plaintiffs Have Not Adequately Pleaded Time Value of Money

Given the most generous reading of the FAC, Plaintiffs pleaded that they were deprived of the time-value of money, as they (vaguely, at best) allege the "ability to use their money" (FAC ¶¶78, 89) was impeded during the weeks in between their first week of work and the bi-weekly payment of wages. This allegation is, however, of no moment, as there is no controlling Second Circuit case law in which a court has found that a claim for damages based on the time-value of money is sufficient on its own to confer Article III standing. See Epstein, 2014 WL 1133567, at

*7 n.6 (holding Plaintiff lacked standing); <u>see also</u> <u>New Creation Fellowship of Buffalo v. Town of Cheektowaga, N.Y.</u>, 164 F. App'x 5, 7 (2d Cir.2005) (holding a party did not have standing where it experienced only "minor inconveniences"); <u>see</u> <u>c.f.</u> <u>Porsch v. LLR, Inc.</u>, 380 F. Supp. 3d 418, 424-425 (S.D.N.Y. 2019) (J. Cote) (finding standing due to time value of money).  Based on existing Second Circuit precedent, as well as persuasive authority from other circuits, this Court should not grant standing here.

The Eleventh Circuit's decision in <u>Kawa Orthodontics, LLP v. Secretary, U.S. Department of the Treasury</u> is instructive, as the plaintiff's pleading deficiencies there, as here, ultimately doomed its claim.  773 F.3d 243, 246 (11th Cir. 2014).  In <u>Kawa</u>, the Eleventh Circuit declined to grant standing in the Plaintiff's favor where the complaint alleged plaintiff lost the "value of the time and resources it expended in 2013."  Importantly, the Court noted that courts "may not hypothesize or speculate about the existence of an injury Kawa did not assert. [The Court] may not speculate concerning the existence of standing or piece together support for the plaintiff."[1] <u>Id.</u> (citation omitted). Likewise, here, Plaintiffs fail to allege time-value of money as an injury. Accordingly, the Court cannot hypothesize about a potential injury that Plaintiffs failed to plead.

To be sure, the requisite pleading threshold for time value of money is substantial, where in order to allege a "concrete, actual non-hypothetical loss of that time value" plaintiffs must "allege[] [or] imply[] what [plaintiff's] would have invested" in had the money been available to them sooner.  <u>Dress v. Cap. One Bank (USA), N.A.</u>, No. 1:19-CV-00343, 2019 WL 3451304, at *3 (E.D. Va. July 30, 2019), <u>aff'd</u>, 849 F. App'x 55 (4th Cir. 2021) ("Where a plaintiff raises an injury in fact argument premised solely on the lost time value of money, conclusory allegations that the plaintiff was deprived of the use of those funds and is entitled to be compensated for [the]

---

[1] The dissent in <u>Kawa</u> pointed out that the "lost two years of interest" was another potential claim of injury, though it was not specifically pleaded, and therefore the majority rejected that it was properly pleaded. <u>Id.</u> at 246.

Firm:54448185

lost use of funds are not sufficient to establish injury in fact even at the motion to dismiss stage.")
(citing <u>Taylor v. Fed. Aviation Admin.</u>, 351 F. Supp. 3d 97, 103 (D.D.C. 2018) (Rejecting
Plaintiff's time value of money theory for standing where "Plaintiff [did] not allege any facts to
suggest that if he had not paid the $5 registration fee he would have invested the $5 in some way
to increase its value. At most, he offers only generalizations that he was 'deprived ... of [the] use
of those funds' and is entitled 'to be compensated for his lost use of funds,' and noting "[s]uch
conclusory proclamations are not the kind of clear allegations of fact necessary to establish an
injury in fact, even at the motion to dismiss stage.") (citations omitted).  Here, the FAC is devoid
of any additional facts that support the idea that Plaintiffs would have done something productive
with the funds for which they were deprived use of for one week at a time.

The FAC falls short of even alleging a time value of money injury; but, certainly fails to
contain any of the necessary elements of such a claim.

