

Attorneys at Law

Jeffrey H. Ruzal
t 212.351.3762
f 212.878.8600
JRuzal@ebglaw.com

November 12, 2021

**VIA ECF**

The Honorable Robert W. Lehrburger
United States District Court
Southern District of New York
500 Pearl Street, Courtroom 18D
New York, New York 10007

      Re:   *Hess and Padilla v. Bed Bath & Beyond. Inc.*
               Index No. 1:21-cv-4099-AT

Dear Judge Lehrburger:

      The undersigned represents Defendant Bed Bath & Beyond Inc. ("BBB") in this matter. We write pursuant to your Honor's Individual Practices II(D) to submit Defendant's position with respect to your Honor's Order (ECF #30) from the Court conference held via teleconference on October 29, 2021. During that conference, Your Honor ordered the parties to meet and confer in the following week and submit a new case management plan for Your Honor's approval. On October 29, 2021, the parties submitted a joint request for an additional week in order to continue conferring over a proposed case management order. On November 8, 2021, Your Honor granted the parties' request. ECF #36. Unfortunately, the parties were not able to come to a resolution on the parties' foremost issue of representative sample discovery, which, in turn, resulted in the parties being unable to agree upon a proposed case management plan. Attached to this letter as Exhibit A is BBB's proposed case management plan that reflects proposed dates contemplating representative sampling.

      Since the inception of this case, BBB has consistently advocated both to the Court and Plaintiffs for a staged approach to discovery, i.e. representative class sampling for purposes of class certification, followed by class-wide discovery to the extent the Court certifies a class, as a way to alleviate the burdens that immediate class-wide discovery would entail. *See* ECF #15. During the parties' meet and confer on October 4 and 5, 2021, Plaintiffs raised certain questions and concerns regarding the scope of representative sample class discovery. In response, on October 15, 2021, BBB prepared a written proposal to Plaintiffs in which it addressed Plaintiffs' questions and concerns. BBB thereafter summarized its proposal to the Court in an October 18, 2021 letter, as follows: there are approximately 907 stock/sales associates across 65 stores during the relevant period. Defendant proposed to select one stock and one sales associate at random from each of the 65 stores for a total sample of 130 stock or sales employees, which represents approximately 14 percent of the putative class of sales and stock associates. Defendant would

The Honorable Robert Lerhburger
November 12, 2021
Page 2

produce among other things, payroll and personnel documents, for each of the individuals in the sample.

On October 19, 2021, Plaintiffs sent Defendant an email containing what they describe as "7 conditions upon which we would agree to representative sampling, and 9 separate proposals regarding sample discovery" or what Defendant understood as 16 total pre-conditions to sampling. On November 2, 2021, Defendant sent a response to Plaintiffs in which it agreed to 10 of the 16 conditions, and asked to confer regarding the others. One such condition that Plaintiffs requested, with which Defendant ultimately agreed, is that "BBB will waive any argument that the samples are not statistically significant." Plaintiffs responded on November 3 and agreed to discuss sampling the following day during a meet and confer, and added a new replacement pre-condition that Defendant stipulate affirmatively "that the sample <u>is statistically significant</u>, not just that it will not argue that the sample is not statistically significant." Prior to the parties' November 4 meet and confer, Defendant sent Plaintiffs an email agreeing to an additional three of the pre-conditions, which amounted to 13 of 17 pre-conditions in total. To be sure, Defendant did not believe that many, if not most, of Plaintiffs' pre-conditions were warranted, but, in an effort to confer and compromise in good faith, agreed to the far majority of Plaintiffs' demands.

On November 4, 2021, the parties continued to discuss Plaintiffs' pre-conditions, focusing on the following three conditions raised by Plaintiffs: (1) whether Defendant would agree to stipulate that the sample was "statistically significant"; (2) whether Defendant would articulate the burden of class-wide discovery as compared to representative sample discovery; and, (3) whether Defendant could confirm twenty-three individual data fields it would produce in a payroll report(s) generated from an ESI system.

On November 9, 2021, Defendant sent Plaintiffs a status update via email regarding what it had discovered regarding Plaintiffs' three remaining questions. On November 10, 2021, the parties engaged in an hour-long meet and confer to discuss the remaining questions. Counsel for BBB articulated, among other things, that personnel documents are housed at a local store level, and, therefore, the task of locating, extracting, copying, and producing approximately 907 files from 65 different stores (some of which have closed since the end of the relevant period of this lawsuit) would be an enormous burden and cost to BBB based on the many people hours needed to perform these tasks. This fact alone warrants representative sampling in order to lessen the burden on BBB for class certification purposes. However, despite Defendant's best effort to address Plaintiffs' questions, Plaintiffs refused to agree to any sampling approach for class discovery or present any other proposal that would allow the parties to agree to move forward with a sampling approach. Because of this impasse, the parties agreed to submit proposed alternative case management plans outlining the parties' respective positions regarding discovery dates.

One of the purported issues on which the parties could not reach an agreement was Plaintiffs' insistence that BBB agree to stipulate to the statistical significance of the sample for all purposes in the litigation – not just class certification - which was the second time Plaintiffs modified or added a pre-condition on this topic in the weeks of meet and confers. To be sure, Defendant had already agreed that, for purposes of any class certification motion, BBB would not argue the sample was not statistically significant, and would not make any argument that the

The Honorable Robert Lerhburger
November 12, 2021
Page 3

sample was not representative for any other purpose during class certification. BBB further agreed that it would consider affirmatively stipulating that the sample was statistically significant for class certification purposes, as long as Plaintiffs provided a reasonable definition for, or otherwise explained what they refer to as, "statistical significance." However, during the meet and confer, Plaintiffs could not articulate what the p-value of the sample should be, what type of model they were proposing under which the term, "statistical significance," should be understood (i.e. one- or two-tailed), or any other foundational items upon which the parties could understand the term "statistical significance." In short, Plaintiffs' newfound insistence that BBB stipulate to an undefined term for all purposes in the litigation seemingly belies their stated intention to focus solely on discovery. Unfortunately, despite Defendant's extensive efforts to agree to Plaintiffs' numerous demands, including the three foremost items described above, Plaintiffs demonstrated no effort to reach an agreement.

## CASE MANAGEMENT PLAN

Defendant's proposal of a staged approach to class discovery through representative sampling is aimed at Defendant's concern of (dis)proportionality as articulated in FRCP 26(b)(1). More specifically, class-wide discovery at this time is not necessary for class certification briefing; and, thus, is not proportional to the needs of the case at present. Attached to this letter is BBB's proposed case management plan that reflects proposed dates contemplating representative sampling. Defendant urges this Court to endorse Defendant's CMP in order to alleviate Defendant's burden of engaging in class-wide discovery at this time. Were a class to be certified, BBB would then supplement all reasonably requested and non-objectionable discovery, including payroll records and personnel documents for the entire putative class of approximately 907 individuals. In the interim, BBB would produce relevant, non-cumulative documents, including ESI reports regarding payroll and personnel documents for the sample. The parties could then contact sample class members for depositions, declarations, or other fact-finding purposes in pursuit of Plaintiffs' expected motion for class certification.

For the foregoing reasons, Defendant respectfully requests that the Court consider ruling on representative sampling as an appropriate method for class discovery, and a case management plan that reflects that approach.

Thank you for Your Honor's attention to this matter.

Respectfully submitted,

/s/ *Jeffrey H. Ruzal*

Jeffrey H. Ruzal

cc:     Paul Pagano, Esq. and Steven Moser, Esq.  (<u>via</u> ECF)