# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DONALD HESS and ELIZABETH PADILLA, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>-against-<br><br>BED BATH & BEYOND INC,<br><br>Defendants. | Case No. 21-cv-04099(AT)<br><br>**AFFIDAVIT OF LORI JORIF IN SUPPORT OF SAMPLING** |

STATE OF MARYLAND        )
                         ) ss.:
COUNTY OF ANNE ARUNDEL   )

Lori Jorif, being duly sworn, declares under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following statements are true and correct:

1. I am Director of Human Resources at Bed Bath & Beyond Inc. ("BBB" or the "Company"), and have been with the company since November 5, 2001 in that capacity. I make these statements based on my knowledge of the Company's practices in my capacity as an employee in Human Resources. I submit this affidavit in support of BBB's proposal to utilize representative class sampling for discovery purposes.

2. BBB was founded in 1971. It operates stores across the country, and during the relevant time period of May 2015 through November 2018, operated approximately 65 stores in New York State. Specifically, 56 stores were operational during the entire relevant period, with three others having since opened, and another six having since closed.

3. I am one of 22 Human Resources employees dedicated to supporting US based BBB stores. There are 5 Human Resources employees who help cover the state of New York.

1

4. It is my understanding that the relevant documents and data at issue are comprised of (1) personnel documents, and (2) time and payroll data.

5. It is my understanding that personnel documents at issue will likely contain employment performance reviews and medical accommodation documents.

6. I am not personally aware of the contents of personnel files across 65 stores that I did not personally maintain; however, I believe that documents regarding employment performance or medical accommodation may be the best types of documents to demonstrate the type of duties performed by members of the putative class. The Company has not been able to locate job descriptions for a Sales Associate, Stock Associate or Overnight Department Manager for the relevant time period.

7. Until June 2018, whereupon the Company adopted a computerized human resources information system ("HRIS"), personnel documents (pre-dating 2018) had been, and continue to be, stored at the "store-level," meaning there are physical filing cabinets in each store that contain personnel documents potentially relevant to this lawsuit. Locating, reviewing, copying and producing to the Company's attorneys individual files in each store will require significant time and the involvement of numerous employees. This time and effort will likely be exponential here where there are often multiple personnel folders for each employee at issue. I estimate it would take approximately 30 minutes per employee file, for a total of 454 hours for the Company to locate, review, copy, and produce all of these documents for 907 people. This task would divert approximately 3 dedicated Human Resources staff from their daily jobs for approximately 19-20 days. This exercise will result in a great burden on the Company because of the extensive people hours that will be spent on this task, as well as the diversion from regular daily operations of the Company.

8. The foregoing time estimate does not account for the six stores that have since closed, which will result in an even greater burden to the Company, as it will have to locate personnel documents either in storage, or at another store location (to the extent the personnel documents in question were transferred to another store, which is not presently clear). Searching for such additional documents from since-closed stores will result in further significant expenditure of my time and that of other employees of the Company to locate, review, copy, and transmit any documents to the Company's counsel.

9. While engaging in this exercise to collect personnel documents for approximately 130 individuals will certainly result in a significant expenditure of time and effort, approximately 3 days of work for three HR employees, it will no doubt be more manageable than conducting such an exercise for more than 900 individuals.

10. The electronic information relevant to this case is largely, if not exclusively, in the form of payroll and time data. There are three databases that contain such information. The first database is the time and attendance system called "The Force," which is a Blue Yonder work force management software that contains job titles. The Company relied on the Force to calculate the size of the putative class. In addition, there are two wage/payroll databases that were utilized at different times to transmit data to ADP, the Company's payroll provider. The change in databases was effectuated in or around October 2017.

11. It is my understanding that, based on speaking with our payroll department, the payroll ADP-EV5 and ADP-PCPW databases do not contain job titles. As a result, in order to generate a report of wages paid to the putative class members during the relevant time period, my colleagues in the Company's Payroll Department would have to "click through" all of the employee ID numbers for the putative class. They have estimated that this process will take

3

approximately three to four days to generate a report for approximately 900 individuals, including confirmation of accuracy. Whereas, it would likely take the Company a few hours to run these reports for only a group of approximately 130 employees.

12. I have already devoted a significant number of hours to the Company's response to written discovery requests in this litigation. We produced many documents to Plaintiffs and are merely seeking relief from some of their burdensome requests. The Company, and operational employees, such as myself, have been doing our best to keep up with the significant additional demands this case has caused in our workplace to date.

LORI JORIF

Subscribed to and sworn to before me this 24th day of November 2021

Notary Public

KELLY A. CHAUCA
Notary Public-Maryland
Anne Arundel County
My Commission Expires
October 20, 2023

4