UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
DONALD HESS and ELIZABETH PADILLA,      Case No.: 21-cv-04099(AT)(RWL)
individually and on behalf of all others similarly situated,

                                  Hon. Analisa Torres, USDJ

                       Plaintiffs,

        -against-

BED BATH & BEYOND INC.,

                     Defendant.
-----------------------------------------------------------------X

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

Paul A. Pagano, Esq.
Steven J. Moser, Esq
MOSER LAW FIRM, P.C.
*Attorneys for Plaintiffs*
5 East Main Street
Huntington, NY 11743
(516) 671-1150

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... iii

PRELIMINARY STATEMENT .................................................................................. 1

STATEMENT OF FACTS AND PROCEDURAL HISTORY ..................................... 2

ARGUMENT ............................................................................................................. 4

I.      MOTION TO DISMISS STANDARDS ........................................................... 4

     A.      Rule 12(b)(1) .......................................................................................... 4

     B.      Rule 12(b)(6) .......................................................................................... 5

II.     THERE ARE BOTH EXPRESS AND IMPLIED PRIVATE RIGHTS OF ACTION FOR VIOLATION OF NYLL § 191(1)(A), FOR WHICH NYLL § 198 PROVIDES A REMEDY .......................................................................... 5

     A.      The Highest New York State Court to Consider the Precise Issues at Hand has Expressly Held That Plaintiffs' Claims are Valid. ................................... 6

     B.      Case Law Within the Second Circuit is in Accord With *Vega* ............... 12

     C.      BBB's Suggestion that the "Plain Language" of the Statute Prohibits a Private Right of Action is Against Reason. ................................................ 18

III.    PLAINTIFFS HAVE ARTICLE III STANDING .......................................... 20

CONCLUSION ......................................................................................................... 25

## TABLE OF AUTHORITIES

**Supreme Court Opinions**

*Atl. Mut. Ins. Co. v. Comm'r*,
  523 U.S. 382, 118 S. Ct. 1413, 140 L. Ed. 2d 542 (1998) .................................................. 21

*Brooklyn Sav. Bank v O'Neil*,
  324 U.S. 697, 65 S. Ct. 895, 89 L. Ed. 1296 (1945) .............................................................. 9

*TransUnion L.L.C. v. Ramirez*,
  141 S. Ct. 2190 (2021) ........................................................................................................ 2, 22

**Second Circuit Opinions**

*Amadei v. Nielsen*,
  348 F. Supp. 3d 145 (E.D.N.Y. 2018) ................................................................................... 21

*Belizaire v. RAV Investigative & Sec. Servs. Ltd.*,
  61 F. Supp. 3d 336 (S.D.N.Y. 2014) ..................................................................................... 19

*Carter v. HealthPort Techs., L.L.C.*,
  822 F.3d 47 (2d Cir. 2016) ............................................................................................... 4, 21

*Carver v. City of N.Y.*,
  621 F.3d 221 (2d Cir. 2010) .................................................................................................. 20

*Coley v. Vanguard Urban Improvement Ass'n*,
  No. 12-CV-5565 (PKC) (RER), 2018 WL 1513628 (E.D.N.Y. Mar. 27, 2018) .................. 19

*Cuzco v. Orion Builders, Inc.*,
  2010 U.S. Dist. LEXIS 51622 (S.D.N.Y. 2010) ............................................................. 14, 16

*Duverny v. Hercules Med. P.C.*,
  No. 18cv07652 (DLC), 2020 U.S. Dist. LEXIS 37547 (S.D.N.Y. Mar. 3, 2020) ........... 10, 16

*Epstein v. JPMorgan Chase & Co.*,
  2014 U.S. Dist. LEXIS 38628, 2014 WL 1133567 (S.D.N.Y. Mar. 21, 2014) ..................... 24

*FDIC v. Four Star Holding Co.*,
  178 F.3d 97 (2d Cir. 1999) .................................................................................................... 20

*Hussain v. Pakistan Int'l Airlines Corp.*,
  2012 WL 5289541 (E.D.N.Y. Oct. 23, 2012) ....................................................................... 19

*John v. Whole Foods Mkt. Grp., Inc.*,
  858 F.3d 732 (2d Cir. 2017) ................................................................................................ 4, 5

*Morrison v. Nat'l Austl. Bank Ltd*,
   547 F.3d 167 (2d Cir. 2008) ................................................. 4

*MS v. Rye Neck Union Free Sch. Dist.*,
   No. 18-cv-8283 (NSR), 2019 U.S. Dist. LEXIS 79377 (S.D.N.Y. May 10, 2019) .............. 20

*New Creation Fellowship v. Town of Cheektowaga*,
   164 F. App'x 5 (2d Cir. 2005) ................................................ 24

*Perez v. Comhar Grp., LLC*,
   No. 19-CV-0964 (FB) (JO), 2020 U.S. Dist. LEXIS 41771 (E.D.N.Y. Mar. 6, 2020). ......... 16

*Phila. Indem. Ins. Co. v. Indian Harbor Ins. Co.*,
   44 F. Supp. 3d 4 (E.D.N.Y. 2020) ...................................... 6, 7

*Porsch v. LLR, Inc.*,
   380 F. Supp. 3d 418 (S.D.N.Y. 2019) ................................ 21, 22, 24

*Quintanilla v. Kabco Pharmaceuticals Inc.*
   19-CV-06752 (June 30, 2020) ....................................... 16, 19

*Rana v Islam*,
   887 F3d 118 (2d Cir 2018) ................................................ 9

*Ross v. AXA Eq. Life Ins. Co.*,
   115 F. Supp. 3d 424 (S.D.N.Y. 2015) ................................ 22, 23

*Schwartz v. HSBC Bank USA, N.A.*,
   750 F. App'x 34 (2d Cir. 2018) ........................................ 4, 5

*Scott v. Whole Foods Mkt. Grp., Inc.*,
   No. 18-CV-0086 (SJF) (AKT), 2019 U.S. Dist. LEXIS 61726 (E.D.N.Y. Apr. 9, 2019) *passim*

*Sorto v. Diversified Maint. Sys.*,
   No. 20-cv-1302 (JS)(SIL), 2020 U.S. Dist. LEXIS 216328 (E.D.N.Y. Nov. 15, 2020) .. 10, 16

*Taylor v. Hous. Auth. of New Haven*,
   645 F.3d 152 (2d Cir. 2011) ............................................ 6

*Urtubia v. B.A. Victory Corp.*,
   857 F. Supp. 2d 476 (S.D.N.Y. 2012) .............................. 14

*Yuquilema v. Manhattan's Hero Corp.*,
   No. 13-CV-461 (WHP) (JLC), 2014 U.S. Dist. LEXIS 120422 (S.D.N.Y. Aug. 26, 2014)  17, 18

**Federal Court Opinions**

*Biggs v. Wilson*,
   1 F.3d 1537 (9th Cir. 1993) ........................................... 19

*Dress v. Capital One Bank U.S., N.A.*,
　No. 1:19-cv-00343, 2019 WL 3451304 (E.D. Va. July 30, 2019) ....................................... 24

*Habitat Educ. Ctr. v. U.S. Forest Serv.*,
　607 F.3d 453 (7th Cir. 2010) ..................................... 21

*Kawa Orthodontics, L.L.P. v. Sec'y, Dep't of the Treasury*,
　773 F.3d 243 (11th Cir. 2014) ..................................... 24, 25

*Taylor v. FAA*,
　351 F. Supp. 3d 97 (D.D.C. 2018) ..................................... 24

**State Cases**

*Bynog v. Cipriani Grp., Inc.*,
　1 N.Y.3d 193, 802 N.E.2d 1090, 770 N.Y.S.2d 692 (2003) ................................. 13

