```
                        UNITED STATES DISTRICT COURT
                        SOUTHERN DISTRICT OF NEW YORK

In re:                                   :
                                               Docket #21cv4099
HESS, et al.,                            :    1:21-cv-04099-AT-RWL

                      Plaintiffs,        :

   - against -                           : New York, New York
                                           November 30, 2021
BED BATH & BEYOND, INC.,                 :

                      Defendant.         :

------------------------------------ : DISCOVERY CONFERENCE

                       PROCEEDINGS BEFORE
                 HONORABLE ROBERT W. LEHRBURGER
                 UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For Plaintiff:          MOSER LAW FIRM PC
                        BY:  STEVEN MOSER, ESQ.
                        5 E. Main Street
                        Huntington, New York 11743

For Defendant:          EPSTEIN BECKER & GREEN, P.C.
                        BY:  JEFFREY RUZAL, ESQ.
                             MATTHEW AIBEL, ESQ.
                        875 Third Avenue
                        New York, New York 10022
```

```
Transcription Service: Carole Ludwig, Transcription Services
                       155 East Fourth Street #3C
                       New York, New York 10009
                       Phone:  (212) 420-0771
                       Email:  Transcription420@aol.com
```

Proceedings recorded by electronic sound recording;
Transcript produced by transcription service.

## INDEX

### E X A M I N A T I O N S

| Witness | Direct | Cross | Re-Direct | Re-Cross |
|---------|--------|-------|-----------|----------|

None

### E X H I B I T S

| Exhibit Number | Description | ID | In | Voir Dire |
|----------------|-------------|----|----|-----------|

None

```
 1                                                    3
 2            THE CLERK:  We're here in the matter for a
 3   discovery conference, 21cv4099, Donald Hess and Elizabeth
 4   Padilla versus Bed Bath & Beyond Inc.  Attorneys, please
 5   state your name for the record starting with plaintiff.
 6            MR. STEVEN MOSER:  Steven Moser for the plaintiff,
 7   good morning, Your Honor.
 8            HONORABLE ROBERT W. LEHRBURGER (THE COURT):  Good
 9   morning.
10            MR. JEFFREY RUZAL:  Good morning, Your Honor,
11   for defendant, Jeffrey Ruzal and Matthew Aibel.
12            THE COURT:  All right, good morning. And feel free
13   to speak while you're seated it's fine with me and I think
14   it's more comfortable usually than having to bend over, but
15   it's up to you.
16            The reason I wanted to meet in person and have a
17   conference here is A) that's like old times and it's nice to
18   actually have proceedings in court, but B) this is fairly
19   substantive in some ways even though it's related, all
20   related to discovery, but potentially class certification,
21   and I thought it made sense for us to be able to talk live.
22            So based on the correspondence, to me it seems
23   like there are three overall issues that are sort of
24   bubbling through the correspondence.  One is regarding
25   scheduling, the second is regarding sampling for class
```

1

2  discovery, and the third are the adequacy of the defendants'

3  responses to discovery requests.  And I realize all three of

4  these are sort of tied together but they're just three

5  things I'd like to see us try to resolve by the end of the

6  discussion.  So really I think the first thing that needs to

7  be discussed is the sampling issue and I just want to

8  establish a couple of things.

9          First of all, plaintiff has, I'm sorry, defendants

10 have represented that to the extent they want to do sampling

11 it would be for class certification only and not for merits

12 discovery, is that right?

13         MR. RUZAL:  Correct, Your Honor.

14         THE COURT:  All right.  And, and so that if

15 there, if a class was certified, the defendants would be

16 producing documents for all of the putative class, is

17 that right?

18         MR. RUZAL:  Yes, Your Honor.

19         THE COURT:  Okay.  And if we do sampling or

20 you do sampling, do you, what is your position with

21 respect to representativeness, you would be accepting

22 it as representative, you'd be reserving the right to

23 challenge it, what would be your view on that?

24         MR. RUZAL:  So, Your Honor, as we have

25 indicated to plaintiff's counsel before and in our, in

1                                                                    5

2   our correspondences to the Court, we would not be

3   challenging the representativeness of the sample,

4   itself, vis-à-vis the larger class.

5            THE COURT:  Okay, and we can discuss that to

6   the extent plaintiff has concerns about it.  But what

7   it seems to me, based on the papers, is the defendants

8   have presented quite a bit of authority as to use of

9   sampling in class certification.  Plaintiff doesn't really

10  seem to reject that law, but basically seems to be arguing

11  that in this instance there's no need for it and that the

12  affidavit that was presented by the defendants doesn't

13  support doing it here, let me ask plaintiff, is that a fair

14  characterization of how you view things?

15           MR. MOSER:  In part, Your Honor, I think that

16  it's largely correct.  I just want to point out that

17  the overwhelming majority of the case law that is

18  cited by the defendant has nothing to do with class

19  certification.  Seven out of the ten cases that they

20  cite have to do with a plaintiff's motion for a

21  protective order preventing a defendant from taking

22  individualized discovery from an entire FLSA

23  collective.

24           THE COURT:  Oh, okay.

25           MR. MOSER:  So seven out of the ten cases out

                                                                6

of the box have nothing to do with class

certification.

          The other cases, the two cases, there are

three other cases that, that don't, that they cite

that don't necessarily address the use of sampling in

establishing class certification.  And there's no real

analysis in those cases, and one case is especially

concerning and that's the case of *Madeira against*

*Concourse -- Converse*, better said, where the

plaintiffs first persuaded the judge that a

representative sample would be suitable for the

purposes of class certification, and then it was, and

then when the plaintiffs actually moved for class

certification of rounding claims, the Court denied it

and said the soul basis for the allegation of the

rounding claims is a statistical analysis of a sample

payroll date over 60 employees.  The Court found that

the rounding policy undercounted hours, but for each

class member it could not definitively say whether the

rounding policy benefitted the employee or prejudiced

the employee, so it couldn't be used for the purpose

of class certification.

