```
                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF NEW YORK

In re:                             :
                                        Docket #21cv4099
HESS, et al.,                      :   1:21-cv-04099-AT-RWL

                Plaintiffs,        :

   - against -                     : New York, New York
                                     May 12, 2022
BED BATH & BEYOND, INC.,           :

                Defendant.         :

----------------------------------- :  PRE-MOTION CONFERENCE

                     PROCEEDINGS BEFORE
                 HONORABLE ROBERT W. LEHRBURGER
                 UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For Plaintiff:          MOSER LAW FIRM PC
                        BY:  STEVEN MOSER, ESQ.
                        5 E. Main Street
                        Huntington, New York  11743

For Defendant:          EPSTEIN BECKER & GREEN, P.C.
                        BY:  JEFFREY RUZAL, ESQ.
                             MATTHEW AIBEL, ESQ.
                        875 Third Avenue
                        New York, New York 10022




Transcription Service: Carole Ludwig, Transcription Services
                       155 East Fourth Street #3C
                       New York, New York 10009
                       Phone:  (212) 420-0771
                       Email:  Transcription420@aol.com

Proceedings recorded by electronic sound recording;
Transcript produced by transcription service.
```

**INDEX**

**E X A M I N A T I O N S**

| Witness | Direct | Cross | Re-Direct | Re-Cross |
|---------|--------|-------|-----------|----------|
| None | | | | |

**E X H I B I T S**

| Exhibit Number | Description | ID | In | Voir Dire |
|----------------|-------------|----|----|-----------|
| None | | | | |

```
 1                                                    3
 2            HONORABLE ROBERT W. LEHRBURGER (THE COURT):
 3   Good afternoon, it's Judge Lehrburger in Hess versus Bed
 4   Bath & Beyond, 21cv4099.  Counsel, please put in your
 5   appearances starting with plaintiff.
 6            MR. STEVEN MOSER:  Steven Moser for the
 7   plaintiffs, good afternoon.
 8            THE COURT:  Good afternoon.  For the defense?
 9            MR. JEFFREY RUZAL:  For defense, Jeff Ruzal
10   joined by Matt Aibel and Tammy Tran who's a new associate
11   who joined the firm who's observing but not, has not
12   entered an appearance in the Court, if that's okay with
13   Your Honor and plaintiffs' counsel.
14            THE COURT:  Absolutely fine, of course.  So
15   we're having this conference in light of the plaintiffs'
16   desire to file a third amended complaint and the
17   defendant's opposition and how this should be dealt with
18   including with respect to a motion to amend and/or a
19   motion to dismiss. I guess I want to start by asking of
20   anything has changed in any way, let me ask Mr. Moser in
21   that regard?
22            MR. MOSER:  Not since we wrote the letters to
23   the Court, nothing has changed.
24            THE COURT:  All right.  So, Mr. Ruzal, the Court
25   obviously would prefer and think it best not to have two
```

4

1

2   sets of motions.  And at least insofar as there is a

3   concern about adequacy of page limits, I don't envision a

4   problem in that regard because to the extent you would

5   need additional pages because of these issues I have no

6   problem suggesting to Judge Torres that she allow that.

7   But that's sort of the tail wagging the dog, we should

8   talk about some of these issues, obviously.

9        And I understand, sort of boiling down your

10  concerns, you are correct that if you want to argue bad

11  faith and prejudice, that is more apt on a basis of a

12  motion to amend than it is on the motion to dismiss. I

13  have to say though, I'm not really seeing how this adds

14  up to bad faith that would preclude amendment but maybe

15  you can expand on that as well at the appropriate

16  juncture.

17       There are three aspects that I understand that

18  the amended pleading seeks to accomplish, one is to add

19  representative plaintiffs, the other is expand the class

20  and the other is to add the hiring notice claim. And let

21  me just, again, so I can understand the scope of things,

22  as to adding the representative plaintiffs, does that go

23  hand-in-hand, Mr. Moser, with the expanded class?  In

24  other words, are they each representative of a different

25  position?

