# EXHIBIT B

STATE OF NEW YORK
INDUSTRIAL BOARD OF APPEALS
------------------------------------------------------------x
In the Matter of the Petition of:

WAH CHAN WONG AND H.K. TEA AND SUSHI,
INC.,

                               Petitioners,               DOCKET NO. PR 12–090

To Review Under Section 101 of the Labor Law:      RESOLUTION OF DECISION
An Order to Comply with Article 19, an Order to
Comply with Article 6, and an Order Under Articles 6
and 19 of the Labor Law, all dated January 11, 2012,

                        - against -

THE COMMISSIONER OF LABOR,

                               Respondent.
------------------------------------------------------------x

## APPEARANCES

Law Offices of Stephen K. Seung, New York City (Stephen H. Marcus of counsel), for petitioners.

Pico P. Ben-Amotz, General Counsel, NYS Department of Labor (Jeffrey G. Shapiro and Robyn Henzel of counsel), for respondent.

## WITNESSES

Petitioner Wah Chan Wong, Jian Ping Liu, and Wai Mei Wong, for petitioners.

Claimant Gang Zhao, claimant Yue Juan Chen, and Labor Standards Investigator Zhuyu He, for respondent.

**WHEREAS:**

        On March 9, 2012, petitioners Wah Chan Wong and H.K. Tea and Sushi, Inc. filed a petition with the Industrial Board of Appeals (Board) seeking review of three orders issued by respondent Commissioner of Labor (Commissioner or DOL) on January 11, 2012. Petitioners filed an amended petition on May 10, 2012, and a second amended petition on June 14, 1012. The Commissioner answered on October 16, 2012.

Upon notice to the parties, a hearing was held on September 9, 2014 and continued on November 24, 2014 in New York, New York before Vilda Vera Mayuga, Chairperson of the Board and designated hearing officer in this proceeding. The parties were afforded a full opportunity to present documentary evidence, examine and cross-examine witnesses, make statements relevant to the issues, and file post-hearing legal memoranda.

The order to comply with Article 19 of the Labor Law (minimum wage order) directs payment of minimum wages due and owing to 10 unnamed and 25 named claimants in the amount of $727,599.68 for the period from July 1, 2005 to October 5, 2009, interest continuing thereon at the rate of 16% calculated to the date of the order in the amount of $398,209.51, 25% liquidated damages in the amount of $181,899.94, and a 200% civil penalty in the amount of $1,455,199.36. The total amount due is $2,762,908.49.

The order to comply with Article 6 of the Labor Law (tip appropriation order) directs payment of tip appropriations due and owing to 6 unnamed and 15 named claimants in the amount of $50,290.00 for the period from July 1, 2005 to September 11, 2009, interest continuing thereon at the rate of 16% calculated to the date of the order in the amount of $22,129.31, and a 200% civil penalty in the amount of $100,580.00. The total amount due is $172,999.31.

The order under Articles 6 and 19 of the Labor Law (penalty order) assesses a civil penalty in the amount of $1,000.00 for each of the following counts for the period from July 1, 2005 through September 11, 2009: (1) violation of Labor Law § 191 (1) (a) for failing to pay wages weekly to manual workers not later than seven calendar days after the end of the week in which the wages were earned; (2) violation of Labor Law § 661 and 12 NYCRR 137–2.2 for failure to provide complete wage statements to all employees; (3) violation of Labor Law § 196–d by collecting and distributing tips and/or withholding part of the tips collected for employees; and (4) violating Labor Law § 661 and 12 NYCRR 137–2.1 by failing to keep and / or furnish true and accurate payroll records for each employee. The total amount due is $4,000.00.

The petitions, as amended, do not dispute that petitioner H.K. Tea and Sushi, Inc. employed claimants. Instead, the petition alleges that petitioner Wah Chan Wong was not a statutory employer during the claim period and thus not personally liable, and that the orders are invalid and unreasonable because petitioner H.K. Tea and Sushi, Inc. lawfully paid employees for all hours worked. Petitioners also challenge the Commissioner's imposition of civil penalties because petitioners have not previously been found in violation of the Labor Law.

## SUMMARY OF EVIDENCE

Petitioners' Evidence

*Testimony of Petitioner Wah Chan Wong*

Petitioner Wah Chan Wong testified that in approximately 2004, a man named "Alan" approached him to open a restaurant together. Wong did not know Alan's, or Alan's wife, Yan's, Chinese names, though he described Alan as "skinny" and tall, approximately 5 feet and 9 or 10 inches. In 2005, Wong and Alan jointly opened H.K. Tea and Sushi, Inc. (restaurant) in

Brooklyn. Wong had a 20% interest in the restaurant, and Alan made the remaining 80% investment. Wong opened a joint banking account with Alan, who would "run" the business.

