# EXHIBIT C

```
STATE OF NEW YORK
INDUSTRIAL BOARD OF APPEALS
------------------------------------------------------------------x
In the Matter of the Petition of:                              :
                                                               :
SHENG WANG ZHANG AND CENTURY DINER                             :
BUFFET, INC.,                                                  :
                                                               :
                              Petitioners,                     :    DOCKET NO. PR 12-180
                                                               :
To Review Under Section 101 of the Labor Law:                  :    RESOLUTION OF DECISION
An Order to Comply With Article 19 of the Labor                :
Law, and an Order Under Articles 6 and 19 of the               :
Labor Law, both dated September 14, 2012,                      :
                                                               :
                      - against -                              :
                                                               :
THE COMMISSIONER OF LABOR,                                     :
                                                               :
                              Respondent.                      :
------------------------------------------------------------------x
```

## APPEARANCES

Xue & Associates, P.C. (Benjamin B. Xue of counsel), for petitioners.

Pico P. Ben-Amotz, General Counsel, NYS Department of Labor (Robyn E. Henzel of counsel), for respondent.

## WITNESSES

Petitioner Sheng Wang Zhang, Gang Xiu Lin, Miao Yang, and Ling Guang Taing for petitioners.

Senior Labor Standards Investigators Guangming Liu and Rashid Allen for respondent.

**WHEREAS:**

Sheng Wang Zhang and Century Diner Buffet, Inc. filed a petition in this matter on November 15, 2012, seeking review of two orders issued against them by the Commissioner of Labor (Commissioner, respondent, or DOL) on September 14, 2012. The Commissioner filed her answer to the petition on December 28, 2012.

Upon notice to the parties a hearing was held in this matter on September 4 and 5, 2014, in New York, New York, before Wendell P. Russell, Jr., then counsel to the Board, and the designated hearing officer in this proceeding. Each party was afforded a full opportunity to present documentary evidence, to examine and cross-examine witnesses, and to make statements relevant to the issues.

The order to comply with Article 19 under review directs compliance with Article 19 and payment to the Commissioner for unpaid minimum wages due and owing to six known and six unknown employees in the amount of $512,940.85 in unpaid minimum wages for the time period from January 27, 2004 to January 27, 2010, with interest continuing thereon at the rate of 16% calculated to the date of the order in the amount of $334,025.94, liquidated damages (25%) in the amount of $128,237.40, and assesses a civil penalty (200%) in the amount of $1,025,881.70, for a total amount due of $2,001,085.89.

The order under Articles 6 and 19 assesses a $1,000.00 civil penalty for violating Labor Law § 191 (1) (a) by failing to pay wages weekly to manual workers no later than seven calendar days after the end of the week in which wages were earned from on or about January 27, 2004 to January 27, 2010; a $1,000.00 civil penalty for violating Labor Law § 661 and 12 NYCRR 137-2.1 by failing to keep and/or furnish true and accurate payroll records for each employee from on or about January 27, 2004 through January 27, 2010; and a $1,000.00 civil penalty for violating Labor Law § 661 and 12 NYCRR 137-2.2 by failing to give each employee a complete wage statement with each payment of wages during the period from on or about January 27, 2004 to January 27, 2010.

Petitioners allege the orders are unreasonable or invalid because Zheng was not an employer, unidentified individuals in the minimum wage order were not petitioners' employees, respondent's calculations do not include the employees' correct hourly rate and work hours and did not apply the required tip credit, respondent unreasonably assessed liquidated damages when petitioners had a good faith basis to believe they were in compliance with the law, and respondent imposed the maximum amount of civil penalties without considering the required statutory factors. Petitioners also challenge the penalty order as they allege paying employees timely as required by the labor law, keeping and furnishing the required payroll records, and giving each employee the required wage statement.

For the reasons discussed below, we modify the minimum wage order and affirm the penalty order.

## SUMMARY OF EVIDENCE

### Petitioners' Evidence

*Testimony of petitioner Sheng Wang Zhang*

Petitioner Zhang testified that he was a 20% shareholder of Century Diner Buffet, Inc. (diner) which was formed in 2000 and sold in June 2010. Other shareholders were a Mr. Liu and a Mr. Wang, both friends of petitioner Zhang, and each owned 40% of the shares, but neither maintained a role in the day to day operations of the business. Before opening the diner, Zhang consulted an accountant who told Zhang to pay each employee per hour and an additional hour for every hour of overtime. The accountant also prepared the diner's taxes and provided the wage statements and pay stubs for the employees. Zhang asked his accountant for documents and records during the DOL investigation, but the accountant told him to retain a lawyer. When DOL visited the diner, Zhang was in China and an employee called and notified him. Zhang testified

that he is not aware of the business being investigated prior to the DOL's investigation that resulted in the orders under review.

