# EXHIBIT D

STATE OF NEW YORK
INDUSTRIAL BOARD OF APPEALS

------------------------------------------------------------x
In the Matter of the Petition of:               :
                                                :
DAVID POPERMHEM AND G.T.S. THAI INC.            :
(T/A PLANET THAILAND),                          :
                                                :
                            Petitioners,        :     DOCKET NO. PR 13-153
                                                :
To Review Under Section 101 of the Labor Law:   :     CORRECTED AND REISSUED
An Order to Comply With Article 6 of the Labor Law, :  RESOLUTION OF DECISION
An Order to Comply With Article 19 of the Labor :
Law, and an Order Under Articles 5, 6, and 19 of the :
Labor Law, all dated August 14, 2013,           :
                                                :
                - against -                     :
                                                :
THE COMMISSIONER OF LABOR,                      :
                                                :
                            Respondent.         :
------------------------------------------------------------x

## APPEARANCES

Vasilios S. Georgiou, Esq. for petitioners.

Pico P. Ben-Amotz, General Counsel, NYS Department of Labor (Paul R. Piccigallo of counsel), for respondent.

## WITNESSES

David Popermhem and Francois Bertin for petitioners.

Supervising Labor Standards Investigator Emy Bautista, Donaldo Vaquero, Adan Romualdo, and Vicente Romualdo, for respondent.

**WHEREAS:**

The petition in this matter was filed with the Industrial Board of Appeals (Board) on October 7, 2013, and amended on February 4, 2014, and seeks review of three orders issued by the Commissioner of Labor (Commissioner or respondent) on August 14, 2013 against petitioners David Popermhem and G.T.S. Thai Inc. (T/A Planet Thailand). The Commissioner filed his answer on June 2, 2014.

Upon notice to the parties a hearing was held in this matter on March 4, 2015, in New York, New York, before Devin A. Rice, Deputy Counsel to the Board, and the designated

Hearing Officer in this proceeding. Each party was afforded a full opportunity to present documentary evidence, to examine and cross-examine witnesses, and make statements relevant to the issues.

The order to comply with Article 19 (minimum wage order) under review directs compliance with Article 19 and payment to the Commissioner for unpaid minimum wages due and owing to Savalee Duangpoom, Surat Kingsawat, Adan Romualdo, Vicente Romualdo, and Donaldo Vaquero in the amount of $139,806.95 for the time period from May 30, 2002 to June 12, 2009, with interest continuing thereon at the rate of 16% calculated to the date of the order in the amount of $172,497.23, liquidated damages in the amount of $34,091.55, and assesses a civil penalty in the amount of $139,806.95, for a total amount due of $486,202.68.

The order to comply with Article 6 (unpaid wages order) under review directs compliance with Article 6 and payment to the Commissioner for unpaid wages due and owing to Adan Romualdo, Vicente Romualdo, and Donaldo Vaquero in the amount of $12,088.80 for the time period from May 30, 2002 to March 8, 2008, with interest continuing thereon at the rate of 16% calculated to the date of the order in the amount of $10,997.47, and assesses a civil penalty in the amount of $12,088.80, for a total amount due of $35,175.07.

The order under Articles 5, 6, and 19 (penalty order) assesses a $1,000.00 civil penalty for violating Labor Law § 661 and 12 NYCRR 137-2.1 by failing to keep and/or furnish true and accurate payroll records for each employee from on or about June 1, 2002 through June 12, 2008; a $1,000.00 civil penalty for violating Labor Law § 661 and 12 NYCRR 137-2.2 by failing to give each employee a complete wage statement with each payment of wages during the period from on or about June 1, 2002 through June 12, 2008; a $1,000.00 civil penalty for violating Labor Law § 191 (1) (a) by failing to pay wages weekly to manual workers not later than seven calendar days after the end of the week in which the wages were earned during the period from on or about June 1, 2002 through June 12, 2008; and a $1,000.00 civil penalty for violating Labor Law § 162 by failing to provide employees with at least thirty minutes off for the noon day meal when working a shift of more than six hours extending over the noon day meal period from eleven o'clock in the morning to two o'clock in the afternoon from on or about July 18, 2007 through June 12, 2008, for a total amount due of $4,000.00.

The amended petition alleges in relevant part that the orders are unreasonable because all wages earned by the claimants were paid by petitioners during the time period covered by the orders, the civil penalties assessed are excessive where petitioners acted in good faith, petitioners' business is no longer in operation, and petitioner Popermhem is disabled after suffering a debilitating stroke.

This corrected and reissued decision clarifies that counts 1, 2, and 3 of the penalty order are affirmed, and count 4 is revoked, and corrects that the penalty order is modified to $3,000.00, not $2,000.00 as written in our decision of January 20, 2016.