## III.   NYLL § 191 DOES NOT CONFER UPON PLAINTIFFS A PRIVATE RIGHT OF ACTION

### A.   The Plain Language of NYLL § 191 Does Not Authorize A Private Right of Action

Plaintiffs seek liquidated damages for allegedly late paid wages, purportedly pursuant to
NYLL §§ 191 and 198.  NYLL § 191 ("Frequency of payments"), however, does not provide for
any remedy or civil action; thus, for Plaintiffs to be allowed to bring their claim, it (or a remedy)
necessarily must be authorized by NYLL § 198 ("Costs, remedies").  A review of the plain
language of NYLL § 198(1-a) proves, however, that no such claim or remedy exists.

"When interpreting a statute, a court should always turn first to one, cardinal canon before
all others[:] . . . courts must presume that a legislature says in a statute what it means and means
in a statute what it says there.  When the words of a statute are unambiguous, then, this first canon

is also the last: judicial inquiry is complete." U.S. v. Worldwide Indus. Enters., Inc., 220 F. Supp. 3d 335, 338 (E.D.N.Y. 2016) (internal quotation marks and citations omitted); see also Bostock v. Clayton Cnty., Ga., 140 S. Ct. 1731, 1738 (2020) ("This Court normally interprets a statute in accord with the ordinary public meaning of its terms at the time of its enactment.  After all, only the words on the page constitute the law. . . ."); Commonwealth of N. Mar. I. v. Canadian Imperial Bank of Commerce, 21 N.Y.3d 55, 60 (NY 2013) (explaining that "our starting point is the language itself, giving effect to the plain meaning thereof.") (internal quotation marks and citation omitted).  Here, the unambiguous text of NYLL § 198 (1-a) authorizes employees to bring claims for liquidated damages pertaining only to the "underpayment" of wages, not to the alleged late payment of wages.

The first two sentences of NYLL § 198(1-a) address the New York State Department of Labor Commissioner's authority to bring an enforcement action against employers:

> On behalf of any employee paid less than the wage to which he or she is entitled under the provisions of this article, the commissioner may bring any legal action necessary, including administrative action, to collect such claim and as part of such legal action, in addition to any other remedies and penalties otherwise available under this article, the commissioner shall assess against the employer the full amount of any such underpayment, and an additional amount as liquidated damages, unless the employer proves a good faith basis for believing that its underpayment of wages was in compliance with the law.  Liquidated damages shall be calculated by the commissioner as no more than one hundred percent of the total amount of wages found to be due, except such liquidated damages may be up to three hundred percent of the total amount of the wages found to be due for a willful violation of section one hundred ninety-four of this article.

NYLL § 198(1-a).  The third sentence authorizes civil lawsuits by employees or the Commissioner:

> In any action instituted in the courts upon a wage claim by an employee or the commissioner in which the employee prevails, the court shall allow such employee to recover the full amount of any underpayment, all reasonable attorney's fees, prejudgment interest as required under the civil practice law and rules, and, unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law, an additional amount as liquidated damages equal to one hundred percent of the total amount of the wages found to be due, except

> such liquidated damages may be up to three hundred percent of the total amount of the wages found to be due for a willful violation of section one hundred ninety-four of this article.

Id.

As its plain text demonstrates, NYLL § 198(1-a) permits an employee to sue "upon a wage claim" to recover "the full amount of any such underpayment." NYLL § 198(1-a). The term "underpayment" is not defined in NYLL § 198(1-a). But, given the commonly understood meaning of the prefix "under," it is not surprising that the Merriam-Webster dictionary definition of "underpay" is "to pay less than what is normal or required." https://www.merriam-webster.com/dictionary/underpay (last visited November 1, 2021); see also State v. Dep't of Justice, 951 F.3d 84, 106 (2d Cir. 2020), cert. dismissed, 141 S. Ct. 1291 (2021) (words in a statute that are not "statutorily defined" are "properly construed according to [their] contemporary dictionary definition") (citations omitted); Yaniveth R. ex rel. Ramona S. v. LTD Realty Co., 27 N.Y.3d 186, 192 (NY 2016) ("In the absence of a statutory definition, we construe words of ordinary import with their usual and commonly understood meaning, and in that connection have regarded dictionary definitions as useful guideposts in determining the meaning of a word or phrase.") (internal quotation marks and citation omitted). Plaintiffs do not allege that they were paid "less than what [was] . . . required." Therefore, they do not seek to recover an "underpayment." Stated differently, the "ordinary public meaning" of "underpayment" compares the amount of payment received against the required amount. It says nothing about the timeliness of any such payment.