*Caccavale v. Hewlett-Packard Company Inc.*,
　20-cv-00974-GRB-JMW ..................................... 6

*Hunter v. Planned Bldg. Servs., Inc.*,
　No. 715053/2017, 2018 WL 3392476 (N.Y. Sup. Ct. June 11, 2018) .................................. 19

*Konkur v. Utica Acad. of Sci. Charter Sch.*,
　181 A.D.3d 1271 (4th Dep't 2020) ..................................... 18

*Kruty v. Max Finkelstein, Inc.*,
　2019 N.Y. Slip Op. 52021(U), 65 Misc. 3d 1236(A), 119 N.Y.S.3d 831 (2019) .................. 6

*Pachter v Bernard Hodes Group, Inc.*,
　10 NY3d 609, 891 N.E.2d 279, 861 N.Y.S.2d 246 (2008) ......................................... 7, 13, 14

*Phillips v. Max Finkelstein, Inc.*,
　2019 N.Y. Slip Op. 29390, 66 Misc. 3d 514, 115 N.Y.S.3d 866 (Dec. 12, 2019) ................ 19

*Phillips v. Max Finkelstein, Inc.*,
　2021 N.Y. Misc. LEXIS 4786 (Appellate Term, 2nd Dep't 2021)............................. 6, 12, 20

*Rojas v. Hi-Tech Metals, Inc.*,
　2019 N.Y. Misc. LEXIS 5046 (Queens County Sup. Ct. 2019).  ..................................... 10

*Rosner v Metropolitan Prop. & Liab. Ins. Co.*,
　96 NY2d 475, 754 N.E.2d 760, 729 N.Y.S.2d 658 (2001) ..................................... 8

*Vega v. CM & Assoc. Constr. Mgt., L.L.C.*,
　107 N.Y.S.3d 286, 2019 N.Y. Slip Op. 06459, 175 A.D.3d 1144 (1st Dep't Sept. 10, 2019) *passim*

*Weber v PX, Inc.*,
　2021 N.Y. Misc. LEXIS 5530 (Sup Ct, Kings County 2021) ................................. 10

v

**State Statutes**

New York Labor Law § 191 ............................................................... *passim*

New York Labor Law § 195 ............................................................... 18

New York Labor Law § 198 ............................................................... *passim*

New York Labor Law § 198-b ............................................................ 18

New York Labor Law § 218 ............................................................... *passim*

**Other**

Fed. R. Civ. P. 12(b)(1) ................................................................. 4, 21

Fed. R. Civ. P. 12(b)(6) ................................................................. 5

## PRELIMINARY STATEMENT

Plaintiffs Donald Hess ("Hess") and Elizabeth Padilla ("Padilla")(collectively "Plaintiffs") worked for Defendant Bed Bath & Beyond, Inc. ("BBB" or "Defendant") as a Retail Stock Associate/Retail Sales Associate and an Overnight Department Manager respectively. ECF No. 19, p. 3, 4, ¶ 13, 14, 26.  As detailed in Plaintiffs' first amended complaint ("FAC"), Hess and Padilla (as well as the classes they seek to represent) were manual workers as, *inter alia*, Hess and Padilla spent more than 25% of their work day engaged in physical labor.  ECF No. 19, p. 3, 4, 6, 7, ¶ 17, 18, 29, 30, 41, 51.  New York Labor Law ("NYLL") § 191(1)(a) expressly requires that manual workers, like Plaintiffs, be paid "weekly and not later than seven calendar days after the end of the week in which the wages are earned [.]"  It is undisputed that, for the pertinent period of time, May 7, 2015 to November 12, 2018, BBB paid Plaintiffs bi-weekly and with the wages earned in the first workweek of each bi-weekly pay period paid later than seven calendar days after the end of the workweek in which such wages were earned.  ECF No. 19, p. 3, 5, ¶ 21, 22, 32, 33.  Every week that Plaintiffs did not receive a paycheck, BBB violated NYLL § 191(1)(a) and, pursuant to NYLL § 198(1-a), in each instance, Plaintiffs were entitled to the amount of their unpaid/underpaid wages that were due that week, liquidated damages in an equivalent amount, and reasonable attorneys' fees.  When BBB paid the balance of the unpaid/underpaid wages that were due weekly in the following weeks' paychecks, such payments satisfied BBB's obligation to pay Plaintiffs the unpaid/underpaid wages that were due, but did not vitiate Plaintiffs' statutory right to liquidated damages and reasonable attorneys' fees.

In an attempt to avoid the remedies imposed by NYLL § 198(1-a), BBB advances two main arguments. For one, BBB argues that there is no private right of action for violation of NYLL § 191(1)(a).  BBB is incorrect.  In *Vega v. CM & Assoc. Constr. Mgt., L.L.C.,* 175 A.D.3d

1144, 1145 (1st Dep't 2019), the highest New York State Court to rule on the precise issue in question, the First Department of the Appellate Division, expressly held, on facts that are effectively identical to those at bar, that there is a valid cause of action for violation of NYLL § 191(1)(a) where an employer pays manual workers bi-weekly instead of weekly and that such violation invokes the remedies provided by NYLL § 198(1-a) including liquidated damages. Moreover, as established below, post *Vega*, District Courts within the Second Circuit have uniformly agreed that an employee who is not paid wages in the time required by NYLL § 191 may sue for liquidated damages under NYLL § 198.

Recognizing that its lack of a private right of action argument is a nonstarter, BBB also argues that Plaintiffs do not allege Article III standing. More particularly, BBB argues that Plaintiffs have failed to allege an injury in fact. To the contrary, Plaintiffs have alleged that BBB's actions have led to Plaintiffs being deprived of the timely receipt of and ability to use their money, *to wit*, monetary harm. Notably, monetary harm is the exact type of harm that the U.S. Supreme Court in *TransUnion L.L.C. v. Ramirez*, 141 S. Ct. 2190, 2200 (2021) provided constitutes an injury in fact sufficient for Article III standing. Moreover, as a practical matter, every single federal court case that has adjudicated a NYLL § 191(1)(a) claim has implicitly held that the plaintiffs advancing same have Article III standing.

### STATEMENT OF FACTS AND PROCEDURAL HISTORY

The facts of the instant action are simple. Hess worked for BBB for approximately 3.5 years during the period of 2015-2019. ECF No. 19, p. 2, ¶ 10. During that time, he worked as a Retail Stock Associate and a Retail Sales Associate. ECF No. 19, p. 2, ¶ 12. In each instance he spent at least 80% of his time engaged in physical labor including, but not limited to, walking the sales floor, rearranging merchandise, assisting customers and retrieving items from stock. ECF

No. 19, p. 3, ¶ 13, 14, 17. As a manual worker, Hess was entitled to be paid weekly and no later than seven calendar days after the end of each workweek in which wages were earned in accordance with NYLL § 191(1)(a). ECF No. 19, p. 3, ¶ 18. Notwithstanding the requirements of NYLL § 191(1)(a), BBB paid Hess bi-weekly and also paid him the wages earned in the first workweek of each bi-weekly pay period later than seven calendar days after the end of the workweek in which such wages were earned. ECF No. 19, p. 3, ¶ 21, 22. BBB's payment methodology was a violation of NYLL § 191(1)(a) and deprived Hess of the timely receipt of and ability to use his money. ECF No. 19, p. 12, ¶ 78. As such, Hess is entitled to liquidated damages in the amount of the late paid sums as well as attorneys' fees and costs. E.g., ECF No. 19, p. 12, ¶ 79.