          And our big concern in this case is twofold.

First, in the declaration they say that it could take

1

2  as little as three days to produce all of the relevant

3  ESI.

4        THE COURT:  For the electronic documents.

5        MR. MOSER:  For the electronic.  So for me it's

6  the fact that it hasn't yet been produced is really

7  concerning.  We think that is complete speculation

8  with regard to the other burden because the affiant

9  doesn't say that she ever went to the store.  She

10 doesn't say that she looked at the files, she doesn't

11 say how many pages are in them.  She doesn't say what

12 her estimate of this half hour for a file is.

13        Assuming that, and I understand that there

14 will be an additional burden when we start talking

15 about 900 versus 135, clearly, here's the problem, we

16 don't know what these records look like at all and we

17 don't even know if they exist.  So to put that in

18 perspective, the defendants haven't committed that

19 once we agree on the sample and we select a random

20 sampling of the class list, that they'll be able to

21 find performance reviews for the sample or provide

22 records regarding disability or accommodation for the

23 sample.

24        Wo when we start talking about someone who

25 requests light duty, that's not going to be every

1

2   single class member, that's not going to be all 900.

3   It could be 100 out of the 900, it could be 50.  And

4   when we go into the sampling process and we limit it

5   to their subsample, they go and they look and they

6   find that there are no records in that particular

7   sample of people who requested light duty, what do we

8   do then? I mean do we keep on, do we then say, well,

9   we need a larger sample and then they have to go back

10  to all the stores and look through all the files

11  again, it just doesn't seem to me to be tenable. And

12  the promise is illusory because, I mean, we asked them

13  basically in our letter to the Court, you know, what

14  do these records look like, will they be useful for

15  class certification at all?

16        And I still don't know what these documents

17  are, I haven't seen them, haven't seen a sample

18  performance evaluation and, frankly, with regard to

19  performance evaluations, and this will be the last

20  thing that I say, actually I hate to say that, there

21  will be one more thing that I have to say after that,

22  but with regard to performance evaluations, our burden

23  in this case is to prove that these are manual

24  workers, right?  And because they were manual workers,

25  they weren't paid on time.  Now, I could have someone

1                                                            9

2    at a Burger King, for instance, who's working at the

3    front counter who's constantly helping out in the

4    kitchen, and he might be, his, his primary performance

5    evaluations might be based upon how he interacts with

6    the public. So what does that have to do with whether

7    he's a manual worker or not, you know, it just doesn't

8    make any sense to me.

9           The second issue is that, you know, they talk

10   about this, this paper system that was in place until

11   June of 2018, and then after June of 2018 there's an

12   electronic system, but they haven't explained anything

13   about what records exist in the files after June of

14   2018, why they haven't been produced, what the burden

15   associated with producing them was, it's almost as if

16   they ignore everything after June of 2018 when they

17   converted to an electronic system --

18          THE COURT:  Well when does the relevant time

19   period end?

20          MR. MOSER:  It ends I believe in October or

21   November of 2018.

22          THE COURT:  Okay.

23          MR. MOSER:  So, um, so that's the short of it,

24   Judge.  You know, it seems like in the defendant's

25   mind that this is a, they'll make this proffer and

10

1
2  this will somehow moot all of plaintiff's discovery
3  requests without even a motion being made or without
4  the plaintiffs having our opportunity to be heard on
5  the, on the need for discovery on their, you know, 84
6  document requests. I think that's what they're
7  suggesting and I think it's a violation of due process
8  if they're suggesting that somehow this short circuits
9  the entire discovery process by them saying, well,
10 we'll give you two items, you know, and then we look
11 at the two items and they're not even viable to
12 established class representation, then we come back to
13 the Court in another six months with still nothing
14 done.
15        THE COURT: And, well, it's not clear to me,
16 and they'll answer, that the defendants will answer that
17 they were necessarily saying the examples of relevant
18 records they mentioned were the only ones they anticipated
19 producing. But somewhat related to that, I think we need to
20 keep in mind two different maybe related issues.  One is the
21 relevancy and responsiveness of the documents, are there
22 documents that are going to reflect on whether these
23 employees essentially had to do more than light labor,
24 versus the extent to which those documents are
25 produced on a sampling basis or not a sampling basis.

1
2  I understand your point that among the files we don't
3  know right now how consistent they are across file to
4  file to know that the, or have confidence that a
5  sample would provide the type of documents that you
6  may have in mind or that would provide the
7  information.  But it may be that there's other
8  documents that would provide the relevant information
9  and I don't know that either.
10          But let me turn it over to the defendants,
11  have them explain what they have in mind in responding
12  to I think the concerns that you've raised.
13          MR. RUZAL:  Thank you, Your Honor, and mindful
14  of the Court's time, shall I address all of Mr.
15  Moser's points, I was thinking of maybe doing it sort
16  of in various buckets of the case law issue and then
17  what we get down to is the affidavit, et cetera?
18          THE COURT:  That's fine.
19          MR. RUZAL:  Thank you, Your Honor.  Briefly on
20  the case law, not to dwell too much, I understand how
21  Mr. Moser's distinguishing the cases that we presented
22  to Your Honor. The bottom line is, is that whether
23  it's in support of a class action or a collective
24  action which we all know is quite similar, sampling is
25  a reasonable protocol when it's specific to the case

1
2   at issue. I'm not suggesting through our

3   correspondence to the Court that every case is

4   necessarily appropriate for sample discovery, we just

5   happen to think that in this case it is.

6         Your Honor had asked us to, to speak on the

7   particular burden with respect to a smaller sample

8   vis-à-vis the larger class size of 907.  We believe we

9   absolutely did so.  You know, Ms. Juroff (phonetic),

10  who's the affiant, to travel to 65 stores and

11  personally inspect file cabinets filled with personnel

12  documents would have been impossible within the time

13  allotted for us to put in an affidavit.  If, at some

14  point, the Court wishes for us to select someone to

15  actually speak to each of the files in question, than

16  that would be one thing.