1                                                         5

2              MR. MOSER:  No, there are so many diverse

3    positions that getting a representative from each

4    position would mean that we have 20 plus class

5    representatives. And what we are getting in terms of

6    information from class members is that the actual title

7    is not that relevant because regardless of job title they

8    were all manual workers, they were cross trained, for

9    instance, you know, a stock associate could be asked to

10   work the register and a cashier could be asked to help

11   stock merchandise at the end of the day. And so we don't

12   have a representative from each, from each category.  We

13   could provide that but I think it would just be overly

14   complex, and so that's why we didn't do that.

15              THE COURT:  Okay, but I just want to understand

16   the nature then of the additional representative

17   plaintiff that you seek, is it simply that you have

18   located them or are they serving a particular purpose?

19              MR. MOSER:  Well some of them are serving a

20   different purpose, some of them are cashiers, for

21   instance, some of them are assistant managers, so they do

22   add some additional job categories and we wanted to, in

23   light of, you know, challenges to the representative

24   plaintiffs we wanted to add them as well just so that

25   we're covered in case, you know, one of the

```
 1                                                          6
 2  representatives gets disqualified.
 3          THE COURT:  I see.  I see. And in terms of the,
 4  your desire to expand the class, if I'm reading your
 5  papers correctly that's based on the third party
 6  discovery you've obtained regarding workers comp, is that
 7  correct?
 8          MR. MOSER:  That was where it originated and
 9  since that date we have spoken with numerous class
10  members who have confirmed what we see in those records,
11  that's correct.
12          THE COURT:  Well, so those records, if I
13  understand them, may indicate that an accident occurred
14  while someone was engaged, what would be classified as
15  physical labor, but I assume they give new clue as to how
16  much of their function and time during the day is spent
17  doing physical labor activities, is that fair?
18          MR. MOSER:  That's correct.
19          THE COURT:  All right, so I'm not sure that
20  really they're that probative of anything in terms of the
21  information that would be needed to make a determination
22  about whether, in fact, they would qualify.  And I have
23  to say I'm a little suspect of, you know, if that's what
24  you got, then I'm not sure that's really going to provide
25  much of a basis unless you can convince the Court
```

1                                                          7

2  otherwise.  What's your thought about that?

3         MR. MOSER:  Yes, so the defendant's position has

4  been that someone like a manager is doing managing, is

5  not doing managing, is not physical work. And as you can

6  see from some of the things that we furnished the Court,

7  managers and supervisors account for, you know, 28

8  percent of the total injuries at the stores.  So we, we

9  believe that while the workers compensation records don't

10 end the story and don't grant the plaintiffs some type of

11 entitlement to summary judgment, they are to some extent

12 probative and we are getting information from the class,

13 as well, that really substantiates the position that we

14 have in the third amended complaint.

15        THE COURT:  And what is the, just remind me, the

16 percentage of time to be a physical worker, is it 25

17 percent?

18        MR. MOSER:  Correct.

19        THE COURT:  All right.  All right, Mr. Ruzal,

20 why don't you tell me how you think it would be best to

21 proceed (inaudible) from your perspective, because the

22 plaintiff wants to amend and there's the obvious

23 questions about analyzing this under the motion to amend

24 standard, but there certainly is your motion to dismiss

25 that's outstanding and that may be modified to add some

8

2  of these additional issues. So why don't you help me

3  understand how we're going to do this most efficiently.

4        MR. RUZAL:  So thank you, Your Honor.  So, first

5  off, yes, there is overlap with respect to the futility

6  for purposes of us opposing a motion to amend which

7  overlaps to some degree with respect to the arguments we

8  would be making in a motion to dismiss if Mr. Moser's

9  third amended complaint is permitted, though we believe

10  the underlying bad faith, prejudice, undue delay and

11  further amending really, in and of itself, saves the day

12  for defendant and really should preclude plaintiff from

13  being able to further amend.

14        And I'm happy to discuss that in a bit more

15  detail but before doing so, if I could just speak to a

16  point that Mr. Moser had raised with respect to these new

17  plaintiffs and the various purported positions that they

18  served during the relevant period, and just comment that

19  while Mr. Moser is suggesting that it doesn't necessarily

20  matter what their position was because they all, quote,

21  "cross-trained and were all manual workers," there's been

22  nothing adduced to suggest that, that's pure supposition.

23  But then Mr. Moser goes on sort of in contradictory

24  fashion and states that, well, in certain instances it

25  does matter because certain people were cashiers or

1                                                                    9

2  otherwise.