Wong opened Wah Wong Bakery (bakery) sometime around 1991 or 1992. Until 2010, he worked at the bakery seven days per week, from 7:00 a.m. to 3:00 p.m., and on the weekend from 7:00 a.m. to 12:00 p.m. At the bakery, Wong baked bread, ordered supplies, and employed four to five employees. From 2005 to 2009, the bakery was Wong's only source of income. Petitioners introduced into evidence a series of leases entered into between Wong and Amicus Associates for "a bakery" located in Manhattan that jointly covered the years 2000 through 2016.

At the end of his workday at the bakery, a "couple of time in a week" Wong would visit the restaurant to have a snack, drop off extra bread from the bakery, deliver bank checks, or "have some chat with some other people there" because he has a share in the restaurant. He would also sometimes go to the restaurant to sign checks at Alan's request. Alan and Wong jointly signed checks but Alan would "take the responsibility of it" and otherwise handle all of the "paperwork." Wong speaks limited English and cannot read English, so Wong signed whatever paperwork Alan asked of him.

Between 2005 and 2009, Alan hired and fired the restaurant's employees and set their wages. Wong never hired or fired anyone who worked at the restaurant, nor did he determine wages or know what employment records were kept at the restaurant. Wong did not receive bank statements for the payroll account nor did he order supplies for the restaurant. At hearing, petitioners introduced into evidence a collection of HSBC "payroll account" statements for "H K Tea And Sushi Inc." but Wong was unable to identify them as he testified that he did not handle any paperwork for the restaurant.

Wong worked at the restaurant "not even a day." Yan worked at the restaurant as a waitress and cashier. Wong's daughter, Wan Tik Wong (Heidi), also worked at the restaurant part-time and neither she nor petitioner participated in any distribution of tips at the restaurant.

Sometime between 2009 and 2010 the restaurant was damaged in a fire. A year after the restaurant caught fire, Wong re-opened it with the help of Heidi. Before the fire, all decisions regarding the restaurant were made by "Alan only." After the fire, Wong asked Heidi to assist him in running the restaurant, at which point she took on the role of manager. He asked her to help him because after the fire Alan was in Canada, petitioner had his bakery to run, and there was "no other person to take care of the restaurant."

Wong recalled visiting respondent's office twice with petitioners' accountant for a meeting. The accountant had a conversation with a Department of Labor representative, but since it was in English petitioner Wong did not understand it.

*Testimony of Jian Ping Liu*

Jian Ping Liu testified that he was employed as a sushi chef at the restaurant. He was hired by Alan—who Liu described as Chinese and "[t]aller than me, skinny" —in approximately 2005. Alan also told Liu how much he would be paid. Liu worked at the restaurant until the

restaurant closed due to fire damage.[1] During the claim period, he worked six days per week, from 11:00 a.m. to 10:15 p.m. Monday was his day off. He was paid $660.00 per week.

During the workday, Liu worked behind the sushi bar, which gave him a view of the dining room. The kitchen was situated behind the sushi bar. Both Alan and Yan, who Liu knows as "Elder Sister Yan," were at the restaurant when Liu arrived in the mornings and there when he left work in the evenings. Alan was at the restaurant every day. Alan hired employees, interviewed prospective employees, set wages, and Liu saw Alan fire an employee on more than one occasion. Alan and sometimes Elder Sister Yan set the employees' work schedules and directed employees while at the restaurant. Alan purchased supplies for the restaurant and handed Liu his pay.

Liu would see petitioner Wong at the restaurant a "couple of times in a week." He would see petitioner Wong there at around 4:00 p.m. or at night after petitioner left his job. "Sometimes [petitioner] signed for something and then it takes him 10 minutes or more to stay in the restaurant." Liu never saw petitioner Wong give directions to any employees nor was Liu ever directed by petitioner Wong.

Employees collected tips together and would "calculate during the nighttime and then they divide[d] it." When asked if Elder Sister Yan partook in the tips, Liu responded "[s]he should have a share" because she worked as a waitress.