According to Zhang, the diner was a buffet restaurant with one location that sat around 100 patrons. It was open seven days a week from 11:30 a.m. to 9:30 p.m., although on Sundays it opened at 12:30 p.m. and closed at 10:00 p.m. Lunch was served from 11:30 a.m. to 3:00 p.m., and dinner was served from 5:00 p.m. to 9:30 p.m. with no more customers accepted and no food served after this time. Lunch buffet was slightly busier than the dinner times. The diner closed from 3:00 p.m. to 5:00 p.m. Each employee received three meals free of charge with each meal break lasting 30 minutes or longer if workflow was slow. All employees were paid in cash.

Zhang's role at the diner included, hiring, supervising, and preparing the schedule and approving vacation requests from the kitchen staff. The kitchen staff included two cooks, one kitchen helper, and two dishwashers. The cooks' regular hours were 10:30 a.m. to 3:30 p.m. and 5:00 p.m. to 9:30 p.m., except Sundays when they arrived at noon. The cooks and the kitchen helper worked six days a week, while the dishwashers sometimes worked 60 hours a week. While Zhang testified that the hourly rate for cooks was $10.00 and $15.00 for overtime, he also testified that cooks were paid $2,600.00 per month plus a year-end bonus, and that the amount never changed even if cooks worked more or less hours during any particular month. Dishwashers were paid "[m]inimum wage according to government" and overtime if needed, and no tips. Payday for dishwashers was weekly on the day before they were scheduled to be off with that day varying weekly. The kitchen helper was paid $9.00 per hour plus overtime if needed. Zhang added that the diner only had more than two cooks at a time during the holiday season when petitioners would hire a part time cook.

Zhang testified that he hired the manager who in turn hired the wait staff and was in charge of setting up their schedules, paying, and supervising them. Wait staff was paid an hourly rate of $3.80 initially and then $4.65 as Zheng understood was required by law. Sometimes wait staff had to work more than 40 hours per week, but Zheng does not remember how often that happened. A regular work day for wait staff started at 10:30 a.m. (or 11:30 a.m. on Sundays) to prepare the diner, followed by their eating breakfast from 11:00 a.m. to 11:30 a.m. when the diner started serving lunch. During lunch and dinner, wait staff would collect dishes, serve drinks, and cleanup tables. They did not have to take any food orders or serve it since the diner only offered a self-served buffet. Wait staff had lunch at 3:00 p.m. for 30 minutes and then a two hour break. Wait staff had dinner starting at 9:00 p.m. for 30 minutes taking turns so some wait staff could always take care of the customers. The manager determined the work end time for each wait staff, but the latest they left was 10:30 p.m. Some wait staff worked six days a week full time, and some worked five and a half days, working from 11:00 a.m. to 3:00 p.m. on the half day. Wait staff scheduled for six days a week worked between 55 and 60 hours a week, not including the meal breaks. Wait staff scheduled for five and a half days per week, averaged 50 to 55 hours per week. Also, fix staff worked the dinner shift had six staff worked the lunch shift.

The wait staff received tips daily. Zhang never asked how much wait staff received in tips, but testified the amount depended on business and probably varied between $20.00 and $100.00 per day per wait staff. Some tips were cash and some were added by credit cards patrons used to make payment. For tips added to credit cards, petitioners would calculate the total of credit card tips and give it to wait staff. Wait staff was paid every two weeks (on the 15th and 30th of every month) by the manager or Zhang. Wait staff collected tips in a canister and split

them among themselves. Zhang did not take into account how much wait staff received in tips when calculating what to pay them.

Zhang testified that he does not have payroll records for the diner anymore, and although he claimed he did keep payroll records while operating the business, he always referred to them as tax records at hearing. Zhang testified that he never gave payroll records to DOL because that was the manager's responsibility. Lastly, Zhang acknowledged that Yuan Lin was part of the wait staff at the diner, but does not remember when he was employed. Zhang does not know Martin Lopez or Ron Chen and testified he never went to the DOL offices during the course of DOL's investigation.

*Testimony of Gang Xiu Lin*

Lin testified that he has worked at the diner as a cook six days a week since 2006. His work schedule was from around 10:30 a.m. until 9:30 p.m., Monday through Saturday, and Sundays from 11:00 a.m. until 9:30 p.m. He has Tuesdays off and receives three meals per day without charge, each with a 30 minute meal break, plus an additional daily break from 3:00 p.m. to 5:00 p.m. During the claim period, Lin was paid $2,650.00 a month in cash which he received from Zhang in an envelope that included a piece of paper indicating his pay rate, hours worked, and total amount of payment, which was inclusive of any overtime pay due. Lin did not receive any tips at work. He was hired and paid by Zhang who also set his schedule and approved any vacation requests, although someone else supervised him and gave him instructions.