/ / / / / / / /

/ / / / /

/ /

**SUMMARY OF EVIDENCE**

A. Respondent's Evidence

DOL's Investigation

On May 30, 2008, Donaldo Vaquero filed claims with DOL alleging he worked as a cook for petitioners at Planet Thailand from June 1998 to March 4, 2008, was terminated for no reason, had an agreed pay rate of $190.00 per day, and was not paid any wages from November 6, 2007 to January 1, 2008. The claim forms in evidence do not indicate the hours Vaquero worked for petitioners per day or per week.

On June 3, 2008, Adan Romualdo filed claims with DOL alleging he worked as a dishwasher for petitioners from January 15, 2007 to January 20, 2008, when he was discharged because "they don't pay me." Adan's claims allege his rate of pay was $440.00 a week, and that petitioners did not pay him any wages from December 31, 2007 to January 20, 2008. The claims in evidence do not indicate the hours Adan worked per day or per week.

Also on June 3, 2008, Vicente Romualdo filed claims against petitioners. Vicente's claims allege he worked at Planet Thailand as a dishwasher from November 20, 2002 to January 20, 2008 for $440.00 a week, and was not paid for the period from December 31, 2007 to January 20, 2008. Vicente's claim states he was discharged because he was "no longer needed." The claims in evidence do not indicate the hours worked per day or week by Vicente.

After the claims were filed, DOL commenced a wage and hour investigation of petitioners, who operated a restaurant in Brooklyn, New York, trading as Planet Thailand, which specialized in Thai and Japanese cuisine. The matter was assigned to an investigator on June 16, 2008, and Labor Standards Investigator Cordie McCann conducted an inspection of Planet Thailand one year later on June 13, 2009. McCann interviewed several employees who were present at the restaurant during the inspection, including Savalee Duangpoom and Surat Kingsawat, whose statements to McCann revealed possible wage and hour violations.

Supervising Labor Standards Investigator Emy Bautista, who at the time was the Senior Labor Standards Investigator assigned to supervise the investigators in this matter, testified that after the initial inspection, the investigation was assigned to Labor Standards Investigator Adrian Beckles. Bautista testified that she reviewed Beckles' work. Beckles no longer works for the Division of Labor Standards.

Bautista testified that according to notes in DOL's investigative file, DOL requested wage and hour records from petitioners, but very little information was provided. The records provided included only a couple weeks of payroll records. Because petitioners did not provide DOL with wage and hour records for their employees in compliance with DOL's requests, Beckles calculated the wages owed to petitioners' employees based on their claims and statements. Beckles initially calculated the wages owed to Vaquero based on a $500.00 weekly salary, the portion of his wages he received by check and believed he could prove. This was subsequently changed to $190.00 a day by Bautista because Vaquero's claim stated his wage rate was $190.00 and employees do not have the burden of proof when they file a claim in cases where the employer does not keep payroll records. Bautista found Vaquero's claim that he

earned $190.00 a day, which was more than the other claimants, credible because he was a cook and worked longer hours than other employees at the restaurant.

Bautista testified that she recommended a 100% civil penalty based on the size of the firm, good faith of the petitioners, gravity of the violations, and record keeping. She made her recommendation because "from [2009] to [2102], I believe it was constant back and forth – I am requesting records and different stories given – IRS has them or we were out on vacation. There was flood damage, I am looking for the records, and, finally, no records were produced so there's no other – nowhere to go." Bautista clarified that the recommendation of a 100% civil penalty was not based on lack of records, but "is the standard amount." Bautista testified petitioners did not show good faith because nobody came forward to "try to talk to [DOL] and arrange a payment plan." The 25% liquidated damages included in the minimum wage order was mandatory.

A letter from Anna Popermhem to DOL dated June 30, 2009 and which is in DOL's investigative file, states that she delivered payroll records for 2003, 2004, 2005, 2006, and 2007 to DOL's offices. Bautista testified that DOL never received the records, but conceded DOL did not contact Ms. Popermhem to advise her that the records had not been received. A letter from David Popermhem to Adrian Beckles, dated April 10, 2012, states that records were delivered to Mrs. Rivera. DOL also failed to respond Mr. Popermhem's correspondence. Bautista agreed there were significant delays in DOL's investigation of petitioners, which were not exclusively the responsibility of petitioners.

Testimony of Adan Romualdo

Adan Romualdo testified he worked at Planet Thailand from January 15, 2007 to January 20, 2008 as a dishwasher. He also helped to clean the restaurant. Adan worked at the restaurant six days a week. He testified that he normally started work at 4:00 or 6:00 p.m. and finished at 4:00 or 4:30 a.m.[1] Petitioners paid Adan by cash, and he did not receive time and one-half as an overtime premium for hours worked over 40 in a week.