That "underpayment" pertains to amount, and not timeliness, is further supported by the plain text of NYLL § 198(1-a) in other ways. For example, the first sentence of NYLL § 198(1-a) provides that the Commissioner shall, in any legal action brought by the Commissioner "[o]n

behalf of any employee paid less than the wage to which he or she is entitled," "assess against the employer the full amount of any such underpayment."  NYLL § 198(1-a).  The New York Legislature's use of the term "such" to modify "underpayment" is a clear reference to the phrase "paid less than the wage to which he or she is entitled" appearing earlier in the same sentence. Thus, the Legislature's use of the term "such" demonstrates that "underpayment" and "paid less than the wage to which he or she is entitled" have the same meaning.  As a result, "underpayment" cannot mean "late paid."  See Dep't of Revenue of Ore. v. ACF Indus., Inc., 510 U.S. 332, 342 (1994) (referring to the "normal rule of statutory construction" that "identical words used in different parts of the same act are intended to have the same meaning") (internal quotation marks and citation omitted).

The same conclusion flows from a close reading of the third sentence of NYLL § 198(1-a).  That sentence provides, in part, that "unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law," a prevailing employee can recover "an additional amount as liquidated damages equal to one hundred percent of the total amount of the wages found to be due. . . ."  NYLL § 198(1-a).  That language confirms that the phrases "underpayment of wages" and "the wages found to be due" have the same meaning. Again, then, "underpayment" must mean a payment of wages that is "less than . . . required" – not merely a late payment of the required amount.

Likewise, the reference to a "wage claim" in the beginning of the third sentence of NYLL § 198(1-a) confirms this reading.  A "wage claim" must be one that seeks to recover an "underpayment," and, as explained above, by reference to the first sentence in NYLL § 198(1-a), an "underpayment" means an employee was "paid less than the wage to which he or she is entitled."  Accordingly, the "wage claim" referenced in the third sentence of NYLL § 198(1-a) is

14

one that seeks the difference between the "the wage to which [an employee] is entitled" and the amount that he/she received.  That is not Plaintiffs' claim here—they do not allege any difference between the amount of wages they were paid and the amount of wages they were owed.  In other words, Plaintiffs do not seek a remedy for an "underpayment" pursuant to NYLL § 198(1-a).

Put simply, application of the "plain and settled" meaning of "underpayment" demonstrates that it does not encompass late—but fully paid—wages.  "Less than" does not mean "later than." See Bostock, 140 S. Ct. at 1743 ("At bottom, these cases involve no more than the straightforward application of legal terms with plain and settled meanings.").  In the Supreme Court's words, "when the meaning of the statute's terms is plain," a court's "job is at an end."  Bostock, 140 S. Ct. at 1749.  Because the New York Legislature chose to permit a claim under NYLL § 198(1-a) only for an "underpayment," not a late payment, Defendants respectfully submit that this Court should enforce the plain language enacted by the New York Legislature.  See Bostock, 140 S. Ct. at 1739 (explaining that Congress "could have" written statute differently in several ways, "[b]ut none of this is the law we have"); see id. at 1738 ("If judges could add to, remodel, update, or detract from old statutory terms inspired only by extratextual sources and our own imaginations, we would risk amending statutes outside the legislative process reserved for the people's representatives.  And we would deny the people the right to continue relying on the original meaning of the law they have counted on to settle their rights and obligations.") (citation omitted); cf. U.S. v. Shellef, 756 F. Supp. 2d 280, 295 (E.D.N.Y. 2011), aff'd, 718 F.3d 94 (2d Cir. 2013) ("[C]ourts should not add or modify language to statutes where, as here, it is clear from other provisions within the same statute that Congress knew how to include such language if it so wished.").