Padilla worked for BBB from February 2003 to August 2017. ECF No. 19, p. 4, ¶ 24. During that time, she worked as an Overnight Department Manager. ECF No. 19, p. 4, ¶ 26. During her employment she spent at least 25% of her time engaged in physical labor including, but not limited to, loading and unloading bins and U-boats, assembling and installing fixtures, carrying items and boxes, ironing and steaming visuals, breaking open and unpacking boxes, setting up shelves, and placing items. ECF No. 19, p. 4, ¶ 27, 29. As a manual worker, Padilla was entitled to be paid weekly and no later than seven calendar days after the end of each workweek in which wages were earned in accordance with NYLL § 191(1)(a). ECF No. 19, p. 4, ¶ 30. Notwithstanding the requirements of NYLL § 191(1)(a), BBB paid Padilla bi-weekly and also paid her the wages earned in the first workweek of each bi-weekly pay period later than seven calendar days after the end of the workweek in which such wages were earned. ECF No. 19, p. 5, ¶ 32, 33. BBB's payment methodology was a violation of NYLL § 191(1)(a) and deprived Padilla of the timely receipt of and ability to use her money. ECF No. 19, p. 14-15, ¶

100. As such, Padilla is entitled to liquidated damages in the amount of the late paid sums as well as attorneys' fees and costs. E.g., ECF No. 19, p. 15, ¶ 101.

On September 8, 2021, Plaintiffs filed the FAC setting forth 3 causes of action for violation of NYLL § 191(1)(a)(the first on behalf of Hess and Retail Stock Associates, the second on behalf of Hess and Retail Sales Associates, and the third on behalf of Padilla and Overnight Department Managers). ECF No. 19. Thereafter, the parties exchanged letters pursuant to Rule III (B) of Your Honor's Individual Practices. On September 22, 2021, BBB filed a letter motion seeking leave to move to dismiss the FAC which Plaintiffs opposed by letter of September 29, 2021. ECF Nos. 21 and 22. On September 30, 2021, Your Honor granted BBB's request for leave to file a motion to dismiss and said motion was filed on November 4, 2021. ECF Nos. 23, 31-34.

## ARGUMENT

### I.   MOTION TO DISMISS STANDARDS

#### A.  Rule 12(b)(1)

> When evaluating standing at the pleading stage, 'general factual allegations of injury resulting from the defendant's conduct' may be sufficient. *John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732, 736 (2d Cir. 2017) (internal quotation marks omitted). Moreover, when a defendant challenges a complaint facially, as [Defendant] does here, we 'determine whether the Pleading allege[s] facts that affirmatively and plausibly suggest that [the plaintiff] has standing to sue' and 'draw all reasonable inferences in favor of the plaintiff.' Id. (quoting *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56-57 (2d Cir. 2016)) (internal quotation marks omitted) (brackets in original) (alteration omitted).

*Schwartz v. HSBC Bank USA, N.A.*, 750 F. App'x 34, 36 (2d Cir. 2018).

Notably, *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008), cited by BBB for the proposition that a plaintiff may not meet his/her burden by way of inferences drawn from the complaint is no longer good law.  BBB MOL, p. 3.  *See*, *Schwartz v. HSBC Bank USA, N.A.*,

2017 U.S. Dist. LEXIS 94019, at *10 n.2 (S.D.N.Y. June 19, 2017); *John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732, 737 (2d Cir. 2017)("When the defendant asserts a 'facial' challenge to standing, therefore, it remains the case that courts should continue to draw from the pleadings all reasonable inferences in the plaintiff's favor and are to presum[e] that general allegations embrace those specific facts that are necessary to support the claim.")(internal quotations omitted).

### B.  Rule 12(b)(6)

When analyzing a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted "[t]he court must accept the factual allegations in the complaint[] as true and draw all reasonable inferences in favor of the plaintiff." *Scott v. Whole Foods Mkt. Grp., Inc.*, No. 18-CV-0086 (SJF) (AKT), 2019 U.S. Dist. LEXIS 61726, at *3-4 (E.D.N.Y. Apr. 9, 2019). More particularly, "[t]he court determines whether the well-pleaded factual allegations, assumed to be true, plausibly give rise to an entitlement to relief." *Scott*, 2019 U.S. Dist. LEXIS 61726, at *4 (internal quotations omitted). Moreover, "[t]he plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Here, Plaintiffs' allegations more than sufficiently set forth causes of action for violations of NYLL § 191(1)(a) and NYLL § 198.

## II.   THERE ARE BOTH EXPRESS AND IMPLIED PRIVATE RIGHTS OF ACTION FOR VIOLATION OF NYLL § 191(1)(A) FOR WHICH NYLL § 198 PROVIDES A REMEDY

BBB argues that there is no private right of action for violation of NYLL § 191(1)(a). BBB's argument is without merit. As discussed below, the highest New York State Court to consider the exact issue at hand, the Appellate Division First Department, unequivocally held that there is a private right of action for violation of NYLL § 191(1)(a), the remedies for which are provided by NYLL § 198. *Vega v. CM & Assoc. Constr. Mgt., L.L.C., 10*7 N.Y.S.3d 286,

2019 N.Y. Slip Op. 06459, 175 A.D.3d 1144 (1st Dep't Sept. 10, 2019). Moreover, every Second Circuit case post Vega has agreed.  Further, the only cases post *Vega* which supported BBB's position, *Kruty v. Max Finkelstein, Inc.*, 2019 N.Y. Slip Op. 52021(U), 65 Misc. 3d 1236(A), 119 N.Y.S.3d 831 (2019) (County Court of New York, Suffolk County 2019) and *Phillips v. Max Finkelstein, Inc.*, 2019 N.Y. Slip Op. 29390, 66 Misc. 3d 514, 115 N.Y.S.3d 866, 866 (Dec. 12, 2019) (County Court of New York, Suffolk County 2019), companion cases out of the Suffolk County, County Court, were overturned on appeal with specific reference made to the controlling nature of *Vega*. *See*, *Phillips v. Max Finkelstein, Inc.*, 2021 N.Y. Misc. LEXIS 4786, **1-4 (Appellate Term, 2nd Dep't 2021).

Notwithstanding the foregoing, BBB insists that the Appellate Division has got it wrong, the Appellate Term has got it wrong, and all District Judges within the Second Circuit who have agreed with Vega have got it wrong.  In other words, this Court should disregard the decisions of all of the foregoing and instead accept BBB's interpretation of the statute.  Notably, this is not the first time counsel for BBB has made this argument.  In *Caccavale et. al. v. Hewlett-Packard Company et. al.*, 20-cv-00974-GRB-JMW counsel for BBB in this case made the same argument he makes in this case. The court considered and rejected said argument and held that there is a private right of action for violation of NYLL § 191(1)(a).  Pagano Dec. Exhibit 1, p. 21, l. 6-19.

A. <u>The Highest New York State Court to Consider the Precise Issues at Hand has Expressly Held That Plaintiffs' Claims are Valid.</u>

As a general matter, federal courts apply New York State's law as interpreted by the New York State Court of Appeals. *Taylor v. Hous. Auth. of New Haven*, 645 F.3d 152, 152 (2d Cir. 2011). Where the Court of Appeals has not ruled, a state intermediate appellate court ruling is "a basis for ascertaining state law which is not to be disregarded by a federal court unless it is <u>convinced</u> by other persuasive data that the highest court of the state would decide otherwise."

*Phila. Indem. Ins. Co. v. Indian Harbor Ins. Co.*, 434 F. Supp. 3d 4, 10 (E.D.N.Y. 2020) (emphasis added).

*Vega v. CM & Assoc. Constr. Mgt., L.L.C., 20*19 N.Y. Slip Op. 06459, 175 A.D.3d 1144, 107 N.Y.S.3d 286 (1st Dep't Sept. 10, 2019), from the Appellate Division First Department, is the only Appellate Division decision on point for this matter and it establishes that Plaintiffs' causes of action are valid.