17        We can't speak at present what's in each

18  individual file, we're only going on the affiant's

19  understanding based as the HR director for the

20  defendant.  She's been in that role for quite some

21  time and she has a good understanding of what

22  typically is comprised of personnel documents.  To the

23  extent that it's not as robust as what Mr. Moser would

24  have liked, that does not mean that he's not entitled

25  to additional discovery.

1                                                          13

2             Speaking to his last point, we, in no way, are

3  trying to supplant Mr. Moser's requests, 85

4  individualized requests for documents with this

5  sampling protocol for a couple of documents that Ms.

6  Juroff in her affidavit spoke to as potentially

7  relevant that typically are in such personnel files.

8  That does not mean that it's limited to that,

9  whatsoever, we just happen to believe that going

10 through a sampling protocol such that we can produce

11 such documents would be a more efficient way for

12 purposes of class certification. To the extent the

13 class is certified, as Your Honor had asked before,

14 yes, of course, there would be further document

15 production and individualized depositions, and et

16 cetera, with respect to the remaining class members,

17 if Mr. Moser wishes to engage in such individualized

18 discovery at that point.

19             THE COURT:  All right, so let me inquire on a

20 few things.  First of all, is your thought that if you

21 proceeded with sampling, or even if you didn't, you'd

22 be producing all documents that you deem relevant and

23 responsive from within those files at the individual

24 stores as opposed to, say, just two categories of

25 documents?

```
1                                                    14
2              MR. RUZAL:  Yes, Your Honor.
3              THE COURT:  All right, so the parties would
4   have to work out any objections to the extent they may
5   affect collection, whether it be sampling or not, I
6   think in advance, so that we'd be assured of getting
7   all relevant documents one way or the other.  So I
8   think the issue of the two type of documents that were
9   culled out as an example is sort of something that
10  doesn't need to occupy us too much because they're
11  going to produce documents beyond that.  Do I have
12  that right, Mr. Moser?
13             MR. RUZAL:  Mr. Ruzal, yes, Your Honor.
14             THE COURT:  I'm sorry, okay. All right, but
15  let me ask you this, so each store, does each store
16  have a manager? Well who is the highest in the chain
17  at, that's onsite at each store?
18             MR. RUZAL:  So that would be the store
19  manager.
20             THE COURT:  Okay, and does the store manager
21  deal with anything related to employment issues or HR
22  issues?
23             MR. RUZAL:  You know, I would have to ask the
24  client, Your Honor, I'm not quite familiar.
25  Obviously, there's corporate human resources, I don't
```

15

know if there's designated, I mean there are

designated HR resources, as Ms. Juroff explained in

her affidavit, for particular stores. I suppose in

particular jurisdictions, here as to New York. I don't

know if the HR representative works in tandem with the

store manager or the store manager has any delegated

responsibilities, that's certainly something I can

inquire about.

THE COURT:  All right.  Well I did a

calculation using your numbers, but I did a different

calculation. So my calculation was that you had a

total of 454 hours, but if I take that 454 hours and

divide by 65 stores, and I realize some are out of

business and some came online after, but putting that

aside, if you divide by 65 you get 7 hours per store

that would be used to search for and collect the

documents.  And my question is, why can't someone at

the store, each store, under the guidance of someone

back at corporate, do the collection and simply copy

the documents and forward them to, you know, a central

place?

MR. RUZAL:  The only thing I could speculate

on, Your Honor, and, quite frankly, it is speculation,

is I don't know what the resource allocation is at the

store level which is to say I don't know that someone

for staffing purposes who is dealing with customers or

dealing with operational issues at the store level,

are in a position to be able to spend that kind of

time collecting documents at each particular store.

I'm sure it can be done and I'm sure the client, Bed

Bath & Beyond, would have to designate certain

individuals for those duties and then supplement with

other, you know, individuals at the store to be able

to deal with customers and the like. To me, I don't

know that that makes much of difference timewise,

other than the fact that the person might very well be

local as opposed to sending someone centrally from HR

to be able to collect those documents.

     THE COURT: Well, it disburses the hours so

that no one person is out of commission for 20 or 21

days as you suggest might otherwise happen.

     Also, I, this is an assumption, but I haven't

seen anything to the contrary, that that's what would

happen anyway. That someone central to corporate would

say, okay, send me the files for these two individuals

from your store, and essentially doing the same thing

that would be required to send more files. And

there's nothing in the affidavit that really indicates

17

1
2  how much there is in each file that would create a
3  burden. I understand, I appreciate the estimate of
4  time, so I'm working off of that and, like I said, it
5  basically comes down to seven hours per person per
6  store.

7        Address the issue, if you will, of the
8  plaintiff's concern that the, producing documents from
9  two individuals isn't really, even though you will say
10 it's representative for purposes of class
11 certification, it may not really be representative in
12 the sense that one person's file might indicate they
13 were doing a certain type of work, and another file
14 just may not address that issue. Can you, what can you
15 say about what would give confidence that the two
16 files produced from each store would really be a
17 representation of the extent to which the employees
18 conducted light duty or heavy duty?

19        MR. RUZAL:  Yes, Your Honor.  So, as we were
20 saying before, the documents in the personnel files
21 are not necessarily limited to the examples that we
22 provided in Ms. Juroff's affidavit and which Mr. Moser
23 and I discussed with the Court this morning. There may
24 very well be other types of documents which I'm not
25 presently aware of, which might aid Mr. Moser's

1

2  argument with respect to whether or not the putative

3  class members in question were manual workers or not

4  for purposes of New York Labor Law 191.  And to the

5  extent that that might exist in certain files and not

6  others would be something that would have to be a

7  moving process. I mean to the extent that there is

8  additional information in certain other files and Mr.