3           So it seems to suggest that it actually does

4  matter what the position is, which I agree with. I think

5  it absolutely does matter what the position is and there

6  are probably more than 100 different positions, unique

7  positions throughout the stores in New York State.  And

8  for that reason alone we really do not believe it's fair

9  or adequate that the now eight, well the two named

10 plaintiffs and the eight proposed new named plaintiffs

11 are in any position to be able to move forward and

12 represent such a massive putative class.

13          THE COURT:  Right, no, I understand. So -- so on

14 the bad faith, why don't you address that?  I mean, look,

15 there is, you mentioned the solicitation of additional

16 class members in an ad that comport with ethical

17 guidelines. You know, I can't speak to whether that is or

18 is not so. I know that you have concerns about the use of

19 the trademark, fine, I understand that, too, but what,

20 I'm not sure I understand how the other things are bad

21 faith because it seems to me there are bids to amend

22 based on additional or new information, no?

23          MR. RUZAL:  Understood, Your Honor, and a fair

24 question for sure.  But it really falls within the

25 context of the fully story of what's gone on since the

1

2   parties last appeared before Your Honor on November 30th,

3   okay.  At that conference, Mr. Moser specifically stated

4   that at the time and from the time that the first

5   complaint had been filed, which was over a year ago,

6   okay, plaintiff believed that most of the other

7   classifications at the store level are manual workers,

8   okay, and that to be conservative, in his own words, that

9   they did not want to stretch outside the job, outside the

10  job categories of the individuals that plaintiffs or the

11  named plaintiffs represented. That's what, that's what

12  Mr. Moser represented when he was seeking to make his

13  second amended complaint solely to expand the temporal

14  limitations based on the tolling argument, okay.

15          Then from November 30th moving forward, okay,

16  Mr. Moser then went on to engage in and, again, I'll

17  characterize as, as these, these solicitations or

18  solicitation campaign based both on social media and

19  through text messages where he effectively attempted to

20  recruit individuals to become named plaintiffs or class

21  members in waiting through these misleading new styled

22  headlines without, in many instances, even labeling these

23  messages as attorney advertising, okay. This is not based

24  on information that Mr. Moser received from the Workers

25  Compensation Board, this is all based, and it's not based

11

1  on bona fide discovery, it's rather based on these

2  improper solicitations and upon, I'm sure, speaking with

3  these additional proposed plaintiffs, decided to proceed

4  with a, a New York Labor Law 195.1 wage notice claim. And

5  interestingly, I'll add that in no way can a 195.1 claim

6  be informed by the worker compensation documents that

7  were provided to Mr. Moser through subpoena.

8          So it's all very suspect to us and the delay in

9  question from when this complaint was first filed is so

10  attenuated that there really should be no basis for Mr.

11  Moser to proceed with the further amendment now.

12          THE COURT:  And remind me, when was the first

13  complaint filed?

14          MR. RUZAL:  I believe it was May 10th of last

15  year, Your Honor.

16          THE COURT:  Right, okay.  All right, Mr. Moser,

17  I'm sorry -- yes, Mr. Moser, do you want to speak to

18  those issues, the delay and the solicitation?

19          MR. MOSER:  Yes, thank you, I would.  It has

20  been three months since the defendants received our

21  randomized sample, a sample discovery that the Court

22  instructed should happen and we haven't received a single

23  document. It has been ten months since we served

24  interrogatories and document requests on Bed Bath &

1
2   Beyond, we have not received a single document that is
3   unique to either a named plaintiff or a class member.
4   They have exchanged 336 pages of what is primarily an
5   employment handbook which is not relevant at all, and
6   some documents from the Department of Labor which show
7   that Bed Bath & Beyond knew about the requirement to pay
8   manual workers as far back as the 1990s.

9          But other than that, the defendants have given
10  us nothing. So for them to suggest that there's some kind
11  of bad faith here when they have intentionally not
12  produced any records which would help us, I think it just
13  doesn't sound like, to me it's not fair that a defendant
14  refuses to engage in discovery and then uses that refusal
15  as the basis for challenging the plaintiffs' position
16  that new information obtained from other sources
17  justifies amending the complaint.