### *Testimony of Wai Mei Wong*

Wai Mei Wong[2] testified that she worked at petitioner's bakery selling bread from 1998 until late 2009 or early 2010. From 2005 to 2009, Wai Mei Wong worked at the bakery six days per week, from 7:00 a.m. until approximately 3:00 p.m., during which time she "always" saw petitioner Wong at the bakery baking bread. The bakery consisted of a single room in which "[y]ou can see everything inside there." The only time she did not see petitioner Wong at the bakery was when he would go out for lunch. She was not aware of petitioner Wong taking a day off from the bakery.

Wai Mei Wong and petitioner Wong would typically leave the bakery together at the end of the day. Petitioner Wong would drive Wai Mei Wong home from work. If there was extra bread from the bakery, she would accompany petitioner Wong as he dropped it off at the restaurant on their way to Wai Mei Wong's home. Petitioner Wong would typically drop her off at home by 4:30 p.m. It was her understanding that petitioner Wong himself went home after dropping her off.

Sometimes on her own and sometimes as petitioner Wong's guest, Wai Mei Wong would visit the restaurant to eat. She never saw petitioner Wong work while she was at the restaurant. A man named Alan, who was Chinese, "tall," and of "medium" build, was at the restaurant every time she visited; she saw him directing other people to work.

---

[1] Liu was rehired once the restaurant reopened and continues to work there.
[2] Wong testified that she is not related to petitioner Wong.

Respondent's Evidence

*Testimony of Claimant Gang Zhao*

Gang Zhao testified that he worked for the restaurant packing and delivering food orders from February 2008 through the end of January 2010, when the restaurant caught fire. He worked six days per week, from 11:00 a.m. to 11:00 p.m. On Fridays and Saturdays he would work until 12:00 a.m. Wednesday, typically, though not always, was his day off. Zhao spent approximately half of his time working in the restaurant and half of his time making deliveries. A "[t]all-skinny" man named Alan was at the restaurant anytime Zhao was there.

Alan paid Zhao. If Alan was not around, Alan's wife ("boss-wife") or Heidi would pay him. Heidi worked as a waitress and a "manager" during the time Zhao worked at the restaurant. Alan and "boss-wife" "ran" the restaurant. The "boss-wife" directed Zhao on packing items for delivery. With regard to petitioner Wong, Zhao stated "[i]t seems he has a share for this restaurant but he doesn't manage the restaurant" although co-workers referred to him as the "big boss." Zhao does not know how tips are distributed as "those are the waiter/waitress business. It is nothing to do with me." Zhao did receive separate tips from deliveries and he did not share those with anyone else.

*Testimony of Yue Juan Chen*

Yue Juan Chen testified that she worked at the restaurant from June 25, 2005 until January 29, 2011, the day the restaurant caught fire. For Chen's first year at the restaurant, she was a dishwasher. She then took on doing miscellaneous jobs.

Chen confirmed that she wrote a statement on December 22, 2011 for DOL verifying that the restaurant "bosses were Wah Chan Wong (father) and Heidi Wan Wong (daughter). Heidi was the restaurant manager and hired and fired employees; she is responsible for paying employees." Chen testified that she saw petitioner Wong at the restaurant, but never spoke with him. Chen could not "see quite exactly" what petitioner Wong did when he was at the restaurant.

Alan made the initial job offer and instructed Chen on how to do her job, but sometime around 2008 or 2009, Heidi started assigning her jobs. When Chen was hired, both Alan and Heidi told her to report to work at 11:30 a.m. and on what days she would work. Once petitioner Wong told Chen to stop arguing with a "master" at the restaurant, "because we need to do business." Chen was unsure of who set her wages but testified that petitioner Wong and Alan signed her paychecks. Either Alan, Heidi, Yan, or another "master" called "Little Wo" would pay Chen.

*Testimony of Investigator Zhuyu He*

Zhuyu He testified that during the time at issue he was a labor standards investigator assigned to investigate petitioners. Investigator He confirmed that, consistent with his interim report, DOL's contact log indicates that on June 16 and July 27, 2010, he made an entry stating that the "employer" and his accountant visited to the DOL offices. After the first meeting, the "employer" provided a "NYS-45 and partial payroll records" as requested by DOL. Investigator He identified "Mr. Wong" as the "employer" to whom he made reference in the report.

Investigator He collected most of the wage complaints the restaurant's employees made with DOL. He confirmed that he translated Chen's December 22, 2011 statement. During the course of his investigation, investigator He also interviewed a waitress named Chun Feng He. She filed a wage complaint dated June 20, 2010, which investigator He transcribed, in which she states that she was hired by "Allen the Boss." She further states the supervisor, manager or foreman of the restaurant was "A Yan, Boss Wife," and that the reason claimant He quit, was discharged or fired was because "Boss wife disliked me."