According to Lin, the diner always had five staff in the kitchen: two cooks, one kitchen helper and two dishwashers. Lin was on site when DOL visited the premises and remembers being interviewed by a DOL investigator who spoke Chinese. He identified his signature in the DOL's interview sheet admitted into evidence but disputes having told the investigator that there were five cooks in the kitchen at all times. Instead, Lin believes the investigator misunderstood him as there have always been five kitchen staff total, not five cooks. Lin does not read or understand English and just signed the form as instructed by the DOL investigator. He was not subsequently contacted by DOL and was not aware that he is listed in the minimum wage order as being owed wages by petitioners.

*Testimony of Ling Guang Taing*

Taing has worked as a cook at the diner since 2008. During the relevant time period he worked six days a week with Tuesdays off from 11:00 a.m. to 10:00 p.m., Monday through Thursday, 11:00 a.m. to 10:30 p.m. on Friday, 11:00 a.m. to 11:00 p.m. on Saturday, and 12:00 p.m. to 10:00 p.m. on Sunday. Taing was paid $2,650.00 per month in cash, but does not know if that was inclusive of overtime pay. He sometimes received payment in an envelope and sometimes not, and received a document with each payment of wages showing his pay rate, hours worked and days he had taken off work. Zhang hired Taing, supervised him and sometimes paid him too.

According to Taing, kitchen staff always consisted of two cooks, one kitchen helper, and two dishwashers. He ate three meals at the diner free of charge and received 30 minutes to eat each meal. He also testified that he had a daily break from 3:00 p.m. to 5:00 p.m.

*Testimony of Justin Jiang*

Justin Jiang testified that he was hired by Zhang to work as the diner's manager from March 2006 until November or December 2008. He supervised and set the schedule for the wait staff. Wait staff usually worked from 11:00 a.m. to 3:00 p.m. and returned from 5:00 p.m. to 10:00 p.m. or 11:00 p.m. on Friday and Saturday, while Sunday they worked 12:00 p.m. to 9:00 p.m. Jiang testified that he paid the wait staff with cash or sometimes cash and a check signed by Zhang. When paying by cash, Jiang would generally put the money in an envelope and hand it to the wait staff every two weeks. Payment was based on an hourly rate equal to the minimum wage which Jiang believed to be approximately $4.30 per hour. Jiang determined, prepared and distributed all wages to the wait staff with payday usually happening on the 15th and 30th of every month. According to Jiang, petitioners maintained payroll records as an accountant had told them they needed to keep a log of hours worked and pay the existing minimum wage and overtime rates, which were also provided to petitioners by accountant.

Jiang testified that wait staff kept all their tips which were not used to offset the minimum wage although he later stated that wait staff received overtime pay at time and a half and took tip credit then. Tips were collected in a canister for which the wait staff maintained the key.

Jiang identified Martin Lopez as a kitchen helper who worked at the diner and stated that kitchen staff was five employees including two cooks, one helper and two dishwashers.

*Testimony of Miao Yang*

Yang worked as a waitress at the diner from May 2009 through November 2009. She found the job through an agency, and when she arrived at the diner, there was no interview. Instead, the Jiang assigned her a section of the diner and she started working. Yang testified that she quit the job to pursue a career in acting and notified Jiang of her decision. Yang worked six days a week as follows: Monday through Thursday 11:30am to 10:30pm; Friday and Saturday 11:30 a.m. to 11:30 p.m.; and Sunday 12:30 p.m. to 9:30 p.m. Tuesday was usually her day off but it varied at times if others wanted to switch days.

Yang ate three meals per day at the diner each lasting 30 minutes, with breakfast usually at 11:30 a.m., lunch at 3:00 p.m., and dinner at 8:00 p.m. or 9:00 p.m. during the week and after 9:00 p.m. on weekends. Every workday included a break from 3:00 p.m. to 5:00 p.m. Yang got paid an hourly rate of approximately $4.60, and approximately $8.20 on Fridays and Saturdays when the wait staff worked overtime. She was paid in cash every two weeks approximately $400.00 plus tips that were usually at least $60.00 daily. All wait staff had the same hourly rate and there were usually a total of five other wait staff working with her at any given time.

Yang received tips that were shared with other wait staff in equal amounts. Wait staff put all the tips in a canister and whoever was free would count it before distributing. Neither Zhang nor the manager ever took from the tips. Credit card tips were also received from the diner without any deductions for credit card fees. Yang does not believe she is owed any money from working at the diner. She referred to Zhang as "the boss" because that is what the other employees told her, but she never spoke to him during her employment at the diner and testified he was never there while she worked.

Yang testified there was no clocking in or out at the diner since petitioners provided the transportation to and from work and once they arrived at the diner, they started working. The manager paid Yang, but she did not receive a pay stub or other document that indicated how many hours she worked, her pay rate, etc.