Testimony of Vicente Romualdo

Vicente Romualdo testified he worked three years at Planet Thailand as a dishwasher and cleaner, but does not remember the exact dates. He testified that petitioner David Popermhem was the owner of the restaurant and was present one to three times a week.

Vicente testified he worked six days a week from 6:00 p.m. to 4:00 a.m. He sometimes worked even later on weekends because the restaurant served food until 2:00 a.m., whereas on weeknights the kitchen closed at 1:00 a.m. Vicente testified he was paid $375.00 a week for three years, then received a raise to $410.00 a week, and made $440.00 a week towards the end of his employment at Planet Thailand. Petitioners paid Vicente by cash and did not pay him overtime.

---

[1] It is not clear from the record if this is a.m. or p.m. but in context it seems most likely he worked an evening/night shift.

B. Petitioners' Evidence

Testimony of David Popermhem

Petitioner David Popermhem was the owner of Planet Thailand until it closed in 2010 or 2011. He testified that he suffered a stroke in 2007 and is permanently disabled. After the stroke, he was no longer able to work so he hired a manager and bookkeeper to take care of "most things." He called the manager and bookkeeper from home to direct them to take care of whatever needed to be done at the restaurant.

Popermhem testified that the restaurant's staff worked on shifts, and were paid weekly. All employees were able to have a 30 minute to one hour break depending on their position. Petitioners provided their employees statements when they were paid showing the number of hours they had worked, which was in addition to the "bookkeeping" that was kept. Popermhem testified that employees were paid by cash and check "together." The bookkeeper brought Popermhem the checks, which were prepared by a payroll company, and he signed them. He explained that there was a time clock at the restaurant, but it broke, so the employees "signed in" by hand.

Popermhem testified that the restaurant's business records, including employee and payroll records, were kept in the basement, and some were damaged by a flood. He asked somebody to take boxes of records to DOL for him during the investigation, and believes the records were delivered. The boxes delivered to DOL included "employees time sheets or something like that," and were "probably originals." Popermhem did not make copies of the records that he claims were delivered to DOL.

Testimony of Francois Bertin

Francois Bertin testified that he was the manager of Planet Thailand from February 2008 until the restaurant closed in 2009 after losing its lease. Bertin testified that he reported to petitioner David Popermhem who was "partially incapacitated" at the time. Bertin testified that his duties included hiring and firing staff, accounting, payroll, daily activities related to running a restaurant, and "pretty much everything that was to be done there."

Bertin testified that the employees had weekly work schedules. There was no other system at the restaurant for tracking the hours employees worked. Bertin kept copies of the schedules in the office and at the front desk with the cashier. He filed the old schedules in the office. The kitchen schedule was created by the chef, "Tuck," and Bertin created the schedules for the other employees.

Bertin testified that petitioners paid employees in a combination of cash and check. The payroll company prepared the check portion of the wages, and Bertin prepared the cash part. The wages paid in cash were "agreed ahead of time, based on the hours that were worked on the schedule, and we paid weekly specific amounts." Records of cash payments were maintained. Tuck paid the kitchen staff, and Bertin paid the rest of the employees. This payment system was in place when Bertin started as manager at Planet Thailand, and, according to Bertin, nobody ever complained about it.

Bertin testified that Donaldo Vaquero was "kitchen head" when he started as manager at Planet Thailand, and Tuck was the chef. Vaquero reported to Tuck. Bertin testified that Vaquero worked six days a week and was paid more than $1,000.00. Bertin terminated Vaquero within a month of starting as manager.

Bertin testified that there was some water damage in the basement of Planet Thailand but he does not know the details. No investigator from DOL ever spoke with Bertin.

<u>Testimony of Donaldo Vaquero</u>

Donaldo Vaquero testified he worked as a line cook at Planet Thailand, which included preparing and grilling fish, cooking all the dishes, and doing "everything that had to do with the kitchen," including ordering food, although he did not order the kitchen supplies. Vaquero had an assistant and supervised other workers in the kitchen. He stated that he was in charge of two employees, who were fired, and that after they were fired, he was "in charge" of the kitchen. During the time period when Vaquero was in charge of the kitchen, only the owners were "above" him. With respect to the skill necessary to perform his job at Planet Thailand, Vaquero stated that the work required no special skills other than experience and knowing how to cook and understand Japanese orders.