15

**B.      The History of NYLL § 191 Establishes That
         There is No Private Right of Action**

Prior to the First Department's decision in <u>Vega v. CM & Assoc. Constr. Mgmt., LLC</u>, 175 A.D.3d 1144 (1st Dep't 2019), the majority of courts to have considered the issue found there was not a private right of action for a violation of Section 191.  <u>See</u> <u>Coley v. Vannguard Urban Improvement Ass'n</u>, No. 12CV5565, 2018 WL 1513628, at *13 (E.D.N.Y. Mar. 27, 2018) (denying liquidated damages for late wages under § 191 because § 198 does not provide remedy); <u>Belizaire v. RAV Investigative & Sec. Servs. Ltd.</u>, 61 F. Supp. 3d 336, 360 n.22 (S.D.N.Y. 2014) (noting that § 198's liquidated damages provision "is geared to afford relief for unpaid wages, not for late-paid wages") (citation omitted); <u>Hussain v. Pakistan Int'l Airlines Corp.</u>, No. 11-CV-932, 2012 WL 5289541, at *3 (E.D.N.Y. Oct. 23, 2012) (§ 198 provides liquidated damages for "underpayment of wages" but not for "private recovery" for "technical violations" of pay frequency requirements).   For example, the court in <u>Hunter v. Planned Bldg. Servs., Inc.</u> interpreted § 198(1-a) to provide only for "recovery of ***nonpayment*** of wages," but not "a private right of action for violation of NYLL § 191(1)(a)(i) where the plaintiff has not alleged unpaid wages exclusive of liquidated damages. . . ."  No. 715053/2017, 2018 WL 3392476, at *1–3 (N.Y. Sup. Ct. Queens Cnty. June 20, 2018) (emphasis added).

While Courts post-<u>Vega</u>, have construed a private right of action, they have done so primarily based on, respectfully, a conclusory reading of that case, rather than a thorough analysis of the legislative history and legal precedent.  The few courts that have analyzed this topic in some depth are <u>Scott v. Whole Foods Mkt. Grp., Inc.</u>, No. 18-cv-0086, 2019 WL 1559424 (E.D.N.Y. Apr. 9, 2019) and <u>Vega</u>, 175 A.D.3d 1144; however, the Court should not follow either decision because both contradict the plain language of NYLL § 198(1-a).

Firm:54448185

The Court in <u>Vega</u>, held both that there was an explicit textual support for construing a private right of action and an implicit one that a Court can grant based on a variety of historical factors. 175 A.D.3d at 1146.  The Vega court held that the term "underpay" encompassed situations involving late payment.  <u>Id.</u> at 1145.  <u>Vega</u> recognized that settled statutory interpretation principles require courts to remain faithful to the "usual and commonly understood meaning" of the relevant statutory text and, in fact, quoted the Merriam-Webster definition of "underpay."  Id.  But, by then treating the phrases "less than" and "later than" as having the same meaning, the court ignored the plain terms of the definition it cited.  <u>Vega</u> instead "read into the statute that which was specifically omitted by the legislature," <u>Canadian Imperial Bank</u>, 21 N.Y.3d at 62.  The <u>Vega</u> court went on to hold that "even if Labor Law § 198 does not expressly authorize a private action for violation of the requirements of Labor Law § 191, a remedy may be implied.…" 175 A.D.3d at 1146.  As stated below, that analysis, too, is incorrect.  <u>See</u> <u>infra</u> III(C).

<u>Scott</u> makes no attempt to explain how a late payment of wages could constitute an "underpayment" to trigger the remedies authorized by NYLL § 198(1-a).  <u>See</u> <u>generally</u> <u>Scott</u>, 2019 WL 1559424.  This failure to analyze the plain language of the statute is reason alone to reject <u>Scott</u>.  <u>See</u>, <u>e.g.</u>, <u>Bostock</u>, 140 S. Ct. at 1738; <u>Worldwide Indus. Enters.</u>, 220 F. Supp. 3d at 338; <u>Canadian Imperial Bank</u>, 21 N.Y.3d at 60.