In *Vega*, as here, plaintiff alleged that she was employed by defendant as a manual worker and that during her employment she was not paid her wages in a timely fashion in violation of NYLL § 191(1)(a). *Vega*, 175 A.D.3d at 1144; ECF No. 19, p. 3, 4, 5, ¶ 18, 21, 30, 32. Also, as here, the Plaintiff sought liquidated damages, interest, and attorneys' fees pursuant to NYLL § 198(1-a). *Vega*, 175 A.D.3d at 1144-45; ECF No. 19, pp. 12, 15, ¶¶ 79, 101.

The defendant in *Vega*, as here, moved to dismiss the complaint, arguing that NYLL § 198(1-a) does not provide a remedy for "late payment", but only for "non-payment." *Vega*, 175 A.D.3d at 1145; *See* BBB MOL, pp. 11-15. The Court rejected this purported distinction and held that failure to pay a manual worker timely is a violation of NYLL § 191(1)(a) which entitles said manual worker to liquidated damages, attorneys' fees and interest pursuant to NYLL § 198(1-a). *Vega*, 175 A.D.3d at 1145-1146.  First, the Court found that the plain language of the statute covered all wage claims:

> The purpose of section 198(1-a) is 'enhancing enforcement of the Labor Law's substantive wage enforcement provisions' (*id*. at 463; *see generally Pachter v Bernard Hodes Group, Inc.*, 10 NY3d 609, 615, 891 N.E.2d 279, 861 N.Y.S.2d 246 [2008]), and **c**ontrary to defendant's argument that § 198 provides remedies only in the event of nonpayment or partial payment of wages (but not in the event of late payment of wages), the plain language of the statute indicates that individuals may bring suit for any 'wage claim' against an employer. The remedies provided by section 198(1-a) apply to 'violations of article 6' (*Gottlieb*, 82 NY2d at 463), and

> section 191(1)(a) is a part of article 6.

*Vega*, 175 A.D.3d at 1145 (emphasis added).

*Vega* further pointed out that the moment wages are due and are not paid there is an "underpayment" for which the law provides a remedy:

> [C]ontrary to defendant's argument, the term underpayment encompasses the instances where an employer violates the frequency requirements of section 191(1)(a) but pays all wages due before the commencement of an action. 'In the absence of any controlling statutory definition, we construe words of ordinary import with their usual and commonly understood meaning, and in that connection have regarded dictionary definitions as useful guideposts' in determining the meaning of a word or phrase' (*Rosner v Metropolitan Prop. & Liab. Ins. Co.*, 96 NY2d 475, 479-480, 754 N.E.2d 760, 729 N.Y.S.2d 658 [2001]). The word underpayment is the noun for the verb underpay; underpay is defined as 'to pay less than what is normal or required' (Merriam-Webster's Collegiate Dictionary 1364 [11th ed 2012]). The moment that an employer fails to pay wages in compliance with section 191(1)(a), the employer pays less than what is required.

*Vega*, 175 A.D.3d at 1145 (emphasis added).

The Court further provided that the failure to pay wages on-time is, in and of itself, a violation of the NYLL which cannot be cured by a later payment:

> We reject defendant's implicit attempt to read into section 198(1-a) an ability to cure a violation and evade the statute by paying the wages that are due before the commencement of an action. The employer may assert an affirmative defense of payment if there are no wages for the 'employee to recover' (Labor Law § 198[1-a]). However, payment does not eviscerate the employee's statutory remedies.

*Vega*, 175 A.D.3d at 1145.

The Court supported its holdings by analogy to the FLSA as follows:

> In interpreting the liquidated damages provisions of the Fair Labor Standards Act of 1938 (FLSA), the Supreme Court has held that, regardless of whether an employee has been paid wages owed before the commencement of the action, the statute provides a

> liquidated damages remedy for the 'failure to pay the statutory
> <u>minimum on time,' in order to provide 'compensation for the</u>
> <u>retention of a workman's pay which might result in damages too</u>
> <u>obscure and difficult of proof for estimate other than by liquidated</u>
> <u>damages'</u> (*Brooklyn Sav. Bank v O'Neil*, 324 U.S. 697, 707, 65 S.
> Ct. 895, 89 L. Ed. 1296 [1945]). <u>Labor Law § 198(1-a), although</u>
> <u>not identical to the FLSA liquidated damages provision (29 USC §</u>
> <u>216[b]), has 'no meaningful differences, and both are designed to</u>
> <u>deter wage-and-hour violations in a manner calculated to</u>
> <u>compensate the party harmed'</u> (*Rana v Islam*, 887 F3d 118, 123
> [2d Cir 2018] [internal quotation marks omitted]). Accordingly,
> liquidated damages may be available under Labor Law § 198(1-a)
> to provide a remedy to workers complaining of untimely payment
> of wages, as well as nonpayment or partial payment of wages.

*Vega*, 175 A.D.3d at 1145-46 (emphasis added).

In support of its determination that liquidated damages are available under NYLL § 198(1-a) for the untimely payment of wages as well as nonpayment or partial payment of wages the Court pointed out that the very purpose of NYLL 198 is to compensate the employee for the loss of use of wages owed:

> The legislative history of the 1967 amendment to section 198
> reflects that in addition to imposing 'stronger sanctions' to compel
> employer compliance, '[t]he imposition of liquidated damages will
> also compensate the employee for the loss of the use of the money
> to which he was entitled' (Governor's Approval Mem, Bill Jacket,
> L 1967, ch 310; 1967 NY Legis Ann at 271). The employee loses
> the use of money whether he or she is never paid, partially paid, or
> paid late.

*Vega*, 175 A.D.3d at 1146 n.2.

*Vega* also analyzed whether a private right of action exists for violation of NYLL § 191(1)(a) and held that there are both explicit <u>and</u> implicit private rights of action for violation of NYLL § 191(1)(a).  In particular the Court stated, "Labor Law § 198-1-a expressly provides a private right of action for a violation of Labor Law § 191. Defendant's position that no private right of action exists is dependent on <u>its erroneous assertion that the late payment of wages is not</u>

an underpayment of wages." *Vega*, 175 A.D.3d at 1146 (emphasis added).  Moreover, the Court provided that even if an express private right of action doesn't exist, which it does, there is an implied private right of action given that plaintiff was one of the class for whose particular benefit the statute was enacted (namely a manual worker), the recognition of a private right of action would promote the legislative purpose of the statute (protecting workers who are generally dependent upon their wages) and the creation of such a right would be consistent with the legislative scheme (NYLL § 198 explicitly provides that individuals may bring suit against an employer for violations of the labor laws, even if the Commissioner chooses not to do so). *Vega*, 175 A.D.3d at 1146-1147.

On the state court level, *Vega* has been relied upon in numerous cases including, but not limited to, *Weber v PX, Inc.*, 2021 N.Y. Misc. LEXIS 5530, *7-8 (Sup Ct, Kings County 2021) and *Rojas v. Hi-Tech Metals, Inc.,* 2019 N.Y. Slip Op. 32755(U), 2019 N.Y. Misc. LEXIS 5046, at *5-7 (2019) (Queens County Sup. Ct. 2019).  On the federal court level, *Vega* has been relied upon in numerous cases including, but not limited to, *Sorto v. Diversified Maint. Sys.*, 2020 U.S. Dist. LEXIS 216328, at *4-7 (2020) (Locke, M.J.) report and recommendation adopted by 20-cv1302 (Dec. 28, 2020)(ECF No. 30)(Seybert, J.) and *Duverny v. Hercules Med. P.C.*, No. 18cv07652 (DLC), 2020 U.S. Dist. LEXIS 37547, *13 (S.D.N.Y. Mar. 3, 2020).