9  Moser wished for us to supplement it with additional

10  discovery for other individuals, that would certainly

11  be something we were open to.  We're not looking to

12  impede Mr. Moser's ability to make his motion for

13  class certification, we're just trying to address this

14  in somewhat of a, you know, a way that, you know,

15  lessens the burden, if you will, on what would be a

16  significant exercise for the client.

17          THE COURT:  Sure.  Okay, on the electronic

18  production, that's of, as I understand it there are

19  two databases that don't have the title in them so

20  there would have to be manual going through and

21  checking per employee and you indicate that that would

22  take three to four days which, frankly, doesn't seem

23  particularly burdensome. And if the person is going to

24  have to go through the list anyway to find 130 names,

25  it doesn't seem to me there is any different burden in

19

1

2   going through to find 960 names. I agree, it would

3   take longer because you have to either click on them

4   or have them come up on the screen, but you're still

5   going through a list or conducting a search of that

6   list by name.   But, again, you've indicated that's

7   three to four days which, again, could have been done

8   some time ago.

9            MR. RUZAL:  If I may clarify Your Honor?

10           THE COURT:  Yes, please.

11           MR. RUZAL:  I mean the three to four day

12  estimate that Ms. Juroff provides in her affidavit

13  speaks to the payroll timekeeping records which

14  defendant believes is the most relevant for purposes

15  of this lawsuit, as we said in our submission to the

16  Court.  A 191, a New York Labor Law 191 claim focuses

17  on what we believe to be two substantive issues, one

18  is whether or not the worker is manual --

19           THE COURT:  Right.

20           MR. RUZAL:  And, therefore, qualifies or is

21  entitled to be paid on a weekly basis, and then what

22  was paid beyond the week to the extent, you know, that

23  damages need to be assessed for those individuals in

24  the form of liquidated damages. That is not to say

25  that there is not other potential ESI. And as Mr.

20

1
2  Moser pointed out in his 85 document request, he is
3  seeking ESI that goes well beyond just the payroll and
4  timekeeping records. If Mr. Moser wants to stipulate
5  that all the relevant ESI, as he put it, is limited to
6  the payroll documents and the timekeeping records,
7  then that's perfectly fine and we're happy to engage
8  in that work and produce those documents for him.
9          THE COURT:  All right. Okay, in other words,
10  there will be additional time spent on electronic
11  production, for sure, because there may be communal
12  documents, there may be email, whatever else it is
13  that you ultimately agree upon that the court rules
14  are responsive and to be produced.
15          MR. RUZAL:  Yes, Your Honor.
16          THE COURT:  Yes, okay.
17          MR. MOSER:  Your Honor, if I may be heard
18  briefly on that?
19          THE COURT:  Please.  Sure.
20          MR. MOSER:  I think the big concern is that,
21  you know, we have representations that they can't find
22  job descriptions for, you know, 1,000 people, and now
23  we hear that no one has gone through the files at the
24  store, I mean how do we know that job descriptions
25  aren't in there and yet we have this representation

1

2  job descriptions don't exist.  It's, to me it's

3  alarming.

4         And the other issue is that, you know, now we

5  asked for the defendants to identify the relevant

6  documents some months ago and they've just flatly

7  refused.  And so now they're saying, well, the ESI

8  that we brought to the Court's attention in this is

9  not the only ESI that we have, but I'm completely in

10  the dark as to what ESI exists because they never told

11  us.

12         THE COURT:  Okay, but that's separate from

13  sampling because they're not talking about that,

14  including in the sampling.

15         MR. MOSER:  Yeah.  And with regard to the

16  stores, you know, if it takes them seven hours to

17  produce all of the relevant documents for all class

18  members, which it sounds like their estimate is that

19  it would take seven hours at each store, we're willing

20  to wait two weeks for it or three weeks for it and

21  that would mean that, you know, one individual at each

22  store spends, you know, an hour a day going through

23  the files and in a week it's done and we have class

24  wide discovery if the Court thinks that's appropriate.

25  So I just wanted to interject that but that's all I

22

1  have.

2       THE COURT:  And I'm not saying it would happen

3  that way, it's up to the defendant, they can have

4  someone go from store to store, they can have people

5  at the store. I understand, it would make sense that

6  there are concerns that people at the store have

7  responsibilities, they're already occupied, and they

8  may not have the time or opportunity to go copy

9  documents, or maybe they could, maybe there's overtime

10  paid, I have no idea.

11       Just remind me again, what positions are we

12  talking about, we're talking about specific positions,

13  sales associates or others or --

14       MR. MOSER:  We're talking about three specific

15  positions. We're talking about retail stock

16  associates, retail sales associates, and overnight

17  department managers.

18       THE COURT:  Okay.  I'm -- yes, look -- go

19  ahead.

20       MR. RUZAL:  I'm sorry, Judge.

21       THE COURT:  No, Mr. Ruzal, it's fine.

22       MR. RUZAL:  Just one point of clarification.

23  With respect to the overnight department managers,

24  we'd indicated to Mr. Moser that there are

23

approximately only 15 during the relevant time period.
Now, we're not opining on whether or not class
certification is appropriate at this time, but we did,
in fact, say that we would turn over the documents for
the entirety of that position. So what we're really
talking with sampling is about the stock associates
and the sales associates.

THE COURT:  Okay.  What I'm musing about is
really trying to figure out and, again, you all will
know better, really what documents would be most
relevant to indicating what these people actually did?
You mentioned payroll records, but I don't understand
how payroll, certainly, payroll records are relevant
to other issues, but in terms of what they actually
did to make the determination of whether they are
light or heavy, I'd like to know, Mr. Ruzal, what do
you think would actually address that, if anything?