18          MR. RUZAL:  Your Honor, if I may be hear on that
19  point?

20          THE COURT:  Yes, please.

21          MR. RUZAL:  Thank you very much.  Look, I'll say
22  this, you know, respectfully, I think that's a
23  mischaracterization of what's happened in the past few
24  months. To be clear, well, a few things.  First off,
25  defendants have been endeavoring to capture what are, in

1

2 fact, paper files scattered across the stores of New York

3 State in order to consolidate them, digitize them and get

4 them to us in order so that we can furnish them to Mr.

5 Moser. So we have been moving forward in good faith to

6 try to produce this discovery.

7      To be clear, on February 6th plaintiffs first

8 informed defendants intend to amend the complaint. Then

9 on February 9th plaintiffs provided a class list, okay. So

10 this is not where it's been languishing for so long.

11 Furthermore, it's, for Mr. Moser to sort of place this on

12 defendants squarely for purposes of discovery is not

13 entirely accurate, okay.  We've engaged Mr. Moser in

14 various meet and confers to which he never responded.

15 Mr. Moser was supposed to serve requests for admissions

16 for the sample class, we never received them.  There was

17 actually no meet and confer, whatsoever, or dialog from

18 Mr. Moser's perspective with respect to discovery in

19 these intervening months. And, instead, we've been, we've

20 been hearing about individuals who are being solicited to

21 try to move forward with respect to being recruited for

22 this lawsuit which is not moving forward with discovery

23 but rather shirking discovery on his end and rather going

24 in on a solicitation campaign to try to increase the

25 class size.

14

 1

 2          THE COURT:  But why are your sample documents

 3   taking so long, I would have thought that would have not

 4   taken so long given where we were last time?

 5          MR. RUZAL:  The understanding, Your Honor, that

 6   I'm receiving from my client is, again, that it's

 7   incredibly cumbersome to pull the files that reside only

 8   at the store level to be able to get them to a central

 9   location so that they can be copied because they're

10   incapable of being copied at the local level, again, from

11   what I understand from my client. And that why ever there

12   has been a delay, I can't explain on a day by day basis

13   but that it is taking an incredibly long time for them to

14   get this done and -- (cross-talk)

15          THE COURT:  I mean the fact is, you know, the

16   sampling method and the extent that I approved was very

17   reasonable and it does not take much at a store to pull

18   the employee file on a particular few employees and

19   perhaps talk to them about additional material. I would

20   say that could all be able to be done in two weeks quite

21   frankly, not three months and going.

22          So I, in terms of the delay issue, I don't think

23   that's going to be a winner for you. I don't think the

24   solicitation is going to be a winner. In terms of bad

25   faith, in terms of necessarily preventing an amendment,

1
2  that's not to say that if there really were ethical
3  violations that something might have to be done about
4  that, I'm not suggesting there were, but it's certainly
5  not something that if it happened would be just
6  overlooked. But it's just, it's not sounding like there's
7  not much there there on that issue, but more so on the
8  merits issue, that would be futility, for expanding the
9  class.
10       So, again, I'm not, you know, I can't tell you
11  that you're not going to, I can't prevent you from filing
12  a motion that you want to file, again, I'm just trying to
13  look for a way to avoid two sets of motions and make it
14  more efficient for everyone concerned.
15       You know, I know there's the other issue of the
16  hiring notices and I am curious, I want to make sure I
17  understand something, Mr. Moser, you said, you indicated
18  that, something about none of the documents or notices
19  being signed and dated with written acknowledgement and
20  then I understand the defendant to have said, well, wait,
21  for one of these people, Tameka (phonetic), I'm
22  forgetting her last name, we do have a signed copy.  Can
23  you speak to that, is that something that was simply
24  errant or are you saying it's still not sufficient?
25       MR. MOSER:  I am going to say that I could have

16

stated it differently, so we don't believe that these

notices were actually furnished to the plaintiffs. Ms.

Jones does not recall receiving the notice.  And with

regard to at least two of the plaintiffs, the notice was

signed months after employment started --

THE COURT:  No, I understand that point.

MR. MOSER:  So I think for us there's two

issues. There is the fact that Bed Bath & Beyond redid

New York State Department of Labor notice.  The New York

State Department of Labor notice contains an

acknowledgment, in other words, when the employee signs

that, the employee is signing the acknowledgement that

they got a copy of it.  And in this case there is no

acknowledgement. There's a signature on it in some cases,

but there is no acknowledgement that the employee

actually received it.