Investigator He testified to an investigative report he prepared that notes that the restaurant burned down on January 30, 2010 and was re-opened in the summer of 2011. The report also states that the restaurant is "currently being operated by a newly incorporated company named New H.K. Tea & Sushi Inc. (incorporated on 8/20/2011)."

Investigator He testified that he used the complaint forms to calculate the underpayment for each employee listed on the orders. He further testified that for those employees DOL did not interview during its investigation, investigator He used the wage rate and hours worked by similarly situated employees to calculate their underpayment. Investigator He did not prepare the issuance of order to comply cover sheet, which recommends a 200% civil penalty. The "imposition of civil penalty" worksheet in evidence states:

> The employer's actions were egregious as it paid its employees as low as $1.64/hr when the state minimum wage was as high as $7.25. In addition to that, the employer failed to raise the hourly rate even when its workers labored in excess of 40 hours in a given week. The credible information indicates that the employer also withheld as much as 50% of the tips meant for its employees.

## SCOPE OF REVIEW AND BURDEN OF PROOF

An aggrieved party may petition the Board to review the validity and reasonableness of an order issued by the Commissioner (Labor Law § 101 [1]). A petition must state in what respects the orders on review are claimed to be invalid or unreasonable and any objections not raised in the petition shall be deemed waived (*id.* § 101 [2]).

The Labor Law provides that an order of the Commissioner is presumptively valid (*id.* § 103 [1]). Should the Board find the order or any part thereof invalid or unreasonable, the Board shall revoke, amend, or modify the order (*id.* § 101 [3]).

The party alleging error bears the burden of proving every allegation in a proceeding (State Administrative Procedure Act § 306 [1]; 12 NYCRR 65.30; *Angello v Natl. Fin. Corp.*, 1 AD3d 850, 854 [3d Dept 2003]). A petitioner must prove that the challenged order is invalid or unreasonable by a preponderance of evidence (Labor Law § 101 [1]; *Matter of Ram Hotels, Inc.*, PR 08-078 at 24 [October 11, 2011]).

# FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Board makes the following findings of fact and conclusions of law pursuant to Board Rule 65.39 (12 NYCRR 65.39). Based on the record before us, we find that petitioner Wong is not individually liable as an employer under Articles 6 and 19 of the Labor Law. We affirm as reasonable the Commissioner's wage calculations and the imposition of a 200% civil penalty.

## We Revoke the Minimum Wage Order as to Petitioner Wong

Petitioners do not dispute that petitioner H.K. Tea and Sushi, Inc. employed claimants but instead argue that petitioner Wong was a minority shareholder, not an employer, and thus not personally liable for wages due and owing under the Labor Law. We agree. As a matter of economic reality, we find that petitioner Wong is not an employer, and we revoke the minimum wage order as it applies to him.

"Employer" as used in Articles 6 and 19 of the Labor Law means "any person, corporation, limited liability company, or association employing any individual in any occupation, industry, trade, business or service" (Labor Law §§ 190 [3] and 651 [6]). "Employed" means that a person is "permitted or suffered to work" (Labor Law § 2 [7]). Like the New York Labor Law, the federal Fair Labor Standards Act (FLSA) defines "employ" to include "suffer or permit to work" (29 USC § 203 [g]), and the test for determining whether an entity or person is an employer under the Labor Law is the same test for analyzing employer status under the FLSA (*Matter of Yick Wing Chan v. N.Y. State Indus. Bd. of Appeals*, 120 AD3d 1120 [1st Dept 2014]; *Chung v. New Silver Palace Rest., Inc.*, 272 F Supp 2d 314, 318 n6 [SDNY 2003]).

In *Herman v. RSR Security Services Ltd.*, (172 F3d 132, 139 [2d Cir 1999]), the Second Circuit Court of Appeals explained the "economic reality test" used for determining employer status:

> [T]he overarching concern is whether the alleged employer possessed the power to control the workers in question with an eye to the 'economic reality' presented by the facts of each case. Under the 'economic reality' test, the relevant factors include whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records" (internal quotations and citations omitted).