## Respondent's Evidence

*Testimony of Senior Labor Standards Investigator Guangming Liu*

Senior Labor Standards Investigator Guangming Liu testified that his participation in respondent's investigation of petitioners was limited to interviewing some employees during the DOL's site visit of September 14, 2010. Liu identified the interview sheets he completed and testified that he wrote down the answers in English although he conducted the interviews in Chinese. Liu read the form to each employee interviewed to confirm their answers before each of them signed it. Each of the interview forms entered into evidence provides similar information for each group of employees (cook, kitchen helper and wait staff) and confirms petitioner Zhang's testimony of the hours worked, pay rates and conditions of employment. Further, each interview sheet for wait staff indicates they received an average of $600.00 to $700.00 per week in tips.

Liu does not remember which day or time of day he visited the diner, or if he visited when there were customers there, or how big is the restaurant. Since Liu was not involved in the investigation beyond the interviews, he did not check with employees regarding inconsistencies in their interviews, for example some employees said they received only tips and others said they received tips and wages.

*Testimony of Senior Labor Standards Investigator Rashid Allen*

Senior Labor Standards Investigator Rashid Allen testified that he became involved in the investigation after it was already completed. His role was to review it to ensure the law was applied correctly including any penalties assessed so an order to comply could issue. Allen testified that respondent had requested payroll records from petitioners, but none were produced.

In explaining how respondent determines to include unknown employees in the order, Allen testified that DOL's policy was to add as unknowns any number of employees that should have been working at an establishment for the past six years. As an example, Allen said: "if the business had been opened for six years and there's a cook there and he has only been working there for two years, then we would determine that there had to be someone in his place for the four years prior to him arriving." According to waiter Peng Liu's interview sheet, the diner hired an average of five full time wait staff. Since respondent interviewed three, Allen testified they added an additional two as unknowns. Similarly, Guan Xiu Lin's interview sheet indicates that there were five full time cooks at the diner, and since two were interviewed, DOL added three as unknown at a salary of $2,600.00 per month. The Commissioner added one kitchen helper as an unknown and used a salary of $400.00 per week, following the rate provided by kitchen helper Martin Lopez in his interview. Allen further testified that the DOL investigator who did the calculations probably did them for unknowns based on "information collected from workers and his general assessment on the labor conditions of the business."

Allen testified that the 200% penalty was assessed because petitioners were:

> "an experienced employer and had demonstrated that it had at least consulted with an accountant for the purpose of producing tax documents, that the employer knew, or should have known that it was required to pay at least the state minimum wage [and a]s we determined that they hired a number of employees and did not pay them any wages at all, their actions were determined to be egregious and warranted the 200 percent penalty."

Allen was not aware of any previous violation assessed against petitioners. He recalled seeing mention of an accountant in the investigation but "none that we actually had direct contact with." Allen testified that the contact log had an entry indicating a contact with the initial claimant, but that "Mr. Yuan was not cooperative and he stated he was not going to testify." Respondent did not inquire further, and Allen did not think the reasons were important for this case.

## ANALYSIS

The Board makes the following findings of fact and conclusions of law pursuant to the provision of Board Rules of Procedure and Practice (Rules) 65.39 (12 NYCRR 65.39):

### Employer status

Petitioner Sheng Wang Zhang alleges respondent's determination that he is individually liable for wages owed to the claimants is unreasonable because he was a shareholder and therefore not an employer. Petitioners have the burden to establish by a preponderance of the evidence that the orders are invalid or unreasonable (State Administrative Procedure Act § 306 [1]; Labor Law §§ 101, 103; 12 NYCRR 65.30; *see also Matter of Ram Hotels, Inc.*, PR 08-078, at 24 [2011]). We find that petitioner has not met his burden as it relates to the wait or kitchen staff.

"Employer" as used in Articles 6 and 19 of the Labor Law means "any person, corporation or association employing any individual in any occupation, industry, trade, business or service" (Labor Law § 190 [3]; *see also* Labor Law § 651 [6]). "Employed" means "suffered or permitted to work" (Labor Law § 2 [7]).

The federal Fair Labor Standards Act, like the New York Labor Law defines "employ" to include "suffer or permit to work" (29 USC § 203 [g]), and "the test for determining whether an entity or person is an 'employer' under the New York Labor Law is the same test . . . for analyzing employer status under the Fair Labor Standards Act" (*Chu Chung v The New Silver Palace Rest., Inc.*, 272 F Supp 2d 314, 319 n6 [SDNY 2003]; *Ovadia v Industrial Bd. of Appeals*, 81 AD3d 457 [1st Dept 2011] *revd on other grounds* 19 NY3d 138 [2012]).

In *Herman v RSR Sec. Servs. Ltd.*, 172 F3d 132, 139 (2d Cir 1999), the Second Circuit Court of Appeals stated that the test used for determining employer status by explaining that:

> "Because the statute defines employer in such broad terms, it offers little guidance on whether a given individual is or is not an

employer. In answering that question, the overarching concern is whether the alleged employer possessed the power to control the workers in question with an eye to the 'economic reality' presented by the facts of each case. Under the 'economic reality' test, the relevant factors include whether the alleged employer (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records" (internal quotations and citations omitted).