Although Vaquero's claim form alleges he worked five days a week from 11:00 a.m. to 12:00 a.m. for $500.00 a week, he testified that he actually worked seven days a week for a weekly salary of $1,200.00 for a period of one and one-half years. He explained that the discrepancy between his claim and his testimony is because he was paid by check and cash, and at the time he filed his claim he was not able to prove that he also received wages in cash. He testified that he informed a DOL investigator that he made more than $500.00 a week, but was told to write $500.00 because that was the amount he was paid by check and could prove. Vaquero further testified that $190.00 a day was his real salary. He explained that he was paid $90.00 for the morning shift and an additional $100.00 for the evening shift. Petitioners paid him $500.00 a week in check, and $600.00 in cash for a seven day work week. Although he worked seven days a week, according to Vaquero, a DOL investigator told him to write on his claim form that he worked five days a week.

Vaquero also testified that he had no breaks during his shifts at Planet Thailand and had no supervisor except for the owner, Anna Popermhem, although petitioner David Popermhem sometimes supervised him when Ms. Popermhem was away from the restaurant. Vaquero further testified that although he was terminated by Francois Bertin because he had complained about the "work situation," Bertin was not the kitchen manager.

/ / / / / / / / / / / / /

/ / / / / / / / / / /

/ / / / / / / /

/ / / / /

/ /

## ANALYSIS

The Board makes the following findings of fact and law pursuant to the provision of Board Rules of Procedure and Practice (Rules) 65.39 (12 NYCRR 65.39):

### Burden of Proof

The petitioners' burden of proof in this matter is to establish by a preponderance of the evidence that the orders issued by the Commissioner are invalid or unreasonable (State Administrative Procedure Act § 306 [1]; Labor Law §§ 101, 103; 12 NYCRR 65.30; *see also Matter of Ram Hotels, Inc.*, PR 08-078, at 24 [2011]). Respondent issued three orders against petitioners. A minimum wage order under Article 19 of the Labor for petitioners' failure to pay overtime wages to five named employees, a wage order under Article 6 of the Labor Law for petitioners' failure to pay any wages to three named employees, and a penalty order under Articles 5, 6 and 19 of the Labor Law for recordkeeping and other non-wage violations. As discussed below the petitioners partially met their burden of proof and the minimum wage order is modified to reduce the overtime wages due and owing from $139,806.95 to $113,339.14 and the civil penalty is revoked. The petitioners failed to meet their burden to prove the amount of unpaid wages found due by the unpaid wages order is unreasonable, but, as discussed below, we modify the claim period and revoke the civil penalty. Petitioners met their burden of proof on two counts of the four count penalty order, and we reduce the total penalty due from $4,000.00 to $2,000.00.

### Minimum Wage Order

The Commissioner determined based on its investigation that petitioners owe $139,806.95 in unpaid minimum wages to five named employees. Based on the record, these amounts are unreasonable and must be modified. Article 19 of the Labor Law, known as the Minimum Wage Act, requires employers to pay not less than the applicable minimum wage to each covered employee (Labor Law § 652). During the time period relevant to this proceeding, the minimum wage was $5.15 an hour from May 30, 2002 to December 31, 2004, $6.00 an hour in 2005, $6.75 an hour in 2006, and $7.15 an hour from 2007 through the end of the claim period (Labor Law § 652 [1]; 12 NYCRR 137-1.2[2]). Article 19, in addition to requiring employers to pay the applicable minimum hourly wage rate to covered employees, requires payment of an overtime premium of time and one-half the regular hourly rate for hours worked over 40 in a week (12 NYCRR 137-1.3).

Article 19 also requires employers to maintain for six years certain records of the hours their employees worked and the wages they paid them (12 NYCRR 137-2.1). The required records must show for each employee, among other things, the number of hours worked daily and weekly, the amount of gross wages, deductions from gross wages, allowances claimed, if any, and money paid in cash (12 NYCRR 137-2.1 [a]). Petitioners produced credible testimony at hearing that they maintained wage and hour records that indicated the hours their employees worked per day and week, and wages paid, including amounts paid by cash, and sent them to DOL on or about June 30, 2009. Petitioner David Popermhem credibly testified that because he was incapacitated and not running the restaurant on a daily basis during DOL's investigation, he

---

[2] The wage order for the restaurant industry, which was in effect during the time period relevant to this proceeding, was repealed and replaced by the hospitality wage order effective January 1, 2011.