### C.    There is Likewise No Basis To Imply A Private Right of Action

Recognizing that the text of NYLL §§ 191 and 198 contain no support for its view, the court in <u>Scott</u> went on to hold that "[e]ven if §191 does not expressly authorize a private action," then, in the alternative, "one may be implied" because it is consistent with the legislative scheme of the NYLL.  <u>Scott</u>, 2019 WL 1559424 at *3 (internal quotation marks and citation omitted).  A review of the NYLL shows, however, that implying a private right of action to pursue liquidated

damages for an alleged late payment of wages would ***not*** be consistent with the legislative scheme of the NYLL, as designed by the New York Legislature.

To determine whether a private right of action is "'fairly implied' in [a] statute and its legislative history, New York courts consider '(1) whether the plaintiff is one of the class for whose particular benefit the statute was enacted; (2) whether recognition of a private right of action would promote the legislative purpose; and (3) whether the creation of such a right would be consistent with the legislative scheme.'"  EEOC v. Vamco Sheet Metals, Inc., No. 13 Civ. 6088, 2014 WL 2619812, at *7 (S.D.N.Y. June 5, 2014) (quoting Maraia v. Orange Reg'l Med. Ctr., 63 A.D.3d 1113, 1116 (2d Dep't 2009)).  Of these three factors, courts interpreting New York law have recognized that:

> The third factor is generally the most critical.  Carrier, 667 N.E.2d at 329 [citations omitted]. This is because the Legislature has both the right and the authority to select the methods to be used in effectuating its goals, as well as to choose the goals themselves. Thus, regardless of its consistency with the basic legislative goal, a private right of action should not be judicially sanctioned if it is incompatible with the enforcement mechanism chosen by the Legislature or with some other aspect of the over-all statutory scheme. Sheehy v. Big Flats Cmty. Day, Inc., 541 N.E.2d 18, 21 (N.Y.1989). Accordingly, ***New York courts have declined to recognize a private right of action in instances where the Legislature specifically considered and expressly provided for enforcement mechanisms in the statute itself.*** Cruz, 2 N.E.3d at 226 (internal quotation marks and brackets omitted).

Agerbrink v. Model Serv. LLC, No. 14-cv-7841, 2015 WL 3750674, at *3 n.5 (S.D.N.Y. June 16, 2015) (internal quotation marks omitted) (emphasis added).

Here, the New York Legislature did "specifically consider[] and expressly provide[] for enforcement mechanisms" for violations of NYLL § 191—namely, it enacted NYLL § 218(1), which provides in relevant part:

> If the commissioner determines that an employer has violated a provision of article six (payment of wages)[2] [or other employment-related laws], the commissioner shall issue to the employer an order directing compliance therewith. . . . Where the violation is for a reason other than the employer's failure to pay wages, benefits or wage supplements found to be due, the order shall direct payment to the commissioner of a civil penalty in an amount not to exceed one thousand dollars for a first violation, two thousand dollars for a second violation or three thousand dollars for a third or subsequent violation.

See also Planned Bldg. Servs., 2018 WL 3392476, at *2 (rejecting private right of action theory and noting that civil penalties are available against employers through Commission of Labor).  In other words, the New York Legislature decided that the Commissioner "shall direct payment" of civil penalties by employers who violate NYLL § 191, and chose ***not*** to authorize employees to privately seek liquidated damages under NYLL § 198(1-a) for the same conduct.

The Commissioner of Labor and the State's Industrial Board of Appeals (which reviews orders issued by the Commissioner) have recognized, over and over, that violations of § 191's pay frequency requirement fall within the statutory category of a violation "other than . . .  failure to pay wages."  See, e.g., IKEA U.S., Inc., Order under Arts. 4 & 6 of N.Y. Lab Law (N.Y. Dep't of Lab, Div. of Lab. Statistics  Oct. 7, 1994) (assessing civil penalty pursuant to § 218 for violations of § 191(1)(a)); Wah Chan Wong v. Comm'r of Labor, Docket No. PR 12-090, Resolution of Decision, at 13 (N.Y. Indus. Bd. of Appeals Oct. 26, 2016) (affirming $1,000 civil penalty for violation of § 191(1)(a)); Sheng Wang Zhang v. Comm'r of Labor, Docket No. PR 12-180, Resolution of Decision, at 13 (N.Y. Indus. Bd. of Appeals July. 13, 2016) (affirming $1,000 civil penalty for violation of § 191(1)(a)); Popermhem v. Comm'r of Labor, Docket No. PR 13-153, Corrected and Reissued Resolution of Decision, at 12–13 (N.Y. Indus. Bd. of Appeals Feb. 5,

---

[2] Article Six of the New York Labor Law includes §§ 191 and 198.