BBB's attempts to undermine *Vega* and its progeny are unavailing.  First, BBB argues that the *Vega* Court ignored the plain meaning of the statute by treating the phrases "less than" and "later than" as meaning the same thing. BBB MOL, p. 17.  However, the First Department did not say that "less than" and "later than" mean the same thing. Instead, the Court pointed out that wages which are not paid when they are due are essentially "unpaid" (and the employee is therefore "underpaid") as of that date:

> The word underpayment is the noun for the verb underpay; underpay is defined as 'to pay less than what is normal or required' (Merriam-Webster's Collegiate Dictionary 1364 [11th ed 2012]). The moment that an employer fails to pay wages in compliance with section 191(1)(a), the employer pays less than what is required.

*Vega*, 175 A.D.3d at 1145.

Second, BBB argues that *Vega* incorrectly held that there is an implied private right of action for violation of NYLL § 191(1)(a). BBB MOL, p. 24-25. Notably, such argument buries the lede in that *Vega* expressly held that there is an *explicit* private right of action for violation of NYLL § 191(1)(a). *Vega*, 175 A.D.3d at 1146. Further, BBB tacitly concedes that the first two elements of an implied private right of action, namely (1) that plaintiff was one of the class for whose particular benefit the statute was enacted (a manual worker) and (2) the recognition of a private right of action would promote the legislative purpose of the statute (protecting workers who are generally dependent upon their wages), are met. Indeed, nowhere in BBB's MOL does it contest these two elements. BBB argues that the third element of an implied right of action is not met because such an implied right would be inconsistent with the legislative scheme as NYLL § 218(1) already provides the remedy for a violation of NYLL § 191(1)(a). BBB MOL, p. 18-25. However, NYLL § 218(1) does not in any way, shape, or form, suggest that a private right of action for violation of NYLL § 191(1)(a) would be inconsistent with the pertinent legislative scheme. Indeed, NYLL § 218(4) explicitly provides that "[t]he civil penalty provided for in this section shall be in addition to and may be imposed concurrently with any other remedy or penalty provided for in this chapter" meaning that it is not intended to foreclose other remedies for violation of NYLL § 191(1)(a). Moreover, NYLL § 218 covers all provisions of article 6 (payment of wages). If the Court were to adopt BBB's argument that NYLL § 218 forecloses remedies other than those contained therein for the violations addressed therein there would be

no other remedies sections (such as NYLL § 198(1-a)) since NYLL § 218 covers all of article 6.

Also, NYLL § 218 makes no specific reference to NYLL § 191(1)(a) or frequency of payments

nor is there any indication, contrary to BBB's assertion, that the New York Legislature explicitly

designated NYLL § 218 as the exclusive remedy for NYLL § 191(1)(a) violations.  Interestingly,

the notes to NYLL § 218 provide that it was once known and cited as the "unpaid wages

prohibition act[.]" As a matter of equity, BBB cannot take the position that "late wages" are not

unpaid wages and then claim that the unpaid wages prohibition act exclusively governs the

payment of "late wages." Furthermore, the Appellate Term has already rejected BBB's NYLL §

218 arguments providing

> We are equally unpersuaded by defendants' arguments with
> respect to Labor Law § 218. Although section 218 authorizes the
> Commissioner to impose civil penalties for violations of article six
> of the Labor Law, it does not preclude private causes of action.
> Moreover, Labor Law § 198, which authorizes the Commissioner
> to bring 'any legal action necessary' on behalf of 'any employee
> paid less than the wage to which he or she is entitled' (Labor Law
> § 198 [1-a]), also specifically authorizes wage claims by
> employees, and states that the remedies provided by article 6 of the
> Labor Law 'may be enforced simultaneously or consecutively so
> far as not inconsistent with each other' (Labor Law § 198 [2]).

*Phillips*, 2021 N.Y. Misc. LEXIS 4786, at **3-4.  At bottom, to the extent an explicit private

right of action does not exist, which it does, an implied private right of action does.

Plainly stated, *Vega* deals with the exact issues at bar and it expressly provides that

Plaintiffs' causes of action for violation of NYLL § 191(1)(a) are valid and that Plaintiffs can

avail themselves of the remedies provided by NYLL § 198(1-a).

### B.   Case Law Within the Second Circuit is in Accord With Vega.

In *Scott v. Whole Foods Mkt. Grp., Inc.*, No. 18-CV-0086 (SJF) (AKT), 2019 U.S. Dist.

LEXIS 61726 (E.D.N.Y. Apr. 9, 2019), the late Judge Sandra J. Feuerstein denied defendant's

motion to dismiss plaintiffs' complaint containing a single cause of action for failure to timely

pay wages pursuant to NYLL § 191(1)(a) and NYLL § 198.

In *Scott*, as here, plaintiffs alleged that they were manual workers and that they were paid on a bi-weekly rather than weekly basis in violation of NYLL § 191(1)(a). *Scott*, 2019 U.S. Dist. LEXIS 61726, at *2-3; ECF No. 19, p. 3, 4, 5, ¶ 18, 21, 30, 32. Also, as here, as a result of defendant's unlawful actions, the plaintiffs in *Scott* sought liquidated damages, interest, and attorneys' fees. *Scott*, 2019 U.S. Dist. LEXIS 61726, at *3. ECF No. 19, p. 12, 15, ¶ 79, 101.

The first issue addressed was whether there was a private right of action for violations of NYLL § 191. As *Scott* was decided before *Vega*, the Court did not have *Vega's* holding that a private right of action exists for violation of NYLL § 191(1)(a) to rely on. However, *Scott* looked to holdings from the Appellate Division and the New York State Court of Appeals to determine whether plaintiffs could privately assert claims for violation of NYLL § 191. One such case was *Bynog v. Cipriani Grp., Inc.*, 1 N.Y.3d 193, 802 N.E.2d 1090, 770 N.Y.S.2d 692 (2003). In *Bynog*, the issue was whether the plaintiffs were employees or independent contractors. *Scott*, 2019 U.S. Dist. LEXIS 61726, at *7. The Appellate Division found that plaintiffs were employees and reinstated their cause of action under NYLL § 191 and the related claim for costs and fees under NYLL § 198. *Id*. The Court of Appeals concluded that plaintiffs were independent contractors rather than employees and as a result dismissed the cause of action pursuant to NYLL § 191 and the related claim under NYLL § 198. *Id*.  The *Scott* court noted that "[s]ignificantly, neither the Second Department nor the Court of Appeals suggested, let alone held, that the plaintiffs did not have a right to bring a claim under § 191 in the first instance." *Id*. Therefore, both the Second Department and the Court of Appeals implicitly recognized the right to bring a claim for violations of NYLL § 191.

A second case analyzed in *Scott* was *Pachter v. Bernard Hodes Grp., Inc.*, 10 N.Y.3d

609, 891 N.E.2d 279, 861 N.Y.S.2d 246 (N.Y. Ct. App. 2008).  Judge Feuerstein noted that in reaching its determination that executives are employees for purposes of article 6 of the NYLL the Court of Appeals in *Pachter* implicitly assumed that an employee claiming a violation of NYLL § 191 has asserted a substantive violation and is entitled to utilize the remedies set forth in NYLL § 198.  Scott, 2019 U.S. Dist. LEXIS 61726 at *8.

The *Scott* decision also notes that numerous courts in the Second Circuit (including the Eastern and Southern Districts of New York) have entertained claims made by employees under NYLL § 191. *Scott*, 2019 U.S. Dist. LEXIS 61726, at *8 (citing *Urtubia v. B.A. Victory Corp.*, 857 F. Supp. 2d 476, 482 (S.D.N.Y. 2012) (allowing waiter to proceed on § 191 claim) and *Cuzco v. Orion Builders, Inc.*, 2010 U.S. Dist. LEXIS 51622, at *11-12 (2010) (S.D.N.Y. 2010) (carpenters paid every two weeks rather than weekly were manual workers "entitled to summary judgment on their claims that Defendants violated the timely payment provisions of NYLL § 191")).