MR. RUZAL:  So I'll preface all my comments by
saying that I am not speaking specifically to any
documents that do or do not exist in any personnel
folders or otherwise.  I will say this though, I do
not personally believe in my experience as a wage and
hour practitioner and formerly as a trial attorney for
the Solicitor's Office, relied on job descriptions or

24

written documents for purposes of establishing what

someone actually does in a job, manual or otherwise.

The best evidence of what an individual typically does

is often through a deposition --

THE COURT:  Right.

MR. RUZAL:  In the formal sense in litigation.

THE COURT:  I would think so.

MR. RUZAL:  Or an interview otherwise, to ask,

well, what did you do in the store on any given day,

take us through a day in the life if you will. A job

description could be helpful as a baseline for sure so

that it gives Mr. Moser a platform from which to ask

questions and probe to learn about what one does and

doesn't do, but it's certainly not a substitute. And a

performance evaluation or a job description to the

extent that they exist, or any sort of other written

document that speaks to the potential or manual

aspects of a job are not ultimately realized.  And I

will say for the record that to the extent Mr. Moser

were to put forward a document in support of a class

certification motion about what was manual and what

was not to determine whether or not it qualifies under

New York Labor Law 191, I would say that that's

insufficient and that you really do, in fact, need to

25

probe the individual putative class member or named

plaintiffs to find out what they really did day to day

to find out whether or not they even qualified for

weekly pay under 191.

        THE COURT:  And what would you anticipate

would happen during the discovery period to, to do

that?  Presumably, the plaintiff would seek

depositions of putative class members, but presumably

that would be done on a so-called representative basis

or sample basis of some sort, do I have that right,

Mr. Moser?

        MR. MOSER:  Correct.

        THE COURT:  And what's your view on whether

the best information is likely, on issue of heavy

versus light duty, is likely to come from depositions

versus other sources?

        MR. MOSER:  I think that the defendant's

approach is (indiscernible) in the clay, so to speak.

When we look at these job descriptions, for the

purposes of the ADA the employer normally has a list

of the essential functions of the job and the physical

requirements of the job. And the reason why the

employer has that is because when the employee makes a

request for an accommodation, they consult the

26

essential functions of the job and the physical
requirements to determine whether an accommodation can
be made, right?  So those documents concerning the
essential function of these workers I think are
generalized proof of what they did and what they were
expected to do.

THE COURT:  And is there anything that would
require or, as a matter of course, result in such a
document being in each employee's file?

MR. MOSER:  No, but generally when we, when we
talk about ADA compliance, the job description and the
essential functions are the same in this type of an
organization because they call come from HR.

THE COURT:  Okay, but right now we don't have
job descriptions, so they say, right, but I don't, but
the point is that is the discovery at the store file
employee level going to result job descriptions?

MR. MOSER:  I have no idea, Judge.

THE COURT:  Right.

MR. MOSER:  And, frankly, you know, I'm
completely in the dark because, you know, in July we
asked for a list of the relevant documents that could,
you know, that address certain issues, and we still
don't have it, and now we're talking about it now. And

27

1
2  it's, like the Court pointed out, this is entirely
3  speculation because we don't, we don't have an answer
4  from the defendants, basically, as to what documents
5  are relevant, so.
6       THE COURT:  Right.  Okay, let me ask this to
7  Mr. Ruzal, and I'm not saying this is what I'm going
8  to do, just in theory another option would be to say,
9  okay, do your sampling, let's get that produced and
10 see what that yields, and take a second look so that
11 if, well I don't know what the arguments would be. It
12 may be that there's somehow job descriptions that show
13 up and then those could be used across groups. There
14 may be no such thing and it's just very
15 individualistic, at which point the plaintiff says
16 what? What would, what would it take for you, Mr.
17 Moser, to say, okay, we've got these sample files and
18 I think we now need all the others for class
19 certification purposes because why?
20      MR. MOSER:  I think that we would be looking
21 at what the contents of these files actually show.
22      THE COURT:  Right, of course.
23      MR. MOSER:  You know, for me, I could, I could
24 speculate, but I think that, again, one of the primary
25 concerns is that, again, I'm only speculating, but I

```
 1
 2   would suggest that maybe only 5 out of 100 employees
 3   are going to request light duty, right?
 4          THE COURT:  Right.
 5          MR. MOSER:  And so if we take 5 out of 100,
 6   that means out of the 900 we're talking about 45,
 7   right, about, 45 to 50 people --
 8          THE COURT:  Okay.
 9          MR. MOSER:  Perhaps.  And when they go and
10   collect 130 out of the, out of the 900, the chances
11   that they get --
12          THE COURT:  Right.
13          MR. MOSER:  This 45, is really low. And then
14   what we're doing is saying, well, you didn't produce
15   anybody so go back and search again.  To me --
16          THE COURT:  Well they don't need to find the
17   45, they only need to find some that would then be
18   proportionally increased.
19          MR. MOSER:  Yeah, that's correct.  So our
20   position would be that, you know, the essential
21   functions of the job remain consistent among the
22   stores.  You know, we actually, in this particular
23   case we believe that most of the other classifications
24   at the store level are manual workers. I mean they're
25   retail workers who had to stock merchandise all day
```

29

long. But it, to be conservative in the case we did

not want to stretch outside the job, outside the job

categories of the individuals that we represent.

THE COURT:  I'm still just musing about what

payoff there will be in having all the files, because

in the end, if the files really don't show much and

you need to depose the people anyway, and that's where

the information is going to come from, what does it

matter if you only have a certain number of files and

not for 960 people, right?

MR. MOSER:  Understood.  Understood.  It's a

valid point, Judge.

THE COURT:  And let me ask Mr. Ruzal something

else, something else that occurred to me was I

understand 14 percent and that there are cases with 10

percent and whatnot, but, and obviously there's a

burden for each additional employee that you add, but

one possibility would be to do a sample, but do a

larger sample, do five employees per store or

something like that, at least to give more confidence

that you're getting a broader number, you're not

undergoing as much effort and if there really is

something in there that would make it worthwhile to go

after other files for class certification purposes,

1
2  then we could entertain that.