THE COURT:  All right, so it's a question about

-- okay, I get that.

MR. RUZAL:  Your Honor, can defendants just be

heard on that one point?  What's concerning to us though

is, Your Honor, we furnished the wage notices to Mr.

Moser focusing on plaintiff Jones. I don't know how Mr.

Moser distinguishes a, quote, "acknowledgement" from the

signature, I don't know that there is --

17

1

2          THE COURT:  Whoa, whoa, whoa, but there's a

3   signature and then there's, as he says, there's certain

4   required language that is an express acknowledgement and

5   you are basically attesting to the fact that, yes, I have

6   received this and that's what it says. That is different

7   than just signing a document, in the end it may not be a

8   practical difference, it may just be a technical,

9   technicality, but it may not be.  But there is a

10  distinction there, I understand the difference that was

11  being made, and after I read the letters together I sort

12  of thought that's what he might have had in mind than

13  questioning whether there was an actual signature.

14          I have to say though, I am intrigued by the

15  possibility of the defendant's argument that, about that

16  certain, there are certain instances in these cases where

17  standing is lacking because of, at least with respect to

18  these penalty provisions, because of minor, what might be

19  considered minor transgressions. But again, I haven't

20  looked at all those cases and I have no idea if it would

21  be applicable here. I certainly don't think that's going

22  to be a basis to get past a futility argument, maybe a

23  motion to dismiss argument, probably more likely summary

24  judgment.  But all this is to say, you know, the motion,

25  again, I'm just trying to think about doing it

                                                              18

efficiently, maybe there is no way.

          And so, Mr. Ruzal, is it your thought that you
really do intend to pursue two sets of motions here, that
is the motion to amend -- I'm sorry, forcing the
plaintiff to file a motion to amend because you want to
challenge the amendment as opposed to just wait and do it
as part of a motion to dismiss?

          MR. RUZAL:  Yes, Your Honor, and just to be sure
that I understood Your Honor's last point about any
distinction between the standard for futility and a
motion to dismiss, to the extent that there is -- I'm
sorry, Your Honor?

          THE COURT:  They're the same standard.

          MR. RUZAL:  I misheard, I'm sorry, I thought, I
thought that you were indicating that it might not, it
might not pass muster with respect to futility but maybe
something different.

          THE COURT:  You are correct, I did suggest that
--

          MR. RUZAL:  Okay.

          THE COURT:  Even though it's a, the reason being
just at first blush of having looked at one or two of
those cases I think, and not having looked at it
particularly carefully or in depth in any way, it just

19

1
2  seems to me it might be somewhat fact specific based on

3  the, you know, specifics of each case, what the

4  transgression is that's alleged (inaudible) et cetera,

5  but I don't know. Again, I'm not saying I know.

6      All right, so, look, Mr. Moser, I don't know

7  that there is really way around this, the defendants

8  really feel that they have bases to oppose the amendment.

9  I can't say in any way that, you know, it would be

10  frivolous to do so, maybe, again, a little inefficient

11  but it's certainly not frivolous so I can't tell them no,

12  don't do it.  So I think we're going to have to go that

13  route unless you have some other suggestion.

14      MR. MOSER:  No, I don't have another suggestion

15  but I will ask a question which I think I need, or raise

16  something which I think I need to research, and that is

17  if the defendants raise futility on a motion to amend, if

18  they can subsequently raise futility, again challenging

19  the same pleading on a motion to dismiss.

20      THE COURT:  Right, failure to state a claim.

21  Yes, I don't know, good question.  All right, but

22  regardless, it sounds like we're going to have to go

23  forward.  So in terms of providing the defense with a

24  proposed third amended complaint, has that now been done

25  in terms of the official amendments that you propose?

20

1

2          MR. MOSER:  Yes, in light of some of the

3   discussions that we've had today, I may make some minor

4   wording changes to it, but it would be nothing

5   substantive, it would be nothing that changes even the

6   number of paragraphs, it would just clarify what we're

7   saying.

8          THE COURT:  Yes, well, then, okay, so everything

9   needs to be geared off of that, so when can you provide

10  that to the defense?

11         MR. MOSER:  I can provide that by, I can provide

12  that by Tuesday of next week.