No one of these factors is dispositive; the purpose of examining them is to determine the economic reality based on a "totality of circumstances" (*id.*). Under the economic reality test, employer status "does not require continuous monitoring of employees, looking over their shoulders at all times, or absolute control of one's employees. Control may be restricted, or exercised only occasionally, without removing the employment relationship from the protections of the FLSA, since such limitations on control do not diminish the significance of its existence" (*id.* at 139 [internal quotation marks omitted]). Under the broad New York and FLSA definitions, it is well settled that more than one entity or person can be found to be a worker's

employer (*id.*; *Matter of Robert H. Minkel and Millwork Distributors, Inc.*, PR 08-158 at 8 [January 27, 2010]).

"The existence and degree of each factor is a question of fact while the legal conclusion to be drawn from those facts . . . is a question of law" (*Brock v Superior Care, Inc.*, 840 F2d 1054, 1059 [2d Cir 1988]). In applying the factors, the reviewing tribunal is to be mindful that "the remedial nature of the statute . . . warrants an expansive interpretation of its provisions so that they will have the widest possible impact in the national economy" (*Herman*, 172 F3d at 139 [internal quotation marks omitted]).

Petitioner Wong credibly testified that he a was minority partner in the restaurant and had a minimal financial and operational stake in the restaurant aside from filling out paperwork, opening a joint bank account for the restaurant, and serving as a signatory on checks drawn against account. Petitioner Wong credibly testified, and respondent did not contest, that he cannot read English, so he would, at the co-owner's behest, sign without questioning anything presented to him for his signature. Liu's testimony that petitioner at times would "sign for something" at the restaurant, but that petitioner's visit to the restaurant were brief, supports petitioner's contention. Additionally, petitioner Wong testified that he never hired or fired any employees, supervised or controlled employees' work or conditions of employment, determined rates or methods of payment, or maintained employment records. Liu testified that he "never" saw petitioner Wong give direction to other employees nor did petitioner Wong give Liu directions, which is consistent with Wai Mei Wong's testimony that in the times that she visited the restaurant—as petitioner's guest or of her own accord—she had not seen petitioner give directions to employees. Furthermore, respondent's own witness, claimant Zhao, testified that petitioner "doesn't manage the restaurant." Petitioner Wong also credibly testified that he was not responsible for keeping or maintaining nor did he know what employment records were kept for the restaurant.

Petitioner Wong credibly testified that he owned and managed a bakery in Manhattan that provided his sole source of income during the years at issue, which precluded him from working at or managing the restaurant for a substantial portion of each day. Petitioner Wong admitted that, with the assistance of his daughter Heidi, he managed the restaurant at some point after the restaurant caught fire in January 2010 and in the lead up to reopening the restaurant in summer 2011, but this falls outside of the claim period.[3] During the claim period, by contrast, Wong credibly testified that seven days per week, from 7:00 a.m. to 3:00 p.m. Monday through Friday, and 7:00 a.m. to 12:00 p.m. on the weekends, he solely worked at the bakery for which he offered two commercial leases that covered the years 2000 through 2016. This fact was further corroborated by Wai Mei Wong's testimony that she worked at petitioner's bakery during the period at issue, and, with the exception of petitioner Wong taking time off for lunch, he was "always" at the bakery. This is also consistent with her testimony that petitioner Wong would sometimes stop by the restaurant while driving her home after work and Liu's testimony that petitioner Wong would sometimes visit the restaurant at around 4:00 p.m. or later in the evening.

Petitioner Wong also offered evidence that the daily operation of the restaurant was managed by another person or persons not named on the Commissioner's orders. While the

---

[3] Investigator He's investigation report indicates that as of August 10, 2011, a new corporate entity, New H.K. Tea & Sushi Inc., runs the restaurant.

Labor Law provides for joint-employer status, the circumstances under consideration do not support this theory (*see id.* at 139; *Matter of Minkel*, PR 08-158 at 8). Petitioner Wong, Liu, Wai Mei Wong, Zhao, Chen, and the claim form in evidence for Chun Feng He[4] all identify a man named Alan who, during the claim period, managed the restaurant with the assistance of his wife. Liu testified that he worked at the restaurant from 11:00 a.m. to 10:15 p.m. six days per week, and, while he saw petitioner Wong at the restaurant a "couple of times in a week," Alan and his wife, by contrast, were at the restaurant when he would report to the restaurant in the morning until he would leave for home in the evening. He further testified that Alan "did everything," including purchasing supplies for the restaurant and interviewing, hiring, firing, and directing employees and setting wages. Wai Mei Wong explained that when she visited the restaurant, she saw a man named Alan working there. While Zhao was in and out of the restaurant making food deliveries, he also identified Alan present at the restaurant anytime Zhao was there.