When applying this test, "no one of the four factors standing alone is dispositive. Instead the 'economic reality' test encompasses the totality of the circumstances, no one of which is exclusive." (*id.* [internal citations omitted]).

*Petitioner Zhang is an employer*

Petitioner Zhang exercised control over all matters relating to the kitchen staff. He testified that he hired, paid, and supervised them, as well as manage their schedules. This was corroborated by Lin and Taing who testified for petitioners and worked as cooks at the diner. Petitioners presented no evidence at hearing to indicate that anyone other than Zhang acted as the employer for the kitchen staff.

Similarly, Zhang is an employer as it relates to the wait staff. Despite his credible testimony that he hired a manager to oversee the restaurant and supervise the wait staff, the economic reality test as applied here, demonstrates that Zhang had the power to hire and fire all employees, as well as supervise and control their work schedules, determine their rate and method of payment, and maintain employment records. Zhang's delegation of these duties to a manager, do not result in his shifting his employer status. Under the economic reality test, the power to "control" does not require continuous monitoring of employees. "Control may be restricted, or exercised only occasionally, without removing the employment relationship from the protections of the FLSA, since such limitations on control 'do not diminish the significance of its existence'" (*Matter of Kong Ming Lee, Fee Yin Lee, and Blue Butterfly Fashion, Inc.*, PR 10-293 [April 10, 2014], citing *Herman* at *139*; *Moon v Kwon*, 248 F Supp 2d 201, 237 [SDNY 2002] [fact that hotel manager may have "delegated or shared" control with other managers, or exercised control infrequently, is of no consequence]).

Neither does petitioner's status as a shareholder exempt him from personal liability as an employer. Zhang's testimony showed he determined the pay rate for wait staff that he obtained from his accountant. He testified about the wait staff's work hours and general staffing of the diner. He further testified that although the manager generally paid the wait staff, Zhang would also do it at times and that he himself would calculate wages. Although Zhang was a 20% shareholder of the diner, he testified that no other shareholder participating in the day to day operations of the business for the entire period covered by the orders. Finally, Zhang testified that he, not the manager or anyone else, maintained the payroll records for the business. We find, based on the totality of the circumstances of the record before us, that respondent's determination that petitioner is individually liable as an employer under Articles 6 and 19 of the Labor Law was reasonable (*see Matter of Hung Chen*, PR 12-028 at 5 [Dec. 9, 2015] [finding that a shareholder was liable as an employer because she exercised control over the day-to-day

affairs of the company demonstrating that as a matter of economic reality she controlled conditions of employment]).

## The minimum wage order is modified

Article 19 of the Labor Law, entitled "Minimum Wage Act" sets forth the minimum wage that every employer must pay each of its non-exempt employees for each hour of work (Labor Law § 652 [1]). The applicable minimum wage rates during the time period covered by the minimum wage order were $5.15 per hour from January 27, 2004 to December 31, 2004; $6.00 per hour in 2005; $6.75 per hour in 2006; $7.15 per hour from January 1, 2007 to July 23, 2009; and $7.25 per hour from July 24, 2009 to January 27, 2010 (12 NYCRR 137-1.2). Additionally, an employer must pay an employee time and a half of their regular hourly rate for every hour worked over 40 in a week (12 NYCRR 137-1.3) plus one hour's pay at the basic minimum hourly wage rate for any day in which the spread of hours exceeds 10 hours (12 NYCRR 137-1.7). In determining if an employee is entitled to spread of hours, all hours from beginning to end of an employee's work day are counted such as meal breaks and other off duty periods of one hour or less (12 NYCRR 137-3.11 and 3.12). When an employee is paid on a basis other than an hourly rate, the employee's regular hourly rate is the employee's total earnings divided by the total hours worked in a week (12 NYCRR 137-3.5).

New York State regulations also include provisions for the restaurant industry and distinguishes between service employees and nonservice employees. Service employees are those who usually receive tips at a certain rate per hour and nonservice employees are all others (12 NYCRR 137-3.3). In addition, a food service worker is defined as any employee who is primarily engaged in the serving of food or beverages to customers in the restaurant industries, including wait staff and who regularly receive tips from such customers" (12 NYCRR 137-3.4 [a]).

Employers subject to these regulations may also receive credit for tips and meals. Pursuant to 12 NYCRR 137-1.5, a food service worker must receive a cash wage of at least $3.30 per hour for 2004; $3.85 per hour for 2005; $4.35 per hour for 2006; $4.60 per hour from January 1, 2007 to July 23, 2009; and $4.65 per hour from July 24, 2009 to January 27, 2010 provided tips bring the total to at least the minimum wage rate indicated above. Pursuant to 12 NYCRR 137-1.9 (a), an employer may be credited with certain amount per meal provided to its employees provided that the meal include certain foods specified in the regulations (*id.* at 137-3.8).