asked his ex-wife, Anna Popermhem, to deliver the requested payroll records to DOL. Delivery of the records is memorialized by a letter from Anna Popermhem to DOL dated June 30, 2009. Although DOL denies receipt or possession of the documents referenced in Ms. Popermhem's correspondence we presume that they were delivered, particularly as DOL never replied to Ms. Popermhem's letter to deny receipt of the records (*News Syndicate Co. v Gatti Paper Stock Corp.*, 256 NY 211, 216 [1931]). This presumption in favor of petitioners is bolstered by further correspondence from petitioners to DOL, dated April 10, 2012, stating that documents had been delivered to "Mrs. Rivera" at DOL. There is no evidence in the record that DOL responded to the April 10, 2012 correspondence to advise petitioners the referenced records were never received. Because petitioners proved they maintained and produced records that were never considered by DOL, respondent's estimate of the hours worked and wages owed based on the employees' claims and statements, is not entitled to the level of deference ordinarily given where no wage and hour records are available, because petitioners' wage and hour records would have been the best available evidence. Petitioners, however, still must prove by a preponderance of the evidence that the orders are invalid or unreasonable.

*Minimum wages due to Donaldo Vaquero*

The minimum wage order finds that petitioners failed to pay Donaldo Vaquero $81,595.37 in minimum wages for the time period from May 30, 2002 to March 8, 2008. Vaquero, although he had some supervisory authority in Planet Thailand's kitchen, is covered by Article 19 of the Labor Law as an employee. There is no credible evidence in the record that he managed the entire kitchen, had authority to hire or fire employees, that his suggestions or recommendations in personnel matters were given particular weight, or that he exercised discretionary powers (*see* 12 NYCRR 137-3.2 [c] [i] [2008]).

We are unable to tell from the copies of Vaquero's claim forms in evidence what he originally filed with DOL. Items are crossed out and appear to be written over with no attribution or indication of when the changes were made. Vaquero's claims also do not include any allegations concerning the number of hours he worked daily or weekly.[3]

Records in evidence and the testimony of Investigator Bautista, who did not speak to Vaquero during the investigation, do not adequately explain Vaquero's claims. A statement written in Spanish in 2009, with an illegible day and month, says that "I am submitting a claim for $500.00 per week at Planet Thailand . . . They paid me $500 a week . . . 2002, 2007 I worked five days a week 11:00 a.m. to 12:00 p.m." Other notes in the file describe Vaquero's wage rate as $190.00 a day, which is consistent with Bautista's testimony concerning her understanding of his salary while working for petitioners.

Vaquero testified that he worked seven days a week from 11:00 a.m. to 1:00 a.m. for one and one-half years and that his "real" salary was $190.00 a day described as $500.00 per week by check and $600.00 in cash, which totals $1,100.00 a week. He did not testify about his schedule prior to that time, whereas Bertin credibly testified that Vaquero worked six days per week and was paid over $1,000.00 per week by cash and check during the brief period of approximately one month during which their employment overlapped at Planet Thailand. Bertin did not explain how the amount of cash wages was arrived at or testify that petitioners paid

---

[3] The claim forms in evidence appear to have been copied from a two sided form, only one side of which was reproduced and entered into evidence at hearing.

Vaquero or any other employee an hourly wage rate. Petitioners also produced no evidence that they paid overtime to employees who worked more than 40 hours in a week.

We find based on the record before us, including Bertin's testimony, that Vaquero worked six days a week for a weekly salary of $1,100.00, which is consistent with Vaquero's description of his salary as $190.00 a day and $1,100.00 a week ($190.00 a day x six days is $1,140.00). We do not credit Vaquero's testimony that he consistently worked seven days a week for a long period of time, but we must accept his testimony that he worked 11:00 a.m. to 1:00 a.m. each day because the petitioners presented no evidence of the hours Vaquero worked per day or per week, and therefore did not meet their burden of proof on the hours Vaquero worked. We credit petitioners, however, with a 30 minute break per day based on Popermhem and Bertin's testimony that every employee received at least a 30 minute break. Since information in the record indicates petitioners provided two to three free meals to their employees per day, we credit petitioners with providing two meals per each day worked by Vaquero. We find, therefore, that Vaquero worked 75 hours per week for a weekly salary of $1,100.00 for the time period from May 30, 2002 to March 8, 2008, and that he is owed $67,952.61[4] in unpaid overtime wages calculated as follows:

| Time period | Weekly salary | Hours worked per week | Regular hourly rate[5] | Overtime rate[6] | Weekly meal credits[7] | Weekly wages earned | Weekly underpayment[8] |
|---|---|---|---|---|---|---|---|
| 5/30/02 – 12/31/04 | $1,100.00 | 75 | $14.67 | $22.00 | $21.00 | $1,335.67 | $235.67 |
| 2005 | $1,100.00 | 75 | $14.67 | $22.00 | $24.60 | $1,332.07 | $232.07 |
| 2006 | $1,100.00 | 75 | $14.67 | $22.00 | $27.60 | $1,329.07 | $229.07 |
| 1/1/07 – 3/8/08 | $1,100.00 | 75 | $14.67 | $22.00 | $29.40 | $1,327.27 | $227.27 |