2016) (affirming $1,000 civil penalty for violation of § 191(1)(a)); Gerson v. Comm'r of Labor, Docket No. PR 10-361, Resolution of Decision, at 8 (N.Y. Indus. Bd. of Appeals Nov. 5, 2014) (affirming $1,000 civil penalty for violation of § 191(1)(d), a pay frequency requirement pertaining to "clerical and other worker[s]").[3]  In other words, every single one of these decisions treated the § 191 violation as one "other than the employer's failure to pay wages" and assessed a civil penalty pursuant to § 218(1) consistent with that category of violations.  Not one of them imposed liquidated damages—pursuant to §§ 191, 198(1-a), 218, or any other provision of the Labor Laws—for the § 191 violation.  Thus, consistent with the plain language of these statutes, the Commissioner of Labor and the Industrial Board of Appeals routinely interpret § 218, rather than § 198(1-a), as the remedy for violations of § 191's pay frequency requirements.

Furthermore, the interpretation by the Commissioner of Labor and the Industrial Board of Appeals that § 218, rather than § 198(1-a), is the correct remedy for violations of § 191's pay frequency requirements is a decision of an administrative agency that deserves deference.  See City of Bangor v. Citizens Commc'ns Co., 532 F.3d 70, 94 (1st Cir. 2008) ("Federal courts generally defer to a state agency's interpretation of those statutes it is charged with enforcing, but not to its interpretation of federal statutes it is not charged with enforcing.") (citations omitted); see also Bldg. Trades Employs. Educ. Ass'n v. McGowan, 311 F.3d 501, 507 (2d Cir. 2002) ("We defer to a state agency's interpretation of its own regulations, unless the interpretation is arbitrary or capricious.") (citation omitted); Matter of Tommy and Tina, Inc. v. Dep't of Consumer Affairs, 95 A.D.2d 724, 724 (1st Dep't 1983), aff'd, 62 N.Y.2d 671 (NY 1984) ("Absent an arbitrary and capricious regulation or interpretation of said regulations, courts should defer to the agency."). Here, the decision of applicable remedies for a purported Section 191 violation deserves deference

---

[3] Copies of the decisions cited in this paragraph are attached to the Ruzal Declaration as Exhibits A to E.

as well.  The above cited law suggests a level of deference akin to that in the case of <u>Chevron U.S.A., Inc. v. Nat. Res. Defense Council, Inc.</u>, 467 U.S. 837, 844 (1984) (holding an arbitrary and capricious standard should apply to federal agencies interpreting federal law).  Even under the more permissive standards of <u>Skidmore v. Swift & Co.</u>, 323 U.S. 134 (1944), the Commissioner of Labor and Industrial Board decisions would be owed deference on account of the consistency of those decisions over the course of time, the validity of its reasoning in interpreting the text of the statute, and other persuasive factors.  <u>See</u> <u>Id.</u> at 140.  In contrast, the <u>Vega</u> court's holding upended the long-held interpretation of a statute that was first enacted in 1890.

This is precisely the Legislature's purview, and there is no basis for this Court to upend it.[4] Ultimately, the <u>Scott</u> court's concern that the absence of a "private right of action under § 191 redressable under § 198" would "leave[] an aggrieved employee with no recourse" against violations of § 191, <u>Scott</u>, 2019 WL 1559424 at *2, 4,  was neither correct as a matter of law nor a sound basis for implying a private right of action.  <u>See, e.g.</u>, <u>Bostock</u>, 140 S. Ct. at 1745 (beliefs about what "the law was meant to do, or should do" do not "allow [the court] to ignore the law as it is"); <u>id.</u> at 1737 ("When the express terms of a statute give us one answer and extratextual considerations suggest another, it's no contest.").