Turning from the Court's analysis as to whether an explicit private right of action exists, and foretelling the First Department's holding in *Vega*, Judge Feuerstein noted that even if there is no explicit private right of action, there is, at the least, an implied private right of action when: (1) the plaintiffs are members of the class for whose particular benefit the statute was enacted; (2) recognition of a private right of action would promote the legislative purpose of the statute; and (3) to have a private right of action would be consistent with the legislative scheme. *Scott*, 2019 U.S. Dist. LEXIS 61726, at *9. Turning to the aforesaid factors, the Court noted that plaintiffs, manual workers, as here, are members of the class designed to benefit from § 191(1)(a). *Id.* As to legislative purpose, Judge Feuerstein noted that the general purpose of labor law article 6 is to strengthen and clarify the rights of employees to the payment of wages and

more specifically the frequency of payment statute's purpose is to protect the manual worker who is dependent on the wages he receives weekly for his existence. *Id.* As to consistency with the legislative scheme, the Court noted that there is nothing in the statutory scheme that suggests a private action is barred and that, "[t]o the contrary, § 198 refers to civil actions brought by the commissioner, the employee, or both" and provides that "[t]he remedies provided by this article may be enforced simultaneously or consecutively so far as not inconsistent with each other." *Scott*, 2019 U.S. Dist. LEXIS 61726, at *11. Ultimately, the Court held that "[t]he discretionary nature of the Commissioner's authority coupled with the references to employee actions in § 198 compels the conclusion that a private action under § 191 is consistent with the legislative scheme." *Id.*

Having determined that a private right of action, whether explicit or implicit, existed, *Scott* held that plaintiffs had stated a valid cause of action as plaintiffs alleged that they were manual workers and that they were paid on a bi-weekly basis instead of a weekly basis as required by NYLL § 191(1)(a). *Scott*, 2019 U.S. Dist. LEXIS 61726, at *12. These are the exact same allegations Plaintiffs advance herein. ECF No. 19, p. 3, 4, 5, ¶ 18, 21, 30, 32.

In *Scott*, as here, the defendant argued that plaintiffs did not have a cause of action for violation of NYLL § 191 as plaintiffs, in sum and substance, were not damaged by bi-weekly rather than weekly payment. *Scott*, 2019 U.S. Dist. LEXIS 61726, at *12. With respect to the defendant's argument, the court noted that "Plaintiffs' injury comes from not receiving their earned pay weekly, as required by law, and thus it is the very delay that causes damage to that worker. The statute requires no additional evidence of actual damages beyond that delay, and an inquiry into "actual" damages is not made in cases involving violations of § 191." *Scott*, 2019 U.S. Dist. LEXIS 61726, at *12. The court went on to reference several district court cases

which supported the Court's holding, including *Cuzco* in which manual workers were granted summary judgment on their NYLL § 191(1)(a) claim where they were paid bi-weekly instead of weekly. *Scott*, 2019 U.S. Dist. LEXIS 61726, at *13. The Court in *Cuzco* stated

> In this case, Defendants did not pay wages as often as the law requires, and did not pay wages as early as the law requires. Defendants paid wages every *two* weeks (rather than weekly) and paid these wages no earlier than *two* weeks after the end of the period in which those wages were earned. These facts are undisputed. Therefore, Plaintiffs and members of the certified class are entitled to summary judgment on their claims that Defendants violated the timely payment provisions of NYLL § 191.

*Cuzco*, 2010 U.S. Dist. LEXIS 51622, at *11-12 (Italics in original, emphasis added.)

Since the decision in *Scott* was issued it has been cited positively by *Perez v. Comhar Grp. LLC*, No. 19-CV-0964 (FB) (JO), 2020 U.S. Dist. LEXIS 41771, at *18 (E.D.N.Y. Mar. 6, 2020). Moreover, there are numerous Second Circuit decisions which uphold a private right of action for violation of NYLL 191 including, but not limited to, *Sorto v. Diversified Maint. Sys.*, 2020 U.S. Dist. LEXIS 216328, at *4-7 (2020) (Locke, M.J.) report and recommendation adopted by 20-cv1302 (Dec. 28, 2020)(Seybert, J.); *Quintanilla v. Kabco Pharmaceuticals Inc.*, 19-CV-06752 (June 30, 2020)(Chen, J.)(Pagano Dec., Exhibit 2, p. 16-19); and *Duverny*, 2020 U.S. Dist. LEXIS 37547, at *13 (Cote, J.).

BBB's attempts to distinguish *Scott* are unavailing. First, BBB argues that *Scott* purportedly makes no attempt to explain how a late payment of wages could constitute an "underpayment" to trigger the remedies authorized by NYLL § 198(1-a) and that the *Scott* Court's purported failure to do so constitutes a failure to analyze the plain language of the statute suggesting that this Court should also reject *Scott*. BBB MOL, p. 17.  Initially, there is and was no requirement that the *Scott* Court address how a late payment of wages constitutes an underpayment to trigger the remedies authorized by NYLL § 198(1-a) in order to arrive at the

*Scott* Court's above-described valid holdings. Further, the fact that the aforesaid issue is not explicitly addressed in the *Scott* Court's decision does not mean that it was not considered nor does it mean that the *Scott* Court did not consider the plain meaning of the pertinent statutes. Indeed, the *Scott* Court specifically excerpts and analyzes both NYLL § 191(1)(a) and NYLL § 198(1-a) in reaching its conclusions that there is a private right of action for violation of NYLL § 191(1)(a) and that the remedies for such violation are provided by NYLL § 198(1-a). *Scott*, 2019 U.S. Dist. LEXIS 61726, at *4-13.

Second, BBB argues that the *Scott* Court was incorrect in finding that there is an implied private right of action since an implied private right of action would purportedly not be consistent with the pertinent legislative scheme. BBB MOL, p. 17-25. In particular, BBB argues that a private right of action would be inconsistent with the pertinent legislative scheme because the legislature has already decided that NYLL § 218(1) is the proper remedy for a violation of NYLL § 191, an argument which has been disproven above.

Relatedly, BBB argues, in sum and substance, that because in some instances the legislature purportedly chose to only have state based enforcement mechanisms, as opposed to private enforcement mechanisms, the legislature has done so here. BBB MOL, p. 21, fn. 4. Even assuming *arguendo* that the examples BBB cites are examples of the legislature choosing to consciously foreclose a private remedy, the examples have no bearing on remedies for violation of NYLL § 191(1)(a). Initially, unlike NYLL § 191(1)(a), NYLL § 162, concerning meal breaks, is not a part of article 6. To reiterate *Vega* provided that NYLL § 198 provides the remedies for violations of article 6. *Vega*, 175 A.D.3d at 1145. Further, with respect to providing annual wage notices, the absence of a private remedy was considered a quirk and the requirement of providing an annual notice has since been abolished. *Yuquilema v. Manhattan's Hero Corp.*, No. 13-CV-

461 (WHP) (JLC), 2014 U.S. Dist. LEXIS 120422, at *32 (S.D.N.Y. Aug. 26, 2014) ("Oddly, the NYLL extends this private cause of action to employees whose employer fails to provide the initial notice at their hire, but not for subsequent failures to furnish the annual notice in following years."); NYLL § 195. Finally, as to violations of NYLL § 198-b, the legislature provided a specific remedy in the particular statute, namely "[a] violation of the provisions of [NYLL § 198-b] shall constitute a misdemeanor." NYLL § 198-b(5). No specific remedy is provided within NYLL § 191 itself. Indeed, *Konkur v. Utica Acad. of Sci. Charter Sch.*, 181 A.D.3d 1271 (4th Dep't 2020), cited by BBB in support of its argument has two notable holdings: (1) "we offer no opinion with respect to whether other provisions [meaning provisions other than NYLL § 198-b] within article 6 of the Labor Law afford private rights of action[;]" and (2) the legislature specifically crafted an enforcement mechanism for violation of NYLL § 198-b, namely a misdemeanor offense. *Konkur*, 181 A.D.3d at 1272.