3         It did seem to me that two per store was thin,

4  notwithstanding overall that's 14 percent, would you

5  and your client see it as, would you still want to

6  pursue a sampling route so called if the number were

7  higher but not all?

8         MR. RUZAL:  Your Honor, we're not wedded

9  necessarily to the proposal that we provided to Mr.

10 Moser and the Court, if it was a larger sample size

11 that would give plaintiffs, you know, greater comfort

12 and the Court potentially greater comfort, even if it

13 does increase the overall percentage which we think,

14 frankly, is already robust but, nevertheless, like I

15 said at the outset, each case is unique in that regard

16 so I think sampling has to take the form and follow

17 what's most appropriate. And so not able to speak for

18 Bed Bath & Beyond at this table, I could say

19 realistically that we're not wedded to the proposal we

20 provided and we would be open to a larger sample.

21        And if I could just add one point, Your Honor,

22 somewhat related to the former point Your Honor made

23 in your dialog with Mr. Moser, at the end of the day,

24 we don't believe, necessarily, as I had said before,

25 that the document, in and of themselves, are going to

1
2    ultimately inform a motion, or the ultimate legal

3    question here is whether or not these individuals were

4    manual workers. Certainly, someone could put in a

5    request for an accommodation and, again, I'm

6    speculating, that document may not even reference what

7    the person necessarily ordinarily does in the course

8    of one's duties.

9           To the extent that there is some piece of

10   paper that speaks about what an individual class

11   member does on a day to day basis or is supposed to be

12   doing that's, again, not a substitute for what that

13   individual actually does on a day to day basis and

14   would be subject to challenge in that regard.

15          THE COURT:  Right.  Mr. Moser, what would you

16   think of going with an increased number for a sample,

17   say around five?

18          MR. MOSER:  I would be, you know, I'm not

19   clairvoyant but I see where the Court is going.  So I,

20   I'd be open to five per store, I think that that's a

21   reasonable number and considering the fact that with

22   the current proposed sample we might not have that

23   much overlap over those who request the

24   accommodations, I think that five per store would

25   definitely help us.  Especially because when you start

32

1

2     talking about, you know, the sampling, we don't know

3     what's going to be in the files. And having, you know,

4     having them search for five per store actually gives

5     us a little bit more margin of effort in terms of

6     finding things that are relevant to the issues.

7             THE COURT:  Right.  And, again, I have the

8     concern about what is it really going to show, and I

9     agree, we don't know, but it does sound like the

10    depositions are really going to be what reveals

11    information.

12            All right, so as you guessed, based on that

13    discussion, I am going to grant the request to do the

14    production for class certification purposes on a

15    sampling basis but for 5 employees per store and

16    stipulation that whatever is found will be deemed

17    representative of the, the group of 960 as a whole for

18    class certification purposes.

19            MR. RUZAL:  And, Your Honor, just to clarify,

20    and I know you had just said for class certification

21    purposes, but just to stress we'd like to ask for

22    class certification purposes only.  We're not, we

23    would not stipulate that it would be representative

24    for all purposes of the litigation.

25            THE COURT:  Well and if you are going to

33

1

2   produce documents, if a class is certified and you

3   produce documents for all purposes at that point, then

4   I agree it should be only for class certification. Mr.

5   Moser, any different view?

6          MR. MOSER:  No, that's fine.  I just had two

7   questions regarding --

8          THE COURT:  Sure.

9          MR. MOSER:  Regarding the Court's order.

10  Number one, I, this does not affect the, the

11  substantive nature of any of the outstanding requests?

12         THE COURT:  No, and I was actually going to

13  address that briefly or to the extent we can. But, no,

14  there is no, it is not meant in any way to limit the

15  scope of the documents requested or that are

16  appropriate to be produced. Obviously, defendants have

17  their objections, whatever objections they make, but

18  this is meant no way to restrict or expand the

19  substantive scope of discovery.

20         MR. MOSER:  And the second question would be

21  that with regard to the class list, since the

22  methodology that they're proposing would require them

23  to produce a class list anyway from which we would,

24  from which we would select certain individuals

25  randomly using a consultant, does it mean that class

1
2  information is only exchanged for the sample or do we

3  get a comprehensive class list, I think that's an open

4  issue that we'd like to address either separately with

5  the Court or, if the Court is so inclined, to address

6  it today.

7            THE COURT:  Yes, Mr. Ruzal?

8            MR. RUZAL:  Yeah, thank you, Your Honor.  I

9  believe, respectfully, Mr. Moser presupposes that the

10  way in which the sample will be collected.  My

11  understanding of a random sample is that it's exactly

12  that, it's random. I don't necessary understand how a

13  consultant can pick a random sample if a consultant

14  presumably would be used presumably to identify

15  certain particular individuals to select, random would

16  mean just that.

17            THE COURT:  Well there are two different types

18  of random, right, so you can randomly select something

19  but depending on your universe and it affects whether

20  it is a representative sample that can be extrapolated

21  upon.  And I was understanding the following, that the

22  sampling is based on an agreement, an acknowledgement

23  for purposes of class certification that that sample

24  will be treated as representative and expandable to

25  the class as a whole, so that there doesn't need to be

a statistical assessment of how to go about choosing

the employees.  Anyone see that to the contrary?

          MR. RUZAL:  The defendant agrees, Your Honor.

          MR. MOSER:  Yes, I agree, to the extent that,

you know, we come to this agreement that, you know, no

one is going to challenge whether the sampling is

representative for the purposes of the class motion.

          THE COURT:  Right.