13         THE COURT:  All right, and, now let me ask the

14  defendant, we could just have it that he would just, that

15  the plaintiff would just go ahead and file a motion to

16  amend attaching the proposed, final proposed third

17  amended complaint, that might actually be a little bit

18  more efficient way to do it.  Why don't we do it that, do

19  you have any objection to doing it that way?

20         MR. RUZAL:  This is Jeff Ruzal for the

21  defendant.  No.  No, Your Honor, so long as, and I assume

22  that the Court doesn't want to hear further from the

23  parties, you know, in the normal mechanics of Mr. Moser

24  proposing it to defendants, us meeting and conferring and

25  us getting back to the Court.

1                                                          21

2              THE COURT:  Right, you've already, you've

3    already essentially done that.

4              MR. RUZAL:  Of course, Your Honor, right.

5    Right, of course, and if it isn't a substantive change

6    then we agree that there would be no need to go through

7    that formality and we have no objection to Mr. Moser just

8    simply filing the further, I guess, the further amended

9    complaint --

10             THE COURT:  The motion, he would file a motion

11   to amend. So my question then becomes to Mr. Moser, when

12   do you think you'd be able to file your motion to amend?

13             MR. MOSER:  I'd like to move things along, I

14   could have that ready by the 27th.

15             THE COURT:  All right, so if he files that on

16   the 27th, then how long do you think you need to respond,

17   Mr. Ruzal?

18             MR. RUZAL:  Your Honor, I think, I mean would

19   30, would 30 days be too much, Your Honor, considering

20   what we expect to be a fairly comprehensive set of

21   papers?

22             THE COURT:  Well, it's -- 30 days seems fine,

23   that's typical --

24             MR. RUZAL:  Thank you.

25             THE COURT:  Fairly typical. So that would bring

1

2  it to June 26th and how long would you need for reply, Mr.

3  Moser?

4          MR. MOSER:  I would like three weeks for the

5  reply.

6          THE COURT:  Hold on.

7          MR. MOSER:  Simply because the motion, itself,

8  is, will not be able to address many of the issues that

9  they raise in their opposition.

10          THE COURT:  Well that's fair, that's true.  All

11  right, June 26th and -- oh, wait, hold on, that's a

12  weekend. So I'm teeing off of May 27th, that's a Friday,

13  the 26th is a Sunday, so the opposition will be due the

14  27th of June and then the reply would be the 18th of July,

15  all right?  So that's what we will do with that.

16          Anything else we need to discuss at the moment,

17  Mr. Moser?

18          MR. MOSER:  Not from the plaintiffs'

19  perspective.

20          THE COURT:  All right, and from defense, Mr.

21  Ruzal?

22          MR. RUZAL:  Nothing further, Your Honor, thank

23  you.

24          THE COURT:  All right, well --

25          MR. MOSER:  My only, I just, I just have one

```
 1                                                    23
 2  question and I misspoke, I haven't heard when the
 3  defendants are going to provide, you know, the sample
 4  discovery and I'd rather not, you know, come back to the
 5  Court with that as a separate motion, you know?
 6          THE COURT:  I think that's something you have to
 7  meet and confer about but, Mr., Mr. Ruzal, when can you
 8  have an answer on that?
 9          MR. RUZAL:  I will confer with my client and get
10  a better understanding of the time table and let them
11  know that the Court has expectations that this should
12  have been completed as quickly as possible.
13  Respectfully, I don't know that three weeks would have
14  been possible in any event but I'll be sure to convey to
15  them that this needs to be hurried along and I'll be sure
16  to get back to Mr. Moser as soon as that occurs which I
17  hope to be early next week.
18          THE COURT:  Yes, and so I'm going to say that
19  you have to get back to Mr. Moser by Thursday of next
20  week with a firm date and we'll take it from there, all
21  right?  All right, in the meantime, I wish you all good
22  health and we're adjourned.  Thank you.
23              (Whereupon the matter is adjourned.)
24
25
```

24

## C E R T I F I C A T E

     I, Carole Ludwig, certify that the foregoing transcript of proceedings in the United States District Court, Southern District of New York, Hess, et al. versus Bed Bath & Beyond, Inc., Docket #21cv4099, was prepared using digital transcription software and is a true and accurate record of the proceedings.

Signature _____ *Carole Ludwig* _____

Date:  May 24, 2022