The burden going forward thereby shifted to the Commissioner to submit sufficient evidence establishing that petitioner Wong possessed the requisite authority over claimants' employment such that he may be deemed an individual employer under the Labor Law. The Commissioner failed to meet her burden. As discussed above, her evidence does more to support petitioner's argument than it does to rebut it. While investigator He notes having met with the "employer" in his interim report and in the contact log and testified that petitioner Wong was the employer with whom he met, whether a party is an employer is a legal question for the Board to determine after fact-finding (*Brock*, 840 F2d at 1059; 12 NYCRR 65.39). Similarly, claimant Chen's identification of petitioner Wong as a "boss" at the restaurant is undermined by the fact that, after more than four years working in the restaurant, Chen had never spoken with petitioner nor did she have first-hand knowledge of what petitioner did when he visited the restaurant. Furthermore, without more, claimants' statements to DOL in their claim forms that petitioner Wong was a supervisor, manager, foreman, or owner are insufficient to rebut petitioners' evidence to the contrary (*see Matter of Arvelo*, PR 15-171 at 11; *Matter of Franbilt*, PR 07-019 at 5 [July 30, 2008]).

Investigator He testified that petitioner Wong provided certain records after their June 2010 meeting. The fact that petitioner Wong, through petitioners' accountant, was able to provide certain records, standing alone, is of little probative value regarding whether petitioner Wong was responsible for keeping and maintaining such records during the claim period.

Likewise, on the record evidence, we find this case to be factually distinct from the line of cases in which we found a shareholder or corporate officer individually liable as an employer. In *Matter of Lovinger*, we found that claimants were personally liable because, among other details, they managed the business' daily operation, including human resources, payroll, health insurance, and accounting (PR 08-059 at 8, March 24, 2010; *see also Matter of Cheng*, 12-028 at 5 [Dec. 9, 2015] [finding individual liability where petitioner was "closely and consistently" involved in the business' daily operations, including paying invoices, managing corporate monies, serving as the sole name on company payroll, and admitting that she "ran" the company]). In *Matter of Hoffman*, we found individual liability where petitioner co-signed claimant's paychecks, took supervisory interest in claimant's employment, and shared final responsibility for any unpaid wages by personally assuring he would pay claimant for wages if

---

[4] Chun Feng He did not testify at hearing, but investigator He explained that he conducted an interview with her and transcribed her wage claim.

they were owed (PR 08-115 at 6 [Nov. 17, 2009]). While petitioner Wong co-signed employee paychecks, perhaps signed checks for other purposes, visited the restaurant to drop off bread, and occasionally spoke with people at the restaurant about the restaurant, including once instructing a worker to stop arguing with a manager, unlike in *Lovinger* and *Hoffman*, there is insufficient evidence in the record for the Commissioner to reasonably conclude that petitioner Wong possessed the requisite control over the day-to-day operations of the restaurant to find him a joint employer (*see, e.g., Matter of Gatanas*, PR 13-126 at 6 [March 2, 2016] [finding no individual liability due to insufficient "operational control" where petitioner directed employees to carry out tasks related to customer service, was sometimes present at the business, and where employees believed petitioner to be the owner or boss]).

Based on the totality of the circumstances, we find that the Commissioner's determination that petitioner Wong is individually liable as an employer under Articles 6 and 19 of the Labor Law was unreasonable. Because we find petitioner Wong was not a statutory employer, we revoke the minimum wage order as to him.

## The Commissioner's Wage Calculations Are Upheld

The minimum wage order finds petitioners owe 10 unnamed and 25 named employees $727,599.68 in unpaid wages. Article 19 of the Labor Law, known as the Minimum Wage Act, requires employers to pay not less than the applicable minimum wage to each covered employee (Labor Law § 652). During the claim period, the minimum wage was $6.00 an hour in 2005, $6.75 an hour in 2006, and $7.15 an hour from 2007 through the end of the claim period (*id.* § 652 [1]; 12 NYCRR 137–1.2).[5] Article 19, in addition to requiring employers to pay the applicable minimum hourly wage rate to covered employees, requires payment of an overtime premium of time and one-half the regular hourly rate for hours worked over 40 in one week (12 NYCRR 137–1.3). With respect to the tipped food service workers such as servers and bussers, the Minimum Wage Act requires that petitioners pay them a cash wage of at least $3.85 an hour in 2005, $4.35 an hour in 2006, and $4.60 an hour from 2007 through the end of the claim period so long as the tips of such employees when added to the applicable cash wage equal or exceed the applicable minimum wage rate (Labor Law § 652 [4]; 12 NYCRR 137–1.5).