The New York Labor Law and related regulations (12 NYCRR 137-2.1) provide that every employer is required to maintain weekly payroll records for each employee that include, among other things, the wage rate, number of hours worked daily and weekly, the amount of gross wages, deductions from gross wages, and allowances, if any, claimed from the minimum wage.

The minimum wage order finds that the petitioners failed to pay $512,940.85 in wages to six known and six unknown employees for the period from January 27, 2004 through January 27, 2010. In the absence of sufficient payroll records, petitioners bear the burden of proving that the disputed wages were paid (Labor Law § 196-a; *Angello v Natl. Fin. Corp.*, 1 AD3d 818, 821 [3d Dep't 1989]; *Heady v Garcia*, 46 AD3d 1088 [3d Dept 2007]). As the Appellate Division stated

in *Matter of Mid Hudson Pam Corp v Hartnett*, 156 AD2d 818, 821 (3d Dept 1989), "[w]hen an employer fails to keep accurate records as required by statute, the commissioner is permitted to calculate back wages due to employees by using the best available evidence and to shift the burden of negating the reasonableness of the Commissioner's calculation to the employer" (*see see Matter of Bae v Industrial Board of Appeals*, 104 AD3d 571 [1st Dept 2013], *cert denied* 2013 NY Slip Op 76385 [2013]). Therefore, petitioners have the burden of showing the "precise" amount of work performed or present evidence to negate the reasonableness of the inferences to be drawn from the employee's evidence (*Anderson v Mt. Clemens Pottery*, 328 US 680, 687–88 [1949]; *Mid-Hudson Pam Corp.*, 156 AD2d at 821). Where incomplete or unreliable wage and hour records are available, DOL is "entitle[d] to make just and reasonable inferences and use other evidence to establish the amount of underpayments, even though the results may be approximate" (*Hy-Tech Coatings v New York State Dept. of Labor*, 226 AD2d 378, [1st Dept 1996], *citing Mid-Hudson Pam Corp.*; *see also Matter of Bae v Industrial Board of Appeals*, 104 AD3d 571).

Petitioner Zhang testified that although he kept payroll records while operating the diner, he never provided them to the DOL as he believed that was the responsibility of the manager. As discussed above, an employer's responsibility is not relieved by delegating certain duties to others. In the absence of adequate payroll records, the Commissioner is entitled to rely on the best available evidence to establish underpayments. In this case, the Commissioner relied on one claim form and the interview sheets completed by Senior Investigator Liu during his site visit. Petitioners presented credible and unrebutted evidence as to some but not all of the individuals listed in the minimum wage order.

*No wages owed to Gang Xiu Lin, Guang Ling Zheng*

Gang Xiu Lin testified that he worked at the diner six days a week since 2006. Five days a week he worked from 10:30 a.m. to 9:00 p.m., and one day a week he worked from 11:00 a.m. to 9:30 p.m. for a total of 63 hours per week. Lin also testified that he received 30 minutes for each of three meal breaks per day and a 2-hour daily break from 3:00 p.m. to 5:00 p.m. In deducting these breaks from Lin's total work hours per week, we find that Lin worked 42 hours per week. As Lin received a monthly payment of $2,650.00, his hourly rate is $15.77 ($662.50 per week divided by 42 hours). Although petitioners may be entitled to meal credits, there was no evidence presented at hearing to indicate the meals provided comply with the requirements set out in the applicable regulations. Lin testified that his monthly wages were inclusive of overtime pay. Respondent's did not rebut this and offered no evidence at hearing that showed how they reached their computations that result in their finding petitioners owe $18,732.54 in minimum wages and overtime time to Lin. As such, we find Lin is not owed any wages and revoke this part of respondent's minimum wage order.

Similarly, we find respondent's calculation of wages owed to Guang Ling Zheng is unreasonable. Although Zheng did not testify at hearing, petitioners presented testimony from three individuals that challenged respondent's findings. Petitioner Zhang provided testimony that is consistent with that of Lin and was also confirmed by cook Taing's testimony. Although petitioners did not dispute Zheng's inclusion in the order, they contend respondent used an incorrect hourly rate and work hours. Respondent did not offer any evidence that described what hours and wage rates were used in its computations. We find that respondent's orders must be supported by reason and based on something more than unsubstantiated interview sheets that fail

to dispute the testimony provided at hearing (*see Matter of Joseph Baglio*, PR 11-394 at 8 [Dec. 9, 2015] ["While Section 206 of the State Administrative Procedure Act requires the admission of records kept in DOL's file, we find we cannot rely on evidence which lacks foundation"]). We find Zheng is not owed any wages and revoke this part of respondent's minimum wage order.

*Wages owed to remaining known employees*

The minimum wage order also finds petitioners owe wages to Yan Zhen Ke (waitress), Yuan Lian (waiter), Peng Liu (waiter), and Martin Lopez (kitchen helper). Petitioners dispute respondent's calculations of wages to these employees because they were done using an incorrect hourly rate and work hours and did not apply the required tip credit where applicable. We disagree.