*Minimum wages due to Adan Romualdo*

The minimum wage order finds that petitioners failed to pay Adan Romualdo $7,108.98 in minimum wages for the time period from January 15, 2007 to January 20, 2008. Petitioners offered no evidence on the number of hours Adan worked or the wages they paid him. Adan testified that he worked six days a week from January 15, 2007 to January 20, 2008 as a dishwasher. He testified he started work between 4:00 p.m. to 6:00 p.m. and finished at 4:00 or 4:30 a.m., and that petitioners paid him a weekly cash salary of $440.00. He testified that petitioners did not pay him overtime. Because petitioners, who had the burden of proof, presented no evidence concerning Adan's hours and wages, and DOL's determination of the wages owed are consistent with Adan's claim, testimony, and other evidence in the record, we affirm DOL's findings with respect to Adan Romualdo except that we modify the claim period to January 15, 2007 to December 30, 2007 so as not to overlap, as discussed below, with his claim for unpaid wages.

---

[4] The 8 week period from November 6, 2007 to January 1, 2008 has been deducted from the minimum wage order because Vaquero made a claim for unpaid wages for that time period which is discussed separately below.
[5] Weekly salary divided by hours worked per week (12 NYCRR 137-3.5 [2008]).
[6] 1 ½ times the regular rate for hours worked in excess of 40 (12 NYCRR 137-1.3 [2008]).
[7] Meal credits are set forth at 12 NYCRR 137-1.9 (2008). 12 meal credits per week at the applicable rates were included in our calculations.
[8] Wages earned less the amount paid, which was $1,100.00 per week.

*Minimum wages due to Vicente Romualdo*

The minimum wage order finds that petitioners failed to pay Vicente Romualdo $19,738.94 in minimum wages for the time period from November 20, 2002 to January 20, 2008. Petitioners presented no evidence of Vicente's hours worked or wages paid. Vicente testified he worked three years for petitioners, although he could not recall the exact dates. He worked as a dishwasher from 6:00 p.m. to 4:00 a.m. six days a week, for a weekly wage rate of $375.00 for three years, which was raised to $410.00, and then eventually to $440.00 "towards the end" of the time he worked for petitioners. Petitioners paid him in cash. Vicente testified petitioners did not pay overtime. This testimony is consistent with his claims except the claims indicate he worked for petitioners for six years and do not indicate a pay rate prior to the "last agreed rate" of $440.00. Additionally, because Vicente filed two claims -- one for minimum wage and overtime and one for unpaid wages for the last few weeks he worked for petitioners -- the claims cannot overlap. Because Vicente's claim for unpaid wages is for the period from December 31, 2007 to January 20, 2008, the minimum wage claim must end on December 30, 2007. Based on Vicente's testimony, we modify the minimum wage order as follows to reflect that he started work for the petitioners on January 20, 2005 and that his weekly salary was $375.00 for the duration of his minimum wage claim.

| Time period | Weekly salary | Hours worked per week | Regular hourly rate | Overtime rate[9] | Weekly meal credits[10] | Weekly wages earned | Weekly underpayment[11] |
|---|---|---|---|---|---|---|---|
| 1/20/05 - 12/31/05 | $375.00 | 57[12] | $6.58[13] | $9.87 | $24.60 | $406.32 | $31.32 |
| 2006 | $375.00 | 57 | $6.75[14] | $10.13 | $27.60 | $414.53 | $39.53 |
| 2007 | $375.00 | 57 | $7.15[15] | $10.73 | $29.40 | $438.93 | $63.93 |

Based on the above, we find petitioners owe Vicente Romualdo $6,914.13 in unpaid overtime wages for the time period from January 20, 2005 to December 30, 2007.

*Minimum wages due to other employees*

The minimum wage order also finds petitioners owe minimum wages to waiters Savalee Duangpoom and Surat Kingsawat. DOL determined that petitioners underpaid Duangpoom by $27,992.95 for the period from December 4, 2004 to June 12, 2009, and underpaid Kinsawat by $3,370.80 for the period from June 8, 2007 to June 12, 2009. We affirm the findings of the minimum wage order with respect to Duangpoom and Kingsawat, because petitioners presented no evidence of the hours they worked or wages they were paid, and therefore did not meet their

---

[9] 1 ½ times the regular rate for hours worked in excess of 40 (12 NYCRR 137-1.3 [2008]).
[10] *See* note 5 *supra*.
[11] Wages earned less the amount paid.
[12] 10 hours per day less a 30 minute meal break based on credible evidence in record that employees were allowed at least one meal break per shift.
[13] A derived regular hourly rate is found divided by hours worked (12 NYCRR 137-3.5) and used here where the derived rate is higher than the applicable minimum wage rate, which was $6.00 an hour in 2006 (12 NYCRR 137-1.2).
[14] The applicable state minimum wage was used because the minimum wage was higher than the derived rate (12 NYCRR 137-1.2).
[15] *Id.*

burden of proof to show the minimum wage order is invalid or unreasonable for these two employees.