---

[4] Notably, this is not the only place in the New York Labor Law where the Legislature chose to create enforcement mechanisms to be pursued by the State instead of private remedies to be pursued by aggrieved employees.  <u>See, e.g.</u>, <u>Awan v. Durrani</u>, No. 14-cv-4562, 2015 WL 4000139, at *9 n.12 (E.D.N.Y. July 1, 2015) ("[N]o private statutory right of action exists to enforce [NYLL § 162]"); <u>see</u> <u>also</u> <u>Hill v. City of New York</u>, 136 F. Supp. 3d 304, 351 (E.D.N.Y. 2015), <u>amended &</u> <u>supplemented</u> <u>by</u> No. 13CV6147 (E.D.N.Y. Apr. 29, 2019) (same) (citations omitted); <u>Chuk on Chan v. Good Chows Inc.</u>, No. 16-cv-2794, 2017 WL 6550689, at *2 (S.D.N.Y. Dec. 21, 2017) (noting that "the NYLL provides only the Commissioner of Labor, not employees themselves, with a cause of action to enforce" § 195's requirement of annual wage statements when those were required prior to February 2015) (collecting cases); <u>Konkur v Utica Acad. of Sci. Charter Sch.</u>, 181 A.D.3d 1271, 1272 (4th Dep't 2020) ("[T]he legislature did not intend to create a private right of action for violations of Labor Law § 198-b [the "kick-back" of wages prohibition], inasmuch as the legislature specifically considered and expressly provided for enforcement mechanisms in the statute itself") (internal quotation marks and citations omitted).

Further, the Legislative history demonstrates that that the Legislature never intended to confer a private right of action for liquidated damages to redress an alleged pay frequency violation.  A weekly pay requirement was first enacted in the New York Law in 1890.  That law stated:

> Every manufacturing … [and] mercantile … corporation … shall pay weekly, each and every employee engaged in its business, the wages earned by such employee within six days of the date of such payment…. Any corporation violating any of the provisions of this act shall be liable to a penalty not exceeding fifty dollars and not less than ten dollars for each violation, to be paid to the people of the state and which may be recovered in a civil action; provided an action for such violation is commenced within thirty days from the date thereof.  The factory inspectors of this state, their assistants or deputies may bring an action in the name of the people of the state as plaintiff against any corporation which neglects to comply with the provisions of this act for a period of two weeks, after having been notified in writing by such inspectors, assistants or deputies, that such action will be brought.

Session Law 1890, Ch. 388 §§ 1–2.[5]  Thus, from the beginning, the remedy for violation of the weekly pay requirement was that a corporation would pay a penalty to the state.  The Legislature authorized the government actors tasked with enforcing the weekly pay provision, the factory inspectors, to seek those penalties.  That same conceptual regulatory scheme has existed since that first law was enacted, and it still exists today.

On May 13, 1897, the weekly pay requirement was codified in the Labor Laws, with similar provisions.  N.Y. Gen. Laws, Ch. 32, Art. 1 § 11.[6]  That version of the law specifically stated:

> Penalty for violation of preceding sections.—If a corporation or joint stock association, its lessee or other person carrying on the business thereof, shall fail to pay the wages of an employe[e] as provided in this article, it shall forfeit to the people of the state the sum of fifty dollars for each such failure, to be recovered by the factory inspector in his name of office in a civil action; but an action shall not be maintained therefor, unless the factory inspector shall have given to the employer at least ten days' written notice, that such an action will be brought if the wages due are not sooner paid as provided in this article.

---

[5] A copy of this statute is attached to the Ruzal Declaration as Exhibit F.

[6] A copy of this statute is attached to the Ruzal Declaration as Exhibit G.

Id.   Again, in that iteration of the law, the penalty provision was a payment to the state. Significantly, the statute used similar language to the present day version, i.e., that an action can be brought only "if the wages due are not sooner paid."   Id.   The weekly pay requirement was re-codified in 1966 as § 191, and again, as with the prior statutes, a private right of action was not provided.   See Session Law 1966, Ch. 548 § 191.[7]

Section 198 of the NYLL was first enacted in 1966.   In its original form, it was spare as compared with the modern version.   It stated:

> § 198. Costs, remedies. 1. In any action instituted upon a wage claim by an employee or the commissioner in which the employee prevails, the court may allow such employee in addition to ordinary costs, a reasonable sum, not exceeding fifty dollars for expenses which may be taxed as costs. No assignee of a wage claim, except the commissioner, shall be benefited by this provision.
> 2. The remedies provided by this article may be enforced simultaneously or consecutively so far as not inconsistent with each other.