## C. BBB's Suggestion that the "Plain Language" of the Statute Prohibits a Private Right is Against Reason

BBB dedicates a substantial portion of its brief to its argument that the plain language of NYLL § 198 authorizes employees to bring a claim only for "underpaid wages" and not "late paid wages." BBB MOL, p. 11-15.  While BBB's argument contains citations to several cases, they merely set forth generic principles of statutory interpretation and, in sum and substance, stand for the unremarkable proposition that statutes should be interpreted according to their plain meaning.  BBB MOL, p. 11-15. However, none of the cases BBB cites address *Vega*, *Scott*, NYLL § 191 or NYLL § 198.  The entire section is simply BBB presenting its self-serving interpretation of NYLL § 198, without meaningful legal support, and then coming to its predetermined conclusion.  As to the "content" of the argument, it can be distilled down to BBB's position that a "late payment" is not an "underpayment." Putting aside the mountain of

case law contrary to this position, BBB's position that a late payment is not an underpayment is against reason and logic. For example, assume that BBB owed Plaintiff Hess wages of $1,000.00 on July 4, 2020. When BBB fails to pay these wages on that date, is an underpayment of wages that were due. *See Biggs v. Wilson*, 1 F.3d 1537, 1539-40 (9th Cir. 1993) (unless there is a due date by which wages become unpaid, imposing liability for both unpaid wages and liquidated damages would be meaningless).

BBB also argues that the Court should disregard *Vega, Scott,* and all of their progeny, and instead rely on *Coley v. Vanguard Urban Improvement Ass'n,* No. 12-CV-5565 (PKC) (RER), 2018 WL 1513628 (E.D.N.Y. Mar. 27, 2018), *Belizaire v. RAV Investigative & Sec. Servs. Ltd., 61* F. Supp. 3d 336 (S.D.N.Y. 2014), *Hussain v. Pakistan Int'l Airlines Corp.*, 2012 WL 5289541 (E.D.N.Y. Oct. 23, 2012), and *Hunter v. Planned Bldg. Servs., Inc.*, No. 715053/2017, 2018 WL 3392476 (N.Y. Sup. Ct. June 11, 2018) (N.Y. Sup. Ct. Queens Cnty. June 20, 2018).  However, BBB concedes that all of the foregoing pre-date *Vega.*  Moreover, in June 2020, the Hon. Pamela K. Chen USDJ, revisited Her Honor's prior decision in *Coley. See Quintanilla v. Kabco Pharmaceuticals, Inc. et al*, 19-CV-06752-PKC-CLP (E.D.N.Y.).  Pagano Dec., Exhibit 2. In doing so Judge Chen held that, in light of *Vega, Coley* was no longer good law and pointed out that Her Honor was required to follow *Vega* unless convinced the New York State Court of Appeals would hold differently and therefore denied defendant's motion to dismiss. Pagano Dec., Exhibit 2, p. 16-19.

Finally, BBB argues that there is no basis to imply a private right of action. BBB MOL, p. 17-25.  BBB's argument relies on its position that the legislature made a conscious decision to have NYLL § 218 be the sole remedy for violation of NYLL § 191 and its equally incorrect position that the Commissioner of Labor and the Industrial Board of Appeals have "interpreted"

that NYLL § 218 is the sole remedy for violation of NYLL § 191. However, no such decision exists, no such "interpretation" has been set forth, and BBB's argument has been expressly rejected by the Appellate Term.  *See Phillips v. Max Finkelstein, Inc.*, 2021 N.Y. Misc. LEXIS 4786, **3-4 (Appellate Term, 2nd Dep't 2021)(rejecting defendant's argument and holding that "[a]lthough section 218 authorizes the Commissioner to impose civil penalties for violations of article six of the Labor Law, it does not preclude private causes of action."). Further, although BBB's recitation of the purported history of NYLL § 191 is interesting, BBB does not explain how the history justifies the wholesale disregard of *Vega, Scott,* and all of their progeny (which were decided after all of the legislative history discussed).

## III.   **PLAINTIFFS HAVE ARTICLE III STANDING**

Perhaps, recognizing the mountain of case law favoring a private right of action under NYLL § 191, BBB advances a second argument - that the Plaintiffs lack Article III standing.

In arguing that Plaintiffs lack standing, BBB essentially urges this Court to hold that *all* of the federal district courts (both pre- and post- *Vega*) which have decided either *in favor of or against* a private right of action lacked the authority to decide the issue in the first instance. "Standing is a federal jurisdictional question[.]" *Carver v. City of N.Y.*, 621 F.3d 221, 225 (2d Cir. 2010). Because jurisdiction is a "threshold issue" a court "may examine subject matter jurisdiction, *sua sponte*, at any stage of the proceeding." *MS v. Rye Neck Union Free Sch. Dist.*, No. 18-cv-8283 (NSR), 2019 U.S. Dist. LEXIS 79377, at *4 (S.D.N.Y. May 10, 2019)(quoting *FDIC v. Four Star Holding Co.*, 178 F.3d 97, 100 n.2 (2d Cir. 1999)). Therefore, *all* of the federal courts (both pre- and post- *Vega*) which have decided either in favor of or against a private right of action implicitly recognized that the plaintiff(s) had standing to assert a claim for statutory damages arising out of a violation of the NYLL.

Plaintiffs indeed have standing.  In order to establish Article III standing, a plaintiff must

establish the following three elements: (1) that there is an injury in fact that is concrete and particularized, actual or imminent, and not hypothetical; (2) there is a causal connection between the injury and the defendant's conduct; and (3) the injury can be redressed by a favorable decision. *Amadei v. Nielsen*, 348 F. Supp. 3d 145, 157 (E.D.N.Y. 2018). As discussed above, where, as here, a 12(b)(1) motion to dismiss is based on the pleadings (as opposed to additional factual evidence submitted by a defendant) Plaintiffs can meet their burden with general factual allegations of injury resulting from a defendant's conduct and the Court is required to accept all material allegations of the complaint as true and draw all reasonable inferences in Plaintiffs favor. *Amadei*, 348 F. Supp. 3d at 154; *Carter v. HealthPort Techs., L.L.C.*, 822 F.3d 47, 56-57 (2d Cir. 2016).

As to the first element, "[t]here is a 'low threshold' for establishing an injury in fact." *Amadei*, 348 F. Supp. 3d at 157. Indeed, an injury in fact does not even need to be capable of sustaining a valid cause of action but may merely be the fear or anxiety of future harm. *Id.* at 157-158. Here, Plaintiffs easily meet the low threshold. More particularly, Plaintiffs allege that they suffered an injury in fact in that they were deprived of the timely receipt and ability to use their money. ECF No. 19, p. 12, 14-15, ¶ 78, 100. Such injury is precisely the kind contemplated by the Courts when discussing Article III standing. Indeed, in *Porsch v. LLR, Inc.*, 380 F. Supp. 3d 418, 424-425 (S.D.N.Y. 2019) the Court expressly held

> [T]emporary deprivation of money to which a plaintiff has a right constitutes a sufficient injury in fact to establish Article III standing. As the Honorable Richard Posner has observed, albeit in another context, '[e]very day that a sum of money is wrongfully withheld, its rightful owner loses the time value of the money.' *Habitat Educ. Ctr. v. U.S. Forest Serv.*, 607 F.3d 453, 457 (7th Cir. 2010). It is a basic principle of economics and accounting that 'a dollar today is worth more than a dollar tomorrow.' *Atl. Mut. Ins. Co. v. Comm'r*, 523 U.S. 382, 383, 118 S. Ct. 1413, 140 L. Ed. 2d 542 (1998) (citing D. Herwitz & M. Barrett, Acco*unting for*

*Lawyers 221* (2d ed. 1997)).  <u>Whether described in terms of 'interest' or 'time value of money,' this is a sufficient 'injury in fact' to support Article III standing.</u>

(emphasis added); *See also TransUnion L.L.C.*, 141 S. Ct. at 2200 (listing the harms traditionally recognized as providing a basis for a lawsuit in American courts as physical harm, monetary harm and various intangible harms).