          MR. MOSER:  My, but in the emails from --

          THE COURT:  Yes, I recall that the defendant,

I believe in a letter, represented, or maybe it was an

email, that the plaintiff, it would be at the

plaintiff's choosing which employees would be in the

sample, am I, do you recall differently --

          MR. MOSER:  That's correct, that they would

provide a class list.  And the reason why --

          THE COURT:  Well I don't know about that, but

I just meant that plaintiff would be doing the

selection, but let me ask Mr. Ruzal what he recalls

about that?

          MR. RUZAL:  Thank you, Your Honor. Well, look,

this process is storied, it's been ongoing for the

better, since basically October 15th and it started out

with a request for sampling.  Mr. Moser created 16

1
2  preconditions to consider sampling.  We had agreed to
3  a, the far majority of these preconditions to try to
4  move forward with sampling and to avoid Your Honor's
5  intervention in this, and Mr. Moser didn't want to go
6  forward for a variety of reasons, fine, we find
7  ourselves here today.
8       Personally, Your Honor, there should have
9  never been any preconditions to sampling because it
10 was not, it's not a quid pro quo --
11      THE COURT:  Well, I'm not, but we're not
12 talking about that right now, right now we're talking
13 about the class list and whether that should be
14 provided so that the plaintiff can select at their
15 choosing the employees, they really should be randomly
16 but it is being, I mean I don't know what the
17 plaintiff would know otherwise.  But you said, Mr.
18 Moser, that you would do this in connection with a
19 consultant, why would you need a consultant to pick?
20      MR. MOSER:  Because I think that what I would
21 like to avoid is either defendant, themselves, or the
22 plaintiffs cherry picking class members --
23      THE COURT:  Well, I agree, but how --
24      MR. MOSER:  The purpose, the reason why I
25 would hire a consultant is because I would hire the

 1   consultant exclusively for the purpose of simply

 2   looking at the list and it can be in Excel format and

 3   have that consultant randomly --

 4            THE COURT:  Randomly select.

 5            MR. MOSER:  Either using some type of script

 6   or randomly selecting and stating in an affidavit that

 7   these were randomly selected.

 8            THE COURT:  Okay, that seems like a reasonable

 9   thing to do.  Mr. Ruzal?

10            MR. RUZAL:  If plaintiffs want to absorb the

11   expense (indiscernible) we had shared this in previous

12   email correspondences, I had asked Mr. Moser on

13   occasion why he thought the consultant was necessary,

14   I didn't nearly get as comprehensive an answer as he

15   provided to the Court today.  That's perfectly --

16            THE COURT:  I'm violating my own rule, I'm

17   sorry.

18                 (Telephone Interruption)

19            THE COURT:  Okay, go ahead.

20            MR. RUZAL:  We have no strong objection to it,

21   just two comments if I may. I mean, one, to me, a

22   random sample is just that, random. I don't know why

23   plaintiffs would need a class list identifying all of

24   the individuals for purposes of the sample or how that

38

 1
 2  actually --

 3          THE COURT:  Well how were you thinking of

 4  doing it otherwise?

 5          MR. RUZAL:  It could be anonymized, it could

 6  be, we could pick the individuals with the longest

 7  tenure at the respective stores to hopefully, you

 8  know, increase the likelihood that their file is going

 9  to be large --

10          THE COURT:  Right, it could be anonymized,

11  you're right.

12          MR. RUZAL:  I think that probably is a bit

13  more equitable, Your Honor.

14          MR. MOSER:  Your Honor, if I may, I think the

15  issue of the class list is, maybe we want to address

16  that by separate letter --

17          THE COURT:  Yes.

18          MR. MOSER:  Because I think that there's some

19  substantive issues here and one of them is that the

20  defendant is suggesting that the people who know most about

21  whether they were manual workers are actually the class

22  members. So, you know, that may assist us in, you know,

23  obtaining affidavits necessary for class certification.

24          THE COURT:  Let's deal with the class list

25  separately, fully meet and confer, if there's an issue raise

39

it with me, but for the selection process, anonymization I

think is appropriate and should be done, because that just

reinforces the random nature of it.

All right, so in terms of the schedule, you

each have proposed a schedule, I guess the defendants

had proposed one that was based on there being

sampling which is being done. So working within that

framework, Mr. Moser, do you have any concerns about

what they, I recognize we're already passed some of

the dates so we'd need to extend accordingly, but

assuming that we did that, do you have issues with it?

MR. MOSER:  Yes, I would like some specificity

as to when the defendants will be amending their responses

because otherwise I think that that issue may just be

prolonged unnecessarily.

THE COURT:  Right, so there's the overall schedule

and then there's interim dates, and one of them you're

talking about is amending their responses, and you're

talking about both document responses and interrogatories?

MR. MOSER:  Correct, Your Honor, and requests

for admissions to the extent that they believe that an

amendment is necessary.

THE COURT:  All right, Mr. Ruzal, can you

speak to that?

40

1

2          MR. RUZAL:  Certainly, Your Honor.  As we had

3  indicated to Mr. Moser which he, in turn, had

4  indicated in a footnote to his November 24th

5  submission, we were aiming to, to provide amended

6  responses to the interrogatories and document requests

7  by December 7th we believe was the date we provided.

8  We didn't set it at the time as a firm date, that we

9  were hoping to get it by then just because of the

10 intervening holiday and the other issues that we

11 prepared for the Court today, it's forthcoming --

12          THE COURT:  Well, give me a date, what would

13 be a date certain?

14          MR. RUZAL:  We could do December 7th, Your

15 Honor.

16          THE COURT:  Okay, we'll do December 7th.  All

17 right, and then any issues that exist after that

18 you'll meet and confer, and if you can resolve them,

19 great, if not, I'm here.  So, with that, is there any

20 other issue with respect to the schedule proposed

21 which I believe is at DKT 37-1?