Article 19 also requires employers to maintain for six years certain records of the hours their employees worked and the wages they paid them (Labor Law § 661; 12 NYCRR 137–2.1). The records must show for each employee, among other things, the number of hours worked daily and weekly, the amount of gross wages, deductions from gross wages, allowances claimed, if any, and money paid in cash (Labor Law § 661; 12 NYCRR 137–2.1 [a]).

In the absence of accurate records required by the Labor Law, an employer bears the burden of proving that the disputed wages were paid (Labor Law § 196-a). Where the employer has failed to keep such records, the Commissioner may draw reasonable inferences and calculate unpaid wages based on the "best available evidence" drawn from employee statements or other evidence, even though the results may be approximate (*Matter of Mid-Hudson Pam Corp. v Hartnett*, 156 AD2d 818, 820–21 [3d Dept 1989]; *Ramirez v Commissioner of Labor*, 110 AD3d 901 [2d Dept 2010]).

---

[5] 12 NYCRR Part 137 was replaced by 12 NYCRR Part 146, effective January 1, 2011.

In a proceeding challenging such determination, the employer must come forward with evidence of the "precise" amount of work performed or with evidence to negate the reasonableness of the inferences to be drawn from the employee's evidence (*Anderson v Mt. Clemens Pottery*, 328 US 680, 687–88 [1949]; *Mid-Hudson Pam Corp.*, 156 AD2d at 821). Given the interrelatedness of wages and hours, the same burden shifting applies to wages and requires the employer to prove the "precise wages" paid for that work or to negate the inferences drawn from the employee's credible evidence (*Doo Nam Yang v ACBL Corp.*, 427 F Supp 2d 327, 332 [SDNY 2005]; *Matter of Kong Ming Lee*, PR 10-293 at 16 [April 20, 2014]).

Having failed to produce legally sufficient payroll records as required by Labor Law § 195 and 12 NYCRR 137-2.1, DOL's calculation of wages must be credited unless petitioners meet their burden to negate the reasonableness of the Commissioner's determination or prove the "precise" extent of uncompensated work, if any (*Anderson v. Mt. Clements Pottery Co.*, 328 US 680, 687 [1949]). The burden is not an impossible one, however, in this case, petitioners failed to present any evidence to satisfy their burden.

We find that petitioners failed to keep employment records required by the Labor Law. Petitioners offered a collection of HSBC "payroll account" statements for the restaurant but failed to present a witness who could testify about them or their contents, which only include net wages paid. In challenging the Commissioner's calculations, petitioners also offered the testimony of Liu, who is not a named employee in the Commissioner's orders but testified that he worked 61.5 hours per week as a sushi chef at the restaurant and earned $660.00 per week, ostensibly suggesting that because he was paid in compliance with the law, petitioners paid all employees in accordance with the law. While we make no formal finding regarding whether Liu was in fact paid consistent with the Labor Law and despite petitioners' flawed logic in this regard, we have repeatedly held that general and unsubstantiated testimony is insufficient to meet an employer's burden of proof (*see, e.g., Matter of Young Hee Oh*, PR 11-017 at 12 [May 22, 2014] [employer cannot shift its burden to the Commissioner with arguments, conjecture, or incomplete, general, and conclusory testimony]).

In the absence of accurate records required by the Labor Law, the Commissioner was entitled to draw reasonable inferences and calculate unpaid wages based on the "best available evidence" drawn from employee statements or other evidence even if the amount is approximate (*Matter of Mid-Hudson Pam Corp.*, 156 AD2d at 820–21). Investigator He testified that he used the complaint forms to calculate the underpayment for each employee listed on the orders. He further testified that for those employees DOL did not interview during its investigation, investigator He used the wage rate and hours worked by similarly situated employees to calculate their underpayment. We find that the Commissioner used the best available evidence in determining the underpayment due.

On the record before us, we find that petitioners have not met their burden to produce evidence of the "precise" work performed and wages paid to claimant (*see Anderson v Mt. Clemens Pottery*, 328 US 680, 687–88 [1949]; *Mid-Hudson Pam Corp.*, 156 AD2d at 821; *Doo Nam Yang*, 427 F Supp 2d at 332; *Matter of Kong Ming Lee*, PR 10-293 at 16; *see also* Labor Law § 196-a [a]). We therefore affirm the Commissioner's wage calculations in the minimum wage order as to petitioner H.K. Tea and Sushi, Inc.