Petitioner Zhang's testimony about employee work hours and pay rates was generally confirmed by petitioners' four witnesses that included two cooks, a waitress and the diner's manager. However, petitioners did not present any evidence to specifically dispute the Commissioner's inclusion of these individually named employees in the minimum wage order. One of the named employees, Yuan Lian, filed the claim that prompted respondent's investigation. Petitioner Zhang testified that Lian was part of the wait staff at the diner and did not present any evidence at hearing to dispute his work hours or pay rates besides general testimony about what each employee was to get paid. Zhang's general and conclusory statements are not enough to meet petitioners' burden (*see Matter of Iqbal Ahmed*, PR 12-081 at 9 [April 13, 2016]; *Matter of Young Hee Oh*, PR 11-017 at 12 [May 22, 2014]). Despite Lian's apparent refusal to testify at hearing, respondent is entitled to rely on Lian's statements to calculate wages in the absence of payroll records from petitioners (*see Matter of Mid Hudson Pam Corp*, 156 AD2d at 821).

Another named employee was Martin Lopez. He was identified by the diner's manager Jiang as a kitchen helper who worked at the diner. Again, there was no evidence presented at hearing to successfully challenge respondent's calculation of wages owed Lopez. As stated above, Zhang's general testimony is not enough to meet petitioners' burden. There was no specific evidence presented to challenge respondent's calculation of wages for the remaining three named employees in the minimum wage order who were part of the wait staff. Petitioners' evidence was limited to Yang's testimony who worked as a waitress at the diner for six months and Jiang who served as the diner's manager and direct supervisor for the wait staff. Although their testimony was detailed and consistent, we cannot ignore the discrepancy between their testimony and the employee statements in the interview sheets in evidence which are otherwise unrebutted. Respondent's investigators testified that they based their findings on employee interviews after several unsuccessful attempts to obtain payroll records from petitioners. Consistent with the testimony of two of petitioners' witnesses, investigator Liu testified that he conducted employee interviews on site in Chinese and recorded their answers in interview sheets that were admitted in evidence at hearing. As it is well settled, in the absence of legally valid payroll records, in order to overcome the presumption of respondent's valid and reasonable order, an employer must show the precise amount of work performed or present evidence to negate the reasonableness of the inferences to be drawn from the employee's evidence (*Mt. Clemens Pottery*, 328 US at 687–88). We find petitioners did not meet their burden for us to find that respondent's calculations of wages owed to Yan Zhen Ke, Yuan Lian, Peng Liu, and Martin Lopez are invalid and reasonable. We affirm the minimum wage order as to these employees.

*No wages owed to unknown employees*

The minimum wage order found that petitioners owe wages to six unidentified employees, which petitioners contest. In *Matter of Ashraf Elgharib and CD Broadway Food Corp.*, PR 11-086 (December 17, 2014) (*see also Matter of Anthony Boumoussa et al.*, PR 09-058 [February 7, 2011]), the Board modified an order which included wages owed to unidentified workers. In that case, DOL included a number of unidentified employees on the audit to account for the total number of employees observed at the time of inspection and to complete the time period. The Board based its finding on *Reich v Petroleum Sales, Inc.*, 20 F3d 654 (6th Cir 1994), where the court held that it could award damages to unidentified employees under the Fair Labor Standards Act as long as the existence, work hours and wages of these employees is established by a preponderance of the evidence. While respondent in this case may have established the likely existence of unidentified workers, she has not proven the number of such workers, or their work hours or their periods of employment and wages by a preponderance of the evidence (*see e.g. Marshall v Hope Garcia Lancarte Inc.*, 632 F2d 1196, 1198-99 [5th Cir 1980]).

There is not sufficient information in the record (either testimonial or documentary) showing how respondent concluded that there were six unidentified workers. The only evidence presented at hearing as a basis for including unnamed wait staff was Senior Investigator Allen's testimony that respondent's policy is to add any number of employees to cover a period of six years and that matches the number of employees who worked at the establishment at the time of their investigation. In the first instance, Investigator Liu, who conducted the site visit, could not recall the size of the diner, whether customers were present, or the time of day when the visit took place. Furthermore, Allen testified that the Commissioner included three unnamed cooks in the wage order based on Lin's statement on his interview sheet that the restaurant employed five cooks. At hearing, however, petitioners offered Lin's credible testimony that the unnamed cooks were included based on a misunderstanding of his statement that petitioners hired five kitchen staff (two cooks, two dishwashers, and a kitchen helper), not five cooks. On the record before us, we find that respondent did not meet her burden to establish the existence, work hours and wages of the six unidentified employees, and we modify the order to remove them. Accordingly, the minimum wage order is modified disallowing the award to the six unknown employees and reduced accordingly.