## Civil Penalty

The minimum wage order assesses a 100% civil penalty against the petitioners. Petitioners allege the civil penalty in this matter is excessive. We agree that the record does not support imposition of a 100% civil penalty. Labor Law § 218 (1) provides that when assessing the amount of civil penalty to impose against an employer DOL has determined violated the minimum wage act, respondent "shall give due consideration to the size of the employer's business, the good faith basis of the employer to believe that its conduct was in compliance with the law, the gravity of the violation, the history of previous violations and, in the case of wages, benefits or supplements violations, the failure to comply with recordkeeping or other non-wage requirements." Bautista testified that she recommended a 100% civil penalty in this case based in large part on petitioners' failure to provide records to DOL and that they did not come forward to arrange to pay the wages DOL determined were owed. Bautista further testified that 100% is a standard amount for a civil penalty. The record does not support imposition of a 100% civil penalty. Failure to keep and produce records cannot be the basis of a civil penalty in this case because, as discussed above, we find records were maintained and produced. Additionally, Bautista's testimony that 100% is a standard civil penalty imposed by respondent contradicts the statutory requirement to give consideration to the factors enumerated by the statute. Respondent provided no reasonable explanation of how the factors were considered in this matter. The civil penalty is revoked.

### *Liquidated Damages*

Labor Law § 663 (2) provides that a wage order issued by the Commissioner shall include liquidated damages in an amount of no more than 100% of the total underpayment found due unless the employer proves a good faith basis to believe the underpayment was in compliance with law (*see also* Labor Law § 218 [1]). Respondent included 25% liquidated damages in the minimum wage order. The petitioners presented no evidence they had a good faith basis to believe failing to pay overtime was in compliance with law. We affirm the imposition of 25% liquidated damages.

### *Interest*

Labor Law § 219 (1) provides that when the Commissioner determines that wages are due, then the order directing payment shall include "interest at the rate of interest then in effect as prescribed by the superintendent of financial services pursuant to section fourteen-a of the banking law per annum from the date of the underpayment to the date of payment." Banking Law Section 14A sets the "maximum rate of interest at sixteen per centum per annum." Interest is affirmed but must be recalculated on the modified principal amount.

## Unpaid Wages Order

Article 6 of the Labor Law requires employers to pay manual workers such as restaurant workers weekly, and not more than seven calendar days after the end of the week in which the wages were earned (Labor Law § 191 [1]). Donaldo Vaquero, Adan Romualdo and Vicente

Romualdo claimed petitioners failed to pay them any wages for several weeks near the end of their employment at Planet Thailand. The unpaid wages order finds petitioners owe Adan Romualdo $1,231,80 in unpaid wages for the period from January 15, 2007 to January 20, 2008, Vicente Romualdo $1,231.80 in unpaid wages for the period from November 20, 2002 to January 20, 2008, and Donaldo Vaquero $9,625.20 in unpaid wages for the period from May 30, 2002 to March 8, 2008. Vicente and Adan Romualdo claimed petitioners did not pay their wages from December 31, 2007 to January 20, 2008 and told them they would pay them later. Vaquero alleged petitioners failed to pay him any wages for the period from November 6, 2007 to January 1, 2008 because the business had no money at the time. Petitioners presented no evidence that the wages claimed were paid, and therefore did not meet their burden of proof to show the unpaid wages order is invalid or unreasonable. The unpaid wages order is affirmed except that we modify the claim periods where it is clear from the record that the claims for unpaid wages were not made for the entire time period the claimants worked for petitioners, but were limited to the specific time periods described above.

### *Civil penalties*

The unpaid wages order includes a 100% civil penalty. We revoke the 100% civil penalty included in the unpaid wages order for the same reasons, as discussed above, that we revoked the civil penalty included in the minimum wage order.

### *Interest*

Interest is affirmed for the same reasons we affirmed the interest included in the minimum wage order.