Since then, § 198 has been amended eight separate times.   Through every amendment, the Legislature has never added language authorizing a private litigant to bring suit for a violation of § 191 or otherwise pursue liquidated damages for the late payment of wages.   See L.1967, c. 294, § 5; L.1967, c. 310, § 1; L.1997, c. 605, § 4, eff. Nov. 16, 1997; L.2009, c. 372, § 1, eff. Nov. 24, 2009; L.2010, c. 564, § 7, eff. April 9, 2011; L.2014, c. 537, §§ 2, 5, eff. Feb. 27, 2015; L.2015, c. 2, § 3, eff. Feb. 27, 2015; L.2015, c. 362, § 2, eff. Jan. 19, 2016, L.2021, c. 397, § 3, 5, eff. Aug. 19, 2021.[8]

In 2010, the Legislature passed the Wage Theft Prevention Act ("WTPA"), which, in part amended § 198(1-a) to address the problem of "wage theft" by employers.   Specifically, § 198(1-a) was amended to allow a prevailing employee to recover liquidated damages reflecting "the full

---

[7] A copy of this statute is attached to the Ruzal Declaration as Exhibit H.

[8] A copy of these amendments is attached to the Ruzal Declaration as Exhibit I.

Firm:54448185

amount of any underpayment," increased from the previously authorized amount of 25 percent of any underpayment. N.Y. Bill Jacket, 2010 S.B. 8380, Ch. 564.[9]  The Commissioner of Labor supported the passage of the WTPA because of the harm that "wage theft" caused throughout the economy.  Specifically, the Commissioner characterized the WTPA as "increas[ing] penalties for violation of various provisions of the Labor Law intended to protect workers from ***nonpayment and underpayment*** of wages."  Id., Mem. of Comm'r to the Governor, at 1 (Dec. 10, 2010) (emphasis added).  In other words, the Commissioner of Labor recognized that certain provisions of the NYLL are intended to address violations involving "nonpayment and underpayment," while others are intended to address other types of violations that do not involve nonpayment or underpayment.  Further, the Commissioner stated that the WTPA was intended to penalize employers that (i) paid employees less than the minimum wage or their agreed-upon wage; (ii) created a competitive disadvantage for law-abiding employers by reducing the cost of their own business; and (iii) hurt the state and local economy by reducing wages that would otherwise "make their way into the economy and generate income and sales taxes."  Id. at 2.  Again, this history confirms that the Legislature designed the enhanced penalties in § 198(a-1) to deter the non-payment of wages, ***not*** the routine payment of wages on a bi-weekly pay schedule, as Plaintiffs allege here.

In sum, given the absence of any evidence whatsoever that the Legislature has ever intended to create a private right of action to pursue liquidated damages for allegedly late-paid wages, the First Department in Vega wrongly inferred that the legislative purpose of §§ 191 and 198(1-a) would be furthered by finding an implied right.  In combination with the Vega and Scott courts' failures to consider § 218(1), their misapprehension of the legislative purpose of these

---

[9] A copy of this is attached to the Ruzal Declaration as Exhibit J.

Firm:54448185

statutes is another reason to reject their holdings regarding the creation of an implied right of action.

## CONCLUSION

The Court should dismiss Plaintiffs' First Amended Complaint with prejudice.

New York, New York
November 4, 2021                                 EPSTEIN BECKER & GREEN, P.C.

                                    By: /s/ *Jeffrey H. Ruzal*
                                    _____
                                         Jeffrey H. Ruzal
                                         Matthew S. Aibel
                                         875 Third Avenue
                                         New York, New York 10022
                                         Tel: 212.351.4500
                                         Fax: 212.878.8600
                                         Jruzal@ebglaw.com
                                         Maibel@ebglaw.com
                                         *Attorneys for Defendant Bed Bath & Beyond*

25