Notwithstanding the foregoing, BBB advances five arguments in support of its position that Plaintiffs have not alleged Article III standing. First, BBB argues that Plaintiffs have not suffered a concrete injury because they were ultimately paid in full. BBB MOL, p. 5-7. Its argument is expressly refuted by *Porsch* as well as *Scott* which provides "Plaintiffs' injury comes from not receiving their earned pay weekly, as required by law, and thus it is the very delay that causes damage to that worker." *Scott*, 2019 U.S. Dist. LEXIS 61726 at *12.  Notably, none of the cases BBB relies on in ostensible support of its position concern NYLL § 191(1)(a), unpaid/delayed wages, liquidated damages or even the labor law. BBB MOL, p. 6.  Indeed, BBB readily admits that none of its cases concern a statutory entitlement to liquidated damages. *See* BBB MOL, p. 6.  BBB attempts to paper over this fatal flaw by arguing that "liquidated damages are not an independent 'injury in fact' necessary to confer Article III standing" and then citing to a case, *Ross v. AXA Equitable Life Ins. Co.,* 115 F. Supp. 3d 424, 434 (S.D.N.Y. 2015), aff'd, 680 F. App'x 41 (2d Cir. 2017), which has nothing whatsoever to do with liquidated damages. *See* BBB MOL, p. 6.

On a related note, BBB argues that since Plaintiffs are no longer employed by BBB there can be no imminent injury. BBB MOL, p. 7. Under this logic, any individual who is fired by his employer lacks standing to assert past wage violations because the individual won't be harmed in the future.

Second, BBB argues that Plaintiffs have failed to allege a particularized injury because both Hess and Padilla use the same words to discuss their injuries. BBB MOL, p. 7-8.  Using similar words to describe their injuries does not mean that Plaintiffs have failed to particularize their injuries and BBB cites to no authority that says it does.  Indeed, Plaintiffs Hess and Padilla, both manual workers, both suffered NYLL 191(1)(a) violations in that BBB failed to pay both of them weekly and within seven calendar days of the end of the workweek in which wages were earned, and as such, Plaintiffs Hess and Padilla are both entitled to liquidated damages in the amount of the late paid wages.  ECF No. 19, p. 3, 4, 5, 12, 14, 15, ¶ 18, 21, 22, 30, 32, 33, 78, 79, 100, 101.  Under such circumstances it is unsurprising that Plaintiffs used the same words to describe their injuries.

Third, BBB argues that merely pleading a violation of a state statute is not sufficient to confer Article III standing. BBB MOL, p. 8-9. BBB's argument is a straw man argument as Plaintiffs have not "merely pleaded a violation of a state statute." In addition to pleading violations of NYLL § 191(1)(a), Plaintiffs have alleged that they were injured by BBB's actions as Plaintiffs were deprived of the timely receipt of and ability to use their money. ECF No. 19, p. 12, 14, 15, ¶ 78, 100. Plaintiffs also allege that they are entitled to liquidated damages by statute (which are designed to compensate the employee for the loss of the use of the employee's money to which he was entitled). ECF No. 19, p. 12, 15, ¶ 79, 101; *Vega*, 175 A.D.3d at 1146 n.2. Each of the cases BBB cites are distinguishable and concern generic propositions of law which have no bearing on the instant dispute. BBB MOL, p. 8-9. By way of example, *Ross v. AXA Eq. Life Ins. Co.*, 115 F. Supp. 3d 424, 434 (S.D.N.Y. 2015), merely provides that "the Court is not aware of (and Plaintiffs do not cite) any authority suggesting that a state legislature can confer Article III standing upon a plaintiff <u>who suffers no concrete harm</u> merely by authorizing a private right

of action based on a bare violation of a state statute." (Emphasis added). Here, Plaintiffs have sufficiently pled delay, which equals harm.

Fourth, BBB argues that pleading a class-wide violation of a statute does not obviate Plaintiffs' requirement to plead standing individually. BBB MOL, p. 9. As established above, Plaintiffs have more than sufficiently pled standing individually.

Fifth, BBB argues that Plaintiffs have not adequately pled the time value of money. BBB MOL, p. 9-11. Initially, there is no standard for pleading the time value of money. Further, as discussed above, the Court in *Porsch*, 380 F. Supp. 3d at 425 expressly held that "Whether described in terms of 'interest' or 'time value of money,' [the temporary deprivation of money] is a sufficient 'injury in fact' to support Article III standing." The cases BBB cites in support of its position are wholly inapposite. In *Epstein v. JPMorgan Chase & Co.*, 2014 U.S. Dist. LEXIS 38628, 2014 WL 1133567, at *7 n.6 (S.D.N.Y. Mar. 21, 2014) the plaintiff did not argue that the defendants had deprived him of the time value of money and even if he had it would have been interest on 67 cents. *New Creation Fellowship v. Town of Cheektowaga*, 164 F. App'x 5 (2d Cir. 2005) does not concern the time value of money. *Dress v. Cap. One Bank* (USA), N.A., 2019 WL 3451304, at *9 (E.D. Va. July 30, 2019), aff'd, 849 F. App'x 55 (4th Cir. 2021) out of the Eastern District of Virginia concerned $21 and the Court stated that "it is unclear whether the lost time value of such a small sum qualifies as a cognizable constitutional injury." *Taylor v. FAA*, 351 F. Supp. 3d 97, 105 (D.D.C. 2018) out of the District of Columbia concerned $5 and turned on the fact that "absent an express waiver of sovereign immunity, an award of interest cannot be recovered against the United States." Finally, the main case on which BBB relies, *Kawa Orthodontics, L.L.P. v. Sec'y, Dep't of the Treasury*, 773 F.3d 243 (11th Cir. 2014), is an 11th circuit case in which an orthodontics company, Kawa Orthodontics LLP ("Kawa"),

expended time and money to research its obligations under the Patient Protection and Affordable Care Act ("ACA"). *Id.* at 244. The Government extended enforcement of the ACA for two years and Kawa filed a complaint in federal court challenging the decision to postpone enforcement. *Id.* at 245. However, Kawa did not seek the return of the money that it paid to research its obligations under the ACA, but instead it sought a declaratory judgment and an injunction setting aside the U.S. Treasury's transition plan. *Id.*  Suffice it to say, the facts in *Kawa* bear no resemblance to those at bar.  At bottom, Plaintiffs allegations more than meet the low threshold necessary to show injury in fact.

Though BBB only challenges the first element of Article III standing, in the interest of thoroughness, Plaintiffs have met the second and third. Initially, there is clearly a causal connection between Plaintiffs' injuries and BBB's conduct, namely BBB's failure to pay Plaintiffs timely deprived Plaintiffs of the timely receipt of and ability to use their money. ECF No. 19, p. 12, 14-15, ¶ 78, 100. Further, the injuries to Plaintiffs can be redressed by a favorable decision which provides for, *inter alia*, liquidated damages in the amount of the late paid wages. ECF No. 19, p. 12, 15, ¶ 79, 101.

## **CONCLUSION**

BBB's motion to dismiss the FAC should be denied in its entirety.

Dated: Huntington, New York
      December 17, 2021

                          MOSER LAW FIRM, P.C.

By: *Paul Pagano*
                  Paul A. Pagano, Esq.
                  Steven J. Moser, Esq.