22          MR. MOSER:  I noticed that the date to amend

23 is retroactive to November 4th and just for the Court's

24 information, we reached out to the defendant recently

25 because there's some very recent case law out of the

                                                      41

1

2   Appellate Courts of the State of New York stating that

3   the statute of limitations was tolled by executive

4   order for a period of 230 days, approximately.  And we

5   want to amend the complaint to, you know, the

6   complaint, as it is phrased right now, only asserts a

7   6 year statute of limitations and we wanted to extend

8   that by the 228 days that were recognized by the

9   Appellate Courts in the State of New York.

10          THE COURT:  Mr. Ruzal?

11          MR. RUZAL:  Well, first off, Your Honor,

12  defendant doesn't believe that Mr. Moser would need to

13  amend the complaint to achieve some sort of tack on

14  tolling to the extent that executive order actually

15  pertains here.  Secondly, Your Honor, we don't believe

16  that particular case or the executive order would

17  apply here because Mr. Moser filed the complaint after

18  the height of the pandemic and I think he's,

19  respectfully, trying to utilize this executive order

20  and shoehorn this case to somehow extend the statute

21  of limitations where it really doesn't apply here.  I

22  don't believe that there would be any equitable

23  advancement of interest, rather just to simply

24  increase the potential damages in this case.

25          Your Honor, I mean this would be something

```
1
2   that I think would be more appropriate for briefing --
3           THE COURT:  Oh, yeah, I'm not deciding now
4   whether it does or does not apply, the question is, is
5   whether there's any objection, whether it should be
6   and whether there's a need to include in an amended
7   pleading. And my initial reaction was the same as Mr.
8   Ruzal, that it is a legal event that would otherwise
9   apply to the statute of limitations, if it applies
10  here, that you'd be able to invoke that without
11  putting it in the complaint. Do you see it
12  differently, Mr. Moser?
13          MR. MOSER:  Yes, absolutely. We'll bring to
14  the Court's, we'll bring to the Court's attention if a
15  motion to amend is necessary, specific case law out of
16  the Appellate Courts of the State of New York which
17  states that this is a true toll of the statute of
18  limitations, it's not a suspension, a suspension is
19  different --
20          THE COURT:  No, no, I'm not arguing, I'm, my
21  question, sorry if I miscommunicated, just what your
22  position on whether it needs to be in the pleading as
23  opposed to something you can just invoke because it's
24  part of the limitations law.
25          MR. MOSER:  I just, in an abundance of
```

43

caution, I just don't want to be precluded or limited

--

THE COURT:  Of course.

MR. MOSER:  From what's in the pleading, I think that would, I would be not fulfilling my duties to the class if I say, well, I said 6 years but what I really meant was 6 years and 228 days, you know.

THE COURT:  Right.  Mr. Ruzal, why not have, allow that to be done, but obviously you'd be reserving all your rights to disagree with that argument substantively?

MR. RUZAL:  If that's how plaintiffs want to proceed, I see that as their choice and so long as we're not waiving arguments, as Your Honor points out, then it's certainly fine by us.

THE COURT:  Right.  All right, so I'll allow that amendment to be made without prejudice to any arguments that the principle does not apply, or any other argument defendant wants to make in regard to, to it.

MR. RUZAL:  Your Honor, if I may?

THE COURT:  Yes.

MR. RUZAL:  Is Mr. Moser suggesting that with respect to any amendments to the first amended

44

1

2  complaint, that it would be limited with respect to

3  the actual tolling argument, with respect to the

4  length of the statute of limitations?

5          THE COURT:  That, that's my understanding at

6  the moment, Mr. Moser, is there anything else?

7          MR. MOSER:  That is correct.

8          THE COURT:  Okay, so that is the only thing

9  for which it shall be amended.  And when do you think

10 you can file that?

11         MR. MOSER:  I think I can file that within two

12 weeks.

13         THE COURT:  Okay, let's do that.  Anything

14 else about the schedule, Mr. Moser?

15         MR. MOSER:  I'm sorry, Your Honor, I'm looking

16 through it as we speak.

17         THE COURT:  That's okay.

18         MR. MOSER:  I don't have, with regard to the

19 deadlines, themselves?

20         THE COURT:  Yes.

21         MR. MOSER:  I don't see any issues with regard

22 to the deadlines, themselves.

23         THE COURT:  Okay.  Was there something else

24 you had a concern about in there?

25         MR. MOSER:  No, I'm just finishing it up right

                                                                    45

1

2    now.

3            THE COURT:  Sure, take your time.

4            MR. MOSER:  I have no other concerns about

5    this order.

6            THE COURT:  All right, so I will issue that

7    order with a 60 day status report requirement and with

8    the amendment that you can file the amended complaint

9    as we've discussed.  All right, I think I've heard

10   what I saw out there, is there anything else that we

11   should cover, Mr. Moser?

12           MR. MOSER:  No, Your Honor, we will work with

13   the defendants following their amendment of their

14   discovery responses on December 7th and hopefully we

15   can resolve everything without the Court's

16   intervention. But in the event that we can't work it

17   out, is there a deadline by which you would like to

18   see a motion to compel or --

19           THE COURT:  No, if you can't work something

20   out just file a letter pursuant to my rules and we'll

21   take it from there.  And I think as I indicated, I did

22   indicate previously in an order, just a reminder to

23   the defendants that if there are going to be

24   objections you have to be clear about what you're

25   producing and not producing, that's all.

46

1

2          All right, anything else from the defense?

3          MR. RUZAL:  No, thank you, Your Honor.

4          THE COURT:  All right, thank you, all, we're

5   adjourned.

6          MR. MOSER:  Thank you.

7              (Whereupon the matter is adjourned.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

47

C E R T I F I C A T E

        I, Carole Ludwig, certify that the foregoing

transcript of proceedings in the United States District

Court, Southern District of New York, Hess, et al. versus

Bed Bath & Beyond, Inc., Docket #21cv4099, was prepared

using digital transcription software and is a true and

accurate record of the proceedings.

Signature _____

Date:  January 24, 2022