## Liquidated Damages

Labor Law § 663 (2) provides that when wages are found to be due, the Commissioner shall assess against the employer the full amount of the underpayment "and an additional amount as liquidated damages, unless the employer proves a good faith basis for believing that its underpayment of wages was in compliance with the law." Such damages shall not exceed 100% of the total amount of wages found to be due. Petitioners failed to submit evidence challenging the liquidated damages assessed in the minimum wage order, and the issue is thereby waived pursuant to Labor Law § 101 (2).[6]

## Tip Appropriations Order

The tip appropriations order finds petitioners violated Labor Law § 196–d by appropriating tips from 6 unnamed and 15 named employees in the amount of $50,290.00 for the period from July 1, 2005 to September 11, 2009. Section 196-d of the Labor Law states that "[n]o employer or his agent, . . . or any other person shall demand or accept . . . any part of the gratuities, received by an employee." There is no dispute that petitioner Wong was a part owner of the restaurant. Petitioner Wong testified that neither he nor his daughter Heidi participated in the distribution of tips among the staff. Liu testified that the restaurant's employees collected tips and divided them among themselves. He also indicated that Yan partook in the allocation of tips because she worked as a waitress, although she also performed managerial functions for the restaurant. Respondent's investigative records also include at least three employee complaints that indicate someone in a supervisory capacity or acting on behalf of the employer took a portion of the employees' gratuities. However, respondent did not rebut petitioner Wong's testimony that he himself did not partake in the distribution of gratuities. As such, we revoke the tip appropriations order against petitioner Wong, but affirm it against petitioner H.K. Tea and Sushi, Inc., although as discussed below, we revoke the civil penalty.

## Interest

Labor Law § 219 (1) provides that when the Commissioner determines that wages are due, the order directing payment shall include "interest at the rate of interest then in effect as prescribed by the superintendent of financial services pursuant to section fourteen-a of the banking law per annum from the date of the underpayment to the date of payment." Banking Law § 14-A (1) sets the "maximum rate of interest" at "sixteen per centum per annum." Petitioners failed to submit evidence challenging the interest assessed in the minimum wage and tip appropriations orders, and the issue is thereby waived pursuant to Labor Law § 101 (2).

## We Affirm the Civil Penalties in the Minimum Wage and Tip Appropriations Order

In their amended petition, petitioners argue that the 200% civil penalty the Commissioner assessed against petitioners was invalid because petitioners have not before been found to be in violation of the Labor Law. Labor Law § 218 (1) provides that if orders are issued to "an employer who previously has been found in violation of [the Labor Law] or to an employer

---

[6] While Labor Law § 218 (1) requires the Commissioner to include 100 % liquidated damages in her orders to comply, Labor Law § 663 (2) provide that liquidated damages shall be calculated by the Commissioner as "no more than" 100 % of the underpayments found due.

whose violation is willful or egregious," the order must direct payment to the Commissioner of a civil penalty in an amount not to exceed 200% of the total amount of wages found to be due and owing.

In explaining the basis for the civil penalties, investigator He testified that he did not partake in the determination. The "imposition of civil penalty" worksheet indicates "no prior [h]istory" but does indicate, however, a finding of an egregious violation, which petitioners failed to challenge. We affirm the civil penalties in the minimum wage and tip appropriations orders accordingly.

<u>Penalty Order</u>

As we have previously found that petitioner Wong was not an employer, we revoke the penalty order against him. As to petitioner H.K. Tea and Sushi, Inc., petitioners did not submit evidence challenging the $1,000.00 civil penalty assessed for each of count 1, 2, 3 and 4 of the order for violation of Labor Law §§ 191 (1) (a), 196–d, and 661, and 12 NYCRR §§ 137-2.1–2.2. The issue is thereby waived pursuant to Labor Law § 101 (2).

**NOW, THEREFORE, IT IS HEREBY RESOLVED THAT:**

1. The minimum wage, tip appropriations, and penalty orders are revoked as to petitioner Wong; and

2. The minimum wage, tip appropriations, and penalty orders are affirmed as to petitioner H.K. Tea and Sushi, Inc.; and

3. The petition for review is granted in part and denied in part.

Vilda Vera Mayuga, Chairperson

J. Christopher Meagher, Member

Michael A. Arcuri, Member

Molly Doherty, Member

Gloribelle J. Perez, Member

Dated and signed by the Members
of the Industrial Board of Appeals
in New York, New York, on
October 26, 2016.