*Liquidated damages*

Respondent assessed 25% of the wages owed as liquidated damages for a total of $128,237.40. Petitioners assert that this is unreasonable because petitioners had a good faith basis to believe they were in compliance with the law. Labor Law § 663 (2) provides that unless the employer proves a good faith basis to believe its underpayment was in compliance with the law, the respondent may collect liquidated damages for the employees up to 25% of the underpayments found due. Petitioners' only evidence presented in this respect was reliance on an accountant's advice. This is not sufficient to demonstrate a good faith basis to believe the underpayments were in compliance with the law. Therefore, the imposition of liquidated damages is reasonable, but must be recalculated consistent with this decision.

*Civil Penalty*

Respondent assessed a 200% penalty on the minimum wage order issued against petitioners for a total amount of $1,025,881.70. Petitioners allege this is unreasonable because respondent failed to consider the required statutory factors. Labor Law § 218 requires the Commissioner to assess a civil penalty in cases where he finds that an employer has violated a provision of Article 19. The law requires respondent to take into account the size of the business, the employer's good faith basis, the gravity of the violation, the history of previous violations, and the failure to comply with recordkeeping and other non-wage requirements (Labor Law § 218). In cases where the employer is a repeat offender or the violations are willful or egregious, respondent may assess up to a 200% civil penalty.

We find respondent erred in its analysis. Senior Investigator Allen testified that the penalty was assessed because petitioners were an experienced employer, knew or should have known to pay minimum wage, and did not pay any wages to some employees, hence petitioners' actions were deemed egregious. However, given our findings above that substantially reduce the wages owed, we find respondent's civil penalty as assessed was unreasonable. Moreover, petitioners contends, and respondent failed to rebut, that petitioners have no prior history of violations. Therefore, we revoke the civil penalty in its entirety.

*Interest*

Labor Law § 219 (1) provides that when the Commissioner determines that wages are due, the order directing payment shall include "interest at the rate of interest then in effect as prescribed by the superintendent of financial services pursuant to section fourteen-a of the banking law per annum from the date of the underpayment to the date of payment." Banking Law § 14-A sets the "maximum rate of interest" at "sixteen per centum per annum." Therefore, the interest assessed in the order is affirmed, but reduced consistent with our decision.

### Penalty Order

The penalty order assesses a $1,000.00 civil penalty for violating Labor Law § 191.1a by failing to pay wages weekly to manual workers not later than seven calendar days after the end of the week in which wages were earned from on or about January 27, 2004 to January 27, 2010; a $1,000.00 civil penalty for violating Labor Law § 661 and 12 NYCRR 137-2.1 by failing to keep and/or furnish true and accurate payroll records for each employee from on or about January 27, 2004 through January 27, 2010; and a $1,000.00 civil penalty for violating Labor Law § 661 and 12 NYCRR 137-2.2 by failing to give each employee a complete wage statement with each payment of wages during the period from on or about January 27, 2004 to January 27, 2010; for a total amount due of $3,000.00. For the reasons set forth below, we affirm the penalty order.

*Count 1: Failure to pay wages weekly*

Labor Law § 191 (1) (a) requires employers to pay manual workers their wages no later than seven days after the end of the week in which wages are earned. Petitioner Zhang and his witnesses testified that wait staff was paid either every two weeks and cooks were paid monthly, and as such, we affirm this count of the penalty order.

PR 12-180                                                          - 14 -

*Count 2: Failure to maintain payroll records*

Labor Law § 661 and 12 NYCRR 137-2.1 require employers to keep certain wage and hour records with respect to their employees. Petitioners presented no evidence that these required records were maintained. We affirm this count of the penalty order.

*Count 3: Failure to provide wage statements*

Labor Law § 661 and 12 NYCRR 137-2.2 require employers to give employees a complete wage statement with each payment of wages. Although there was some testimony that some employees received a wage statement with their payment of wages, it is clear from the record that this was not always the case and petitioners never produced any such wage statements at hearing. We affirm this count of the penalty order.

**NOW, THEREFORE, IT IS HEREBY RESOLVED THAT:**

1. The minimum wage order is modified as follows:
   a. The amounts due to Yan Zhen Ke, Yuan Lian, Peng Liu, and Martin Lopez are affirmed; and
   b. The amount due to Gang Xiu Lin and Guang Ling Zheng are reduced to $0; and
   c. The amount due to unknown employees is reduced to $0; and
   d. The liquidated damages must be recalculated on the new amount of wages owed; and
   e. The interest must be recalculated on the new amount of wages owed; and
   f. The civil penalty is revoked; and

2. The penalty order is affirmed in its entirety; and

3. The petition for review is granted in part and denied in part.

Vilda Vera Mayuga, Chairperson

J. Christopher Meagher, Member

Michael A. Arcuri, Member

Molly Doherty, Member

Gloribelle J. Perez, Member

Dated and signed by the Members of the Industrial Board of Appeals in Albany, New York, on July 13, 2016.