### Penalty Order

The penalty order assesses a $1,000.00 civil penalty for violating Labor Law § 661 and 12 NYCRR 137-2.1 by failing to keep and/or furnish true and accurate payroll records for each employee from on or about June 1, 2002 through June 12, 2008 (count 1); a $1,000.00 civil penalty for violating Labor Law § 661 and 12 NYCRR 137-2.2 by failing to give each employee a complete wage statement with each payment of wages (count 2); a $1,000.00 civil penalty for violating Labor Law § 191 (a) by failing to pay wages weekly to manual workers not later than seven calendar days after the end of the week in which the wages were earned during the period from on or about June 1, 2002 through June 12, 2008 (count 3); and a $1,000.00 civil penalty for violating Labor Law § 162 by failing to provide employees with at least thirty minutes off for the noon day meal when working a shift of more than six hours extending over the noon day meal period from eleven o'clock in the morning to two o'clock in the afternoon from on or about July 18, 2007 through June 12, 2008, for a total amount due of $4,000.00 (count 4). As discussed below counts 1, 2, and 3 are affirmed, and count 4 is revoked, and the penalty order is modified to a total civil penalty due of $3,000.00.

### *Count 1: Failure to keep and/or furnish payroll records is affirmed*

Although we found above that petitioners kept and produced payroll records, we also find petitioners violated Labor Law § 661 and affirm the $1,000.00 civil penalty for failure to keep and/or furnish payroll records. Labor Law § 661 requires employers to not only maintain

required records, but to keep the records open for inspection by the respondent at any reasonable time. The original records were not available for inspection when DOL investigators visited the restaurant.

*Count 2: Failure to give each employee a wage statement with each payment of wages is affirmed*

Labor Law § 661 and 12 NYCRR 137-2.2 require employers to provide a complete wage statement with each payment of wages that includes hours worked, rates paid, gross wages, allowances, deductions, and net wages. Although petitioners offered testimony that statements were given to employees when they were paid, there was no testimony about the exact information contained in the statements. Petitioner Popermhem testified that the statements indicated the hours worked and the cash wages paid, but there is no evidence in the record that these statements included the other required information. The $1,000.00 civil penalty for violating Labor Law § 661 and 12 NYCRR-2.2 is affirmed.

*Count 3: Failure to pay manual workers weekly is affirmed*

As discussed above, we affirmed the unpaid wages order and found petitioners violated Labor Law § 191 [1]. Therefore, we also affirm count 3 of the penalty order imposing a $1,000.00 civil penalty against petitioners for violating Labor Law § 191.

*Count 4: Failure to provide a 30 minute break is revoked*

The penalty order imposes a $1,000.00 civil penalty against petitioners for violating Labor Law § 162 by failing to provide employees with at least thirty minutes off for the noon day meal when working a shift of more than six hours extending over the noon day meal period from eleven o'clock in the morning to two o'clock in the afternoon. As discussed above, we found petitioners provided each employee a break of at least 30 minutes per shift. The $1,000.00 penalty for violating Labor Law § 162 is revoked.

/ / / / / / / / / / / / / / / / / / / / / / / / /

/ / / / / / / / / / / / / / / / / / / / / / /

/ / / / / / / / / / / / / / / / / / / /

/ / / / / / / / / / / / / / / / /

/ / / / / / / / / / / / / /

/ / / / / / / / / / /

/ / / / / / / /

/ / / / /

/ /

**NOW, THEREFORE, IT IS HEREBY RESOLVED THAT:**

1. The minimum wage order is affirmed in part, modified in part, and revoked in part as follows:

    a) The minimum wage order is affirmed with respect to Savalee Duangpoom, Surat Kinsawat, and Adan Romualdo; and

    b) The minimum wage order is modified to reduce the wages due to Vicente Romulaldo to $6,914.13; and

    c) The minimum wage order is modified to reduce the wages due to Donaldo Vaquero to $67,952.61; and

    d) The 100% civil penalty is revoked; and

    e) 25% liquidated damages are affirmed; and

    f) Interest must be recalculated on the new principal.

2. The unpaid wages order is modified to change the time period to November 6, 2007 to January 1, 2008 for Donaldo Vaquero, December 31, 2007 to January 20, 2008 for Adan Romualdo, and December 31, 2008 to January 20, 2008 for Vicente Romualdo, the civil penalty is revoked, and interest is affirmed.

3. The penalty order is modified to reduce the total penalty due to $3,000.00.

4. The decision issued in this matter on January 20, 2016 is revoked and replaced by this corrected and reissued decision.

Dated and signed by:

_____
Vilda Vera Mayuga, Chairperson
At New York, New York
On the ___2___ day of __February__, 2016

_____
LaMarr J. Jackson, Member
At Rochester, New York
On the ___1st__ day of __February__ 2016

_____
J. Christopher Meagher, Member
At New York, New York
On the ___1st__ day of __February__, 2016

_____
Michael A. Arcuri, Member
At Utica, New York
On the __29th__ day of __January__ 2016