# EXHIBIT K

CHAPTER ___564___

LAWS OF 20 ___10___

SENATE BILL ___8380___        ASSEMBLY BILL _____

_____        _____

## STATE OF NEW YORK

_____

8380

## IN SENATE

June 27, 2010

_____

Introduced by Sen. SAVINO -- read twice and ordered printed, and when printed to be committed to the Committee on Rules

AN ACT to amend the labor law, in relation to establishing the wage theft prevention act

A 11672 Rules (Gianaris)

_____

_____

DATE RECEIVED BY GOVERNOR:

**DEC 01 2010**
_____

ACTION MUST BE TAKEN BY:

**DEC 13 2010**
_____

DATE GOVERNOR'S ACTION TAKEN:

12/10/10

000001

SENATE VOTE    *40* Y *20* N          HOME RULE MESSAGE    ___ Y ___ N

DATE    *8/3/10*

ASSEMBLY VOTE    ___ Y ___ N

DATE _____

**S8380** SAVINO   Same as <u>A 11726</u>  Rules (Heastie)

<u>06/30/10</u>         S8380        Senate Vote                 Aye: 33        Nay: 28

**Floor Votes:**

06/30/10  S8380  Senate Vote  Aye: 33  Nay: 28

| | | | |
|---|---|---|---|
| **Aye** Adams | **Aye** Addabbo | **Nay** Alesi | **Aye** Aubertine |
| **Nay** Bonacic | **Aye** Breslin | **Nay** DeFrancisco | **Aye** Diaz |
| **Aye** Dilan | **Aye** Duane | **Aye** Espada | **Nay** Farley |
| **Nay** Flanagan | **Aye** Foley | **Nay** Fuschillo | **Nay** Golden |
| **Nay** Griffo | **Nay** Hannon | **Aye** Hassell-Thompson | **Aye** Huntley |
| **Aye** Johnson C | **Nay** Johnson O | **Aye** Klein | **Aye** Krueger |
| **Aye** Kruger | **Nay** Lanza | **Nay** Larkin | **Nay** LaValle |
| **Nay** Leibell | **Nay** Libous | **Nay** Little | **Nay** Marcellino |
| **Nay** Maziarz | **Nay** McDonald | **Aye** Montgomery | **Exc** Morahan |
| **Nay** Nozzolio | **Aye** Onorato | **Aye** Oppenheimer | **Aye** Padavan |
| **Aye** Parker | **Aye** Peralta | **Aye** Perkins | **Nay** Ranzenhofer |
| **Nay** Robach | **Nay** Saland | **Aye** Sampson | **Aye** Savino |
| **Aye** Schneiderman | **Aye** Serrano | **Nay** Seward | **Nay** Skelos |
| **Aye** Smith | **Aye** Squadron | **Aye** Stachowski | **Aye** Stavisky |
| **Aye** Stewart-Cousins | **Aye** Thompson | **Aye** Valesky | **Nay** Volker |
| **Nay** Winner | **Nay** Young | | |

000003



STATE OF NEW YORK
EXECUTIVE CHAMBER
ALBANY 12224

TO THE ASSEMBLY:

      Pursuant to the provisions of Section 14 of Article III of the Constitution and by virtue of the authority conferred upon me, I do hereby certify to the necessity of the immediate vote on Assembly Bill Number 11726 / Senate Bill Number 8380, entitled:

      "AN ACT to amend the labor law, in relation to establishing the wage theft prevention act"

      The facts necessitating an immediate vote on the bill are as follows:

      This bill is necessary to give workers the means to ensure that they are paid the wages to which they are legally entitled.

      Because the bill has not been on your desks in final form for three calendar legislative days, the Assembly has requested this message to permit the immediate consideration of this bill.

      G I V E N under my hand and the Privy Seal of the State at the Capitol in the City of Albany this twenty-ninth day of November in the year two thousand ten.

*David A. Paterson*

BY THE GOVERNOR

*JRW J. Krinna*

000004

# NEW YORK STATE SENATE
## INTRODUCER'S MEMORANDUM IN SUPPORT
### submitted in accordance with Senate Rule VI. Sec 1

**BILL NUMBER:** S8380          REVISED 06/29/10

**SPONSOR:** SAVINO

**TITLE OF BILL:**
An act to amend the labor law, in relation to establishing the wage theft prevention act

**PURPOSE OR GENERAL IDEA OF BILL:**
The Wage Theft Prevention Act (WTPA) seeks to expand the rights of employees to seek civil and criminal avenues of remedy for their employers failing to follow labor law appropriately and the specifications therein.

**SUMMARY OF SPECIFIC PROVISIONS:**

§ 3 (Labor Law Art. 6, § 195) Notice and Record-Keeping Requirements

Pre-Employment Notice of Wage Rates:

* Sets out the information that must be included in the disclosure of wage rate notice currently required by § 195. Clarifies that employer must disclose intent to claim allowances (like tip or meal allowances) as part of the minimum wage. Clarifies that employer must state basis of wage payment (whether paying by hour, shift, day, week, piece, etc.).
* New requirements: disclosure of employer's "doing business as" names; updates of disclosure annually and within 7 days of a change if the change is not listed on pay stubs.
* Requires employers to provide translated notices provided by the Department of Labor (DOL). Requires DOL to create dual-language template notices in English and additional languages that the DOL, in its discretion, can select. Requires employee to affirm that the employee has accurately told the employer his or her primary language.

Payroll and Paystub Requirements:

* Amends statutory payroll record and paystub requirements to include information currently required pursuant to regulation.
* Amends statute to require employers to maintain copies of payroll records for six years (as is currently required by regulation).

§ 4 (Labor Law Art. 6, § 196) Power of Commissioner

* Provides Commissioner discretion to require employer to provide accounting of all assets upon employer default on administrative order to pay wages, damages, and penalties. Provides civil penalty of up to $10,000 if employer fails to provide and commissioner must go to court to obtain compliance.
* Provides Commissioner discretion to require employer to post bond after default on order to comply (not after ministerial step of docket-

000005

ing administrative order in court, as is currently required).

§ 5 (Labor Law Art. 6, § 196-a) Complaints by Employees to Commissioner

* Codifies existing DOL policy of maintaining confidential the identity
of employees who are subject of investigation as long as possible.
* Codifies existing DOL policy of investigating third-party complaints
of violations.

§ 6 (Labor Law Art. 6, § 197) Civil penalty

* Closes loophole and provides that Commissioner can take administrative
action (not just court action) to collect civil penalty for employer
discrimination in pay rates because of sex.

§ 7 (Labor Law Art. 6, § 19S) Costs, Remedies for Payment of Wages
Claims.

Liquidated Damages:

o Increases liquidated damages on unpaid wages from 25% to 100% in court
action.
o Provides commissioner discretion to assess up to 100% liquidated
damages in early investigation stages, prior to issuance of an order to
comply.

Employer Violations of Wage Stub and Notice Requirements

o Provides statutory damages and a private right of action in cases
where an employer fails to provide disclosures of wage rates or pays
tubs (as required under Section 195). Caps statutory damages available
for employees at $2,500. provides two affirmative defenses for employer
where the employer demonstrates that it:
(1) paid all wages legally required: or (2) had a good faith, reasonable
basis for not providing notice or wage stubs.

Facilitating collection of wages Ordered to Be paid:

o Provides that where employer defaults on paying judgment for more than
90 days, after the judgment is final, the employer must pay an addi-
tional 15% additional damages to defray approximately half of the cost
to the employee of collecting on the judgment.

Other Changes:

o Tolls the statute of limitations during investigations by the Commis-
sioner.

§ 8 (Labor Law Art. G, § 19B-a) Criminal Penalties for Nonpayment of
Wages

* Adds newer business forms (partnerships, limited liability corpo-
rations) to the list of types of employers covered under this provision.

§ 9 (Labor Law Art. G, § 199-a) Notification of DOL Process

Codifies the DOL's current practice of accepting for investigation
complaints for violations of meal breaks, days of rest, and retaliation
and requires that employee representatives who receive communications
from the DOL must be duly authorized by the employee.

§ 10 (Labor Law Art. 7, § 215) Prohibited Retaliation

Closes loopholes on what actions constitute prohibited retaliation:

o Explicitly prohibits threats of retaliation.

o Prohibits retaliation by persons who do not meet technical definition
of "employer" under the statute but who an employee can prove retaliated
against him or her because he or she engaged in protected conduct under
the Labor Law.
o protects an employee from retaliation where the employee makes a
complaint about conduct that the employee reasonably and in good faith
believes constitutes a violation under the Labor Law.
o Clarifies that two-year statute of limitations for filing retaliation
claim runs from the date of the retaliation itself, not the dates of the
employee's employment.

Provides Commissioner authority commensurate with the court to remedy
retaliation

o Amends statute to explicitly provide commissioner with all necessary
tools, including ordering reinstatement, for remedying retaliation -
makes Commissioner's power parallel to those of a court.

Provides deterrence against violations

Provides for statutory damages, in addition to existing remedies of up
to $10,000 for instances of retaliation.

o Explicitly provides that the sole remedy available against a person
who is now an employer is statutory damages of up to $10,000 (not rein-
statement, lost wages, front pay, etc).

§ 11 (Labor Law Art. 7, § 218) and § 12 (Labor Law Art. 7 § 219) orders
to Comply


**same changes in both provisions**

* Provides that the full 100% liquidated damages amount be assessed if
an employer refuses to settle a claim and forces the Commissioner to
issue an order to comply.
* Provides the Commissioner discretion to add an additional 15% damage
that comes due if the employer defaults on an order to comply for more
than 90 days.
* Requires the commissioner to provide a copy of an order to comply
issued against an employer to complaining employee (any employee who
submitted an actual complaint form with the DOL but not every employee
covered in an investigation).
* To facilitate collections, provides the Commissioner discretion to
assign to an employee the amount of wages, wages supplements, interest,
and liquidated damages due that employee under an order to comply and
file in the name of that employee with the county clerk of the county
where the employer resides or has a place of business.

§ 13 (Labor Law Art. 7, § 219-c) Public Notices

* Provides Commissioner discretion to post notices of violations at
worksite. Limits amount of time postings must be kept visible (employ-

000007

ee-visible notices max. 1 year; publicly visible notices max ninety days). Limits posting of notices visible to public to instances of willful violations.
* Provides for a misdemeanor for any person who defaces or removes such a posting without authorization.

§ 14 (Labor Law Art. 19, § 661) Records of Employers

* Moves record-keeping and pays tub requirements under the Minimum Wage Act from regulation to statute. Requires that employer maintain records for six years, as is already required by regulation.
* Requires employers to allow DOL investigators to interview employees without interference and in a private location.

§ 15 (Labor Law Art. 19, § 662) Criminal Penalties under Minimum Wage Act

* Closes a loophole in criminal penalties that apply to wage theft by extending the same penalties that cover record keeping violations and non-payment of wages to also cover minimum wage non-payment.

§ 16 (Labor Law Art. 19, § 663) costs, Remedies for Minimum Wage/Overtime Claims

* Replicates amendments made to § 198 (nonpayment of wage claims) in § 663 (nonpayment of minimum wage claims).

§ 17 provides that the act shall take effect on the 120th day after it becomes law.


**JUSTIFICATION:**
Studies indicate that a large number of employees are earning less than minimum wage and others are being paid less than their correct wage. Many employees are also not all receiving the appropriate amount of overtime compensation and many employers are failing to adequately inform their employees of their wages and how they are calculated in a language they can comprehend. The penalties currently in place for employers paying less than minimum wage are minimal and offer little deterrent - this will change dramatically with this, legislation. Penalties for violating employee rights would be increased in order to far better protect workers' rights and interests.


**PRIOR LEGISLATIVE HISTORY:**
New legislation.


**FISCAL IMPLICATIONS:**
Minimal.


**EFFECTIVE DATE:**
This shall take effect on the one hundred and twentieth day after becoming law.

---

000008



**New York State Department of Labor**
David A. Paterson, *Governor*
Colleen C. Gardner, *Commissioner*

December 10, 2010

The Honorable Peter Kiernan
Counsel to the Governor
The Capitol, Room 210
Albany, New York 12224

> **S.8380** – AN ACT to amend the labor law, in
> relation to establishing the wage theft
> prevention act

Dear Mr. Kiernan:

This legislation would amend the Labor Law to establish the Wage Theft Prevention Act.

The Wage Theft Prevention Act contains numerous provisions intended to deter and punish the nonpayment or underpayment of wages to employees.  It enacts stricter recordkeeping requirements for employers; provides for yearly employee notification regarding rates of pay, allowances and other information the Commissioner deems material and necessary; increases penalties for violation of various provisions of the Labor Law intended to protect workers from nonpayment and underpayment of wages; increases liquidated damages that will be payable to employees under certain circumstances from 25 to 100 percent of amounts owed; enhances the Department's ability to collect wages owed by requiring employers to disclose assets; and enhances protections for workers whose employers retaliate against them for asserting their right to protection of the law by complaining of violations to the Commissioner, the Attorney General, and to others or by cooperating with investigation or prosecution of violations. The Act expands the powers of the Department of Labor to investigate wage nonpayment or underpayment cases and to collect money owed to workers while also expanding rights of employees to seek civil and criminal remedies against employers failing to follow the Labor Law's wage-payment and certain other protective provisions of law.

Current penalties for wage theft are so low that there is a financial incentive to underpay workers and, if such underpayment is ever caught, to simply pay the fine for having done so.  This circumstance creates an environment in which a large number of employees in the state are earning less than minimum wage despite statutory protections, while others are paid less than their agreed-upon wage.  Employees often are also denied overtime pay and/or have no way to calculate whether the wages and

W. Averell Harriman State Office Campus   Albany, NY 12240
**www.labor.state.ny.us**

-2-

benefits they receive are correct because they are not informed adequately, in a language they can comprehend, of their rate of pay and how their pay is calculated.

The National Employment Law Project estimates that every year, employers improperly underpay low-wage workers in New York City alone by more than $1 billion. These substantial underpayments hurt working men and women who, despite their efforts, are left with even less income to pay their rent, buy groceries, pay heating bills, and otherwise provide for their families.  As a result, more working families are required to rely on public assistance, food stamps, and other safety net programs.  The additional penalties and enforcement tools set forth in this legislation will create new deterrents to violations of wage laws and protect workers who seek redress for such violations.

At the same time, wage underpayments allow employers who do not comply with the law to unfairly compete with their law-abiding counterparts by substantially reducing their cost of doing business.  This legislation will instill greater fairness in today's extremely competitive business environment by punishing those employers who seek to gain a competitive advantage by violating the law.

Finally, underpayments of wages hurt the state and local economy by reducing wages that will make their way into the economy and generate income and sales taxes. Some advocates estimate that the Wage Theft Prevention Act will add approximately $50 million in increased savings and revenues to state coffers, a telling figure during this severe financial crisis.

For all the above-stated reasons, the Department of Labor strongly supports this bill and urges its enactment into law.

Sincerely,

Colleen C. Gardner

Colleen C. Gardner

cc:   D. Weinstein
      J. Mans



| Denis M. Hughes | Terrence L. Melvin |
| *President* | *Secretary-Treasurer* |
| 50 Broadway, 35th Fl. | 100 South Swan Street |
| New York, NY 10004 | Albany, NY 12210 |
| (212) 777-6040 | (518) 436-8516 |
| Fax - (212) 777-8422 | Fax - (518) 436-8470 |

December 7, 2010

Honorable David Paterson
Governor of the State of New York
State Capitol
Albany, New York  12224

ATT:  Peter Kiernan, Counsel                    **RE: S. 8380/A11726**

Dear Governor Paterson:

    The New York State AFL-CIO, representing over 2 million union members, our families and our retirees strongly supports the above referenced legislation.

    Therefore, we urge you to sign this bill forthwith.

    For further information contact Ed Donnelly, Legislative Director at 518-436-8516.

        Sincerely,

        Ed Donnelly
        Legislative Director

ED:eb
opeiu-153
Letter #43/2010

347 Madison Avenue
New York, NY 10017-3739
212 878-7000 Tel

 **Metropolitan Transportation Authority**

State of New York

December 10, 2010

The Hon. Peter Kiernan
Counsel to the Governor
Executive Chamber
State Capitol
Albany, New York 12224

RE:    A.11726/**S.8380**

**AN ACT** to amend the labor law, in relation to
establishing the wage theft prevention act

**RECOMMENDATION:    NO OBJECTION**

Dear Mr. Kiernan:

The Metropolitan Transportation Authority (MTA) has no objection to this bill's stated intent
generally to strengthen enforcement by the Commissioner or Labor and private employees of
New York State's wage and hour laws, or specifically to its amendments to Labor Law § 215
that will, according to its sponsor, "close[] loopholes on what actions constitute prohibited
retaliation." We note, however, that we have no objection to those amendments because we
believe that Labor Law § 215—both in its current form and as it would be were this bill to
become law—does not apply to employees of a public authority or public benefit corporation.

As you know, Labor Law § 215's protections do not extend to "employees of the state or any
municipal subdivisions or departments" of the state. Labor Law § 215(1)(d). That makes sense.
Public employees already *have* ample protections under the public employees' whistleblower
law, Civil Service Law § 75-b and Labor Law § 27-a (which protects "public employees" who
report violations of occupational safety and health standards). Most also have additional
protections under collective bargaining agreements pursuant to the Taylor Law.

The same, of course, is true for employees of the MTA and other public authorities and public
benefit corporations. Indeed, they have additional protections. Most notably, under the recently
enacted Public Authorities Law §2857, public authorities cannot retaliate against their employees
because of their "role as a whistleblower, insofar as the actions taken by the employee are legal."
Federal laws such as the National Transit Systems Security Act and the Occupational Safety and
Health Act offer similar protections.

*The agencies of the MTA*

| | | | |
|---|---|---|---|
| MTA New York City Transit | MTA Long Island Bus | MTA Bridges and Tunnels | MTA Bus Company |
| MTA Long Island Rail Road | MTA Metro-North Railroad | MTA Capital Construction | |

The Hon. Peter Kiernan
December 10, 2010
Page 2 of 2

Accordingly, in our view, MTA employees, no less than employees of State agencies and local governments, do not need the protections that section 215 offers to private employees and under a reasonable construction of section 215's language and purpose, employees of public authorities and public benefit corporations would for purposes of Labor Law § 215 be deemed employees of the state.

In consideration of the foregoing, the MTA has no objection to this bill's amendments to Labor Law § 215.

Respectfully submitted,

Hilary D. Ring
Director, Government Affairs

000013



*Advocates of the Food Industry Since 1900*

**FOOD INDUSTRY ALLIANCE OF NEW YORK STATE, INC.**

*130 Washington Avenue • Albany, New York 12210 • Tel (518) 434-1900 • Fax (518) 434-9962*
*Government Relations (518) 434-8144*

December 3, 2010

Hon. David A. Paterson                    **VIA E-MAIL**
Governor
Executive Chamber
State Capitol
Albany, NY 12224

RE:    A. 11726 (Heastie) / S. 8380 (Savino)

Dear Governor Paterson:

The Food Industry Alliance of New York State, Inc. (FIA), representing the interests of New York's 21,000 food stores, urges you to disapprove the above-mentioned bill.

This legislation imposes additional and unproductive mandates on all New York employers. It exposes them to new and increased civil and criminal penalties, some of which apply even where the employee was paid the correct salary. The bill will lead to increased litigation, unproductive paperwork and add to the already too high cost of doing business in the State of New York.

FIA does not object to strengthening the laws with respect to penalizing those employers who routinely and intentionally cheat their employees. However, this bill imposes ridiculous paperwork burdens on all New York employers in which they must ask each employee to identify the employee's primary language, locate a template to be provided by the Department of Labor, which provides the correct disclosure for that employee's employment situation in two languages, go back to the employee to collect their signature on the disclosure form, repeat the process annually and then maintain all of this additional paperwork an each employee for six years.

The above scenario will result in numerous "got–you" violations on legitimate employers who are properly paying their employees, but either did not collect or could not locate the required paperwork. This will result in onerous fines being levied that the business community can ill afford in this economic climate.

FIA urges you to work to strengthen the New York economy by rejecting this measure and urging the legislature to submit a new proposal focused more directly on those employers who intentionally cheat their employees.

Thank you for consideration of our views.

Respectfully submitted,

Michael E. Rosen
Senior Vice President
& General Counsel

000014



# Legislative Memo

**Contact:**
**Tom Minnick**
Vice President, Human Resources
T 518.465.7511 x210
www.bcnys.org

**BILL:** **A.11726 (Rules Heastie) / S.8380 (Savino)**

**SUBJECT:** **NYS Wage Theft Protection Act**

**DATE:** **November 29, 2010**

<div style="text-align:center"><strong>OPPOSE</strong></div>

**A.11726 (Rules Heastie) / S.8380 (Savino)**

This fifteen page bill, the Wage Theft Protection Act, would expand many current and longstanding employer obligations under the state's labor law and add new penalties for employers. The Business Council opposes enactment of this proposal.

- These expansions are proposed for no apparent reason other than "Studies indicate ...a large number of employees are earning less than minimum wage..." and "...not all receiving the appropriate amount of overtime compensation" and "...employers are also failing to provide basic necessities such as, days of rest and meal period breaks..." Nothing in the bill or memo details the inadequacy of the current and longstanding employee protections of these provisions in the state's labor law.

- Work in New York and other states has gradually shifted to a service and high tech economy. Many of the longstanding employer obligations and the expansions proposed in this bill are geared to an industrial model that is no longer representative of the workplace. Employees are much more aware of workplace rights, assert them and are not in need of an overreaching state government apparatus.

- The requirement to provide extensive notices and records in the "primary language of the employee" adds a multi-lingual burden upon NYS employers that is unfair, unwarranted and unprecedented. Employees already have non-discrimination protections, but adding this additional language obligation to an employer's paperwork burdens is reminiscent of "no good deed goes unpunished." Employers providing genuine equal employment opportunity are greeted with the need to obtain translators and keep multi-lingual records, with any miscue being a "cause of action". Employers who miss the short ten (10) day period to provide a bond pending appeal from an adverse administrative determination then are subjected to severe sanctions, including accountings and civil penalties of up to $10,000. In the administrative proceedings, civil penalties of $500 for each failure of compliance regarding rate of pay or differentiation in pay because of sex are imposed and there are "liquidated damages" for underpayments, too. Mistakes in notices or record keeping regarding rates of pay or overtime are punished by acceptance of anecdotal employee testimony and the employer has a heightened burden of providing "specific, detailed, and credible rebuttal evidence". Experienced practitioners know that such a system foments self-serving testimony by opportunistic employees and their contingent fee counsel.

- Statewide, New York needs 500,000 new jobs just to return to pre-recession employment levels. Those jobs will come only when employers decide it is worth expanding and creating new jobs in New York State. This bill would compound the difficulty of doing business in NYS by creating an unnecessary and burdensome paperwork and penalty regime. At a time when our state economy is struggling, the imposition, particularly on small and medium sized businesses, is vastly

<div style="text-align:center">000015</div>

disproportioned to any genuine or valid concern for proper pay and compliance with the state labor law requirements.

- It makes no sense that the state legislature is moving forward with this burdensome new proposal with its new obligations on the very same businesses they are turning to for those new jobs.

For these reasons, The Business Council opposes this legislation and strongly urges that it not be enacted by the New York State Legislature.

The Business Council of New York State, Inc. | 152 Washington Avenue | Albany, New York 12210-2289
"));

000016



# THE LEGAL AID SOCIETY

Employment Law Unit
199 Water Street
New York, NY 10038
T (212) 577-3300
www.legal-aid.org

Direct Dial: (212) 577-3648
Direct Fax: (212) 509-8761
E-mail: RBlum@legal-aid.org

Blaine (Fin) V. Fogg
*President*

Steven Banks
*Attorney–in–Chief*

Adriene L. Holder
*Attorney–in–Charge*
Civil Practice

December 6, 2010

Governor David Paterson
State Capitol
Albany, NY 12224

   Re: <u>S.8380/A.11726</u>

Dear Governor Patterson:

On behalf of The Legal Aid Society, I write to urge you to sign the Wage Theft Prevention Act, A.11726/S.8380, into law.

Every day across New York State, countless workers face abuse on the job: nonpayment of overtime for 70+ hour workweeks; theft of tips; illegal deductions from wages; and payment of wages drastically below the legal minimum. In industries that form the backbone of the State's emerging economy – retail, service, restaurants, residential construction – noncompliance with the basic protections of New York Labor Law is often the norm, not the exception. Low-road, unscrupulous employers drive down standards, gaining an unfair competitive edge over those businesses that do follow the law. The resulting lost wages, tax revenue, and economic stability affect all New Yorkers. Every dollar stolen from the hands of a worker is a dollar's unfair advantage over the competition and a dollar's absence from commerce in our neighborhoods.

The Legal Aid Society is the oldest and largest provider of legal assistance to low-income families and individuals in the United States. The Society's Civil Practice operates trial offices in all five boroughs of New York City providing comprehensive legal assistance in housing, public assistance, and other civil areas of primary concern to low-income clients. The Society's Employment Law Project represents low-wage workers in employment-related matters such as claims for unpaid wages, claims of discrimination, and unemployment insurance hearings. The Project conducts litigation, outreach and advocacy projects designed to assist the most vulnerable workers in New York City, among them, low-wage workers in sectors in which wage theft is the rule rather than the exception.

The Wage Theft Prevention Act will foster broad-scale legal compliance with New York's most fundamental wage laws and end the unfair competition killing our small businesses that follow the law. The WTPA contains the best, most effective tools to fight wage theft – borrowing from other areas of New York law, and from proven models in other States and in federal law.

Page 2

The Wage Theft Prevention Act includes four interlocking components to effect the necessary change:

1)      The WTPA changes the economic incentives that encourage bad-actor employers to violate the law.  Damages owed, on top of wages, will be increased from 25% to 100% – matching the damage level in twenty-four other States and under federal law.  [Seven states impose even heavier penalties of 200%.]  Unscrupulous employers will chose to comply with our State's wage laws only when there is a real price tag on violations.  These new damages provide just that leverage.

2)      Workers must be encouraged to speak up for their rights – and be protected when they do.  Savvy wage thieves know that often a simple threat is all it takes to scare workers away from reporting legal violations.  The WTPA ensures that all the dirty tricks of the worst violators are outlawed, and workers are meaningfully protected from retaliation for enforcing their rights.  Importantly, the law closes loopholes for enforcement, giving the Department of Labor the same powers as the courts to remedy retaliation when it occurs.  These amendments send a strong message to unscrupulous employers: retaliating against workers who demand their right to minimum wage and overtime is illegal, is expensive, and will not be tolerated.

3)      New tools will ensure the worst violators have a harder time hiding assets to avoid judgment.  The NYDOL will have new authority to get an accounting of assets from employers found in violation, and discretion to use innovative new collection measures.  Wage thieves who fail to pay final orders within 90 days will have to pay an extra 15% – defraying the cost to the DOL and to the worker for expensive efforts to enforce judgments.

4)      Finally, the WTPA clarifies and consolidates employers' obligations to maintain records and give employees paystubs.  The way current law is set forth complicates employers' ability to understand and follow their legal obligations.  Key requirements are buried in regulations, rather than set out clearly in the statute itself.  The WTPA codifies existing record keeping requirements in the statute, so that both employers' obligations and the consequences of violations are crystal clear.

The Wage Theft Prevention Act is targeted reform, hitting only those employers who refuse to follow our State's most basic employment laws.  New York's working families and small businesses suffering from unfair competition urge you to join them in the fight against wage theft and sign this bill in to law.

Thank you for your consideration of this matter.

Very truly yours,

Steven Banks



December 7, 2010

Governor David Paterson
State Capitol
Albany, NY 12224

Re: Request to Sign into Law S8380/A11726

Dear Governor Patterson:

On behalf of New York Jobs with Justice / Urban Agenda, we write to urge you to sign the Wage Theft Prevention Act, A11726/S8380, in to law.

Every day across New York State, countless workers face rampant abuse on the job: nonpayment of overtime for 70+ hour workweeks; theft of tips; illegal deductions from wages; and payment of wages drastically below the legal minimum. In industries that form the backbone of the state's emerging economy - retail, service, restaurants, residential construction - noncompliance with the basic protections of New York Labor Law is often the norm, not the exception. Low-road, unscrupulous employers drive down standards, gaining an unfair competitive edge over those businesses that do follow the law. The resulting lost wages, tax revenue, and economic stability affect all New Yorkers. Every dollar stolen from the hands of a worker is a dollar's unfair advantage over the competition and a dollar's absence from commerce in our neighborhoods.

The work of New York Jobs with Justice / Urban Agenda has shown us that the most unscrupulous employers are nearly immune under the current law: threats of retaliation silence workers; faked payroll records disguise violations; and transfers of assets help violators evade paying judgments. And most of all, penalties under current law are simply too weak to actually deter wage theft.

The Wage Theft Prevention Act will foster broad-scale legal compliance with New York's most fundamental wage laws and end the unfair competition killing our small businesses that follow the law. The WTPA contains the best, most effective tools to fight wage theft - borrowing from other areas of New York law, and from proven models in other states and in federal law.

The Wage Theft Prevention Act includes four interlocking components to effect the necessary change:
1. The WTPA changes the economic incentives that encourage bad-actor employers to violate the law. Damages owed, on top of wages, will be increased from 25% to 100% - matching the damage level in twenty-four other states and under federal law. [Seven states impose even heavier penalties of 200%.] Unscrupulous employers will chose to comply with our states wage laws only when there is a real price tag on violations. These new damages provide just that leverage.
2. Workers must be encouraged to speak up for their rights - and be protected when they do. Savvy wage thieves know that often a simple threat is all it takes to scare workers away from reporting legal violations. The WTPA ensures that all the dirty tricks of the worst violators are

outlawed, and workers are meaningfully protected from retaliation for enforcing their rights. Importantly, the law closes loopholes for enforcement, giving the Department of Labor the same powers as the courts to remedy retaliation when it occurs. These amendments send a strong message to unscrupulous employers: retaliating against workers who demand their right to minimum wage and overtime is illegal, is expensive, and will not be tolerated.

3. New tools will ensure the worst violators have a harder time hiding assets to avoid judgment. The NYDOL will have new authority to get an accounting of assets from employer found in violation, and discretion to use innovative new collection measures. Wage thieves who fail to pay final orders within 90 days will have to pay an extra 15% -- defraying the cost to the DOL and to the worker for expensive efforts to enforce judgments.

4. Finally, the WTPA clarifies and consolidates employers' obligations to maintain records and give employees paystubs. Inconsistencies in the law currently complicate employers' ability to understand and follow their legal obligations. Key requirements are buried in regulations, rather than set out clearly in the statute itself. The WTPA codifies existing record keeping requirements in the statute, so that both employers' obligations, and the consequences of violations, are crystal clear.

The Wage Theft Prevention Act is targeted reform, hitting only those employers who refuse to follow our state's most basic employment laws. New York's working families and small businesses suffering from unfair competition urge you to join them in the fight against wage theft and sign this bill in to law.

Sincerely,

Matt Ryan
Director, New York Jobs with Justice / Urban Agenda

000020

# Empire State Restaurant & Tavern Association

12 Sheridan Avenue                                                              518-436-8121
Albany, NY 12207                                                           Fax 518-436-7287
Web Site  www.esrta.org                                         E-mail esrta@verizon.net
Brad Dixon, *President*                                    Scott Wexler, *Executive Director*


Hon. David Paterson
Governor
Executive Chamber
State Capitol
Albany, New York 12224


December 6, 2010


Re: A11726/S8380

Dear Governor Paterson:

I am writing on behalf of the members of the association to urge you to veto the above captioned bill. While this legislation has laudable objectives, the protection of workers' wages, the new mandates and burdens this legislation imposes on the overwhelming numbers of businesses that comply with the law and the commensurate costs is a burden our members cannot afford to bear.

We believe that existing law is more than sufficient to protect the wages of employees in New York. Our members have frequent encounters with the Department of Labor's compliance staff so we are certain they have significant resources. Rather than imposing new burdens on business the Department's enforcement practices should be examined to determine if the goals of this legislation can be accomplished without increasing the difficulty of operation of business in New York State.

We encourage the Department of Labor to increase their education and voluntary compliance efforts – a step they've failed to do in spite of the recommendation of your Small Business Task Force. Not only will this increase compliance with the Labor Law by employers, but it would also free up resources to protect the wages of workers being stolen by crooked employers without hurting the vast majority of businesses that seek to comply with the law.

We believe focusing on the problem operators not all employers is a better compliance strategy as well as a more business friendly policy. Accordingly, we urge you to disapprove this bill.

Sincerely,

*Scott Wexler*

Scott Wexler
Executive Director



December 6, 2010

Peter Kiernan, Esq.
Counsel to the Governor
Executive Chamber
State Capitol
Albany, NY 12224

<div align="center">

**RE: A.11726/ S.8380 – Wage Theft Prevention Act**

</div>

Dear Mr. Kiernan:

The Albany-Colonie Regional Chamber of Commerce, which represents 2,400 businesses in the Capital Region, opposes this legislation, which would only increase the difficulty of doing business in New York by creating additional and unnecessary burdens on employers.

The Chamber believes that the state's existing labor laws provide adequate wage protection for employees and that this legislation in unnecessary. The bill was based on the 2008 National Employment Law Project's report, *Working Without Laws: A Survey of Employment and Labor Law Violations in New York City,* which only interviewed 1,432 employees working in New York City. This small statistical sample should not be used to justify a new state law that would impose dramatic increases in administrative costs and penalties to businesses throughout the state.

The Labor Department, along with the Attorney General and others, has heightened enforcement efforts and, in doing so, has conducted numerous audits and industry sweeps, as well as provide fraud hotlines to report businesses that are not in compliance with New York's employment laws. The percentage of non-compliant employers found through these avenues is small in number and does not warrant the dramatic increases in administrative burdens, costs and penalties that this legislation would apply to all businesses.

This proposal would create a paperwork nightmare for employers with draconian sanctions for infractions, as well as perverse incentives for disgruntled employees to raise anecdotal claims, which will inevitably lead to opportunistic employees and plaintiff's lawyers seeking statutory "redress" which can adversely impact a business.

In this economy, the state should be adopting measures that will encourage job growth, not deter it. For these reasons, we urge the Governor to veto this legislation.

Sincerely,

Diana A. Ehrlich
Vice President, Advocacy and Communications
Albany-Colonie Regional Chamber of Commerce

# Marsha K. Purdue
**Attorneys at Law**

5 Sagamore Street, Suite A
Glens Falls, NY 12801
**Phone:** (518) 743-0455 **Fax:** (518) 743-1827
Email: purdue@nycap.rr.com
*Service by Fax or Email will not be accepted*

Marsha K. Purdue, Esq.                                    Kimberly M. Wells, Esq.

December 17, 2010

Honorable David A. Paterson
State Capitol
Albany, NY 12224

RE:    Request for Veto - S.8320/A11726

Dear Governor Paterson:

The above referenced bill, the Wage Theft Protection Act, would expand many current and longstanding employer obligations under the state's labor law and add new penalties for employers. We oppose enactment of this proposal and strongly urge your veto of this legislation.

Statewide, New York needs 500,000 new jobs just to return to pre-recession employment levels. Those jobs will come only when employers decide it is worth expanding and creating new jobs in New York State. This bill would compound the difficulty of doing business in NYS by creating an unnecessary and burdensome paperwork and penalty regime. At a time when our state economy is struggling, the imposition, particularly on small and medium sized businesses, is vastly disproportioned to any genuine or valid concern for proper pay and compliance with the state labor law requirements.

These expansions are proposed for no apparent reason other than "Studies indicate...a large number of employees are earning less than minimum wage..." and "...not all receiving the appropriate amount of overtime compensation" and "...employers are also failing to provide basic necessities such as, days of rest and meal period breaks..." Nothing in the bill or memo details the inadequacy of the current and longstanding employee protections of these provisions in the state's labor law.

Work in New York and other states has gradually shifted to a service and high tech economy. Many of the longstanding employer obligations and the expansions proposed in this bill are geared to an industrial model that is no longer representative of the workplace. Employees are much more aware of workplace rights, assert them and are not in need of overreaching state government apparatus.

Governor Paterson
December 17, 2010
Page 2

The requirement to provide extensive notices and records in the "primary language of the employee" adds a multi-lingual burden upon NYS employers that is unfair, unwarranted and unprecedented. Employees already have non-discrimination protections, but adding this additional language obligation to an employer's paperwork burdens is reminiscent of "no good deed goes unpunished." Employers providing genuine equal employment opportunity are greeted with the need to obtain translators and keep multi-lingual records, with any miscue being a "cause of action".

Employers who miss the short ten (10) day period to provide a bond pending appeal from an adverse administrative determination then are subjected to severe sanctions, including accountings and civil penalties of up to $10,000. In the administrative proceedings, civil penalties of $500 for each failure of compliance regarding rate of pay or differentiation in pay because of sex are imposed and there are "liquidated damages" for underpayments, too. Mistakes in notices or record keeping regarding rates of pay or overtime are punished by acceptance of anecdotal employee testimony and the employer has a heightened burden of providing "specific, detailed, and credible rebuttal evidence". Experienced practitioners know that such a system foments self-serving testimony by opportunistic employees and their contingent fee counsel.

It makes no sense that the state legislature is moving forward with this burdensome new proposal with its new obligations on the very same business they are turning to for those new jobs.

For these reasons, I oppose this legislation and strongly urge that you veto this egregious legislation immediately.

Very truly yours,

Marsha K. Purdue, Esq.

MKP/jh

000025

**COLUMNISTA INVITADO**

# Mi familia necesita mi pago

**LUIS OLIVO**

Yo trabajaba por más de siete años como empacador en un supermercado Fine Fare en El Bronx desde las 7:30 de la mañana hasta las 9 de la noche con sólo media hora de descanso, seis días a la semana.

Nunca me pagaron nada, trabajaba por propinas. Después de empacar las bolsas, las llevábamos a la casa de los clientes. A veces tenía que subir hasta cinco o seis pisos sin elevador. Otras, los clientes nos daban una propina y a veces no. Trabajábamos 5 empacadores allí y Fine Fare nunca pagó a ninguno de nosotros. Trabajando sólo por propinas uno nunca sabe cuanto va a ganar y es difícil saber si va a poder pagar la renta, la luz, el teléfono. Si hubiera estado ganando aunque fuera el salario mínimo, había podido vivir mucho más tranquilo y más cómodo.

Lo que hizo Fine Fare es ilegal: se llama robo de salario. Ahora soy miembro de Trabajadores en Acción de Se Hace Camino Nueva York y estamos luchando para que se apruebe el Acta de Ley para Prevenir el Robo de Salario (Wage Theft Prevention Act), una propuesta de ley estatal que aumentaría las penalidades por el robo de salario para que los empleadores pensaran dos veces antes de robar el sueldo de sus propios trabajadores. El problema de robo de salario es muy grave –tan solo en la Ciudad de Nueva York los empleadores roban alrededor de mil millones de dólares al año de los salarios de sus trabajadores. Aunque lo que me pasó a mi sucede también con muchos trabajadores, pero no dicen nada cuando hay una violación, porque tienen miedo de perder su trabajo. Esta ley también fortalecería las protecciones en contra de las represalias.

Una versión de esta ley ya fue aprobada por el Senado Estatal y otra versión fue aprobada por la Asamblea, pero falta la reconciliación y aprobación nuevamente y la firma del gobernador. Sheldon Silver, John Sampson y David Paterson tienen la oportunidad de hacer algo que beneficiaría a todos los trabajadores del estado de Nueva York. Necesitamos que tres de ellos hagan todo necesario para que esta propuesta de ley sea aprobada y firmada este año. Las familias de los trabajadores merecen este apoyo.

> **▶¿Piensas que el robo de salario es un problema común?**
> **Díganos a eldiariony.com/opinion.**

LUIS OLIVO
Miembro Activo de Trabajadores en Acción, el comité de trabajadores de Se Hace Camino Nueva York.



**The Business Council**

KENNETH ADAMS
President and CEO

December 2, 2010

Peter Kiernan, Esq.
Counsel to the Governor
Executive Chamber
State Capitol
Albany, NY 12224

Re: Request for veto of S.8380/A.11726

Dear Mr. Kiernan:

The Business Council opposes this bill and requests that it be vetoed.

The "Wage Theft Prevention Act" would affect over 500,000 businesses statewide and compound the difficulty of doing business in New York State by creating an additional unnecessary and burdensome paperwork and penalty regime. At a time when our state economy is struggling, the imposition of this, particularly on small and medium sized businesses, is vastly disproportionate to pay and compliance violations under NYS Labor Law and regulation requirements. Currently, employers provide employees their pay rate, overtime rate, if applicable, and pay day information in writing at the time of hiring. This bill would double the amount of information required plus require that it be provided in writing every year with an accompanying written acknowledgement from the employee. In addition, if there are any changes in any of the information on the initial or annual notice, it must be communicated in writing to the employee at least a calendar week before the changes take affect.

Besides requiring that double the current amount of information be provided by employers to employees, the proposal would also require employers to provide any "...such other information as the commissioner deems material and necessary." The proposed legislation gives no further indication of what this information might be. This is entirely too arbitrary and open ended, and based on our experience last year with Chapter 270 of 2009, significantly more information will be required by the commissioner than the legislative proposal requires. Initially with Chapter 270 last year, the commissioner required employer use of the Labor Department's templates. These templates required substantially more information than the new law required. There were so many complaints about this additional information requirement that the Department changed its position and made the use of the templates voluntary, as it should have from the outset. In this current legislative proposal, the Department's providing of templates for notices in foreign languages does not alter the significant additional paperwork preparation requirement and six year record keeping obligations that transcend the bounds of reason and continue to make NYS inhospitable to business and a target of punitive actions for mistakes in payment.



This proposed legislation creates a paperwork trap for employers with draconian sanctions for infractions, as well as perverse incentives for disgruntled employees to raise anecdotal claims. Punitive liquidated damages and civil action damages as well as attorneys fees, under a six year statute of limitations, will inevitably lead to opportunistic employees and plaintiff's lawyers seeking statutory "redress" which can adversely impact a business.

Employers are further disadvantaged under this legislative proposal by unparalleled sanctions for failure to pay irrespective of ability to do so, with attorney's fees and costs being imposed in collection actions, combined with an automatic 15% increase in the amount of a judgment after 90 days. A requirement for an accounting of the assets of the employer, coupled with a civil penalty of up to $10,000 for failure to provide such accounting within 10 days, is yet another layer of disincentive to do business in New York State or have a well capitalized business here.

This bill is based on the National Employment Law Project's report, <u>Working Without Laws: A Survey of Employment and Labor Law Violations in New York City</u>. It is a 2008 study using interviews with 1,432 employees working in New York City. We strongly object to the results of a New York City study being used as even a partial justification for a new state law that would impose dramatic increases in administrative costs and penalties on more than 500,000 private employers all across New York State. The Labor Department along with the Attorney General and others has, through their current and varied enforcement mechanisms, conducted numerous industry sweeps, fraud hotlines, etc. in an effort to ensure employers are complying with New York's employment laws. Even with their widely publicized raids and audits, the percentage of non-compliant employers is statistically small and does not warrant the dramatic increases in administrative burden, costs and penalties proposed to be applied across all New York State employers. The existing interagency framework for employment law compliance to weed out the bad actors should continue with appropriate display of data to evaluate areas where the law may be in need of improvement.

This study also cites increased effectiveness of the state Labor Department's efforts in pursuing wage and overtime violations in recent years. This should be reason enough <u>not</u> to propose new burdensome administrative costs and penalty requirements on New York State private employers and confer new powers on the commissioner. Instead, without citing a failure of any of the current labor laws, rules or regulations, the legislature moved ahead with this proposed legislation. Nothing in the bill or sponsor's memo details any inadequacy of the current and longstanding employee protections in the state's labor laws.

For these reasons, The Business Council opposes this legislation and respectfully urges that it be vetoed.

Sincerely,

December 2, 2010



**The Business Council**

# Legislative Memo

**Contact:**
**Tom Minnick**
Vice President, Human Resources
T 518.465.7511 x210
**www.bcnys.org**

---

| | |
|---|---|
| **BILL:** | **A.11726 (Rules Heastie) / S.8380 (Savino)** |
| **SUBJECT:** | **NYS Wage Theft Protection Act** |
| **DATE:** | **November 29, 2010** |

**OPPOSE**

### A.11726 (Rules Heastie) / S.8380 (Savino)

This fifteen page bill, the Wage Theft Protection Act, would expand many current and longstanding employer obligations under the state's labor law and add new penalties for employers. The Business Council opposes enactment of this proposal.

- These expansions are proposed for no apparent reason other than "Studies indicate ...a large number of employees are earning less than minimum wage..." and "...not all receiving the appropriate amount of overtime compensation" and "...employers are also failing to provide basic necessities such as, days of rest and meal period breaks..." Nothing in the bill or memo details the inadequacy of the current and longstanding employee protections of these provisions in the state's labor law.

- Work in New York and other states has gradually shifted to a service and high tech economy. Many of the longstanding employer obligations and the expansions proposed in this bill are geared to an industrial model that is no longer representative of the workplace. Employees are much more aware of workplace rights, assert them and are not in need of an overreaching state government apparatus.

- The requirement to provide extensive notices and records in the "primary language of the employee" adds a multi-lingual burden upon NYS employers that is unfair, unwarranted and unprecedented. Employees already have non-discrimination protections, but adding this additional language obligation to an employer's paperwork burdens is reminiscent of "no good deed goes unpunished." Employers providing genuine equal employment opportunity are greeted with the need to obtain translators and keep multi-lingual records, with any miscue being a "cause of action". Employers who miss the short ten (10) day period to provide a bond pending appeal from an adverse administrative determination then are subjected to severe sanctions, including accountings and civil penalties of up to $10,000. In the administrative proceedings, civil penalties of $500 for each failure of compliance regarding rate of pay or differentiation in pay because of sex are imposed and there are "liquidated damages" for underpayments, too. Mistakes in notices or record keeping regarding rates of pay or overtime are punished by acceptance of anecdotal employee testimony and the employer has a heightened burden of providing "specific, detailed, and credible rebuttal evidence". Experienced practitioners know that such a system foments self-serving testimony by opportunistic employees and their contingent fee counsel.

- Statewide, New York needs 500,000 new jobs just to return to pre-recession employment levels. Those jobs will come only when employers decide it is worth expanding and creating new jobs in New York State. This bill would compound the difficulty of doing business in NYS by creating an unnecessary and burdensome paperwork and penalty regime. At a time when our state economy is struggling, the imposition, particularly on small and medium sized businesses, is vastly

disproportioned to any genuine or valid concern for proper pay and compliance with the state labor law requirements.

- It makes no sense that the state legislature is moving forward with this burdensome new proposal with its new obligations on the very same businesses they are turning to for those new jobs.

For these reasons, The Business Council opposes this legislation and strongly urges that it not be enacted by the New York State Legislature.

The Business Council of New York State, Inc. | 152 Washington Avenue | Albany, New York 12210-2289
"));



Ted Potrikus
Executive Vice President
Director of Government Relations

December 3, 2010

Hon. David Paterson
Governor, State of New York
Executive Chamber
State Capitol
Albany, New York   12225

                          Re:   S.8380  (Savino)

Dear Governor Paterson:

     The Retail Council of New York State opposes the captioned legislation,
rooted as it is in yet another mandate on a private sector in New York State
already beleaguered by multiple layers of expensive red tape.

     Far from the simple 'codification of current regulation' claimed by its
supporters, the captioned legislation would impose on New York retailers (and
indeed the entire employer community) additional and new annual reporting
requirements.  As you know, the measure also would increase substantially the
fines that could be levied against employers, as well -- from administrative
action by the Department of Labor to civil penalties handed down by the court,
as well as statutory damages and a private right of action in certain cases.

     Surely the Retail Council of New York State and its member stores abhor
the very idea of an employer "stealing" wages from an employee, and do not
disagree that penalties against wage theft should be adjudicated vigorously.
We are concerned, however, that the captioned legislation -- in capturing all
employers within its broad, paperwork-heavy, and expensive maze of mandates -
- casts the net too broadly and assumes, incorrectly and unfairly, that all
employers should be suspected of wrongdoing.

     Because its high costs and promises of further taint of New York State as
anti-jobs and anti-employer, the Retail Council opposes this bill and urges
your disapproval.  Thank you for your consideration of our views.

                          Sincerely,

                          Ted Potrikus
                          Executive Vice President
                          Director of Government Relations



**iiabny**
INDEPENDENT INSURANCE
AGENTS & BROKERS OF NEW YORK, INC.

December 7, 2010

Peter D. Kiernan, Esq.
Counsel to the Governor
State of New York
Executive Chamber
State Capitol
Albany, NY 12224

*RE:  S.8380 (A.11726)*

Dear Mr. Kiernan:

**The Independent Insurance Agents & Brokers of New York (IIABNY) opposes S.8380.**
This legislation with its dramatic increase in paperwork requirements, potential litigation and
penalties will have a severe negative impact on the members of IIABNY, many of whom are small
employers.

The Independent Insurance Agents & Brokers of New York is the oldest and largest producer
association in New York State.  We represent approximately 3,600 independent business owners
and principals of 1,800 independent insurance agency locations in the State of New York,
comprising more than 12,500 individuals who sell and service the personal and business
insurance needs of consumers.

The bill would double the amount of information required to be provided to employees and require
that it be provided every year with an employee acknowledgement. We believe this is a
substantial and unnecessary requirement for our members.

Additionally, the legislation would dramatically expand the authority of the Labor Commissioner to
require other information that he or she deems necessary with no limitations of definitions for that
information contained in the bill.

The proposal also creates new penalties for even minor unintended violations of the law.
The damages and potential civil actions which are allowed will assure a substantial increase in
litigation which will further erode an already difficult business climate.  The negative impact of this
legislation will be certain to drive businesses with limited profits out of business.  In addition,
companies considering New York as a place to do business will be forced to consider other
states.

We find it difficult to understand why sponsors and advocates for this proposal would draft it to be
so over reaching, punitive and difficult in one of the most difficult economic periods in our history.
We believe it is poorly timed and will have a substantial negative impact on all businesses.

We respectfully urge the Governor's veto of S.8380.

Sincerely,

*Michael V. Barrett*

Michael V. Barrett
Legislative Representative



000032

Legislative Office • 95 Columbia Street, Albany, NY 12210 • p: 518.465.5340 • f: 518.465.6023 • www.iiabny.org



December 3, 2010

Governor David Paterson
State Capitol
Albany, NY 12224

**Re: Request to Sign into Law S8380/A11726**

Dear Governor Paterson:

On behalf of Make the Road New York's membership of nearly 8,000 families, we write to urge you to sign the **Wage Theft Prevention Act**, A11726/S8380, in to law.

Every day across New York State, countless workers face rampant abuse on the job: nonpayment of overtime for 70+ hour workweeks; theft of tips; illegal deductions from wages; and payment of wages drastically below the legal minimum.  In industries that form the backbone of the state's emerging economy – retail, service, restaurants, residential construction – noncompliance with the basic protections of New York Labor Law is often the norm, not the exception.  Low-road, unscrupulous employers drive down standards, gaining an unfair competitive edge over those businesses that *do* follow the law.  The resulting lost wages, tax revenue, and economic stability affect all New Yorkers.  Every dollar stolen from the hands of a worker is a dollar's unfair advantage over the competition and a dollar's absence from commerce in our neighborhoods.

Make the Road New York is New York's largest community-based, immigrant organization, with nearly 8,000 dues-paying members.   For more than a decade, Make the Road New York has witnessed first-hand the struggle of working families to maintain economic stability in the face of rampant wage theft.  Our work on the front-lines shows that the most unscrupulous employers are nearly immune under the current law: threats of retaliation silence workers; faked payroll records disguise violations; and transfers of assets help violators evade paying judgments.

The Wage Theft Prevention Act will foster broad-scale legal compliance with New York's most fundamental wage laws and end the unfair competition killing our small businesses that follow the law.  The WTPA contains the best, most effective tools to fight wage theft – borrowing from other areas of New York law, and from proven models in other states and in federal law.

**301 GROVE STREET**
BROOKLYN, NY 11237
TEL 718 418 7690
FAX 718 418 9635

**92-10 ROOSEVELT AVENUE**
JACKSON HEIGHTS, NY 11372
TEL 718 565 8500
FAX 718 565 0646

**479 PORT RICHMOND AVENUE**
STATEN ISLAND, NY 10302
TEL 718 727 1222
FAX 718 981 8077

WWW.MAKETHEROADNY.ORG

000033

The Wage Theft Prevention Act includes four interlocking components to effect the necessary change:

1) The WTPA *changes the economic incentives* that encourage bad-actor employers to violate the law.  Damages owed, on top of wages, will be increased from 25% to 100% – matching the damage level in twenty-four other states and under federal law.  [Seven states impose even heavier penalties of 200%.]  Unscrupulous employers will chose to comply with our states wage laws only when there is a *real* price tag on violations.  These new damages provide just that leverage.

2) Workers must be encouraged to *speak up for their rights* – and be protected when they do.  Savvy wage thieves know that often a simple threat is all it takes to scare workers away from reporting legal violations.  The WTPA ensures that *all* the dirty tricks of the worst violators are outlawed, and workers are meaningfully protected from retaliation for enforcing their rights.  Importantly, the law closes loopholes for enforcement, giving the Department of Labor the same powers as the courts to remedy retaliation when it occurs.  These amendments send a strong message to unscrupulous employers: retaliating against workers who demand their right to minimum wage and overtime is illegal, is expensive, and will not be tolerated.

3) New tools will ensure the worst violators have a harder time hiding assets to avoid judgment.  The NYDOL will have new authority to get an accounting of assets from employer found in violation, and discretion to use innovative new collection measures.  Wage thieves who fail to pay final orders within 90 days will have to pay an extra 15% -- defraying the cost to the DOL and to the worker for expensive efforts to enforce judgments.

4) Finally, the WTPA *clarifies and consolidates employers' obligations* to maintain records and give employees paystubs.  Inconsistencies in the law currently complicate employers' ability to understand and follow their legal obligations.  Key requirements are buried in regulations, rather than set out clearly in the statute itself.  The WTPA codifies existing record keeping requirements in the statute, so that both employers' obligations, and the consequences of violations, are crystal clear.

The **Wage Theft Prevention Act** is targeted reform, hitting only those employers who refuse to follow our state's most basic employment laws.  New York's working families and small businesses suffering from unfair competition urge you to join them in the fight against wage theft and sign this bill in to law.

Sincerely,

Ana Maria Archila
Co-Executive Director

Deborah Axt
Deputy Director



WEATHER
HIGH 59° LOW 34°

Chilly, cranky, damp
Better off than a turkey
All in perspective/A2

$1.00

timesunion.com

ALBANY, NEW YORK • TUESDAY, NOVEMBER 23, 2010

## Activists ready for last shot

By JIMMY VIELKIND Capitol Bureau
Published: 12:27 a.m., Tuesday, November 23, 2010

ALBANY -- The organization Make the Road New
York is bringing a busload of activists to Albany on
Monday -- and they won't be looking for post-
Thanksgiving shopping deals.

Instead, they're pushing for a bill designed to
stiffen penalties for employers who withhold
worker wages, a measure currently sitting in
legislative purgatory. Make the Road is one of
many groups hoping that a special session called by Gov. David Paterson will provide an
opportunity to resolve their issues.

And with the state Senate looking as though it might be controlled by Republicans in January,
there's a renewed sense of urgency.

"Republicans are not as concerned with the plights of low-wage workers, and we're worried that if
(the wage bill) doesn't pass now, it will be a much harder battle in next year's legislative session,"
said Ady Barkan, an advocate for Make the Road. "So we're doing a full-court press now."

Other advocates share that thinking, particularly those backing bills that have passed just one
chamber. The legislative session concluded this summer without the customary flurry of all-
nighters, and the Assembly -- having completed its work on the tardy state budget -- left Albany
before the Senate.

Discussions between the Senate, Assembly and governor's office on the agenda for Monday's
session are ongoing, with measures like the wage theft bill, a moratorium on natural gas drilling
and a measure expanding abortion rights all possible.

Paterson repeated Monday that the purpose of the session is to "consider reducing the deficit,
which has grown because many of our budget claims ... have been bottled up in the courts, and
we're going to need about $315 million."

The governor has nominal control over a special session agenda; the formal proclamation issued
by his office lists issues for consideration, and legislation is sent from his office -- but often the
Assembly and Senate gavel into a continuation of the regular session for the year, allowing them to
act on any bill that was introduced since January 2009.

Lawmakers are likely to pass legislation allowing New York to spend additional federal education aid appropriated by the federal government this summer, but it's less clear that they'll heed Paterson's call to cut spending.

Many hoping for action view the Senate warily. All 32 Democrats are needed to pass a bill along party lines, and lame ducks like Sen. Pedro Espada Jr. -- ousted in a September primary -- have little incentive to fall into line.

"Everything's been so unclear that I have not done anything yet," said Kelli Conlin, president of NARAL Pro-Choice New York, a group advocating for expanded abortion rights in the Reproductive Health Act. "Once it becomes a little clearer to everyone if they're really going back and what their focus will be, you're going to see us and a variety of groups pushing them to take up legislation that has a risk of not passing under Republican control. But we know we have the votes regardless of who's in the leadership."

Legislative sources are less confident. No Republicans have publicly proclaimed their support for the measure. Senate Democrats committed to bring the bill to a vote in 2011 -- a promise that prompted NARAL to endorse several Democratic senators -- although some in the party questioned whether the votes would be present if the measure came to the floor.

Often, though, the question is choosing to take up the bill. Assemblyman Carl Heastie, the Bronx Democrat who is the sponsor of the wage theft bill, is working to iron out "minor details" between a version that passed his chamber and another that passed the Senate. Absent a final agreement, he might push to have the Assembly take on the Senate's bill.

"I think it's less likely that the Republicans -- any Republicans -- will be as supportive of this bill as a Democratic Senate. So this and other legislation, we have to get done now," he said. "We always knew that, no matter what, we would have to come back. There was always not a 'When?' but a 'What do we do when we come back?'"

"I'm still not sure," he said, "and we're still developing an agenda."

Reach Vielkind at 454-5081 or jvielkind@timesunion.com.

TIMES UNION 3 Albany, New York   COMMENTARY   Wednesday, November 24, 2010 ** 1

# Wages belong to the workers

**By ANNETTE BERNHARDT**

With legislators coming back to Albany next week to plug the state's budget hole, there's an unfinished piece of business that — with one simple vote — could pump millions of dollars into our local communities without costing the state a dime. A bill to fight wage theft has passed both houses. All that's needed is for the Assembly to vote on the Senate's version and send it to the governor to sign in time for the holidays.

With this one vote, we'd finally have the strong tools to go after the wage theft crisis that is hurting communities across the state. In New York City alone, a study by the National Employment Law Project earlier this year found that 21 percent of low-wage workers are paid less than the minimum wage, 77 percent weren't paid time-and-a-half when they worked overtime, and 69 percent didn't receive any pay at all when they came in early or stayed late after their shift.

We're talking about the jobs that literally make our economy run — home care and child care workers, dishwashers, food prep workers, construction workers, cashiers, laundry workers, garment workers, security guards and janitors. Hundreds of thousands of them aren't getting even the most basic protections that the rest of us take for granted.

And make no mistake, the problem isn't going away. These types of jobs account for eight out of the top 10 occupations projected to grow the most by 2018.

Wage theft in New York is not incidental, aberrant or rare, committed by a few rogue employers. Over the last two years, the state Department of Labor has brought cases against restaurants in Ithaca, a printer in Albany, horse trainers at the Saratoga Race Course, hotels in Lake George and car washes



DAVID PUCKETT/McCLATCHY-TRIBUNE

across the state. Altogether, the agency recovered $28.8 million in stolen wages for nearly 18,000 New Yorkers in 2009 — the largest amount ever. That's a valiant effort to be sure, but still not nearly enough to match the scale of the problem.

What would it take to ramp up the fight?

Three critical tools are written into the Wage Theft Prevention Act. First, the bill increases the costs to employers of violating the law, which is probably the most urgent reform that legislators

can implement. When we talked to employers in low-wage industries, we heard over and over the calculus that results in wage theft: If you get caught, you basically just end up paying the wages you would have paid in the first place, so what's to lose?

The bill would force employers to pay three times the unpaid wages, which dramatically ups the ante.

Second, the bill protects workers who come forward to assert their rights, by establishing stiff penalties to punish employers who retaliate against them.

That's important because our survey found that when workers made a complaint to their employer or government agency, 42 percent experienced illegal retaliation — such as being fired or having their wages or hours cut. That is enough to discourage even the most committed worker from filing a wage theft claim.

Third, the bill makes sure that workers are actually able to collect their unpaid wages, by stopping employers from hiding assets and defaulting on judgments. Right now, it's all too common that a worker successfully brings a wage theft claim, only to see the employer declare bankruptcy, leave town, close shop or otherwise evade paying up. If we want workers to come forward, we have to show that we can get them their unpaid wages.

These are common sense solutions that can turn the tables on wage theft, and in the process bring much-needed stimulus to our local economies.

In New York City alone, more than 300,000 workers are robbed of $18.4 million every week, totaling close to $1 billion a year. Extrapolate that to the state level, and you get a staggering amount of potential stimulus that's being taken out of the pockets of working families and local businesses, and state coffers.

Even in good times, fighting wage theft is smart policy. In a recession, it's such a no-brainer that for legislators to leave it on the table is the policy equivalent of malpractice. All it takes is one simple vote in the Assembly next week.

▶ *Annette Bernhardt is policy co-director of the National Employment Law Project and lead author of "Working Without Laws: A Survey of Employment and Labor Law Violations in New York City."*

**The New York Times** Reprints

This copy is for your personal, noncommercial use only. You can order presentation-ready copies for distribution to your colleagues, clients or customers here or use the "Reprints" tool that appears next to any article. Visit www.nytreprints.com for samples and additional information. Order a reprint of this article now.



November 26, 2010

# Memo to Albany: It's Your Job

Gov. David Paterson has called legislators back to Albany on Monday to tidy up a few matters before Andrew Cuomo, the governor-elect, takes office in January. So far, the prospects look bad.

Some lawmakers are grumbling about Mr. Paterson forcing them to return to work, even for a day. Others are irritated, understandably, that they have not seen details of any legislation that Mr. Paterson has in mind.

Worst of all, Democrats in the slim majority in the State Senate are arguing that they don't want to endorse more cuts of $315 million to $1 billion from this year's state budget. If the Republicans take over in January, as now seems likely, Democrats want to let them make these tough and unpopular cuts.

Note to legislators: stop whining and do your job.

¶The top item for Monday is repairing this year's budget deficit, caused by a drop in tax revenues and the state's failure to collect taxes on cigarettes sold to non-Indians by Indian reservations. To fill the hole, Mr. Paterson will ask for authority to cut every state budget by about 2 percent. That is the fairest way to go. Mr. Cuomo should consider this a housewarming gift. If Mr. Paterson cuts, then Mr. Cuomo will have only about $9 billion to carve out of an operating base of roughly $80 billion next year. Legislators should pass along at least $600 million from the federal government to help save educators' jobs across the state, as Mr. Paterson is asking.

¶They should create a commission to figure out how to raise judicial — and only judicial — salaries.

¶Mr. Cuomo has made it clear that he wants to end "baby-sitting" of empty prisons by state workers. He needs the Legislature to waive the requirement that workers need a year's notice before closing a prison. Mr. Paterson has this on his list of proposals.

¶Legislators still need to enact part of this year's budget on education and issues such as forgiving student loans for about 70 doctors who work in underserved areas of the state.

¶The Assembly could easily pass a Senate bill making it far tougher and more expensive for employers to cheat the lowest-paid workers in nail salons or car washes or restaurants.

¶A proposal to revive New York City's Off-Track Betting parlors is on the governor's list, but here's a place where the Legislature should not rush to act. Details are sketchy, but no taxpayer should be asked to pay for these patronage centers that were supposed to bring the public revenue, not use it up.

Ideally, New York's lawmakers should return to Albany to do the voters' bidding — by passing ethics reform or a nonpartisan redistricting commission, for example.

If they can't manage that, the lawmakers should still hand Mr. Cuomo a clean slate in January.

Case 1:21-cv-04099-AT-RWL   Document 101-11   Filed 08/12/22   Page 41 of 140

NYDailyNews.com
# DAILY❋NEWS

Get Morning Home Delivery of the Daily News for up to 70% off.
Call (888) 393-3760

# Time to come to aid of city's most vulnerable residents and wage war on unpaid wages

Albor Ruiz - Ny Local

Thursday, November 11th 2010, 4:00 AM

Wage theft is exploitation at its worst and, unfortunately, in New York it is a veritable crime wave.

Not surprisingly, most victims are the city's most vulnerable residents: its low-wage and immigrant laborers.

The story of Luis Olivo, who for seven years worked at a Bronx supermarket without receiving a salary - is a perfect example of the outrageous abuses committed with impunity every day by dishonest employers.

"I worked at Fine Fare supermarket from 7:30a.m. until 9 p.m. with half an hour break, six days a week," said Olivo, 45, a Dominican immigrant who came to New York in 1990. "They never paid me anything; I only worked for tips. There were five baggers and Fine Fare never paid any of us."

Make the Road New York, a nonprofit advocacy group, estimates Olivo is owed $200,000 in stolen wages and damages.

Olivo was one of several victimized workers who told their stories of abuse yesterday at a City Council hearing on a proposed resolution demanding the state Legislature pass the Wage Theft Prevention Act, and urged Gov. Paterson to sign it as soon as possible.

"What this resolution would do is to engage city government in telling the state that this is a significant problem for the city," said Andrew Friedman, of Make the Road New York.

His group is part of the coalition of low-income workers, small businesses, organized labor, non-profit and legal services providers working for passage of the bill this year.

"[The resolution] would tell the state this law is important for the exploited workers and the honest employers who want a level playing field, but also for the economy," added Friedman.

Different versions of the bill were approved this summer by the state Assembly, where it was sponsored by Carl Heastie (D-Bronx), and in the Senate, where its main sponsor was Diane Savino (D-S.I.).

The bill would increase penalties and tighten enforcement of the New York laws protecting workers - such as Olivo - from nonpayment and underpayment. It would also encourage employees to report violations and shield them when they blow the whistle. In addition, it provides mechanisms to collect judgments.

"What Fine Fare did is illegal: it's called wage theft," Olivo, a member of Make the Road New York, told the Council members. "The same thing that happened to me happens to a lot of workers, but most people don't want to say anything because they're afraid they'll lose their job. We need more protection to make it harder for employers to exploit their workers."

Another worker, Eudocio Alvarado, also found the

Advertisement



GROUPON
The Daily Deal
50% OFF
**Maoz Vegetarian**
New York City : $3 for $6 Worth of Fresh Fare and Drinks at Maoz Vegetarian

Get this and other Daily Deals at:
## www.PrintGroupon.com/5a801

Print Powered By ▐F▌FormatDynamics™

NYDailyNews.com
## DAILY✦NEWS

Get Morning Home Delivery of the Daily News for up to 70% off.
Call (888) 393-3760

courage to testify at the hearing with the help of
Make the Road New York.

"I worked for seven years at Village Farm Grocery, a
popular, 24-hour grocery store in the East Village,"
he said. "I worked 12 hours a day for six, often
seven days a week. My starting pay was about $3.33
per hour and I was never given time-and-a-half for
the over 40 hours of overtime that I worked every
week."

Abuses like these are so widespread that the
National Employment Law Project estimates a
whopping $1 billion is stolen from city workers
every year.

"New York can't wait any longer for these critical
reforms," said Amy Carroll, legal director of Make
the Road New York.

Olivo put it this way: "The government of New York
has the opportunity to do something that would
benefit all workers in the state. We need this bill to
be passed and signed into law this year. Working
families deserve this support."

aruiz@nydailynews.com

Advertisement

 

SAVE up to 64%
Plus, get
3 FREE Gifts

Special Code: 45069ZWN

To Order: www.OmahaSteaks.com/print71 or call 1-877-586-4455

Print Powered By FormatDynamics



THE NEW YORK CITY COUNCIL

CHRISTINE C. QUINN, SPEAKER

| Council Home | Legislation | Calendar | City Council | Committees |

Details    Reports

| | | | | |
|---|---|---|---|---|
| File #: | Res 0245-2010 Version: A | | Name: | Establishing the Wage Theft Prevention Act. (A.10163/S.8380) |
| Type: | Resolution | | Status: | Reported from Committee |
| | | | Committee: | Committee on Civil Service and Labor |
| On agenda: | 5/25/2010 | | Final action: | |
| Enactment date: | | | Law number: | |
| Title: | Resolution calling on the New York State Legislature to reconcile and pass A.10163 and S.8380 and the Governor to sign into law, an act to amend the Labor Law in relation to establishing the Wage Theft Prevention Act. | | | |
| Sponsors: | Melissa Mark-Viverito, Brad S. Lander, Gale A. Brewer, Margaret S. Chin, Rosie Mendez, Annabel Palma, Jumaane D. Williams, Ydanis A. Rodriguez, Robert Jackson, James Sanders, Jr., James F. Gennaro, James G. Van Bramer | | | |
| Attachments: | Res. No. 245 - 5/25/10, Committee Report 11/10/10, Committee Report 11/15/10 | | | |

History (12)    Text

Proposed Res. No. 245-A

Resolution calling on the New York State Legislature to reconcile and pass A.10163 and S.8380 and the Governor to sign into law, an act to amend the Labor Law in relation to establishing the Wage Theft Prevention Act.

By Council Members Mark-Viverito, Lander, Brewer, Chin, Mendez, Palma, Williams, Rodriguez, Jackson, Sanders Jr., Gennaro and Van Bramer

Whereas, Recent studies conducted by the National Employment Law Project indicated that wage theft costs the average low-wage worker in New York State $3,016 per year, comprising 15% of his or her annual income; and

Whereas, In New York City alone, wage theft losses equal more than $18.4 million per week, nearly $1 billion per year; and

000042

Case 1:21-cv-04099-AT-RWL   Document 101-11   Filed 08/12/22   Page 44 of 140

Whereas, In addition, the same studies indicated that over a quarter of low-wage workers receive less than the legal minimum wage and 67% of low-wage workers who work more than 40 hours per week do not receive time-and-a-half for overtime as required by law; and

Whereas, Workers are terrified to speak up for their rights because they often face discharge and other retaliation as a result; and

Whereas, Responsible businesses are struggling to revive our state's economy and there should be a level playing field to protect them from having to compete with unscrupulous employers that cut costs by stealing wages; and

Whereas, The penalties currently in place for employers paying employees less than their correct wage are minimal and do not deter the practice; and

Whereas, A.10163 (Heastie) and S.8380 (Savino) were introduced in the New York State Legislature and would amend the State's Labor Law to establish the Wage Theft Prevention Act; and

Whereas, A.10163 and S.8380 would increase civil and criminal penalties to protect employees and the interest of the workers; and

Whereas, This legislation would amend the remedies available to an employee if it is found that an employer is at fault in a claim; and

Whereas, Further, this legislation would also amend the civil and criminal penalties that employers may face for violations of New York State's minimum wage or overtime pay laws; and

Whereas, A.10163 was passed by the New York State Assembly on July 1, 2010 and S.8380 was passed by the New York State Senate on June 30, 2010; and

Whereas, Although A.10163 and S.8380 have the same purpose, the bills do not have the exact same provisions; and

Whereas, New Yorkers deserve to get the pay they work hard for every day and the Wage Theft Prevention Act will help ensure they receive it; now, therefore, be it

Resolved, That the Council of the City of New York calls on the New York State Legislature to reconcile and pass A.10163 and S.8380, and the Governor sign into law, an act to amend the Labor Law in relation to establishing the Wage Theft Prevention Act.

# Restaurante acusado de explotación laboral

CATALINA JARAMILLO/EDLP

NUEVA YORK – Tres trabajadores del restaurante mexicano Plaza Garibaldi, en Queens, protestaron afuera del local porque el dueño les debe en total cerca de $40 mil dólares.

El abogado que representa a Juana García, Dimas Pineda y Tereso de la Cruz, explicó ayer que además el empleador mexicano les pagaba $1,80 la hora.

> Cuando le dije que lo iba a demandar me amenazó con llamar a Inmigración'.
> —Juana García



CATALINA JARAMILLO/EDLP

■ Dimas Pineda ofrece su testimonio frente a Plaza Garibaldi en Jackson Heights, Queens.

"Les han estado pagando por debajo del sueldo mínimo, no les pagan horas extra y no les han pagado sus salarios semanales", resumió Ady Barkan.

Pineda, de 48 años, es a quien más se le debe ya que trabajó por un año en la cocina del Plaza Garibaldi en Jackson Heights. Pineda tiene una niña de 10 años y tres hijos en El Salvador a quien mantiene con su trabajo.

"Me hace sentir coraje. Se siente mal. Yo lucho porque quiero salir adelante y estoy pidiendo lo justo, que nos paguen lo que hemos trabajado con nuestro sudor", expresó Pineda.

Tanto él como García y De la Cruz explicaron que cada vez que le cobraban al dueño, él les decía que se estaba yendo mal en el negocio, que ya les pagaba más adelante.

"Cuando yo le dije que lo iba a demandar, me amenazó con llamar a Inmigración", agregó García, de 36 años.

Los trabajadores, con el apoyo de Se Hace Camino Nueva York, están debatiendo si demandar al empleador o poner una queja en el Departamento de Trabajo.

"Es ilegal amenazar a un empleado con llamar a Inmigración. Viola leyes federales y estatales. Los trabajadores deben saber que todos los empleados tienen derecho a su pago, sin importar su estatus migratorio", aclaró Barkan.

Se Hace Camino Nueva York, en conjunto con otras organizaciones y sindicatos, están demandando que el Estado pase una ley que prevenga el robo de salarios llamada "The Wage Theft Prevention Act" (WTPA).

Esta ley, que junta otras dos leyes que ya pasaron por la aprobación de la Asamblea y el Senado Estatal (A10163-b y S8280), crea incentivos para que los empleadores cumplan la ley, protege a los trabajadores que denuncian violaciones a la ley y facilita que el Departamento De Trabajo y las cortes hagan un mejor trabajo garantizando que los trabajadores reciban sus pagos.

Según los activistas, hay estudios que muestran que en la ciudad de Nueva York las industrias roban en promedio un 15% de los salarios de cada empleador, lo que se traduce en mil millones de dólares de sueldos robados.

El dueño de Plaza Garibaldi no pudo ser ubicado, pero el administrador del sitio desde abril, Noé García, explicó que les va a pagar.

"Si en algún momento se retrasó el pago es porque no había ventas", dijo García. "Yo sé que ellos trabajan igual que uno, y que el dueño se ha tardado un poquito en pagarles, pero ellos no se han acercado a él", terminó.

Pero Pineda, que estaba presente, le dijo que él lo había llamado el día anterior.

"Él sabe", dijo Pineda. "Él sabe".



♛ ColumbiaDental
El Centro Dental
de Columbia University

¿Piensa Hacerse Implantes Dentales?

¡Llame Hoy a Nuestros Expertos en Implantes!

Llame al (212) 305-5577
Ubicados en Columbia University Medical Center

Atención de Calidad | Tratamiento Económico | Especialistas Dentales Disponibles



La ruta a su primera vivienda

La Agencia de Hipotecas del Estado de Nueva York (SONYMA) ofrece a compradores de casa principiantes:

• Tasas de interés fijas por términos de 30 o 40 años (típicamente nuestras tasas son más bajas que las ofrecidas en el mercado);
• Financiamiento de hasta el 97%;
• Un proceso flexible para evaluar su solicitud de préstamo;
• Ayuda para el pago inicial (el máximo de $ 3,000 o el 3% del importe del préstamo pero no más de $10,000);
• No hay puntos;
• No hay financiación agregada.

Si desea más información
1-800-382-HOME (4663)
o www.housing.ny.gov

 Homes & Community Renewal   SONYMA

000044



# Group pushes for immigrant wage-protection program

**(10/28/10) THE BRONX** - A local immigrant organization is pushing for a new wage-protection program after they say many workers go without adequate pay.

Make the Road New York says the Wage Theft Prevention Act would stop many small businesses from taking advantage of immigrant workers and paying them only in tips.

According to Luis Olivos, he worked more than 80 hours a week at Fine Fare Supermarkets in the Bronx for seven years and only took home about $25 in tips a day.

The group says Olivos' situation is not uncommon and adds up to around $1 billion a year in lost wages in the city. It says many workers are either afraid to speak up or can't because of language barriers.

The act was approved in the state Senate and Assembly, but in different versions. The organization says it is hoping a revised bill will pass after Election Day.

Print

Case 1:21-cv-04099-AT-RWL   Document 101-11   Filed 08/12/22   Page 47 of 140



## News > Top Stories

Monday, November 22, 2010

Restaurateur accused of wage theft

**BY AISHA AL-MUSLIM**

Monday, November 22, 2010 5:13 AM EST

Salvadorian native Dimas Pineda, 48, worked 12-hours-a-day, six-days-a-week for 14 years at Plaza Garibaldi Restaurant in Jackson Heights.

Pineda said he cooked, cleaned and made deliveries for the Mexican restaurant. That is, until he left the job in early October because he was allegedly owed money. He said the wage problem started after a new owner, who is Mexican, took over the restaurant last year.

"Many times I asked him about my unpaid salary," said Pineda, who lives in Corona. "My boss would tell me 'tomorrow,' but tomorrow never came."



THE QUEENS COURIER/Photos by Aisha Al-Muslim
City Council Speaker Christine Quinn and immigrant workers call on the State Legislature to pass the Wage Theft Prevention Act (WTPA).

Print Page

Pineda said he was supposed to get paid $600 a week, but only got paid $300. He claimed he is owed for a total of five weeks. He said he and four other workers left after not getting paid, but only two others are demanding their money.

"The workers are scared to fight for what is theirs," Pineda said. "We need them to comply with the labor laws."

Immigrant workers like Pineda joined Make the Road New York (MRNY) and New York City Council Speaker Christine Quinn on the City Hall Steps on Wednesday, November 17 to announce the City Council's passage of a resolution calling on Albany pass the Wage Theft Prevention Act (WTPA) this year. Different versions of the bill have already passed the State Assembly (A.10163) and Senate (S.8380) this summer, but must be reconciled and signed by the governor to become law.

"This is an incredibly important issue at anytime, particularly now in these economic times," Quinn said. "Time in New York without this law means stealing time and money from workers."

The act would increase penalties and tighten enforcement of the New York laws protecting workers like those at Plaza Garibaldi from nonpayment and underpayment of wages. The National Employment Law Project estimates that more than $1 billion is stolen annually from NYC workers by employers. Advocates project that the WTPA would bring in approximately $50 million in increased savings and revenues to help the state government save valuable programs currently threatened by the fiscal crisis.

Under the bill, workers would get automatic damages of up to $10,000, when an employer discharges or retaliates against them. The WTPA also increases the amount of a judgment by 15 percent if an employer refuses to pay for 90 days after being found to owe money for stolen wages.

"For 15 years, MRNY has supported low-income works who stand up for their rights to be paid what they have earned through litigation and community pressure," said Deborah Axt, deputy director of MRNY, a non-profit immigrant organization, during her testimony to the Council's Civil Service and Labor Committee.

That the kind of pressure Noel Garcia, manager for Plaza Garibaldi, and the owner felt during a protest

000046

Case 1:21-cv-04099-AT-RWL   Document 101-11   Filed 08/12/22   Page 48 of 140

outside of the restaurant on Thursday, November 11. Garcia said that they had fallen behind on payments because the restaurant was having a hard time, but they promised the workers they would get their money.

"These people abandoned their job," Garcia said. "They never came back to collect their money."

Garcia said recently Pineda got two-thirds of what he was owed. Garcia said Pineda was even offered his job back, but he refused to take it. Garcia said he blamed MRNY for "brainwashing" Pineda.

"He [Pineda] said he didn't want to negatively impact the business, but I see that he is doing the complete opposite," Garcia said.

---

**The New York Times** 

Reprints

This copy is for your personal, noncommercial use only. You can order
presentation-ready copies for distribution to your colleagues, clients or
customers here or use the "Reprints" tool that appears next to any article. Visit
www.nytreprints.com for samples and additional information. Order a reprint of
this article now.

June 25, 2010

# The Cheap Cost of Cheating the Lowest Paid

**By FRANCIS X. CLINES**

Her baby will soon be due, so Modesta Toribio has to grudgingly admit she may not soon make
her current career goal — New York's supposedly mandatory $7.25 minimum wage — that she
has been routinely denied for the past five years. She inched her salary up to $6.60 an hour
from the starting $5 at a cut-rate Brooklyn clothing store mainly by pestering her bosses. Ms.
Toribio has a brassy knack for that, but she has learned it takes a lot to best scheming
employers.

Academic studies estimate that unscrupulous employers in New York City keep an extra billion
dollars a year by defying New York State's weak labor law and cheating timorous and ill-
informed immigrant workers.

Ms. Toribio was both when she arrived from the Dominican Republic 10 years ago. But she
evolved into a word-of-mouth investigator and organizer for the Make the Road New York
community group. The organization has successfully worked with committed state inspectors to
wring wage-theft judgments against scores of employers — $28,000 for a gouged fruit-stand
peddler, $70,000 for 99-cent store workers, $400,000 from moguls squeezing the payroll at a
sneaker chain.

New York needs a strong labor law like Arizona's. Arizona is rightly notorious for its abusive
anti-immigrant law. But its labor law seriously penalizes employers who retaliate against
outspoken workers, and it provides confidentiality for whistleblowers and faster, bigger
damages for employers who ignore wage-theft judgments. A bill to toughen New York's law
awaits action by the Legislature, which is in its closing days, when the good and the ugly elbow
for attention.

"Albany could stop an awful lot of injustice," Ms. Toribio says prayerfully. Her voice had a steely
lilt on Friday when she talked other wage-cheated workers into going with her to Manhattan to

000048

Case 1:21-cv-04099-AT-RWL   Document 101-11   Filed 08/12/22   Page 50 of 140

picket a grocery store. She knows a "scared guy" there, a Mexican immigrant who earns $5 an hour with no vacation or overtime allowed in his 70-hour week. "The boss," she says, "has to understand a worker is not alone.

NYDailyNews.com
# DAILY●NEWS

Get Morning Home Delivery of the Daily News for up to 70% off.
Call (888) 393-3760

# Payback time: State must nail sleazy bosses who steal their workers' wages

Saturday, March 13th 2010, 4:00 AM

Advocates for immigrants and the poor want the state to crack down on a type of robbery rampant in New York: wage theft.

We stand with them because too many companies have gotten away with stiffing employees of the fruits of their hard-earned labor.

The National Employment Law Project estimates more than 317,000 New Yorkers are cheated out of pay, to the tune of $18.4 million a week.

Ripping off low-income workers is only a third of the offense. In the process, employers who run roughshod over the law also deprive the city and state of much-needed tax revenue and put law-abiding employers at an unfair disadvantage.

The way to end this scourge is to convince the bad actors that it's not worth the risk to cheat.

Proposed legislation in Albany, sponsored by Staten Island state Sen. Diane Savino and Bronx Assemblyman Carl Heastie, would toughen penalties against chiseling employers who ignore minimum-wage laws, cheat workers out of overtime and otherwise flout basic labor protections.

Employers would have to pay back wages, with interest, and face fines up to double that amount. The worst scofflaws would be hit with felony charges and prison time.

Not much good gets done in Albany these days - understatement of the year - but this is one bill that could help thousands of people who need government on their side. It should swiftly pass, and then the Labor Department should get to work putting teeth in the enforcement.

An honest day's pay for an honest day's work. What's more American than that?

Advertisement

Print Advertisement







Print Powered By [■] FormatDynamics

# timesunion.com

## Workers deserve to be paid

By **ANDREW FRIEDMAN AND AMY TAUB**

First published: Monday, April 5, 2010

At a time of massive revenue shortfalls and harsh budget cuts for New York, it's rare to find a policy that produces public benefits without painful costs. But new legislation introduced by Sen. Diane Savino, D-Brooklyn-Staten Island, and Assemblyman Carl Heastie, D-Bronx, does exactly that. The Wage Theft Prevention Act, which strengthens incentives for employers to comply with the wage and hour regulations already on the books, would put money in the pockets of working New Yorkers, boost law-abiding businesses and stimulate investment in local communities. It would also curb employment tax avoidance that costs the state an estimated $427 million a year in lost revenue -- revenue New York simply cannot afford to keep writing off. Albany must stop looking the other way on wage theft and quickly pass this commonsense legislation that's long overdue.

Recent state Labor Department investigations have revealed egregious cases of wage theft against construction workers in Rochester, servers at restaurants in Ithaca, race track employees in Saratoga Springs and retail salespeople on Long Island, to name only a few. Statewide, nearly a million workers see their wages stolen annually. The stolen wages amount to 15 percent of affected workers' paychecks -- money they could be spending on food, clothing and other necessities in their communities, supporting their families and putting dollars to work rebuilding New York.

This disturbing trend is consistent with the findings of a bombshell report from the National Employment Law Project, released earlier this year, that revealed just how common it is for employers to violate state and federal employment laws by paying less than the minimum wage, making employees work off the clock, stealing tips and failing to pay overtime or workers compensation. The in-depth study, based on thousands of interviews with working people, found that cheating employees -- and the state -- has become a routine business practice in many low-wage industries, robbing 586,000 low-wage workers in New York City alone every year.

Enforcement of workplace laws is so inadequate, and penalties are so low, that corrupt businesses often come out ahead. Unscrupulous employers simply factor the risk of getting caught breaking the law into their cost of doing business. Responsible business owners are put at a competitive disadvantage by rival companies that cut costs by cheating their employees. Small retailers and restaurant owners struggle to win customers when the shop down the street can undercut them on prices because they

000051

Case 1:21-cv-04099-AT-RWL Document 101-11 Filed 08/12/22 Page 53 of 140

have illegally reduced their tax bill and labor costs.

The Wage Theft Prevention Act creates real incentives for all employers to follow the law by increasing damages, strengthening penalties, improving the investigation and prosecution of wage theft, enhancing the ability to collect on judgments, and better protecting workers who speak up from retaliation and coercion.

From Washington State to Miami-Dade County, state and local governments across the nation are taking action to stop the worst employers from robbing their workforce, undermining responsible businesses and stealing from their tax base.

Now leaders in the New York Legislature must follow suit by supporting this bill and standing up for fair labor and business practices and the recovery of lost revenue at a time of fiscal crisis.

Andrew Friedman is co-executive director of Make the Road New York, a nonprofit advocacy organization. Amy Traub is research director of the Drum Major Institute for Public Policy.

000052

12/09/2010   00:08                                                    NO.825   P02

# ADIRONDACK REGIONAL CHAMBER OF COMMERCE

Honorable David A. Paterson
State Capitol
Albany, NY 12224

Re: Request for Veto - S.8320/A11726

Dear Governor Paterson,

The above referenced fifteen page bill, the Wage Theft Protection Act, would expand many current and longstanding employer obligations under the state's labor law and add new penalties for employers. We oppose enactment of this proposal and strongly urge your veto of this legislation.

* Statewide, New York needs 500,000 new jobs just to return to pre-recession employment levels. Those jobs will come only when employers decide it is worth expanding and creating new jobs in New York State. This bill would compound the difficulty of doing business in NYS by creating an unnecessary and burdensome paperwork and penalty regime. At a time when our state economy is struggling, the imposition, particularly on small and medium sized businesses, is vastly disproportioned to any genuine or valid concern for proper pay and compliance with the state labor law requirements.

* These expansions are proposed for no apparent reason other than "Studies indicate ...a large number of employees are earning less than minimum wage..." and "...not all receiving the appropriate amount of overtime compensation" and "...employers are also failing to provide basic necessities such as, days of rest and meal period breaks..." Nothing in the bill or memo details the inadequacy of the current and longstanding employee protections of these provisions in the state's labor law.

* Work in New York and other states has gradually shifted to a service and high tech economy. Many of the longstanding employer obligations and the expansions proposed in this bill are geared to an industrial model that is no longer representative of the workplace. Employees are much more aware of workplace rights, assert them and are not in need of an overreaching state government apparatus.

* The requirement to provide extensive notices and records in the "primary language of the employee" adds a multi-lingual burden upon NYS employers that is unfair, unwarranted and unprecedented. Employees already have non-discrimination protections, but adding this additional language obligation to an employer's paperwork burdens is reminiscent of "no good deed goes unpunished." Employers providing genuine equal employment opportunity are greeted with the need to obtain translators and keep multi-lingual records, with any miscue being a "cause of action".



**136 GLEN STREET - SUITE 3, GLENS FALLS, NEW YORK 12801**
*Voice:* **(518) 798-1761**                    *Fax:* **(518) 792-4147**
*e-mail:* **frontdesk@adirondackchamber.org**     *Website:* **www.adirondackchamber.org**

Employers who miss the short ten (10) day period to provide a bond pending appeal from an adverse administrative determination then are subjected to severe sanctions, including accountings and civil penalties of up to $10,000. In the administrative proceedings, civil penalties of $500 for each failure of compliance regarding rate of pay or differentiation in pay because of sex are imposed and there are "liquidated damages" for underpayments, too. Mistakes in notices or record keeping regarding rates of pay or overtime are punished by acceptance of anecdotal employee testimony and the employer has a heightened burden of providing "specific, detailed, and credible rebuttal evidence". Experienced practitioners know that such a system foments self-serving testimony by opportunistic employees and their contingent fee counsel.
  *    It makes no sense that the state legislature is moving forward with this burdensome new proposal with its new obligations on the very same businesses they are turning to for those new jobs.

For these reasons, we oppose this legislation and strongly urge that you veto this egregious legislation immediately.


Peter L. Aust, IOM                                    Andrew Cruikshank
President & CEO                                       Chairman of the Board of Directors
Adirondack Regional Chamber of Commerce

December 9, 2010

NEW
YORK
STATE
RESTAURANT
ASSOCIATION

*We serve you*

Hon. David Paterson
Governor, State of New York
Executive Chamber
State Capitol
Albany, New York 12225

Dear Governor Paterson:

The New York State Restaurant Association (NYSRA) opposes S.8380/A.11726 the "wage theft prevention act" and asks that you please veto this legislation.

We applaud the efforts of both Senator Savino and Assemblyman Heastie in trying to address the culture of wage theft. No one at NYSRA condones the deplorable action of taking wages and tips from employees.

However, this legislation goes well beyond that lofty goal and would require burdensome additional and new reporting requirements on all employers. As you know, the measure also would increase substantially the fines that could be levied against employers, as well, - from administrative action by the Department of Labor, to civil penalties handed down by the court, as well as statutory damages and a private right of action in certain cases.

We are concerned that S.8380 and A.11726 -- in capturing all employers within its broad, paperwork-heavy, and expensive maze of mandates - casts the net too broadly and assumes, incorrectly and unfairly, that all employers should be suspected of wrongdoing.

Due to the high cost and burdensome paperwork mandated on employers by this legislation, New York will only be adding to its reputation of being anti-jobs and anti-employer. For these reasons, the New York State Restaurant Association opposes this bill and urges your veto. Thank you for your consideration of our views.

Sincerely,

Rick J. Sampson
President and CEO

409 New Karner Road, Albany, NY 12205
518 452 4222 • 800 452 5212 • 518 452 4497 (fax)
info@nysra.org • www.nysra.org

000055



**NELP**

**National Employment
Law Project**

Delivering Economic Opportunity

December 6, 2010

The Honorable Governor David Paterson
State Capitol
Albany, NY 12224

Dear Governor Paterson,

On behalf of the National Employment Law Project, we write to urge you to sign the **Wage Theft
Prevention Act, A11726/S8380**, into law.

With this single law, workers, legal services providers, and the New York State Department of Labor
would finally have the strong tools to go after the wage theft crisis that is hurting local communities
across the state – in the process pumping millions of dollars into New York's economy without costing
the state a dime.

In New York City alone, a harrowing study earlier this year released by NELP found that 21 percent of
low-wage workers are paid less than the minimum wage, 77 percent weren't paid time and a half
when they worked overtime, and 69 percent didn't receive any pay at all when they came in early or
stay late after their shift.

We're talking about the jobs that literally make our economy run – home care workers, dishwashers,
construction workers, cashiers, laundry workers, garment workers, security guards and janitors, food
prep workers, childcare workers – and yet hundreds of thousands of them aren't getting even the
most basic protections that the rest of us take for granted. And make no mistake, the problem isn't
going away: these types of jobs account for eight out of the top ten occupations projected to grow
the most by 2018.

Wage theft in New York is not incidental, aberrant or rare, committed by a few rogue employers. And
it's not just a downstate problem. Over the last two years, the Department of Labor has brought
cases against restaurants in Ithaca, a printer in Albany, horse trainers at the Saratoga race track,
hotels in Lake George, and car washes across the state. Altogether, the agency recovered $28.8
million in stolen wages for nearly 18,000 New Yorkers in 2009 – the largest amount ever and a valiant
effort to be sure, but still not nearly enough to match the scale of the problem.

What would it take to ramp up the fight? Here are three critical tools that are written into the Wage
Theft Prevention Act – and that you could deliver with one stroke of the pen.

**National Office**
75 Malden Lane, Suite 601
New York, NY 10038
(212) 285-3025 tel
(212) 285-3044 fax
nelp@nelp.org www.nelp.org

**Washington, DC Office**
1620 Eye Street NW, Suite 210
Washington, DC 20006
(202) 887-8202 tel
(202) 785-8949 fax

**California Office**
405 14th Street, Suite 1400
Oakland, CA 94612
(510) 663-5700 tel
(510) 663-2028 fax

**Midwest Office**
3131 South State Street, Suite 302
Ann Arbor, MI 48108
(734) 369-5616 tel
(866) 373-3984 fax

**West Coast Office**
1225 S. Weller Street, Suite 205
Seattle, WA 98144
(206) 324-4000 tel
(866) 882-5467 fax

No. 0030  P. 5

Dec. 7. 2010  4:22PM

First, the bill increases the costs to employers of violating the law, which is probably the most urgent reform that legislators can implement. When we talked to employers in low-wage industries, we heard over and over again the calculus that results in wage theft: if you get caught, you basically just end up paying the wages you would have paid in the first place – so what's to lose? The bill would force employers to pay three times the unpaid wages, which dramatically ups the ante.

Second, the bill protects workers who come forward to assert their rights, by establishing stiff penalties to punish employers who retaliate against them. That's important because in our survey, we found that when workers made a complaint to their employer or government agency, 42 percent experienced illegal retaliation like being fired or having their wages or hours cut – which is enough to discourage even the most committed worker from filing a wage theft claim.

Third, the bill makes sure that workers are actually able to collect their unpaid wages, by stopping employers from hiding assets and defaulting on judgments. Right now, it's all too common that a worker successfully brings a wage theft claim, only to see the employer declare bankruptcy, split town, close shop, or otherwise evade paying up. If we want workers to come forward, we have to show that we can get them their unpaid wages.

These are common sense solutions that can turn the tables on wage theft. In New York City alone, more than 300,000 workers are robbed of $18.4 million every week, totaling close to $1 billion in wage theft a year. Extrapolate that to the state level, and you get a staggering amount of potential stimulus that right now is being taken out of the pockets of working families, local businesses, and state coffers.

At the National Employment Law Project, we believe that economic opportunity is built on strong labor standards that are fully enforced. We urge you to sign the Wage Theft Prevention Act into law.

Sincerely,

Christine Owens
*Executive Director*

Annette Bernhardt
*Policy Co-Director*

Catherine Ruckelshaus
*Legal Co-Director*

Paul Sonn
*Legal Co-Director*

Rebecca Smith
*Coordinator, Immigrant Worker Justice Project*

Haeyoung Yoon
*Staff Attorney*

Sarah Leberstein
*Staff Attorney*

Tsedeye Gebreselassie
*Staff Attorney*

2

 **NEW YORK COMMITTEE FOR OCCUPATIONAL SAFETY AND HEALTH**
116 John Street, Suite 604, New York, NY 10038-3331        email nycosh@nycosh.org
(212) 227-6440    fax (212) 227-9854                        website www.nycosh.org

December 7, 2010

Governor David Paterson
State Capitol
Albany, NY  12224

Re: Request to Sign into Law S8380/A11726

Dear Governor Paterson:

I am writing on behalf of the Board of Directors of the New York Committee
for Occupational Safety and Health (NYCOSH) to urge you to sign the Wage
Theft Prevention Act, A11726/S8380, in to law.

NYCOSH is a coalition of 200 local unions and 300 individuals – rank and file
safety activists, union members, public health, medical and legal
professionals who are dedicated to every worker's right to a safe and
healthful workplace.

Wages and hours are safety and health issues.  Employers who force
working people to work additional hours create hazardous conditions in
which workers are more likely to be injured.  Failure to pay workers wages
to which they are entitled by law forces workers to work additional hours to
survive – again adversely affecting their health and disrupting the lives of
the families.  Employers who violate wage and hour laws are equally, if not
more likely, to violate workplace safety and health laws.

Every day across New York State, countless workers face rampant abuse on
the job: nonpayment of overtime for 70+ hour workweeks; theft of tips;
illegal deductions from wages; and payment of wages drastically below the
legal minimum.  In industries that form the backbone of the state's
emerging economy – retail, service, restaurants, residential construction –
noncompliance with the basic protections of New York Labor Law is often the
norm, not the exception.  Low-road, unscrupulous employers drive down
standards, gaining an unfair competitive edge over those businesses that do
follow the law.  The resulting lost wages, tax revenue, and economic stability
affect all New Yorkers.  Every dollar stolen from the hands of a worker is a
dollar's unfair advantage over the competition and a dollar's absence from
commerce in our neighborhoods.

The work of NYCOSH has shown us that the most unscrupulous employers are nearly immune under the current law: threats of retaliation silence workers; faked payroll records disguise violations; and transfers of assets help violators evade paying judgments.  And most of all, penalties under current law are simply too weak to actually deter wage theft.

The Wage Theft Prevention Act will foster broad-scale legal compliance with New York's most fundamental wage laws and end the unfair competition killing our small businesses that follow the law.  The WTPA contains the best, most effective tools to fight wage theft – borrowing from other areas of New York law, and from proven models in other states and in federal law.

The Wage Theft Prevention Act is targeted reform, hitting only those employers who refuse to follow our state's most basic employment laws. New York's working families and small businesses suffering from unfair competition urge you to join them in the fight against wage theft and sign this bill in to law.

Sincerely,

Joel Shufro
Executive Director

# dupli

J. Kemper Matt
President


December 6, 2010

Governor Patterson
Executive Chamber
State Capitol
Albany, NY 12224

Dear Governor;

I urge you to veto S8380, A11726 the wage protection act.

The last thing we need in NY State is more business unfriendly and costly regulation.
While I'm sure some abuse by some one suggests such but most of us will all suffer.

You have been very active trying to correct some mistakes of your predecessors.  This
needs your veto.

Sincerely;

J. Kemper Matt
President

Dupli Park Drive • PO Box 11500 • Syracuse, NY 13218-1500

000060



The Honorable David A. Paterson                                      December 3, 2010
State Capitol
Albany, NY 12224

Dear Governor Paterson:

I am writing on behalf of the Staten Island Chamber of Commerce, our 900 members and their 20,000 employees to urge you to veto the Wage Theft Protection Act. The bill, which protects workers from retaliation for exercising their rights and increases the penalties for employers who violate wage laws, is no doubt well intentioned. However, the fact remains that this legislation would require double the amount of paperwork for both businesses that are violating the law as well as those that that have done nothing wrong.

If an employer makes a mistake in their recordkeeping or notice requirements relating to wages or overtime pay, the Wage Theft Protection Act imposes severe penalties based solely on the anecdotal evidence of the employee. The employer, on the other hand, must provide "specific, detailed, and credible rebuttal evidence" to overcome the presumption that he or she was in the wrong. When combined with a six year statute of limitations, placing such a heavy burden of proof on the business owner will create an overly litigious environment. Just the threat of a lawsuit is sufficient to impede job creation and force many businesses to shut their doors.

At a time when unemployment is at nearly 10% statewide and job creation is of paramount importance, legislation that imposes additional burdens on the business community makes no sense. How are businesses supposed to create new jobs when they are being forced to take time away from their primary responsibilities to fill out paperwork? New York is already one of the worst states for doing business and this bill will do nothing to attract businesses or make it easier for existing businesses to hire new workers. I strongly urge you to veto this bill and the additional burdens it would place on businesses throughout New York State.

Sincerely,

Linda M. Baran
President & CEO

CC:
    Senator Diane J. Savino
    Senator Andrew Lanza
    Assemblymember Michael Cusick
    Assemblymember Janele Hyer-Spencer
    Assemblymember Matthew Titone
    Assemblymember Lou Tobacco

The Richard B. Irwin Building • 130 Bay Street • Staten Island, New York 10301 • (718) 727-1900 • (718) 727-2295



*Creating Integrated Solutions*
*Since 1888*
www.rochestermidland.com

Corporate Headquarters
333 Hollenbeck Street
Rochester NY 14621

Tel: 585 336-2200
Fax: 585 467-4406

December 6, 2010

Honorable David A. Paterson
State Capitol
Albany, NY 12224

Dear Gov. Paterson:

The vast majority of New York employers already do everything by the book and handle
their employees, including their pay, in a legal and fair way.  It is unfair and onerous to
burden this majority with the requirements of this Act simply in order to "catch" the few
who may not live up to the same standards.  I strongly and respectfully urge you to veto
this legislation.  NY doesn't need one more law to discourage business from coming here
or staying here.

Sincerely,

Liz Waidelich, SVP

Liz Waidelich, SPHR
Senior Vice President
Rochester Midland Corp.



**THE NAPOLI GROUP, LLC**

December 10, 2010

Governor David A. Paterson
State Capital
Albany, NY  12224

Dear Governor Paterson:

I am the Senior Vice President for The Napoli Group.  We own six McDonald's restaurants in the State of New York, and we employ 250 people in these restaurants.  I am writing to you to ask that you please oppose S.8320/A11726, the Wage Theft Protection Act.

It is my understanding that this legislation was passed without any input from the business community.  In these extremely difficult economic times this legislation will place additional burdens and unnecessary administrative costs on businesses throughout the State of New York.

We need legislation that will encourage businesses to expand their payrolls and the number of employees they have.  The Wage Theft Protection Act, S.8320/A11726 will be a negative to job creation in the private sector in New York.

**I ask that you veto the Wage Theft Protection Act.**  Thank you for your consideration and support.

Sincerely,

Robert C. McDougall
Senior Vice President of Operations

**P.O. BOX 447 · ESSEX JUNCTION, VERMONT 05453-0447 · 802/878-7768 · FAX 802/878-6698**



**Embassy Millwork, Inc.**
86 Freeman's Bridge Road
Scotia, NY 12302

Phone: 518-280-8455
Fax: 518-831-1712
www.Embassymillwork.com

Honorable David A. Paterson
State Capitol
Albany, NY 12224

Re: Request for Veto - S.8320/A11726

This fifteen page bill, the Wage Theft Protection Act, would expand many current and long-standing employer obligations under the state's labor law and add new penalties for employers. We oppose enactment of this proposal and strongly urge your veto of this legislation.

Statewide, New York needs 500,000 new jobs just to return to pre-recession employment levels. Those jobs will come only when employers decide it is worth expanding and creating new jobs in New York State. This bill would compound the difficulty of doing business in NYS by creating an unnecessary and burdensome paperwork and penalty regime. At a time when our state economy is struggling, the imposition, particularly on small and medium sized businesses, is vastly disproportioned to any genuine or valid concern for proper pay and compliance with the state labor law requirements.

These expansions are proposed for no apparent reason other than "Studies indicate ...a large number of employees are earning less than minimum wage..." and "...not all receiving the appropriate amount of overtime compensation" and "...employers are also failing to provide basic necessities such as, days of rest and meal period breaks..." Nothing in the bill or memo details the inadequacy of the current and long-standing employee protections of these provisions in the state's labor law.

Work in New York and other states has gradually shifted to a service and high tech economy. Many of the long-standing employer obligations and the expansions proposed in this bill are geared to an industrial model that is no longer representative of the workplace. Employees are much more aware of workplace rights, assert them and are not in need of an overreaching state government apparatus.

The requirement to provide extensive notices and records in the "primary language of the employee" adds a multi-lingual burden upon NYS employers that is unfair, unwarranted and unprecedented. Employees already have non-discrimination protections, but adding this additional language obligation to an employer's paperwork burdens is reminiscent of "no good deed goes unpunished." Employers providing genuine equal employment opportunity are greeted with the need to obtain translators and keep multi-lingual records, with any miscue being a "cause of action". Employers who miss the short ten (10) day period to provide a bond pending appeal from an adverse administrative determination then are subjected to severe sanctions, including accountings and civil penalties of up to $10,000. In the administrative proceedings, civil penalties of $500 for each failure of compliance regarding rate of pay or differentiation in pay because of sex are imposed and there are "liquidated damages" for underpayments, too. Mistakes in notices or record keeping regarding rates of pay or overtime are punished by acceptance of anecdotal employee testimony and the employer has a heightened burden of providing "specific, detailed, and credible rebuttal evidence". Experienced practitioners know that such a system foments self-serving testimony by opportunistic employees and their contingent fee counsel.

It makes no sense that the state legislature is moving forward with this burdensome new proposal with its new obligations on the very same businesses they are turning to for those new jobs.
For these reasons, we oppose this legislation and strongly urge that you veto this egregious legislation immediately.

Sincerely,

Michael J. Caruso
President
Embassy Millwork Inc.

000064



# Embassy Millwork, Inc.

86 Freeman's Bridge Road
Scotia, NY 12302

Phone: 518-280-8455
Fax: 518-831-1712
www.Embassymillwork.com

Honorable David A. Paterson
State Capitol
Albany, NY 12224

Re: Request for Veto - S.8320/A11726

This fifteen page bill, the Wage Theft Protection Act, would expand many current and longstanding employer obligations under the state's labor law and add new penalties for employers. We oppose enactment of this proposal and strongly urge your veto of this legislation.

Statewide, New York needs 500,000 new jobs just to return to pre-recession employment levels. Those jobs will come only when employers decide it is worth expanding and creating new jobs in New York State. This bill would compound the difficulty of doing business in NYS by creating an unnecessary and burdensome paperwork and penalty regime. At a time when our state economy is struggling, the imposition, particularly on small and medium sized businesses, is vastly disproportioned to any genuine or valid concern for proper pay and compliance with the state labor law requirements.

These expansions are proposed for no apparent reason other than "Studies indicate ...a large number of employees are earning less than minimum wage..." and "...not all receiving the appropriate amount of overtime compensation" and "...employers are also failing to provide basic necessities such as, days of rest and meal period breaks..." Nothing in the bill or memo details the inadequacy of the current and longstanding employee protections of these provisions in the state's labor law.

Work in New York and other states has gradually shifted to a service and high tech economy. Many of the longstanding employer obligations and the expansions proposed in this bill are geared to an industrial model that is no longer representative of the workplace. Employees are much more aware of workplace rights, assert them and are not in need of an overreaching state government apparatus.

The requirement to provide extensive notices and records in the "primary language of the employee" adds a multi-lingual burden upon NYS employers that is unfair, unwarranted and unprecedented. Employees already have non-discrimination protections, but adding this additional language obligation to an employer's paperwork burdens is reminiscent of "no good deed goes unpunished." Employers providing genuine equal employment opportunity are greeted with the need to obtain translators and keep multi-lingual records, with any miscue being a "cause of action". Employers who miss the short ten (10) day period to provide a bond pending appeal from an adverse administrative determination then are subjected to severe sanctions, including accountings and civil penalties of up to $10,000. In the administrative proceedings, civil penalties of $500 for each failure of compliance regarding rate of pay or differentiation in pay because of sex are imposed and there are "liquidated damages" for underpayments, too. Mistakes in notices or record keeping regarding rates of pay or overtime are punished by acceptance of anecdotal employee testimony and the employer has a heightened burden of providing "specific, detailed, and credible rebuttal evidence". Experienced practitioners know that such a system foments self-serving testimony by opportunistic employees and their contingent fee counsel.

It makes no sense that the state legislature is moving forward with this burdensome new proposal with its new obligations on the very same businesses they are turning to for those new jobs.

For these reasons, we oppose this legislation and strongly urge that you veto this egregious legislation immediately.

Sincerely,

Joshua A. Rockwood
Vice President
Embassy Millwork Inc.

000065

# C.T. MALE ASSOCIATES, P.C.



50 Century Hill Drive, Latham, NY 12110
518.786.7400    FAX 518.786.7299    ctmale@ctmale.com

December 3, 2010

Honorable David A. Paterson
State Capitol
Albany, NY 12224

*Re: Request for Veto - S.8320/A11726*

Dear Honorable Paterson:

This fifteen page bill, the Wage Theft Protection Act, would expand many current and longstanding employer obligations under the state's labor law and add new penalties for employers. We oppose enactment of this proposal and strongly urge your veto of this legislation.

- Statewide, New York needs 500,000 new jobs just to return to pre-recession employment levels. Those jobs will come only when employers decide it is worth expanding and creating new jobs in New York State. This bill would compound the difficulty of doing business in NYS by creating an unnecessary and burdensome paperwork and penalty regime. At a time when our state economy is struggling, the imposition, particularly on small and medium sized businesses, is vastly disproportioned to any genuine or valid concern for proper pay and compliance with the state labor law requirements.
- These expansions are proposed for no apparent reason other than "Studies indicate ...a large number of employees are earning less than minimum wage..." and "...not all receiving the appropriate amount of overtime compensation" and "...employers are also failing to provide basic necessities such as, days of rest and meal period breaks..." Nothing in the bill or memo details the inadequacy of the current and longstanding employee protections of these provisions in the state's labor law.
- Work in New York and other states have gradually shifted to a service and high tech economy. Many of the longstanding employer obligations and the expansions proposed in this bill are geared to an industrial model that is no longer representative of the workplace. Employees are much more aware of workplace rights, assert them and are not in need of an overreaching state government apparatus.



1910 - 2010
years

Architecture & Building Systems Engineering • Civil Engineering • Environmental Services • Survey & Land Information Services

C.T. MALE ASSOCIATES, P.C.

- The requirement to provide extensive notices and records in the "primary language of the employee" adds a multi-lingual burden upon NYS employers that is unfair, unwarranted and unprecedented. Employees already have non-discrimination protections, but adding this additional language obligation to an employer's paperwork burdens is reminiscent of "no good deed goes unpunished." Employers providing genuine equal employment opportunity are greeted with the need to obtain translators and keep multi-lingual records, with any miscue being a "cause of action". Employers who miss the short ten (10) day period to provide a bond pending appeal from an adverse administrative determination then are subjected to severe sanctions, including accountings and civil penalties of up to $10,000. In the administrative proceedings, civil penalties of $500 for each failure of compliance regarding rate of pay or differentiation in pay because of sex are imposed and there are "liquidated damages" for underpayments, too. Mistakes in notices or record keeping regarding rates of pay or overtime are punished by acceptance of anecdotal employee testimony and the employer has a heightened burden of providing "specific, detailed, and credible rebuttal evidence". Experienced practitioners know that such a system foments self-serving testimony by opportunistic employees and their contingent fee counsel.
- It makes no sense that the state legislature is moving forward with this burdensome new proposal with its new obligations on the very same businesses they are turning to for those new jobs.

For these reasons, we oppose this legislation and strongly urge that you veto this egregious legislation immediately.

Sincerely,

C.T. MALE ASSOCIATES, P.C.

Gary R. Male, P.E.
President



Complete Collision Service on All
Makes of Cars, Trucks, Trailers,
and All Heavy Equipment

Re: the Wage Theft Protection Act (s.8380/A11726)

Dear Governor Paterson,

I am a Small Business Owner in Albany County and I received the attached email letter from the Business Council this afternoon. Upon reading it I became very discouraged. If this Bill passes, it just adds new obligations to the small Business Owner, like myself, who is already struggling to just get by. We are a family run business who treats our employees like family and I do not feel that this legislation will help us or them. We would like to grow our business, provide more good jobs and help keep our Community the great place that it is. I hope to see this economic cloud hanging over us disappear, so that the Sun can shine once again on our State. I believe if you look closely at the consequence of passing this Bill, you will see that it will do more harm than good at this time.

Sincerely,

Tina Kaiser

70 SICKER ROAD, LATHAM, NEW YORK 12110
TELEPHONE (518) 785-1233 • FAX (518) 785-7453



Honorable David A. Paterson
State Capitol
Albany, NY  12224

Dear Mr. Paterson:

Re: Request for veto of S.8380/A.11726

McAlpin Industries, Inc. opposes this bill and requests that it be vetoed.
The "Wage Theft Prevention Act" would affect over 500,000 businesses statewide
and compound the difficulty of doing business in New York State by creating an
additional unnecessary and burdensome paperwork and penalty regime. At a time
when our state economy is struggling, the imposition of this, particularly on small
and medium sized businesses, is vastly disproportionate to pay and compliance
violations under NYS Labor Law and regulation requirements. Currently, employers
provide employees their pay rate, overtime rate, if applicable, and pay day
information in writing at the time of hiring. This bill would double the amount of
information required plus require that it be provided in writing every year with an
accompanying written acknowledgement from the employee. In addition, if there
are any changes in any of the information on the initial or annual notice, it must be
communicated in writing to the employee at least a calendar week before the
changes take affect.
Besides requiring that double the current amount of information be provided by
employers to employees, the proposal would also require employers to provide any
"...such other information as the commissioner deems material and necessary." The
proposed legislation gives no further indication of what this information might be.
This is entirely too arbitrary and open ended, and based on our experience last year
with Chapter 270 of 2009, significantly more information will be required by the
commissioner than the legislative proposal requires. Initially with Chapter 270 last
year, the commissioner required employer use of the Labor Department's
templates. These templates required substantially more information than the new
law required. There were so many complaints about this additional information
requirement that the Department changed its position and made the use of the
templates voluntary, as it should have from the outset. In this current legislative
proposal, the Department's providing of templates for notices in foreign languages
does not alter the significant additional paperwork preparation requirement and six
year record keeping obligations that transcend the bounds of reason and continue to
make NYS inhospitable to business and a target of punitive actions for mistakes in
payment.

000069

This proposed legislation creates a paperwork trap for employers with draconian sanctions for infractions, as well as perverse incentives for disgruntled employees to raise anecdotal claims. Punitive liquidated damages and civil action damages as well as attorneys fees, under a six year statute of limitations, will inevitably lead to opportunistic employees and plaintiff's lawyers seeking statutory "redress" which can adversely impact a business.

Employers are further disadvantaged under this legislative proposal by unparalleled sanctions for failure to pay irrespective of ability to do so, with attorney's fees and costs being imposed in collection actions, combined with an automatic 15% increase in the amount of a judgment after 90 days. A requirement for an accounting of the assets of the employer, coupled with a civil penalty of up to $10,000 for failure to provide such accounting within 10 days, is yet another layer of disincentive to do business in New York State or have a well capitalized business here.

This bill is based on the National Employment Law Project's report, Working Without Laws: A Survey of Employment and Labor Law Violations in New York City. It is a 2008 study using interviews with 1,432 employees working in New York City. We strongly object to the results of a New York City study being used as even a partial justification for a new state law that would impose dramatic increases in administrative costs and penalties on more than 500,000 private employers all across New York State. The Labor Department along with the Attorney General and others has, through their current and varied enforcement mechanisms, conducted numerous industry sweeps, fraud hotlines, etc. in an effort to ensure employers are complying with New York's employment laws. Even with their widely publicized raids and audits, the percentage of non-compliant employers is statistically small and does not warrant the dramatic increases in administrative burden, costs and penalties proposed to be applied across all New York State employers. The existing interagency framework for employment law compliance to weed out the bad actors should continue with appropriate display of data to evaluate areas where the law may be in need of improvement.

This study also cites increased effectiveness of the state Labor Department's efforts in pursuing wage and overtime violations in recent years. This should be reason enough not to propose new burdensome administrative costs and penalty requirements on New York State private employers and confer new powers on the commissioner. Instead, without citing a failure of any of the current labor laws, rules or regulations, the legislature moved ahead with this proposed legislation. Nothing in the bill or sponsor's memo details any inadequacy of the current and longstanding employee protections in the state's labor laws.

Sincerely,

Daniel J. Macikowski
Manager Human Resources
McAlpin Industries, Inc.

# WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

677 Broadway - 9th Floor, Albany, New York 12207-2996   Tel: (518) 449-8893  Fax: (518) 449-8927

*Albany • Baltimore • Boston • Chicago • Dallas • Garden City • Houston • Las Vegas • London • Los Angeles • McLean
Miami • Newark • New York • Orlando • Philadelphia • San Diego • San Francisco • Stamford • Washington, DC • White Plains
Affiliates: Berlin • Cologne • Frankfurt • Mexico City • Munich • Paris*

www.wilsonelser.com

Governor David A. Paterson
Executive Chamber
State Capitol
Albany, NY 12224

Re:    **OPPOSE** A.11726 Rules (Heastie) / S.8380 Savino

Dear Governor Paterson:

This letter of **opposition** is offered on behalf of our client, the New York State Hospitality and
Tourism Association (NYSH&TA), who respectfully requests veto of the above referenced
legislation.

NYSH&TA represents nearly 1,400 member businesses and individuals in the lodging and
attractions industry.  NYSH&TA, whose members represent 70% of the total lodging room
inventory in the state, strongly opposes this legislation. The Wage Theft Prevention Act seeks to
expand the rights of employees to seek civil and criminal penalties against employers for failure
to follow the Labor Law.

NYSH&TA and its members value their employees with an understanding that it is the skill, hard
work, and good attitude of employees that make a business successful especially in the
hospitality industry.  NYSH&TA provides continuous training to ensure employees maintain the
highest levels of skills and knowledge.

This legislation however, creates unnecessary burdens and increases penalties on employers.
This legislation encumbers employers with new reporting provisions that would impose
significant costs on already struggling businesses throughout the State.  For example, the bill
increases the amount of information that must, in the face of significantly increased penalties, be
included on current wage rates notices, including the new requirement to disclose any "doing
business as" names used by the employer even if those entities have no relation to that particular
employee.  Further, the State is required to provide forms in foreign languages for employers to
provide employees whose primary language is not English.  This adds costs to the State and the
Department of Labor which during this time of economic hardship, needs to be looking for ways
to save taxpayer dollars, rather than spending them on superfluous paperwork.

Furthermore, the employer must obtain a signed acknowledgement of the receipt of these notices
from the employee.  The required acknowledgement must be obtained by the employer, while the
legislation provides no impetus for an employee to sign it.  Further, the employee, by signing the
acknowledgement, would be limiting his or her future recourse in the instance of any perceived
wrongdoing by the employer.  This required action by the employee unfairly places the burden

289704.1

on the employer with the possibility of sanctions for failure to gain the employee's acknowledgement.

The employer must also provide repetitive and duplicative notice to the employee regarding wage rates, overtime rates, basis of pay and allowances. The notice upon hiring, the annual notice, and the information on the pay stub are strikingly similar, yet it is unclear what purpose these repetitive notices serve, except to add cost to employers, including for the retention of these documents as they add up. This has the opposite impact that this legislation seeks; by increasing costs for employers, it would further limit what employers could actually pay workers.

The requirement to provide extensive notices and records as well as the imposition of penalties in addition to those already required by law imposes an unwarranted burden on employers, many of whom are struggling to avoid lay-offs in this difficult fiscal climate. There is no doubt that businesses are struggling in the current economic climate and the State's reaction to the struggle cannot be to enhance disproportionate penalties and add to the burdens employers already carry. This legislation represents an attack on business at a time when the State needs businesses to retain jobs, produce tax revenues, and stay in New York.

The increased penalties in this legislation, including significant fines and imprisonment, are disproportionate to the violations and serve to encourage employees to sue employers for what could amount to no more than inadvertent errors. Indeed, the legislation permits the Commissioner of Labor to impose an order of compliance and liquidated damages, forcing employers to possibly settle for lesser penalties when they may have been guilty of nothing more than typographical errors. These harsh penalties add to the list of reasons for a business to avoid staying in or opening in New York.

For the foregoing reasons, NYSH&TA strongly opposes this legislation.

Respectfully submitted,


WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

# WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

677 Broadway - 9th Floor, Albany, New York 12207-2996   Tel: (518) 449-8893   Fax: (518) 449-8927

*Albany • Baltimore • Boston • Chicago • Dallas • Garden City • Houston • Las Vegas • London • Los Angeles • McLean
Miami • Newark • New York • Orlando • Philadelphia • San Diego • San Francisco • Stamford • Washington, DC • White Plains
Affiliates: Berlin • Cologne • Frankfurt • Mexico City • Munich • Paris*

www.wilsonelser.com

Governor David A. Paterson
Executive Chamber·
State Capitol
Albany, NY 12224

    Re:    **OPPOSE** - A.11726 Rules (Heastie) / S.8380 Savino

Dear Governor Paterson:

This letter in opposition is offered on behalf of our client, Greater New York Automobile Dealers Association (GNYADA), who respectfully requests a veto of the above mentioned legislation.

GNYADA represents nearly 500 franchised new vehicle dealers in the downstate region. GNYADA members are engaged in retail sales, leasing, and repair of new and used vehicles, and strongly opposes this legislation, the Wage Theft Prevention Act, which seeks to expand the rights of employees to seek civil and criminal penalties against employers for failure to follow Labor Law.

GNYADA and its members value their employees with an understanding that it is the skill, hard work, and good attitude of employees which makes a good business. GNYADA, at its Center for Automotive Education and Training, provides continuous training to ensure employees maintain the highest levels of expertise.

This legislation, however, creates unnecessary burdens and increases penalties on employers. This legislation encumbers employers with new reporting provisions that would impose significant costs on already struggling businesses throughout the State. For example, the bill increases the amount of information that must, in the face of significantly increased penalties, be included on current wage rates notices, including the new requirement to disclose any "doing business as" names used by the employer even if those entities have no relation to that particular employee. Even further, the bill would allow the Commissioner of Labor to add even more requirements. Not only would employers have to meet all the wage reporting requirements in English, but they would also have to provide them in the employee's designated primary language. This does not merely add burden to employers but adds costs to the State and the

289494.1

Department of Labor which during this time of economic hardship, needs to be looking for ways to save taxpayer dollars, rather than spending them on superfluous paperwork.

Furthermore, the employer must obtain a signed acknowledgement of the receipt of these notices from the employee. The acknowledgement required must be obtained by the employer, while the legislation provides no impetus for an employee to sign it. Further, the employee, by signing the acknowledgement, would be limiting his or her future recourse in the instance of any perceived wrongdoing by the employer. This required action by the employee unfairly places the burden on the employer with the possibility of sanctions for failure to gain the employee's acknowledgement.

The employer must also provide repetitive and duplicative notice to the employee regarding wage rates, overtime rates, basis of pay and allowances. The notice upon hiring, the annual notice, and the information on the pay stub are strikingly similar, yet it is unclear what purpose these repetitive notices serve, except to add cost to employers, including for the retention of these documents as they add up. This has the opposite impact that this legislation seeks; for by increasing costs for employers, it would further limit what employers could actually pay workers.

The requirement to provide extensive notices and records as well as the imposition of penalties in addition to those already required by law imposes an unwarranted burden on employers, many of whom are struggling to avoid lay-offs in this difficult fiscal climate. There is no doubt that businesses are struggling in the current economic climate and the State's reaction to the struggle cannot be to enhance disproportionate penalties and add to the burdens employers already carry. This legislation represents an attack on business at a time when the State needs businesses to retain jobs, produce tax revenues, and stay in New York.

The increased penalties in this legislation, including significant fines and imprisonment, are disproportionate to the violations and serve to encourage employees to sue employers for what could amount to no more than inadvertent errors. Indeed, the legislation permits the Commissioner of Labor to impose an order of compliance and liquidated damages, forcing employers to possibly settle for lesser penalties when they may have been guilty of nothing more than typographical errors. These harsh penalties add to the list of reasons for a business to avoid staying in or opening in New York.

For the foregoing reasons, GNYADA strongly opposes this legislation.

Respectfully submitted,

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

289494.1

 coalition
for the
homeless

December 9, 2011

The Honorable David A. Paterson
Governor, State of New York
Executive Chamber, State Capitol Building
Albany, NY 12224

**RE: S.8380/A.11726 – Wage Theft Prevention Act**

Dear Governor Paterson:

On behalf of the Coalition for the Homeless, I write to urge you to sign the Wage Theft Prevention Act,
S.8380/A.11726, into law.

Every day across New York State, countless workers face rampant abuse on the job: nonpayment of
overtime for 70+ hour workweeks; theft of tips; illegal deductions from wages; and payment of wages
drastically below the legal minimum.  In industries that form the backbone of the state's emerging
economy – retail, service, restaurants, residential construction – noncompliance with the basic
protections of New York Labor Law is often the norm, not the exception.  Low-road, unscrupulous
employers drive down standards, gaining an unfair competitive edge over those businesses that *do*
follow the law.  The resulting lost wages, tax revenue, and economic stability affect all New Yorkers.
Every dollar stolen from the hands of a worker is a dollar's unfair advantage over the competition and a
dollar's absence from commerce in our neighborhoods.

Coalition for the Homeless is the nation's oldest advocacy and direct service organization helping
homeless men, women, and children. We are dedicated to the principle that affordable housing,
sufficient food, and the chance to work for a living wage are fundamental rights in a civilized society.
Since our inception in 1981, the Coalition has worked through litigation, public education, and direct
services to ensure that these goals are realized.

The Wage Theft Prevention Act will foster broad-scale legal compliance with New York's most
fundamental wage laws and end the unfair competition killing our small businesses that follow the law.
The WTPA contains the best, most effective tools to fight wage theft – borrowing from other areas of
New York law, and from proven models in other states and in federal law.

The Wage Theft Prevention Act includes four interlocking components to effect the necessary change:

1) The WTPA *changes the economic incentives* that encourage bad-actor employers to violate the
   law.  Damages owed, on top of wages, will be increased from 25% to 100% – matching the
   damage level in twenty-four other states and under federal law.  [Seven states impose even
   heavier penalties of 200%.]  Unscrupulous employers will chose to comply with our states wage

laws only when there is a *real* price tag on violations. These new damages provide just that leverage.

2) Workers must be encouraged to ***speak up for their rights*** – and be protected when they do. Savvy wage thieves know that often a simple threat is all it takes to scare workers away from reporting legal violations. The WTPA ensures that *all* the dirty tricks of the worst violators are outlawed, and workers are meaningfully protected from retaliation for enforcing their rights. Importantly, the law closes loopholes for enforcement, giving the Department of Labor the same powers as the courts to remedy retaliation when it occurs. These amendments send a strong message to unscrupulous employers: retaliating against workers who demand their right to minimum wage and overtime is illegal, is expensive, and will not be tolerated.

3) New tools will ensure the worst violators have a harder time hiding assets to avoid judgment. The NYDOL will have new authority to get an accounting of assets from employer found in violation, and discretion to use innovative new collection measures. Wage thieves who fail to pay final orders within 90 days will have to pay an extra 15% -- defraying the cost to the DOL and to the worker for expensive efforts to enforce judgments.

4) Finally, the WTPA ***clarifies and consolidates employers' obligations*** to maintain records and give employees paystubs. Inconsistencies in the law currently complicate employers' ability to understand and follow their legal obligations. Key requirements are buried in regulations, rather than set out clearly in the statute itself. The WTPA codifies existing record keeping requirements in the statute, so that both employers' obligations, and the consequences of violations, are crystal clear.

The **Wage Theft Prevention Act** is targeted reform, hitting only those employers who refuse to follow our state's most basic employment laws. New York's working families and small businesses suffering from unfair competition urge you to join them in the fight against wage theft and sign this bill in to law.

Sincerely,

Shelly Nortz
Deputy Executive Director



Amy Kramer.
Legislative Director

111 Washington Avenue, Suite 700
Albany, New York 12210

T: 518.436.0189
F: 518.463.5943
amy.hines.kramer@att.com

December 9, 2010

Honorable David A. Paterson
Governor of New York
Executive Chamber, State Capitol
Albany, New York 12224
*Via electronic mail*

**Re: S. 8380/ A.11726 "Wage Theft Protection Act"**

Dear Governor Paterson,

On behalf of AT&T, we urge that you do not append your signature to the above-enumerated legislation. While perhaps a well-intended effort to protect a finite segment of workers, the "Wage Theft Protection Act" is so broadly applied, ill-defined and legally flawed, that it must be rejected. Indeed, its impact on businesses like AT&T will do nothing more than further poison the already toxic business environment in New York State by creating an additional unnecessary and burdensome set of paperwork and record-keeping requirements while subjecting legitimate businesses to arbitrary and pernicious penalties for even the most minor clerical errors.

At a time when businesses are working to grow New York's economic recovery, enactment of this legislation is counter-productive to their efforts. The best way for New York to overcome its lineage of structural budget deficits is to bring jobs to New York. Yet, this legislation reinforces the view held by so many businesses that New York is not the place to locate or expand.

First of all, this legislation would apply to all businesses, including those with few minimum wage employees and with a strong history of fairly compensating employees. It is important to note, AT&T compensates hourly employees at union negotiated rates, and is the only wireless communications company in New York with unionized employees. In fact, nationally AT&T has a larger union workforce that the U.S. steel, auto, or airline industries. With nearly 60% of our employees union-represented, we have more full-time, bargained-for jobs than any other private company in America. AT&T's network technicians earn approximately 42% more and call center representatives make about 64% more in wages and benefit compared to their counterparts in telecommunications. As of January 2010, AT&T employs over 3,800 people living in New York, with a 2009 payroll of over $293 million. Our commitment to our workforce helped make us the world's premier communications company, and in return we work hard to maintain our competitive position and the industry's employer of choice.[1]

Currently, responsible employers like AT&T provide employees their pay rate, overtime rate, if applicable, and pay day information in writing at the time of hiring. This bill would obligate every employer to notify the workers *in multiple languages,* of the wage rate, the basis of the wage, the name of the employer, any DBAs used by the employer and *other information that the Commissioner deems material and necessary"* -- requirements that essentially double the amount of information required *plus* it would require that it be provided in writing every year with an accompanying written acknowledgement from the employee. In addition, if there are any changes in any of the information on the initial or annual notice, it must be communicated in writing to the employee at least a calendar week before the changes take affect. We are hard-pressed to understand how our employees benefit from these additional requirements.

Second, the penalty provisions set forth in the legislation for noncompliance place a chilling effect on the company generally, and specifically those in the company who would be responsible for administering these requirements. Even the most innocent of clerical errors could subject the company to tens of thousands of dollars in penalties, liquidated

---

[1] "Best Places to Work" National Award, Human Rights Campaign, 2006, 2008, 2009, 2010.
*ALB 1,416,963v1 12-7-10*

U S A
Proud Sponsor of the U.S. Olympic Team

damages for as much as 100% of any underpayment, and a misdemeanor for failure to properly post and maintain signs disclosing any violations.

2

Third, the new penalty provisions are aggravated by the fact that they will apply to regulatory requirements left to the Commissioner of Labor.  As noted, employers will be required to provide  "…such other information as the commissioner deems material and necessary."   The proposed legislation gives no further indication of what this information might be. This delegation of regulatory authority is entirely too arbitrary and open-ended.

Finally, it would appear that the bill suffers a fatal constitutional flaw. This proposal would amend the general definition section of the Labor Law to provide that "*all references to labor law, chapter, article or section shall be deemed to include any rule, regulations or order promulgated thereunder or related thereto.*"  We believe this language may be an unconstitutional delegation of legislative power by criminalizing acts which are yet to be defined and which are not legislatively prescribed.

For the foregoing reasons, on behalf of AT&T, I respectfully request your veto of S. 8830/ A.11726, "The Wage Theft Prevention Act."  Should you have any questions, please contact me at 518-436-0189 or amy.hines.kramer@att.com.

Sincerely,

*Amy Kramer*

Amy Hines Kramer
Legislative Director
External Affairs
AT&T

USA
Proud Sponsor of the U.S. Olympic Team

000078

# BARRETT ASSOCIATES
95 COLUMBIA STREET ▪ ALBANY, NY 12210
(518) 465-5340 ▪ FAX (518) 465-6023

December 7, 2010

Peter D. Kiernan, Esq.
Counsel to the Governor
State of New York
Executive Chamber
State Capitol
Albany, NY 12224

*RE:  S.8380 (A.11726)*

Dear Mr. Kiernan:

On behalf of our client the **United States Automobile Association (USAA),** we urge the Governor's opposition to S.8380. As a Texas based company with employees in New York State we believe that this legislation will have a negative impact on the state business climate.

This bill would impose substantial additional new annual reporting requirements on employers.  It would also dramatically expand the authority of the Commissioner of Labor to require other undefined types of information and increase the fines that could be levied against employers as administrative actions by the Department for even minor unintended violations as well as allow other civil penalties and a private right of action in certain cases resulting in a substantial increase in litigation.

We believe that this legislation targeting employers with new, broad, expensive mandates will create additional burdens for current employers and dissuade prospective business from locating in New York.

We respectfully urge the Governor's veto of S.8380.

Sincerely,

Michael V. Barrett
Legislative Representative



**INDEPENDENT INSURANCE**
**AGENTS & BROKERS OF NEW YORK, INC.**

December 7, 2010

Peter D. Kiernan, Esq.
Counsel to the Governor
State of New York
Executive Chamber
State Capitol
Albany, NY 12224

*RE: S.8380 (A.11726)*

Dear Mr. Kiernan:

**The Independent Insurance Agents & Brokers of New York (IIABNY)** opposes S.8380. This legislation with its dramatic increase in paperwork requirements, potential litigation and penalties will have a severe negative impact on the members of IIABNY, many of whom are small employers.

The Independent Insurance Agents & Brokers of New York is the oldest and largest producer association in New York State. We represent approximately 3,600 independent business owners and principals of 1,800 independent insurance agency locations in the State of New York, comprising more than 12,500 individuals who sell and service the personal and business insurance needs of consumers.

The bill would double the amount of information required to be provided to employees and require that it be provided every year with an employee acknowledgement. We believe this is a substantial and unnecessary requirement for our members.

Additionally, the legislation would dramatically expand the authority of the Labor Commissioner to require other information that he or she deems necessary with no limitations of definitions for that information contained in the bill.

The proposal also creates new penalties for even minor unintended violations of the law. The damages and potential civil actions which are allowed will assure a substantial increase in litigation which will further erode an already difficult business climate. The negative impact of this legislation will be certain to drive businesses with limited profits out of business. In addition, companies considering New York as a place to do business will be forced to consider other states.

We find it difficult to understand why sponsors and advocates for this proposal would draft it to be so over reaching, punitive and difficult in one of the most difficult economic periods in our history. We believe it is poorly timed and will have a substantial negative impact on all businesses.

We respectfully urge the Governor's veto of S.8380.

Sincerely,

Michael V. Barrett
Legislative Representative





Ted Potrikus
Executive Vice President
Director of Government Relations

December 3, 2010

Hon. David Paterson
Governor, State of New York
Executive Chamber
State Capitol
Albany, New York  12225

                    Re:  S.8380 (Savino)

Dear Governor Paterson:

     The Retail Council of New York State opposes the captioned legislation,
rooted as it is in yet another mandate on a private sector in New York State
already beleaguered by multiple layers of expensive red tape.

     Far from the simple 'codification of current regulation' claimed by its
supporters, the captioned legislation would impose on New York retailers (and
indeed the entire employer community) additional and new annual reporting
requirements.  As you know, the measure also would increase substantially the
fines that could be levied against employers, as well -- from administrative
action by the Department of Labor to civil penalties handed down by the court,
as well as statutory damages and a private right of action in certain cases.

     Surely the Retail Council of New York State and its member stores abhor
the very idea of an employer "stealing" wages from an employee, and do not
disagree that penalties against wage theft should be adjudicated vigorously.
We are concerned, however, that the captioned legislation -- in capturing all
employers within its broad, paperwork-heavy, and expensive maze of mandates -
- casts the net too broadly and assumes, incorrectly and unfairly, that all
employers should be suspected of wrongdoing.

     Because its high costs and promises of further taint of New York State as
anti-jobs and anti-employer, the Retail Council opposes this bill and urges
your disapproval.  Thank you for your consideration of our views.

                    Sincerely,

                    Ted Potrikus
                    Executive Vice President
                    Director of Government Relations



December 7, 2010

Governor David Paterson
State Capitol
Albany, NY 12224

Re: Request to Sign into Law S8380/A11726

Dear Governor Patterson:

On behalf of New York Jobs with Justice / Urban Agenda, we write to urge you to sign the Wage Theft Prevention Act, A11726/S8380, in to law.

Every day across New York State, countless workers face rampant abuse on the job: nonpayment of overtime for 70+ hour workweeks; theft of tips; illegal deductions from wages; and payment of wages drastically below the legal minimum. In industries that form the backbone of the state's emerging economy - retail, service, restaurants, residential construction - noncompliance with the basic protections of New York Labor Law is often the norm, not the exception. Low-road, unscrupulous employers drive down standards, gaining an unfair competitive edge over those businesses that do follow the law. The resulting lost wages, tax revenue, and economic stability affect all New Yorkers. Every dollar stolen from the hands of a worker is a dollar's unfair advantage over the competition and a dollar's absence from commerce in our neighborhoods.

The work of New York Jobs with Justice / Urban Agenda has shown us that the most unscrupulous employers are nearly immune under the current law: threats of retaliation silence workers; faked payroll records disguise violations; and transfers of assets help violators evade paying judgments. And most of all, penalties under current law are simply too weak to actually deter wage theft.

The Wage Theft Prevention Act will foster broad-scale legal compliance with New York's most fundamental wage laws and end the unfair competition killing our small businesses that follow the law. The WTPA contains the best, most effective tools to fight wage theft - borrowing from other areas of New York law, and from proven models in other states and in federal law.

The Wage Theft Prevention Act includes four interlocking components to effect the necessary change:
1. The WTPA changes the economic incentives that encourage bad-actor employers to violate the law. Damages owed, on top of wages, will be increased from 25% to 100% - matching the damage level in twenty-four other states and under federal law. [Seven states impose even heavier penalties of 200%.] Unscrupulous employers will chose to comply with our states wage laws only when there is a real price tag on violations. These new damages provide just that leverage.
2. Workers must be encouraged to speak up for their rights - and be protected when they do. Savvy wage thieves know that often a simple threat is all it takes to scare workers away from reporting legal violations. The WTPA ensures that all the dirty tricks of the worst violators are

outlawed, and workers are meaningfully protected from retaliation for enforcing their rights. Importantly, the law closes loopholes for enforcement, giving the Department of Labor the same powers as the courts to remedy retaliation when it occurs. These amendments send a strong message to unscrupulous employers: retaliating against workers who demand their right to minimum wage and overtime is illegal, is expensive, and will not be tolerated.

3. New tools will ensure the worst violators have a harder time hiding assets to avoid judgment. The NYDOL will have new authority to get an accounting of assets from employer found in violation, and discretion to use innovative new collection measures. Wage thieves who fail to pay final orders within 90 days will have to pay an extra 15% -- defraying the cost to the DOL and to the worker for expensive efforts to enforce judgments.

4. Finally, the WTPA clarifies and consolidates employers' obligations to maintain records and give employees paystubs. Inconsistencies in the law currently complicate employers' ability to understand and follow their legal obligations. Key requirements are buried in regulations, rather than set out clearly in the statute itself. The WTPA codifies existing record keeping requirements in the statute, so that both employers' obligations, and the consequences of violations, are crystal clear.

The Wage Theft Prevention Act is targeted reform, hitting only those employers who refuse to follow our state's most basic employment laws. New York's working families and small businesses suffering from unfair competition urge you to join them in the fight against wage theft and sign this bill in to law.

Sincerely,

Matt Ryan
Director, New York Jobs with Justice / Urban Agenda

### LINDA A. HAMILTON, CPA LLC
CERTIFIED PUBLIC ACCOUNTANTS AND BUSINESS ADVISORS

Opposing NY State Wage Theft Prevention Bill

**RECEIVED**

DEC 15 2010

NEW YORK STATE
EXECUTIVE CHAMBER
COUNSEL

December 9, 2010

Peter Kiernan, Esq.
Counsel to the Governor
Executive Chamber
State Capitol
Albany, NY 12224

Re: Request for veto of S.8380/A.11726

Dear Mr. Kiernan:

Linda A Hamilton, CPA LLC opposes this bill and requests that it be vetoed. The "Wage Theft Prevention Act" would affect over 250,000 businesses in New York City and compound the difficulty of doing business in New York State by creating an additional unnecessary and burdensome paperwork and penalty regime. At a time when our state economy is struggling, the imposition of this, particularly on small and medium sized businesses, is vastly disproportionate to pay and compliance violations under NYS Labor Law and regulation requirements. Currently, employers provide employees their pay rate, overtime rate, if applicable, and pay day information in writing at the time of hiring. This bill would double the amount of information required plus require that it be provided in writing every year with an accompanying written acknowledgement from the employee. In addition, if there are any changes in any of the information on the initial or annual notice, it must be communicated in writing to the employee at least a calendar week before the changes take affect.  Small businesses in New York already face major compliance burdens at a time when they need to focus on survival.  I have many small business clients that don't even have separate HR and payroll departments.

Besides requiring that double the current amount of information be provided by employers to employees, the proposal would also require employers to provide any "...such other information as the commissioner deems material and necessary."   The proposed legislation gives no further indication of what this information might be. This is entirely too arbitrary and open ended and is unclear and unnecessary.

I urge the Governor to veto this bill in the interest of the economic growth and stability of our state's business community-and job creators.

Sincerely,

Linda Hamilton, CPA
Managing Member

000084



**thechamber**
albany-colonie regional chamber of commerce
*vision for business*

December 6, 2010

Peter Kiernan, Esq.
Counsel to the Governor
Executive Chamber
State Capitol
Albany, NY 12224

<div align="center">

**RE: A.11726/ S.8380 – Wage Theft Prevention Act**

</div>

Dear Mr. Kiernan:

The Albany-Colonie Regional Chamber of Commerce, which represents 2,400 businesses in the Capital Region, opposes this legislation, which would only increase the difficulty of doing business in New York by creating additional and unnecessary burdens on employers.

The Chamber believes that the state's existing labor laws provide adequate wage protection for employees and that this legislation in unnecessary. The bill was based on the 2008 National Employment Law Project's report, *Working Without Laws: A Survey of Employment and Labor Law Violations in New York City,* which only interviewed 1,432 employees working in New York City. This small statistical sample should not be used to justify a new state law that would impose dramatic increases in administrative costs and penalties to businesses throughout the state.

The Labor Department, along with the Attorney General and others, has heightened enforcement efforts and, in doing so, has conducted numerous audits and industry sweeps, as well as provide fraud hotlines to report businesses that are not in compliance with New York's employment laws. The percentage of non-compliant employers found through these avenues is small in number and does not warrant the dramatic increases in administrative burdens, costs and penalties that this legislation would apply to all businesses.

This proposal would create a paperwork nightmare for employers with draconian sanctions for infractions, as well as perverse incentives for disgruntled employees to raise anecdotal claims, which will inevitably lead to opportunistic employees and plaintiff's lawyers seeking statutory "redress" which can adversely impact a business.

In this economy, the state should be adopting measures that will encourage job growth, not deter it. For these reasons, we urge the Governor to veto this legislation.

Sincerely,

Diana A. Ehrlich
Vice President, Advocacy and Communications
Albany-Colonie Regional Chamber of Commerce

 **Langone Medical Center**

**ROBERT I. GROSSMAN, M.D.**
*The Saul J. Farber Dean and Chief Executive Officer*
*NYU School of Medicine and Hospitals Center*

December 8, 2010

Honorable David A. Paterson
Governor, State of New York
Executive Chamber
State Capitol Building
Albany, New York 12224

RE:   **S.8380 Savino** AN ACT to amend the labor law, in relation to establishing the
      wage theft prevention act

Dear Governor Paterson:

The above-referenced bill is now before you for Executive action.

New York University Langone Medical Center **strongly opposes** this legislation, the
Wage Theft Prevention Act, which seeks to expand the rights of employees to seek civil
and criminal penalties against employers for failure to follow labor law.

While we agree with the objective of the bill, protecting workers from unscrupulous
employers, the legislation before you is overbroad and would create unnecessary and
undue burdens on employers, including the following:

- Would impose tighter standards on employers
- Would require that employers provide, in proper language at time of hiring and
  every year thereafter, a notice with employees' wage information and require that
  employers keep records of employees' acknowledgement of receipt of such
  notice.
- Would require that employers establish and maintain records for **at least 6 years**
- Would require employers to provide a statement of information regarding wage
  payment each time payment is made
- Would subject employers to civil and criminal penalties
- Would subject employers to unduly harsh penalties, including imprisonment and
  significant fines
- Would permit the commissioner to impose additional penalties on employers

550 First Avenue, HCC-15, New York, NY 10016 | tel: 212.263.3269 | fax: 212.263.3275 | email: robert.grossman@nyumc.org

The requirement to provide extensive notices and records as well as the imposition of penalties in addition to those already required by law imposes an unwarranted burden on the vast majority of conscientious employers - many of whom are struggling to avoid lay-offs in this difficult fiscal climate - with no assurance that these procedures will ultimately achieve the goal of preventing wage theft. For the NYU Langone Medical Center, the administrative effort needed to manage these requirements for approximately 17,000 employees is substantial.

For the foregoing reasons, New York University Langone Medical Center strongly urges you to veto this legislation.

Sincerely,

Robert I. Grossman, M.D.

S8380
C564



**NEW YORK**                                        December 1, 2010

The Honorable David. A. Paterson
Governor
Executive Chamber
State Capitol
Albany, New York  12224

**RE:  A.11726 (Heastie) / S.8380 (Savino)**

Dear Governor Paterson:

The National Federation of Independent Business, New York's leading small business advocacy association, urges you to disapprove the aforementioned bill.

This legislation imposes new mandates and burdens on employers and exposes them to new and increased civil and criminal penalties.  This bill will also result in increased litigation and additional backlogs in the courts, detracting from truly aggrieved workers and add to the already too high cost of doing business in the State of New York.

NFIB believes that existing law provides adequate wage protection for employees in New York. However, this legislation seems to be motivated by a troubling belief that not only are many employers routinely cheating and engaging in "theft" from their employees, but also that the Department of Labor is failing to enforce the existing law.  If the Legislature truly believes that the Department of Labor is not doing its job (a notion that we also reject), perhaps it would be more appropriate to look into that issue instead of slapping New York's already struggling employers with new mandates and threats of potentially crippling increased fines and criminal penalties.

We would simply add that it is impossible to be pro-job creation and anti-employer at the same time. After all, jobs are not created without employers--and most jobs are created by small businesses, who would be particularly hard hit by the provisions of this bill.

NFIB believes that the best way to help protect workers and aid in their success in the workplace is to work to strengthen the economy by passing measures that will lower New York's cost of doing business and help small businesses grow, expand and create jobs and opportunities.  This proposal does just the opposite. For these reasons, we urge you to veto this bill.

Very truly yours,

Michael J. Elmendorf II
State Director, NFIB/New York

National Federation of Independent Business — NEW YORK
One Commerce Plaza, Suite 803 • Albany, NY 12260 • 518-434-1262 • 518-426-8799 • www.NFIB.com



**Associated Builders & Contractors, Inc.**

Empire State Chapter

6369 Collamer Drive, East Syracuse, NY  13057-1115

(315) 463-7539          (800) 477-7743          Fax (315) 463-7621

www.abcnys.org  empire@abcnys.org

December 3, 2010

Peter Kiernan, Esq.
Counsel to the Governor
Executive Chamber
New York State Capitol
Albany, New York 12224

      Re:    Senate Bill No. 8380/Assembly Bill No. 11726 (AN ACT to amend the labor law, in relation to establishing the wage theft prevention act)

Dear Mr. Kiernan:

      The Associated Builders and Contractors, Empire State Chapter ("ABC"), representing over 650 merit shop contractors and subcontractors and thousands of employees across New York State, **opposes S.8380/A.11726**, the so-called Wage Theft Prevention Act, because it would not provide any meaningful protection to workers, but would contribute to New York State's growing negative reputation as an unfriendly environment for businesses to locate and prosper.  ABC and its member contractors have no issue with employees being provided an accurate accounting of their wages and supports reasonable efforts to ensure employees are not unfairly deprived of their rightful pay.

      This bill, however, will not provide any appreciable benefit to employees and will instead only flood them with more notifications and more information and will diminish and confuse the wage information that employees need and want.  For instance, requiring disclosure of an employer's "Doing Business As" name or names, physical main office address and mailing address, "plus such other information as the commissioner [of labor] deems material and necessary" will provide the employee with plenty of information, but nothing that it could not determine from any wage statement or other employment-related document.  For the overwhelming majority of employees, this information will do nothing to help them understand if they are "earning less than minimum wage [or]…being paid less than their correct wage," as this bill purports to accomplish.

      Once again, the Legislature has missed the mark.  Instead of trying to enforce the existing wage laws, it seeks to expand the requirements of those laws and establish larger and newer penalties.  For the unscrupulous employers who ignore existing laws related to notifications to employees and who underpay their workers, the requirements and penalties proposed in this bill will similarly be ignored and violated.  Not one worker will benefit from the purported deterrent penalties and additional information provided for in this bill.

      Legitimate businesses, however, will have another State mandate and new potential penalties with which to contend.  Any business that has ever had to negotiate with the Department of Labor or

*"Free Enterprise…The Future of Construction"*

organized labor knows the higher penalties proposed in this bill will be used as leverage to exact undeserved settlements (regardless of an unintentional wage underpayment) based on a failure to provide wage information to workers.

We understand that this bill is based on alleged and actual violations in New York City cited by the National Employment Law Project in a 2008 study. As an association representing principally merit shop contractors outside of New York City, we strongly question the objectivity and applicability of the study, especially to Upstate New York. It is entirely likely that the purported violations in New York City are not occurring elsewhere in the State. ABC would invite legislation or other directive mandating a study of this issue on a statewide basis by an independent entity. If it were determined that similar violations are occurring outside of New York City, it would be difficult for anyone to argue against additional protections. However, in the absence of such data, it is incomprehensible that the State would enact the burdensome requirements and penalties in this bill or why the State would not defer to New York City to enact a local law to address what may be only a City problem.

I am sure that Governor Paterson is familiar with the recently released national study by the non-partisan Tax Foundation that ranked New York dead last – 50th – among the states in "business climate." Our members, dealing daily with the burdens of trying to stay in business in this State, find the Tax Foundation report much more salient than that done by the National Employment Law Project.

Finally, we heard this week that New York's Congressional delegation will drop to its lowest number in over 200 years after the 2012 reapportionment. Over a million New Yorkers have fled this State in the past decade. The problems we face are many and wage underpayment may be one of them in certain places in the State. A much larger problem is that employers cannot continue to create or retain jobs with the policies coming from Albany. This bill will only make the New York business climate worse, with fewer jobs for our citizens.

The State can begin to reverse this trend if it will only begin to adopt a more streamlined approach to business – whether it is fewer forms, statements or notifications to employees. While we appreciate that Governor Paterson may not be in office to begin a more comprehensive review of these regulatory burdens, building upon his impressive legacy of controlling State spending, he could signal a new front in reversing New York's anti-business climate by rejecting the Legislature's effort to create more paperwork and punitive penalties. Accordingly, we respectfully request that the Governor veto S.8380/A.11726 and provide welcome news to New York's job-creating businesses.

Sincerely,

Stephen M. Lefebvre,
President

200082233.1

*"Free Enterprise...The Future of Construction"*



*Neighbors NY*  20 Ridge Street, Glens Falls NY  12801   tel: 518.743.0030

Honorable David A. Paterson
State Capitol
Albany, NY  12224

Re: Request for Veto - S.8320/A11726

Dear Sir:

This fifteen page bill, the Wage Theft Protection Act, would expand many current and longstanding employer obligations under the state's labor law and add new penalties for employers.  We  oppose enactment of this proposal and strongly urge your veto of this legislation for the following reasons:

1.  Statewide, New York needs 500,000 new jobs just to return to pre-recession employment levels. Those jobs will come only when employers decide it is worth expanding and creating new jobs in New York State. This bill would compound the difficulty of doing business in NYS by creating an unnecessary and burdensome paperwork and penalty regime. At a time when our state economy is struggling, the imposition, particularly on small and medium sized business, is vastly disproportioned to any genuine or valid concern for proper pay and compliance with the state labor law requirements.

2.  These expansions are proposed for no apparent reason other than "Studies indicate ...a large number of employees are earning less than minimum wage..." and "...not all receiving the appropriate amount of overtime compensation" and "...employers are also failing to provide basic necessities such as, days of rest and meal period breaks..." Nothing in the bill or memo details any inadequacy of the current and longstanding employee protections of these provisions in the state's existing labor law.

3.  Work in New York and other states has gradually shifted to a service and high tech economy. Many of the longstanding employer obligations and the expansions proposed in this bill are geared to an industrial model that is no longer representative of the workplace. Employees are much more aware of workplace rights, assert them and are not in need of an overreaching state government apparatus.

4.  The requirement to provide extensive notices and records in the "primary language of the employee" adds a multi-lingual burden upon NYS employers that is unfair, unwarranted and unprecedented. Employees already have non-discrimination protections, but adding this additional language obligation to an employer's paperwork burdens is reminiscent of "no good deed goes unpunished." Employers providing genuine equal employment opportunity are greeted with the need to obtain translators and keep multi-lingual records, with any miscue being a "cause of action". Employers who miss the short ten (10) day period to provide a bond pending appeal from an adverse administrative determination then are subjected to severe sanctions, including accountings and civil penalties of up to $10,000. In the administrative proceedings, civil penalties of $500 for each failure of compliance regarding rate of pay or differentiation in pay because of sex are imposed and there are "liquidated damages" for underpayments, too. Mistakes in notices or record keeping regarding rates of pay or overtime are punished by acceptance of anecdotal employee testimony and the employer has a heightened burden of providing "specific, detailed, and credible rebuttal evidence". Experienced practitioners know that such a system foments self-serving testimony by opportunistic employees and their contingent fee counsel.

*Senior assistance you can count on.*

Visit us at www.neighborsny.com

Page Two

It makes no sense that the state legislature is moving forward with this burdensome new proposal with its new obligations on the very same businesses they are turning to for those new jobs.  For these reasons,  I oppose this legislation and strongly urge that you veto this egregious legislation immediately.

Thank you for your attention to this letter and for your hard stand on getting a balanced budget in New York.

Sincerely,

Nancy Tajarski
President

000092

 

December 7, 2010

Governor David Paterson
State Capitol
Albany, NY 12224

Re: Request to Sign into Law S8380/A11726

Dear Governor Paterson:

On behalf of New York Jobs with Justice / Urban Agenda, we write to urge you to sign the Wage Theft
Prevention Act, A11726/S8380, into law.

Every day across New York State, countless workers face rampant abuse on the job: nonpayment of
overtime for 70+ hour workweeks; theft of tips; illegal deductions from wages; and payment of wages
drastically below the legal minimum. In industries that form the backbone of the state's emerging
economy - retail, service, restaurants, residential construction - noncompliance with the basic
protections of New York Labor Law is often the norm, not the exception. Low-road, unscrupulous
employers drive down standards, gaining an unfair competitive edge over those businesses that do
follow the law. The resulting lost wages, tax revenue, and economic stability affect all New Yorkers.
Every dollar stolen from the hands of a worker is a dollar's unfair advantage over the competition and a
dollar's absence from commerce in our neighborhoods.

The work of New York Jobs with Justice / Urban Agenda has shown us that the most unscrupulous
employers are nearly immune under the current law: threats of retaliation silence workers; faked payroll
records disguise violations; and transfers of assets help violators evade paying judgments. And most of
all, penalties under current law are simply too weak to actually deter wage theft.

The Wage Theft Prevention Act will foster broad-scale legal compliance with New York's most
fundamental wage laws and end the unfair competition killing our small businesses that follow the law.
The WTPA contains the best, most effective tools to fight wage theft - borrowing from other areas of
New York law, and from proven models in other states and in federal law.

The Wage Theft Prevention Act includes four interlocking components to effect the necessary change:
1. The WTPA changes the economic incentives that encourage bad-actor employers to violate the
   law. Damages owed, on top of wages, will be increased from 25% to 100% - matching the
   damage level in twenty-four other states and under federal law. [Seven states impose even
   heavier penalties of 200%.] Unscrupulous employers will chose to comply with our states wage
   laws only when there is a real price tag on violations. These new damages provide just that
   leverage.
2. Workers must be encouraged to speak up for their rights - and be protected when they do.
   Savvy wage thieves know that often a simple threat is all it takes to scare workers away from
   reporting legal violations. The WTPA ensures that all the dirty tricks of the worst violators are

outlawed, and workers are meaningfully protected from retaliation for enforcing their rights. Importantly, the law closes loopholes for enforcement, giving the Department of Labor the same powers as the courts to remedy retaliation when it occurs. These amendments send a strong message to unscrupulous employers: retaliating against workers who demand their right to minimum wage and overtime is illegal, is expensive, and will not be tolerated.

3. New tools will ensure the worst violators have a harder time hiding assets to avoid judgment. The NYDOL will have new authority to get an accounting of assets from employer found in violation, and discretion to use innovative new collection measures. Wage thieves who fail to pay final orders within 90 days will have to pay an extra 15% -- defraying the cost to the DOL and to the worker for expensive efforts to enforce judgments.

4. Finally, the WTPA clarifies and consolidates employers' obligations to maintain records and give employees paystubs. Inconsistencies in the law currently complicate employers' ability to understand and follow their legal obligations. Key requirements are buried in regulations, rather than set out clearly in the statute itself. The WTPA codifies existing record keeping requirements in the statute, so that both employers' obligations, and the consequences of violations, are crystal clear.

The Wage Theft Prevention Act is targeted reform, hitting only those employers who refuse to follow our state's most basic employment laws. New York's working families and small businesses suffering from unfair competition urge you to join them in the fight against wage theft and sign this bill in to law.

Sincerely,


Matt Ryan
Director, New York Jobs with Justice / Urban Agenda

# AIRWAY MEADOWS GOLF CLUB

## 262 Brownville Rd.

## Gansevoort, NY 12831

## (518) 792-4144  Fax   (518) 792-6365

Governor David Patterson                                   December 5, 2010

State Capitol

Albany, NY 12224

Re:  Request for Veto – S.8320/A11726

Dear Governor Patterson:

Statewide, New York needs 500,000 new jobs just to return to pre-recession employment levels. Those jobs will come only when employers decide it is worth expanding and creating new jobs in New York State. This bill would compound the difficulty of doing business in NYS by creating an unnecessary and burdensome paperwork and penalty regime. At a time when our state economy is struggling, the imposition, particularly on small and medium sized businesses, is vastly disproportioned to any genuine or valid concern for proper pay and compliance with the state labor law requirements.

Please Veto this unneeded bill. We need to grow jobs in New York  not give employers more stumbling blocks getting there.

Sincerely,

JOAN D. HEBER
Owner



**PRESERVATION ASSOCIATION, INC.**

PRESIDENT
DOROTHY SCHNEIDER

VICE PRESIDENT
HERBERT PERKINS

TREASURER
ROBERT AKLAND

SECRETARY
KATHARINE TOMASI

BOARD MEMBERS
PETER DUNIGAN
NANCY HIGBY
SUE KEYES
JULIE MOLINE
ROBERT SELLAR
KAREN SHELDON
ROBERT SOUTHERLAND

DIRECTOR
EMERITUS
WILLIAM EBERLE

EXECUTIVE
DIRECTOR
DONNA FARRINGER

PROGRAM
COORDINATOR
GAIL BEARUP

WWW.SALEMCOURTHOUSE.ORG
SALEMCOURTHOUSE@VERIZON.NET

December 4, 2010

Honorable David A. Paterson
State Capitol
Albany, NY  12224

Re: Request for Veto - S.8320/A11726

This fifteen page bill, the Wage Theft Protection Act, would expand many current and longstanding employer obligations under the state's labor law and add new penalties for employers.  We oppose enactment of this proposal and strongly urge your veto of this legislation.

- Statewide, New York needs 500,000 new jobs just to return to pre-recession employment levels. Those jobs will come only when employers decide it is worth expanding and creating new jobs in New York State. This bill would compound the difficulty of doing business in NYS by creating an unnecessary and burdensome paperwork and penalty regime. At a time when our state economy is struggling, the imposition, particularly on small and medium sized businesses, is vastly disproportioned to any genuine or valid concern for proper pay and compliance with the state labor law requirements.

- These expansions are proposed for no apparent reason other than "Studies indicate ...a large number of employees are earning less than minimum wage..." and "...not all receiving the appropriate amount of overtime compensation" and "...employers are also failing to provide basic necessities such as, days of rest and meal period breaks..." Nothing in the bill or memo details the inadequacy of the current and longstanding employee protections of these provisions in the state's labor law.

- Work in New York and other states has gradually shifted to a service and high tech economy. Many of the longstanding employer obligations and the expansions proposed in this bill are geared to an industrial model that is no longer representative of the workplace. Employees are much more aware of workplace rights, assert them and are not in need of an overreaching state government apparatus.

- The requirement to provide extensive notices and records in the "primary language of the employee" adds a multi-lingual burden upon NYS employers that is unfair, unwarranted and unprecedented. Employees already have non-discrimination protections, but adding this additional language obligation to an employer's paperwork burdens is reminiscent of "no good deed goes unpunished." Employers providing genuine equal employment opportunity are greeted with the need to obtain translators and keep multi-lingual records, with any miscue being a "cause of action". Employers who miss the short ten (10) day period to

**HISTORIC SALEM COURTHOUSE PRESERVATION ASSOCIATION, INC.**
P.O. BOX 140 • SALEM, NEW YORK 12865 • 518-854-7053



**PRESERVATION**
**ASSOCIATION, INC.**

provide a bond pending appeal from an adverse administrative determination then are subjected to severe sanctions, including accountings and civil penalties of up to $10,000. In the administrative proceedings, civil penalties of $500 for each failure of compliance regarding rate of pay or differentiation in pay because of sex are imposed and there are "liquidated damages" for underpayments, too. Mistakes in notices or record keeping regarding rates of pay or overtime are punished by acceptance of anecdotal employee testimony and the employer has a heightened burden of providing "specific, detailed, and credible rebuttal evidence". Experienced practitioners know that such a system foments self-serving testimony by opportunistic employees and their contingent fee counsel.

- It makes no sense that the state legislature is moving forward with this burdensome new proposal with its new obligations on the very same businesses they are turning to for those new jobs.

For these reasons,  we oppose this legislation and strongly urge that you veto this egregious legislation immediately.

Sincerely,

Donna Z. Farringer
Execitive Director
Historic Salem Courthouse
58 East Broadway
P.O. Box 140
Salem, NY 12865

**PRESIDENT**
**DOROTHY SCHNEIDER**

**VICE PRESIDENT**
**HERBERT PERKINS**

**TREASURER**
**ROBERT AKLAND**

**SECRETARY**
**KATHARINE TOMASI**

**BOARD**
**MEMBERS**

**PETER DUNIGAN**
**NANCY HIGBY**
**SUE KEYES**
**JULIE MOLINE**
**ROBERT SELLAR**
**KAREN SHELDON**
**ROBERT SOUTHERLAND**

**DIRECTOR**
**EMERITUS**
**WILLIAM EBERLE**

**EXECUTIVE**
**DIRECTOR**
**DONNA FARRINGER**

**PROGRAM**
**COORDINATOR**
**GAIL BEARUP**

WWW.SALEMCOURTHOUSE.ORG
SALEMCOURTHOUSE@VERIZON.NET

**HISTORIC SALEM COURTHOUSE PRESERVATION ASSOCIATION, INC.**
P.O. BOX 140 • SALEM, NEW YORK 12865 • 518-854-7053

*S# 8380* WHOLE THEFT PREVENTION ACT — PRO
WAGE THEFT PREVENTION ACT —



# Malkin & Ross

## ATTORNEYS AT LAW

80 State Street, 11th Floor, Albany, N.Y. 12207
518-449-3359 (p) • 518-449-5746 (f)
www.malkinross.com

## FAX COVER

Date: 12/8/10

To: *Governor Paterson*

Fax Number: 474-1513

From:

| | | | |
|---|---|---|---|
| ___ | Tina Dalton | ___ | Steven Sanders |
| ___ | Gene DeSantis | ✓ | Jessica Schafroth |
| ___ | Arthur Malkin | ___ | Debbie Stockman |
| ___ | George Penn | ___ | Christine Tramontano |
| ___ | Terry Pratt | ___ | Tracy Tress |
| ___ | Julie Ruttan | | |
| ___ | Donald Ross | | |
| ___ | Tammy Sanders | | |

Number of Sheets __7__ (Including Cover)

**COMMENTS/INSTRUCTIONS:**

*Wage Theft Prevention Act letters w/*
*signatures*

If this transmittal is not complete
Please call (518) 449-3359

December 7, 2010

David A. Paterson
State Capitol
Albany, NY 12224

Dear Governor Paterson:

We are writing to ask you to please sign the Wage Theft Prevention Act, S8380 / A11726. As low-wage immigrant workers, many of us have been impacted by wage theft. This law is very important to our community and all workers throughout the state of New York. Thank you.

Sincerely,

Teodulo mejia l

{Myrtha Gutierrez mynala Gutierr}
{Please Support the workers

José AMABLE COllAdo ESPINAL

Sny. Needs your support. Messages

Pablo Rodrigez. F.

Sny Needs your support. Messages

Walter chadon        we need you Help

Juan Fernandez        It's very important for our communty

Nestor Santos        I'm a worker

Eduard Serano Castillo        Please take action in support of our communities and our hard working bread winners. Sign the Wage Theft Prevention Act immidiately!

EUDOCIO ALVARADO SEÑOR GOVERNADO
RAFAELA GUSMAN ESPERAMO CONEN TUSIAMO
                SU FIRMA

000099

December 7, 2010

David A. Paterson
State Capitol
Albany, NY 12224

Dear Governor Paterson:

We are writing to ask you to please sign the Wage Theft Prevention Act, S8380 / A11726. As low-wage immigrant workers, many of us have been impacted by wage theft. This law is very important to our community and all workers throughout the state of New York. Thank you.

Sincerely,

Josefina Amador P.                     Please Support the
                                                     Workers.

Esther Flores                       O de presencio de Rolo

Gabino Hernando            104 Worker    Plese Sing THE WAGE

Denorah Coronado

Angela Fonseca C

Alejandro    Navor

Emilio    Navor         Emilio

Rafael   Navor

Miguel   Moscoso

December 7, 2010

David A. Paterson
State Capitol
Albany, NY 12224

Dear Governor Paterson:

We are writing to ask you to please sign the Wage Theft Prevention Act, S8380 / A11726. As low-wage immigrant workers, many of us have been impacted by wage theft. This law is very important to our community and all workers throughout the state of New York. Thank you.

Sincerely,

Jose Luis Torres    I'm a worker,

PLEASE SUPPORT
the workers

Homero Peña

I'm worker, Please
sign the wage Theft
Prevencion acto as
soon as possible

COSME
ALVARADO

ESTAMOS EN LA LUCHA POR SU APROBACION LO MAS PRONTO PUS. B. —
SI SE PUEDE
SOY TRABAJADOR
FAVOR de FIRMAR el ACTA
de prevension d Robo
de SALARIO

I'm a Workers   Beto Abreu

Marina Farez
The straggle continues
I'm a worker
Please sign the wage

Theft Prevention Act
as soon as possible
Please support the workers

000101

December 7, 2010

David A. Paterson
State Capitol
Albany, NY 12224

Dear Governor Paterson:

We are writing to ask you to please sign the Wage Theft Prevention Act, S8380 / A11726. As low-wage immigrant workers, many of us have been impacted by wage theft. This law is very important to our community and all workers throughout the state of New York. Thank you.

Sincerely,

Hanul Romero

Please sign the wage theft Prevention Act as soon as possible

Aurelio Ramires
please sign the wage theft Prevention Act as soon as possible

Augusto Fernandez
Please Sign the Wage Theft Prevention Act

December 7, 2010

David A. Paterson
State Capitol
Albany, NY 12224

Dear Governor Paterson:

We are writing to ask you to please sign the Wage Theft Prevention Act, S8380 / A11726. As low-wage immigrant workers, many of us have been impacted by wage theft. This law is very important to our community and all workers throughout the state of New York. Thank you.

Sincerely,

CARLOS PULLA

Angel Salinas
Lydia Kolu — It's very Important for our Community
Jacinto Plascencia    We need your support.
LUISA RAMIREZ
Jairo BLAS

Roque Toribio → The victory is ours After you sign

Modesta Toribio — It's very important for our Comunity

Luis Ruy    The struggle continues
MARIA GONZALEZ 1347 898 12?
LEO VARGAS 1347 221 5291
William RODRIGUEZ 216 62 1926.

December 7, 2010

David A. Paterson
State Capitol
Albany, NY 12224

Dear Governor Paterson:

We are writing to ask you to please sign the Wage Theft Prevention Act, S8380 / A11726. As low-wage immigrant workers, many of us have been impacted by wage theft. This law is very important to our community and all workers throughout the state of New York. Thank you.

Sincerely,

Lucia Castillo

Yo estoy deacuerdo con esta ley y agradecemos mucho el esfuerzo que estan logrando. Y ojala sigamos adelante. Gracias.

"I agree with this law and we really appreciate what has been achieved. We hope to continue moving forward.
Thank you



**L E G A L**

**S E R V I C E S**

INCORPORATED

299 Broadway
New York, NY 10007
Phone: 212-417-3700
Fax: 212-417-3891
www.mfy.org

Thomas E. Dunn
*Board Chair*

Christopher D. Lamb
*Executive Director*

Jeanette Zelhof
*Deputy Director*

Elise Brown
Ramonita Cordero
Sara J. Fulton
Andrew Goldberg
Kenneth Lau
Christopher Schwartz
*Supervising Attorneys*

December 6, 2010
Governor David Paterson
State Capitol
Albany, New York 12224

### Re: Request to Sign into Law S8380/A11726

Dear Governor Paterson:

We write on behalf of MFY Legal Services, Inc. to urge you to sign into law the Wage Theft Prevention Act, S8380/A11726.

MFY Legal Services provides free legal assistance to residents of New York City on a wide range of civil legal issues, including housing, foreclosure, consumer, and employment related matters. MFY's Workplace Justice Project has provided advice, counsel and representation to low-wage workers for nearly ten years. One of the most common problems our clients encounter is wage theft – employers' failure to pay the minimum wage or overtime rates, illegal deductions from wages, and non-payment of wages. In our experience, violations are rampant as many employers are able to disregard their basic obligations under the law with impunity. Those workers who stand up for their rights under the Labor Law often are unable to collect any of the wages the employer owes them – even after the Department of Labor finds liability or the worker obtains a court judgment – because employers can easily evade enforcement.

The Wage Theft Protection Act corrects this imbalance. Its strong provisions regarding employer records, liquidated damages, and collections give low-road employers incentives to comply with the law that did not exist before. The bill gives the Department of Labor and exploited workers new tools to enforce judgments against employers that violate the law. These provisions will ensure that more employers pay workers the wages they are already required by law to pay, and will thus put more money in the pockets of low-wage workers and bring more tax revenue to the state of New York.

We want to stress that the Wage Theft Prevention Act does not place significant new substantive obligations on employers. Employers who have complied with the Labor Law in the past and continue to do so will not be greatly affected by this bill. Rather, the bill targets the low-road employers who ignore their existing legal obligations. The bill gives those employers strong incentives to come into compliance, and if they do not, it increases penalties they face and provides more effective mechanisms to collect those penalties. The result will be an employment marketplace that is more consistent and fair across the board, both to workers and to the businesses that comply with the law.

MFY Legal Services strongly supports the Wage Theft Prevention Act and urges you to sign it into law.

Sincerely,

Christopher D. Lamb
Executive Director

Magdalena Barbosa          Rachel Spector          Lindsey Schoenfelder
Staff Attorney             Staff Attorney          Staff Attorney

LimousinesWorldWide.com Inc.
219 Second Ave
Pelham NY 10803

December 20, 2010

RECEIVED

DEC 23 2010

NEW YORK STATE
EXECUTIVE CHAMBER
COUNSEL

Peter Kiernan, Esq.
Counsel to the Governor
Executive Chamber
State Capitol
Albany, NY 12224

Re: Request for veto of S.8380/A.11726

Dear Mr. Kiernan:

LimousinesWorldWide.com Inc opposes this bill and requests that it be vetoed. The "Wage Theft Prevention Act" would affect over 250,000 businesses in New York City and compound the difficulty of doing business in New York State by creating an additional unnecessary and burdensome paperwork and penalty regime. At a time when our state economy is struggling, the imposition of this, particularly on small and medium sized businesses, is vastly disproportionate to pay and compliance violations under NYS Labor Law and regulation requirements. Currently, employers provide employees their pay rate, overtime rate, if applicable, and pay day information in writing at the time of hiring. This bill would double the amount of information required plus require that it be provided in writing every year with an accompanying written acknowledgement from the employee. In addition, if there are any changes in any of the information on the initial or annual notice, it must be communicated in writing to the employee at least a calendar week before the changes take affect.

Besides requiring that double the current amount of information be provided by employers to employees, the proposal would also require employers to provide any "…such other information as the commissioner deems material and necessary." The proposed legislation gives no further indication of what this information might be. This is entirely too arbitrary and open ended and is unclear and unnecessary.

We urge the Governor to veto this bill in the interest of the economic growth and stability of our state's business community-and job creators.

Sincerely,



John T Villanova, Jr.
President



A B I G A I L

Caterin.
Relation...

December 13, 2010

**Dear Governor Paterson,**

**BILL:**  **A.11726 (Rules Heastie) /
S.8380 (Savino)**

**OPPOSE**

**SUBJECT:**  **NYS Wage Theft Protection Act**

**A.11726 (Rules Heastie)
/ S.8380 (Savino)**

**DATE:**  **December 13, 2010**

This fifteen page bill, the Wage Theft Protection Act, would expand many current and longstanding employer obligations under the state's labor law and add new penalties for employers. I oppose enactment of this proposal and appreciate your time and consideration.

- These expansions are proposed for no apparent reason other than "Studies indicate ...a large number of employees are earning less than minimum wage..." and "...not all receiving the appropriate amount of overtime compensation" and "...employers are also failing to provide basic necessities such as, days of rest and meal period breaks..." Nothing in the bill or memo details the inadequacy of the current and longstanding employee protections of these provisions in the state's labor law.

- Work in New York and other states has gradually shifted to a service and high tech economy. Many of the longstanding employer obligations and the expansions proposed in this bill are geared to an industrial model that is no longer representative of the workplace. Employees are much more aware of workplace rights, assert them and are not in need of an overreaching state government apparatus.

- The requirement to provide extensive notices and records in the "primary language of the employee" adds a multi-lingual burden upon NYS employers that is unfair, unwarranted and unprecedented. Employees already have non-discrimination protections, but adding this additional language obligation to an employer's paperwork burdens is reminiscent of "no good deed goes unpunished." Employers providing genuine equal employment opportunity are greeted with the need to obtain translators and keep multi-lingual records, with any miscue being a "cause of action". Employers who miss the short ten (10) day period to provide a bond pending appeal from an adverse administrative determination then are subjected to severe sanctions, including accountings and civil penalties of up to $10,000. In the administrative proceedings, civil penalties of $500 for each failure of compliance regarding rate of pay or differentiation in pay because of sex are imposed and there are "liquidated damages" for underpayments, too. Mistakes in notices or record keeping regarding rates of pay or overtime are punished by acceptance of anecdotal employee testimony and the employer has a heightened burden of providing "specific, detailed, and credible rebuttal evidence". Experienced practitioners know that such a system foments self-serving testimony by opportunistic employees and their contingent fee counsel.

tappan hill
81 highland avenue
tarrytown, ny
10591

phone 914.631.3030
fax 914.631.5399
www.abigailkirsch.com

000107

ABIGAIL **KIRSCH**
Catering
Relationships

- Statewide, New York needs 500,000 new jobs just to return to pre-recession employment levels. Those jobs will come only when employers decide it is worth expanding and creating new jobs in New York State. This bill would compound the difficulty of doing business in NYS by creating an unnecessary and burdensome paperwork and penalty regime. At a time when our state economy is struggling, the imposition, particularly on small and medium sized businesses, is vastly disproportioned to any genuine or valid concern for proper pay and compliance with the state labor law requirements.

- It makes no sense that the state legislature is moving forward with this burdensome new proposal with its new obligations on the very same businesses they are turning to for those new jobs.

For these reasons, I opposes this legislation and strongly urges that it not be enacted by the New York State Legislature.

Sincerely,

Alison Awerbuch
Partner, Executive Vice President
Abigail Kirsch, Catering Relationships
81 Highland Avenue
Tarrytown, NY 10591

tappan hill
81 highland avenue
tarrytown, ny
10591

phone 914.631.3030
fax 914.631.5399
www.abigailkirsch.com

000108



ABIGAIL KIRSCH

Catering
Relation...

December 13, 2010

**Dear Governor Paterson,**

**BILL:**  **A.11726 (Rules Heastie) /
S.8380 (Savino)**

**SUBJECT:**  **NYS Wage Theft Protection Act**

**DATE:**  **December 13, 2010**

| OPPOSE |
| --- |

**A.11726 (Rules Heastie)
/ S.8380 (Savino)**

This fifteen page bill, the Wage Theft Protection Act, would expand many current and longstanding employer obligations under the state's labor law and add new penalties for employers. I oppose enactment of this proposal and appreciate your time and consideration.

- These expansions are proposed for no apparent reason other than "Studies indicate ...a large number of employees are earning less than minimum wage..." and "...not all receiving the appropriate amount of overtime compensation" and "...employers are also failing to provide basic necessities such as, days of rest and meal period breaks..." Nothing in the bill or memo details the inadequacy of the current and longstanding employee protections of these provisions in the state's labor law.

- Work in New York and other states has gradually shifted to a service and high tech economy. Many of the longstanding employer obligations and the expansions proposed in this bill are geared to an industrial model that is no longer representative of the workplace. Employees are much more aware of workplace rights, assert them and are not in need of an overreaching state government apparatus.

- The requirement to provide extensive notices and records in the "primary language of the employee" adds a multi-lingual burden upon NYS employers that is unfair, unwarranted and unprecedented. Employees already have non-discrimination protections, but adding this additional language obligation to an employer's paperwork burdens is reminiscent of "no good deed goes unpunished." Employers providing genuine equal employment opportunity are greeted with the need to obtain translators and keep multi-lingual records, with any miscue being a "cause of action". Employers who miss the short ten (10) day period to provide a bond pending appeal from an adverse administrative determination then are subjected to severe sanctions, including accountings and civil penalties of up to $10,000. In the administrative proceedings, civil penalties of $500 for each failure of compliance regarding rate of pay or differentiation in pay because of sex are imposed and there are "liquidated damages" for underpayments, too. Mistakes in notices or record keeping regarding rates of pay or overtime are punished by acceptance of anecdotal employee testimony and the employer has a heightened burden of providing "specific, detailed, and credible rebuttal evidence". Experienced practitioners know that such a system foments self-serving testimony by opportunistic employees and their contingent fee counsel.

tappan hill      phone 914.631.3030
81 highland avenue      fax 914.631.5399
tarrytown, ny      www.abigailkirsch.com
10591



ABIGAIL KIRSCH

Catering
Relationship

- Statewide, New York needs 500,000 new jobs just to return to pre-recession employment levels. Those jobs will come only when employers decide it is worth expanding and creating new jobs in New York State. This bill would compound the difficulty of doing business in NYS by creating an unnecessary and burdensome paperwork and penalty regime. At a time when our state economy is struggling, the imposition, particularly on small and medium sized businesses, is vastly disproportioned to any genuine or valid concern for proper pay and compliance with the state labor law requirements.

- It makes no sense that the state legislature is moving forward with this burdensome new proposal with its new obligations on the very same businesses they are turning to for those new jobs.

For these reasons, I opposes this legislation and strongly urges that it not be enacted by the New York State Legislature.

Sincerely,

James Clancy
Corporate Human Resources Manager
Abigail Kirsch, Catering Relationships
81 Highland Avenue
Tarrytown, NY 10591

tappan hill
81 highland avenue
tarrytown, ny
10591

phone 914.631.3030
fax 914.631.5399
www.abigailkirsch.com

000110



ABIGAIL **KIRSCH**

Catering
Relatio…

December 13, 2010

**Dear Governor Paterson,**

| | | |
|---|---|---|
| **BILL:** | **A.11726 (Rules Heastie) /<br>S.8380 (Savino)** | **OPPOSE** |

**SUBJECT:   NYS Wage Theft Protection Act**

**DATE:**     **December 13, 2010**

**A.11726 (Rules Heastie)
/ S.8380 (Savino)**

This fifteen page bill, the Wage Theft Protection Act, would expand many current and longstanding employer obligations under the state's labor law and add new penalties for employers. I oppose enactment of this proposal and appreciate your time and consideration.

- These expansions are proposed for no apparent reason other than "Studies indicate ...a large number of employees are earning less than minimum wage..." and "...not all receiving the appropriate amount of overtime compensation" and "...employers are also failing to provide basic necessities such as, days of rest and meal period breaks..." Nothing in the bill or memo details the inadequacy of the current and longstanding employee protections of these provisions in the state's labor law.

- Work in New York and other states has gradually shifted to a service and high tech economy. Many of the longstanding employer obligations and the expansions proposed in this bill are geared to an industrial model that is no longer representative of the workplace. Employees are much more aware of workplace rights, assert them and are not in need of an overreaching state government apparatus.

- The requirement to provide extensive notices and records in the "primary language of the employee" adds a multi-lingual burden upon NYS employers that is unfair, unwarranted and unprecedented. Employees already have non-discrimination protections, but adding this additional language obligation to an employer's paperwork burdens is reminiscent of "no good deed goes unpunished." Employers providing genuine equal employment opportunity are greeted with the need to obtain translators and keep multi-lingual records, with any miscue being a "cause of action". Employers who miss the short ten (10) day period to provide a bond pending appeal from an adverse administrative determination then are subjected to severe sanctions, including accountings and civil penalties of up to $10,000. In the administrative proceedings, civil penalties of $500 for each failure of compliance regarding rate of pay or differentiation in pay because of sex are imposed and there are "liquidated damages" for underpayments, too. Mistakes in notices or record keeping regarding rates of pay or overtime are punished by acceptance of anecdotal employee testimony and the employer has a heightened burden of providing "specific, detailed, and credible rebuttal evidence". Experienced practitioners know that such a system foments self-serving testimony by opportunistic employees and their contingent fee counsel.

tappan hill          phone 914.631.3030
81 highland avenue   fax 914.631.5399
tarrytown, ny        www.abigailkirsch.com
10591

000111

**Katie Sherwin**

| | |
|---|---|
| **From:** | Marsha Firestone, Ph.D. [marsha@womenpresidentsorg.com] |
| **Sent:** | Friday, December 10, 2010 12:25 PM |
| **To:** | Katie Sherwin |
| **Subject:** | Re: Request for veto of S.8380/A.11726 |
| **Attachments:** | image003.jpg |



RECEIVED

DEC 10 2010

NEW YORK STATE
EXECUTIVE CHAMBER
COUNSEL

December 6, 2010

Peter Kiernan, Esq.
Counsel to the Governor
Executive Chamber
State Capitol
Albany, NY 12224

Re: Request for veto of S.8380/A.11726

Dear Mr. Kiernan:

The Women Presidents' Organization and Women Presidents' Educational Organization opposes this bill and requests that it be vetoed. The "Wage Theft Prevention Act" would affect over 250,000 businesses in New York City and compound the difficulty of doing business in New York State by creating an additional unnecessary and burdensome paperwork and penalty regime. At a time when our state economy is struggling, the imposition of this, particularly on small and medium sized businesses, is vastly disproportionate to pay and compliance violations under NYS Labor Law and regulation requirements. Currently, employers provide employees their pay rate, overtime rate, if applicable, and pay day information in writing at the time of hiring. This bill would double the amount of information required plus require that it be provided in writing every year with an accompanying written acknowledgement from the employee. In addition, if there are any changes in any of the information on the initial or annual notice, it must be communicated in writing to the employee at least a calendar week before the changes take affect.

Besides requiring that double the current amount of information be provided by employers to employees, the proposal would also require employers to provide any "…such other information as the commissioner deems material and necessary." The proposed legislation gives no further indication of what this information might be. This is entirely too arbitrary and open ended and is unclear and unnecessary.

We urge the Governor to veto this bill in the interest of the economic growth and stability of our state's business community-and job creators.

Sincerely,

Marsha Firestone, Ph.D



ABIGAIL

- Statewide, New York needs 500,000 new jobs just to return to pre-recession employment levels. Those jobs will come only when employers decide it is worth expanding and creating new jobs in New York State. This bill would compound the difficulty of doing business in NYS by creating an unnecessary and burdensome paperwork and penalty regime. At a time when our state economy is struggling, the imposition, particularly on small and medium sized businesses, is vastly disproportioned to any genuine or valid concern for proper pay and compliance with the state labor law requirements.

- It makes no sense that the state legislature is moving forward with this burdensome new proposal with its new obligations on the very same businesses they are turning to for those new jobs.

For these reasons, I opposes this legislation and strongly urges that it not be enacted by the New York State Legislature.

Sincerely,

James Kirsch
President & CEO
Abigail Kirsch, Catering Relationships
81 Highland Avenue
Tarrytown, NY 10591

tappan hill
81 highland avenue
tarrytown, ny
10591

phone 914.631.3030
fax 914.631.5399
www.abigailkirsch.com

000113



ABIGAIL **KIRSCH**

Catering
Relation ! ! !

December 13, 2010

**Dear Governor Paterson,**

| **BILL:** | **A.11726 (Rules Heastie) /**<br>**S.8380 (Savino)** |
|---|---|

<div style="text-align:center; background:black; color:white;">OPPOSE</div>

**A.11726 (Rules Heastie)**
**/ S.8380 (Savino)**

**SUBJECT:   NYS Wage Theft Protection Act**

**DATE:        December 13, 2010**

This fifteen page bill, the Wage Theft Protection Act, would expand many current and longstanding employer obligations under the state's labor law and add new penalties for employers. I oppose enactment of this proposal and appreciate your time and consideration.

- These expansions are proposed for no apparent reason other than "Studies indicate ...a large number of employees are earning less than minimum wage..." and "...not all receiving the appropriate amount of overtime compensation" and "...employers are also failing to provide basic necessities such as, days of rest and meal period breaks..." Nothing in the bill or memo details the inadequacy of the current and longstanding employee protections of these provisions in the state's labor law.

- Work in New York and other states has gradually shifted to a service and high tech economy. Many of the longstanding employer obligations and the expansions proposed in this bill are geared to an industrial model that is no longer representative of the workplace. Employees are much more aware of workplace rights, assert them and are not in need of an overreaching state government apparatus.

- The requirement to provide extensive notices and records in the "primary language of the employee" adds a multi-lingual burden upon NYS employers that is unfair, unwarranted and unprecedented. Employees already have non-discrimination protections, but adding this additional language obligation to an employer's paperwork burdens is reminiscent of "no good deed goes unpunished." Employers providing genuine equal employment opportunity are greeted with the need to obtain translators and keep multi-lingual records, with any miscue being a "cause of action". Employers who miss the short ten (10) day period to provide a bond pending appeal from an adverse administrative determination then are subjected to severe sanctions, including accountings and civil penalties of up to $10,000. In the administrative proceedings, civil penalties of $500 for each failure of compliance regarding rate of pay or differentiation in pay because of sex are imposed and there are "liquidated damages" for underpayments, too. Mistakes in notices or record keeping regarding rates of pay or overtime are punished by acceptance of anecdotal employee testimony and the employer has a heightened burden of providing "specific, detailed, and credible rebuttal evidence". Experienced practitioners know that such a system foments self-serving testimony by opportunistic employees and their contingent fee counsel.

tappan hill
81 highland avenue
tarrytown, ny
10591

phone 914.631.3030
fax 914.631.5399
www.abigailkirsch.com

000114



- Statewide, New York needs 500,000 new jobs just to return to pre-recession employment levels. Those jobs will come only when employers decide it is worth expanding and creating new jobs in New York State. This bill would compound the difficulty of doing business in NYS by creating an unnecessary and burdensome paperwork and penalty regime. At a time when our state economy is struggling, the imposition, particularly on small and medium sized businesses, is vastly disproportioned to any genuine or valid concern for proper pay and compliance with the state labor law requirements.

- It makes no sense that the state legislature is moving forward with this burdensome new proposal with its new obligations on the very same businesses they are turning to for those new jobs.

For these reasons, I opposes this legislation and strongly urges that it not be enacted by the New York State Legislature.

Sincerely,

Luisa Marciano
Corporate Director of Human Rescources
Abigail Kirsch, Catering Relationships
81 Highland Avenue
Tarrytown, NY 10591

tappan hill          phone 914.631.3030
81 highland avenue   fax 914.631.5399
tarrytown, ny        www.abigailkirsch.com
10591

000115



**WOMEN PRESIDENTS'
O R G A N I Z A T I O N**®

Reaching Farther. Together.

December 6, 2010

Peter Kiernan, Esq.
Counsel to the Governor
Executive Chamber
State Capitol
Albany, NY 12224

> **RECEIVED**
>
> DEC 17 2010
>
> NEW YORK STATE
> EXECUTIVE CHAMBER
> COUNSEL

*KRISTIN*

Re: Request for veto of S.8380/A.11726

Dear Mr. Kiernan:

The Women Presidents' Organization and the Women Presidents' Educational Organization opposes this bill and requests that it be vetoed. The "Wage Theft Prevention Act" would affect over 250,000 businesses in New York City and compound the difficulty of doing business in New York State by creating an additional unnecessary and burdensome paperwork and penalty regime. At a time when our state economy is struggling, the imposition of this, particularly on small and medium sized businesses, is vastly disproportionate to pay and compliance violations under NYS Labor Law and regulation requirements. Currently, employers provide employees their pay rate, overtime rate, if applicable, and pay day information in writing at the time of hiring. This bill would double the amount of information required plus require that it be provided in writing every year with an accompanying written acknowledgement from the employee. In addition, if there are any changes in any of the information on the initial or annual notice, it must be communicated in writing to the employee at least a calendar week before the changes take affect.

Besides requiring that double the current amount of information be provided by employers to employees, the proposal would also require employers to provide any "…such other information as the commissioner deems material and necessary." The proposed legislation gives no further indication of what this information might be. This is entirely too arbitrary and open ended and is unclear and unnecessary.

We urge the Governor to veto this bill in the interest of the economic growth and stability of our state's business community-and job creators.

Sincerely,

*Marsha Firestone*

Marsha Firestone, PhD
President & Founder
Women Presidents' Organization
Women Presidents' Educational Organization

[ TEL ] 212.688.4114   [ FAX ] 212.688.4766

000116

WWW.WOMENPRESIDENTSORG.COM


## THE
## LEGAL
## AID
## SOCIETY

Employment Law Unit
199 Water Street
New York, NY 10038
T (212) 577-3300
www.legal-aid.org

Direct Dial: (212) 577-3648
Direct Fax: (212) 509-8761
E-mail: RBlum@legal-aid.org

Blaine (Fin) V. Fogg
*President*

Steven Banks
*Attorney-in-Chief*

Adriene L. Holder
*Attorney-in-Charge*
Civil Practice

December 6, 2010

Governor David Paterson
State Capitol
Albany, NY 12224

Re: <u>S.8380/A.11726</u>

'CRUTIN

Dear Governor Patterson:

On behalf of The Legal Aid Society, I write to urge you to sign the Wage Theft Prevention Act, A.11726/S.8380, into law.

Every day across New York State, countless workers face abuse on the job: nonpayment of overtime for 70+ hour workweeks; theft of tips; illegal deductions from wages; and payment of wages drastically below the legal minimum. In industries that form the backbone of the State's emerging economy – retail, service, restaurants, residential construction – noncompliance with the basic protections of New York Labor Law is often the norm, not the exception. Low-road, unscrupulous employers drive down standards, gaining an unfair competitive edge over those businesses that do follow the law. The resulting lost wages, tax revenue, and economic stability affect all New Yorkers. Every dollar stolen from the hands of a worker is a dollar's unfair advantage over the competition and a dollar's absence from commerce in our neighborhoods.

The Legal Aid Society is the oldest and largest provider of legal assistance to low-income families and individuals in the United States. The Society's Civil Practice operates trial offices in all five boroughs of New York City providing comprehensive legal assistance in housing, public assistance, and other civil areas of primary concern to low-income clients. The Society's Employment Law Project represents low-wage workers in employment-related matters such as claims for unpaid wages, claims of discrimination, and unemployment insurance hearings. The Project conducts litigation, outreach and advocacy projects designed to assist the most vulnerable workers in New York City, among them, low-wage workers in sectors in which wage theft is the rule rather than the exception.

The Wage Theft Prevention Act will foster broad-scale legal compliance with New York's most fundamental wage laws and end the unfair competition killing our small businesses that follow the law. The WTPA contains the best, most effective tools to fight wage theft – borrowing from other areas of New York law, and from proven models in other States and in federal law.

Page 2

The Wage Theft Prevention Act includes four interlocking components to effect the
necessary change:

1)      The WTPA changes the economic incentives that encourage bad-actor employers to
violate the law.  Damages owed, on top of wages, will be increased from 25% to 100% –
matching the damage level in twenty-four other States and under federal law.  [Seven states
impose even heavier penalties of 200%.]  Unscrupulous employers will chose to comply
with our State's wage laws only when there is a real price tag on violations.  These new
damages provide just that leverage.

2)      Workers must be encouraged to speak up for their rights – and be protected when
they do.  Savvy wage thieves know that often a simple threat is all it takes to scare workers
away from reporting legal violations.  The WTPA ensures that all the dirty tricks of the
worst violators are outlawed, and workers are meaningfully protected from retaliation for
enforcing their rights.  Importantly, the law closes loopholes for enforcement, giving the
Department of Labor the same powers as the courts to remedy retaliation when it occurs.
These amendments send a strong message to unscrupulous employers: retaliating against
workers who demand their right to minimum wage and overtime is illegal, is expensive, and
will not be tolerated.

3)      New tools will ensure the worst violators have a harder time hiding assets to avoid
judgment.  The NYDOL will have new authority to get an accounting of assets from
employers found in violation, and discretion to use innovative new collection measures.
Wage thieves who fail to pay final orders within 90 days will have to pay an extra 15% –
defraying the cost to the DOL and to the worker for expensive efforts to enforce judgments.

4)      Finally, the WTPA clarifies and consolidates employers' obligations to maintain
records and give employees paystubs.  The way current law is set forth complicates
employers' ability to understand and follow their legal obligations.  Key requirements are
buried in regulations, rather than set out clearly in the statute itself.  The WTPA codifies
existing record keeping requirements in the statute, so that both employers' obligations and
the consequences of violations are crystal clear.

The Wage Theft Prevention Act is targeted reform, hitting only those employers who refuse
to follow our State's most basic employment laws.  New York's working families and small
businesses suffering from unfair competition urge you to join them in the fight against wage
theft and sign this bill in to law.

Thank you for your consideration of this matter.

                                             Very truly yours,

                                             Steven Banks



**THE BUSINESS COUNCIL OF WESTCHESTER**

December 8, 2010

RECEIVED

DEC 1 0 2010

NEW YORK STATE
EXECUTIVE CHAMBER
COUNSEL

Honorable Peter Kiernan, Esq.
Counsel to the Governor
Executive Chamber
State Capitol
Albany, New York 12224

Dear Mr. Kiernan:

      RE:    *S.8380/A.A.11726*                KRISTIN

The Business Council of Westchester opposes the "Wage Theft Prevention Act" and
respectfully urges Governor Paterson to veto the above-referenced legislation. This bill
would expand many current and longstanding employer obligations under the state's
labor law and add new penalties for employers.

 The Business Council of Westchester opposes enactment of this legislation for the
following reasons:

- These expansions are proposed for no apparent reason other than "Studies
indicate …a large number of employees are earning less than minimum wage…"
and "…not all receiving the appropriate amount of overtime compensation" and
"…employers are also failing to provide basic necessities such as, days of rest and
meal period breaks…" Nothing in the bill or memo details the inadequacy of the
current and longstanding employee protections of these provisions in the state's
labor law.

- Work in New York and other state has gradually shifted to a service and high tech
economy. Many of the longstanding employer obligations and the expansions
proposed in this bill are geared to an industrial model that is no longer
representative of the workplace. Employees are much more aware of workplace
rights, assert them and are not in need of an overreaching state government
apparatus.

- The requirement to provide extensive notices and records in the "primary
language of the employee" adds a multi-lingual burden upon NYS employers that
is unfair, unwarranted and unprecedented. Employees already have non-

discrimination protections, but adding this additional language obligation to an employer's paperwork burdens is reminiscent of "no good deed goes unpunished." Employers providing genuine equal employment opportunity are greeted with the need to obtain translators and keep multi-lingual records, with any miscue being a "cause of action". Employers who miss the short ten (10) day period to provide a bond pending appeal from an adverse administrative determination then are subjected to severe sanctions, including accountings and civil penalties of up to $10,000. In the administrative proceedings, civil penalties of $500 for each failure of compliance regarding rate of pay or differentiation in pay because of sex are imposed and there are "liquidated damages" for underpayments, too. Mistakes in notices or record keeping regarding rates of pay or overtime are punished by acceptance of anecdotal employee testimony and the employer has a heightened burden of providing "specific, detailed, and credible rebuttal evidence". Experienced practitioners know that such a system foments self-serving testimony by opportunistic employees and their contingent fee counsel.

- Statewide, New York needs 500,000 new jobs just to return to pre-recession employment levels. Those jobs will come only when employers decide it is worth expanding and creating new jobs in New York State. This bill would compound the difficulty of doing business in NYS by creating an unnecessary and burdensome paperwork and penalty regime. At a time when our state economy is struggling, the imposition, particularly on small and medium sized businesses, is vastly disproportioned to any genuine or valid concern for proper pay and compliance with the state labor law requirements.

- It makes no sense that the state legislature is moving forward with this burdensome new proposal with its new obligations on the very same businesses they are turning to for those new jobs.

For these reasons, The Business Council of Westchester opposes this legislation and strongly urges that it be vetoed by the Governor.

Sincerely,

Paul Vitale

Paul Vitale
Vice President, Government & Community Relations



December 7, 2010

RECEIVED

DEC 10 2010

NEW YORK STATE
EXECUTIVE CHAMBER
COUNSEL

Peter Kiernan, Esq.
Counsel to the Governor
Executive Chamber
State Capitol
Albany, NY 12224

Re: Request for veto of S.8380/A.11726

Dear Mr. Kiernan:

The Business Council opposes this bill and requests that it be vetoed.   To: Kristin

The "Wage Theft Prevention Act" would affect over 500,000 businesses statewide and compound the difficulty of doing business in New York State by creating an additional unnecessary and burdensome paperwork and penalty regime. At a time when our state economy is struggling, the imposition of this, particularly on small and medium sized businesses, is vastly disproportionate to pay and compliance violations under NYS Labor Law and regulation requirements. Currently, employers provide employees their pay rate, overtime rate, if applicable, and pay day information in writing at the time of hiring. This bill would double the amount of information required plus require that it be provided in writing every year with an accompanying written acknowledgement from the employee. In addition, if there are any changes in any of the information on the initial or annual notice, it must be communicated in writing to the employee at least a calendar week before the changes take affect.

Besides requiring that double the current amount of information be provided by employers to employees, the proposal would also require employers to provide any "…such other information as the commissioner deems material and necessary." The proposed legislation gives no further indication of what this information might be.

This is entirely too arbitrary and open ended, and based on our experience last year with Chapter 270 of 2009, significantly more information will be required by the commissioner than the legislative proposal requires. Initially with Chapter 270 last year, the commissioner required employer use of the Labor Department's templates. These templates required substantially more information than the new law required.

Cont'd.

---

6847 Ellicott Drive
East Syracuse, NY 13057
Phone: 315-463-7333
Fax: 315-463-6971/5484

4381 Walden Avenue
Lancaster, NY 14086
Phone: 716-684-9040
Fax: 716-684-9044

241 Paul Road
Rochester, NY 14624
Phone: 585-328-6380
Fax: 585-328-3622

2820 Curry Road
Schenectady, NY 12303
Phone: 518-356-5932
Fax: 518-356-5892

535 Vestal Parkway West
Vestal, NY 13850
Phone: 607-775-2744
Fax: 607-741-4574

33B Commerce Avenue
Burlington, VT 05403
Phone: 802-864-0308
Fax: 802-864-1826

9 Belden Road
Bloomfield, CT 06002
Phone: 860-243-9723
Fax: 860-242-9247

December 7, 2010
Page 2

There were so many complaints about this additional information requirement that the Department changed its position and made the use of the templates voluntary, as it should have from the outset. In this current legislative proposal, the Department's providing of templates for notices in foreign languages does not alter the significant additional paperwork preparation requirement and six year record keeping obligations that transcend the bounds of reason and continue to make NYS inhospitable to business and a target of punitive actions for mistakes in payment.

This proposed legislation creates a paperwork trap for employers with draconian sanctions for infractions, as well as perverse incentives for disgruntled employees to raise anecdotal claims. Punitive liquidated damages and civil action damages as well as attorneys fees, under a six year statute of limitations, will inevitably lead to opportunistic employees and plaintiff's lawyers seeking statutory "redress" which can adversely impact a business. Employers are further disadvantaged under this legislative proposal by unparalleled sanctions for failure to pay irrespective of ability to do so, with attorney's fees and costs being imposed in collection actions, combined with an automatic 15% increase in the amount of a judgment after 90 days. A requirement for an accounting of the assets of the employer, coupled with a civil penalty of up to $10,000 for failure to provide such accounting within 10 days, is yet another layer of disincentive to do business in New York State or have a well capitalized business here.

This bill is based on the National Employment Law Project's report, Working Without Laws: A Survey of Employment and Labor Law Violations in New York City. It is a 2008 study using interviews with 1,432 employees working in New York City. We strongly object to the results of a New York City study being used as even a partial justification for a new state law that would impose dramatic increases in administrative costs and penalties on more than 500,000 private employers all across New York State. The Labor Department along with the Attorney General and others has, through their current and varied enforcement mechanisms, conducted numerous industry sweeps, fraud hotlines, etc. in an effort to ensure employers are complying with New York's employment laws. Even with their widely publicized raids and audits, the percentage of non-compliant employers is statistically small and does not warrant the dramatic increases in administrative burden, costs and penalties proposed to be applied across all New York State employers.

The existing interagency framework for employment law compliance to weed out the bad actors should continue with appropriate display of data to evaluate areas where the law may be in need of improvement. This study also cites increased effectiveness of the state Labor Department's efforts in pursuing wage and overtime violations in recent years. This should be reason enough not to propose new burdensome administrative costs and penalty requirements on New York State private employers and confer new powers on the commissioner. Instead, without citing a failure of any of the current labor laws, rules or regulations, the legislature moved ahead with this proposed legislation. Nothing in the bill or sponsor's memo details any inadequacy of the current and longstanding employee protections in the state's labor laws.

Cont'd.

|  |  |  |  |
|---|---|---|---|
| 6847 Ellicott Drive | 4381 Walden Avenue | 241 Paul Road | 2820 Curry Road |
| East Syracuse, NY 13057 | Lancaster, NY 14086 | Rochester, NY 14624 | Schenectady, NY 12303 |
| Phone: 315-463-7333 | Phone: 716-684-9040 | Phone: 585-328-6380 | Phone: 518-356-5932 |
| Fax: 315-463-6971/5484 | Fax: 716-684-9044 | Fax: 585-328-3622 | Fax: 518-356-5892 |

|  |  |  |
|---|---|---|
| 535 Vestal Parkway West | 33B Commerce Avenue | 9 Belden Road |
| Vestal, NY 13850 | Burlington, VT 05403 | Bloomfield, CT 06002 |
| Phone: 607-775-2744 | Phone: 802-864-0308 | Phone: 860-243-9723 |
| Fax: 607-741-4574 | Fax: 802-864-1826 | Fax: 860-242-9247 |

December 7, 2010
Page 3

For these reasons, The Business Council opposes this legislation and respectfully urges that it be vetoed.
Sincerely,

Joe Verzino
President

JV/ng

6847 Ellicott Drive
East Syracuse, NY 13057
Phone: 315-463-7333
Fax: 315-463-6971/5484

4381 Walden Avenue
Lancaster, NY 14086
Phone: 716-684-9040
Fax: 716-684-9044

241 Paul Road
Rochester, NY 14624
Phone: 585-328-6380
Fax: 585-328-3622

2820 Curry Road
Schenectady, NY 12303
Phone: 518-356-5932
Fax: 518-356-5892

535 Vestal Parkway West
Vestal, NY 13850
Phone: 607-775-2744
Fax: 607-741-4574

33B Commerce Avenue
Burlington, VT 05403
Phone: 802-864-0308
Fax: 802-864-1826

9 Belden Road
Bloomfield, CT 06002
Phone: 860-243-9723
Fax: 860-242-9247





December 10, 2010


Peter Kiernan, Esq.

Counsel to the Governor

Executive Chamber

State Capitol

Albany, NY 12224


Re: Request for veto of S.8380/A.11726


Dear Mr. Kiernan:


Cozy's Cuts For Kids opposes this bill and requests that it be vetoed. The "Wage Theft Prevention Act" would affect over 250,000 businesses in New York City and compound the difficulty of doing business in New York State by creating an additional unnecessary and burdensome paperwork and penalty regime. At a time when our state economy is struggling, the imposition of this, particularly on small and medium sized businesses, is vastly disproportionate to pay and compliance violations under NYS Labor Law and regulation requirements. Currently, employers

provide employees their pay rate, overtime rate, if applicable, and pay day

information in writing at the time of hiring. This bill would double the amount of information required plus require that it be provided in writing every year with an accompanying written acknowledgement from the employee. In addition, if there are any changes in any of the information on the initial or annual notice, it must be communicated in writing to the employee at least a calendar week before the changes take affect.


Besides requiring that double the current amount of information be provided by employers to employees, the proposal would also require employers to provide any "...such other information as the commissioner deems material and necessary."  The proposed legislation gives no further indication of what this information might be. This is entirely too arbitrary and open ended and is unclear and unnecessary.


We urge the Governor to veto this bill in the interest of the economic growth and stability of our state's business community-and job creators.


Sincerely

Cozy Friedman

**President**


000124

# STATE OF NEW YORK

8380

# IN SENATE

June 27, 2010

Introduced by Sen. SAVINO -- read twice and ordered printed, and when
  printed to be committed to the Committee on Rules

AN ACT to amend the labor law, in relation to establishing the wage
  theft prevention act

  The People of the State of New York, represented in Senate and Assem-
bly, do enact as follows:

 1    Section 1. This act shall be known and may be cited as the "wage theft
 2  prevention act".
 3    § 2. Section 2 of the labor law is amended by adding a new subdivision
 4  16 to read as follows:
 5    16. All references to labor law, chapter, article or section shall be
 6  deemed to include any rule, regulation or order promulgated thereunder
 7  or related thereto.
 8    § 3.  Subdivisions 1, 2, 3 and 4 of section 195 of the labor law, as
 9  added by chapter 548 of the laws of 1966 and subdivision 1 as amended by
10  chapter 270 of the laws of 2009, are amended to read as follows:
11    1. (a) [notify] provide his or her employees, in writing in English
12  and in the language identified by each employee as the primary language
13  of such employee, at the time of hiring [of], and on or before February
14  first of each subsequent year of the employee's employment with the
15  employer, a notice containing the following information: the rate or
16  rates of pay and [of] basis thereof, whether paid by the hour, shift,
17  day, week, salary, piece, commission, or other; allowances, if any,
18  claimed as part of the minimum wage, including tip, meal, or lodging
19  allowances; the regular pay day designated by the employer in accordance
20  with section one hundred ninety-one of this article[, and]; the name of
21  the employer; any "doing business as" names used by the employer; the
22  physical address of the employer's main office or principal place of
23  business, and a mailing address if different; the telephone number of
24  the employer; plus such other information as the commissioner deems
25  material and necessary. Each time the employer provides such notice to
26  an employee, the employer shall obtain from the employee a signed and
27  dated written acknowledgement [from each employee], in English and in
28  the primary language of the employee, of receipt of this notice, which

EXPLANATION--Matter in *italics* (underscored) is new; matter in brackets
             [-] is old law to be omitted.

LBD17901-01-0

S. 8380                                    2

1    the employer shall preserve and maintain for six years. Such acknowl-
2    edgement shall include an affirmation by the employee that the employee
3    accurately identified his or her primary language to the employer,  and
4    that  the  notice  provided by the employer to such employee pursuant to
5    this subdivision was in the language so identified or otherwise complied
6    with paragraph (c) of this subdivision, and shall conform to  any  addi-
7    tional  requirements  established  by  the commissioner with regard to
8    content and form. For all employees who are [eligible  for]  not  exempt
9    from  overtime compensation as established in the commissioner's minimum
10   wage orders or otherwise provided by New York state law  or  regulation,
11   the notice must state the regular hourly rate and overtime rate of pay;
12       (b)  The  commissioner  shall  prepare  templates that comply with the
13   requirements of paragraph (a) of this subdivision.  Each  such  template
14   shall  be  dual-language, including English and one additional language.
15   The commissioner shall determine, in his or her discretion,  which
16   languages  to  provide  in addition to English, based on the size of the
17   New York state population that speaks each language and any other factor
18   that the commissioner shall deem relevant.  All such templates shall  be
19   made  available to employers in such manner as determined by the commis-
20   sioner;
21       (c) When an employee identifies as his or her primary language  a
22   language  for  which  a template is not available from the commissioner,
23   the employer shall comply with  this  subdivision  by  providing  that
24   employee an English-language notice or acknowledgment;
25       (d)  An employer shall not be penalized for errors or omissions in the
26   non-English portions of any notice provided by the commissioner;
27       (e) The commissioner shall have discretion to waive or alter  require-
28   ments  of  paragraph  (a) of this subdivision for temporary help firms as
29   defined in section nine hundred sixteen of this chapter.
30       2. notify his or her employees in writing of any changes to the infor-
31   mation set forth in [the pay] subdivision one of this section, at  least
32   seven  calendar  days  prior  to  the  time of such changes, unless such
33   changes are reflected on the wage statement furnished in accordance with
34   subdivision three of this section;
35       3. furnish each employee with a statement with every payment of wages,
36   listing the following: the dates of work  covered  by  that  payment  of
37   wages;  name  of employee; name of employer; address and phone number of
38   employer; rate or rates of pay and basis thereof, whether paid  by  the
39   hour,  shift,  day,  week,  salary,  piece,  commission, or other; gross
40   wages[,]; deductions; allowances, if any, claimed as part of the minimum
41   wage; and net wages[, and upon]. For all employees who  are  not  exempt
42   from  overtime compensation as established in the commissioner's minimum
43   wage orders or otherwise provided by New York state law  or  regulation,
44   the statement shall include the regular hourly rate or rates of pay; the
45   overtime  rate  or rates of pay; the number of regular hours worked, and
46   the number of overtime hours worked. For all  employees  paid  a  piece
47   rate,  the  statement shall include the applicable piece rate or rates of
48   pay and number of pieces completed at each piece rate. Upon the  request
49   of  an  employee, an employer shall furnish an explanation in writing of
50   how such wages were computed;
51       4. establish, maintain and preserve for  not  less  than  [three]  six
52   years  contemporaneous,  true,  and accurate payroll records showing for
53   each week worked the hours worked[,]; the rate or rates of pay and basis
54   thereof,  whether  paid by the hour,  shift,  day,  week,  salary,  piece,
55   commission,  or  other;  gross  wages[,];  deductions; allowances, if any,
56   claimed as part of the minimum wage; and net wages for  each  employee.

S. 8380                                    3

1  For all employees who are not exempt from overtime compensation as
2  established in the commissioner's minimum wage orders or otherwise
3  provided by New York state law or regulation, the payroll records shall
4  include the regular hourly rate or rates of pay, the overtime rate or
5  rates of pay, the number of regular hours worked, and the number of
6  overtime hours worked. For all employees paid a piece rate, the payroll
7  records shall include the applicable piece rate or rates of pay and
8  number of pieces completed at each piece rate;
9      § 4. Section 196 of the labor law, as added by chapter 548 of the laws
10 of 1966, paragraph b of subdivision 1 as amended by chapter 328 of the
11 laws of 1972 and paragraph e of subdivision 1 as added by chapter 336 of
12 the laws of 1985, is amended to read as follows:
13     § 196. Powers of commissioner. 1. In addition to the powers of the
14 commissioner specified in other sections of this chapter, the commis-
15 sioner shall have the following duties, powers and authority:
16     a. He or she shall investigate and attempt to adjust equitably contro-
17 versies between employers and employees relating to this article, or
18 article five, seven, nineteen or nineteen-A of this [article] chapter.
19     b. He or she may take assignments of claims for wages [as defined in]
20 under this [article] chapter from employees or third parties in trust
21 for such employees or for the benefit of various funds for such employ-
22 ees. All such assignments shall run to the commissioner and his or her
23 successor in office. The commissioner may sue employers on wage claims
24 thus assigned, with the benefits and subject to the provisions of exist-
25 ing law applying to actions by employees for collection of wages. He or
26 she may join in a single action any number of wage claims against the
27 same employer.
28     c. He or she may institute proceedings on account of any criminal
29 violation of any provision of this article, or article five, seven,
30 nineteen or nineteen-A of this [article] chapter.
31     d. If it shall appear to him or her that any employer has been
32 convicted of a violation of any provision of this article or article
33 nineteen or nineteen-A of this chapter or that any [judgement] order to
34 comply issued against an employer [for non-payment of wages] under this
35 chapter remains unsatisfied for a period of ten days after the time to
36 appeal therefrom has expired, and that no appeal therefrom is then pend-
37 ing, the commissioner may require such employer to deposit with him or
38 her a bond in such sum as he or she may deem sufficient and adequate in
39 the circumstances, together with two or more sureties or a duly author-
40 ized surety company, to be approved by the commissioner. The bond shall
41 be payable to the commissioner and shall be conditioned that the employ-
42 er will, for a definite future period, not exceeding two years, pay his
43 or her employees in accordance with the provisions of this article or
44 article nineteen or nineteen-A of this chapter, and shall be further
45 conditioned upon the payment by the employer of any amounts due pursuant
46 to an order to comply or judgment [which may be recovered] against such
47 employer pursuant to the provisions of this article or article nineteen
48 or nineteen-A of this chapter.
49     If within ten days after demand for such bond, which demand may be
50 made by certified or registered mail, such employer shall fail to depos-
51 it the same, the commissioner may bring an action in the name and on
52 behalf of the people of the state of New York against such employer in
53 the supreme court to compel such employer to furnish such a bond or to
54 cease doing business until he or she has done so. The employer shall
55 have the burden of proving that either such a bond is unnecessary or
56 that the amount demanded is excessive. If the court finds that there is

S. 8380                                    4

```
 1  just cause for requiring the bond and that same is reasonably  necessary
 2  or proper to secure prompt payment of the wages of the employees of such
 3  employer  and  his or her compliance with the provisions of this article
 4  or  article nineteen or nineteen-A of this chapter, the court may enjoin
 5  such employer and such other person or persons as may have been  or  may
 6  be  concerned with or in any way participating in the failure to pay the
 7  wages resulting in the conviction [or in the judgment] or order to
 8  comply as aforesaid,  from doing business until the requirement is met
 9  and make other and further orders appropriate to compel compliance  with
10  the requirement.
11      If  any  order to comply issued against an employer under this article
12  or article nineteen or nineteen-A of this  chapter  remains  unsatisfied
13  for a period of ten days after the time to appeal therefrom has expired,
14  and  that  no  appeal  therefrom  is  then pending, the commissioner may
15  require the employer to provide an accounting of assets of the employer,
16  including but not limited to, a list  of  all  bank  accounts,  accounts
17  receivable, personal property, real property, automobiles or other vehi-
18  cles,  and  any  other assets, in a form and manner as prescribed by the
19  commissioner. An employer shall  provide  such  amended  accountings  of
20  assets  as the commissioner shall order. If within ten days after demand
21  for such an accounting of assets, which demand may be made by  certified
22  or  registered  mail, such employer shall fail to provide same, or if the
23  employer fails to provide an amended accounting as required  under  this
24  section,  the commissioner may bring an action in the name and on behalf
25  of the people of the state of New York  against  such  employer  in  the
26  supreme  court to compel such employer to furnish the accounting and pay
27  a civil penalty of no more than ten thousand dollars.
28      e. He or she is hereby authorized and empowered to enter into recipro-
29  cal agreements with the labor department or corresponding agency of  any
30  other state or with the person, board, officer, or commission authorized
31  to  act  on  behalf  of such department or agency, for the collection in
32  such other states of claims and judgments for wages based upon  claims
33  assigned to the commissioner.
34      The commissioner may,  to  the extent provided for by any reciprocal
35  agreement entered into by law or with any agency  of  another  state  as
36  herein  provided, maintain actions in the courts of such other state for
37  the collection of claims and judgments for wages and may  assign  such
38  claims  and  judgments  to  the labor department or agency of such other
39  state for collection to the extent that  such  an  assignment  may  be
40  permitted  or  provided  for  by  the law of such state or by reciprocal
41  agreement.
42      The commissioner may, upon the written consent of the labor department
43  or other corresponding agency of any  other  state  or  of  any  person,
44  board,  officer  or  commission of such state authorized to act on behalf
45  of such labor department or corresponding agency,  maintain  actions  in
46  the  courts  of  this state upon assigned claims and judgments for wages
47  arising in such other state in the same manner and to  the  same  extent
48  that  such  actions  by  the commissioner are authorized when arising in
49  this state. However, such actions may be maintained only in cases  where
50  such other state by law or reciprocal agreement extends a like comity to
51  cases arising in this state.
52      2. Nothing in this section shall be construed as requiring the commis-
53  sioner in every instance to investigate and attempt to adjust controver-
54  sies,  or  to  take assignments of wage claims, or to institute criminal
55  prosecutions for any violation  under  this  article  or article five,
```

S. 8380                                     5

```
 1  seven,  nineteen  or  nineteen-A of this chapter, but he or she shall be
 2  deemed vested with discretion in such matters.
 3     § 5. Section 196-a of the labor law, as amended by chapter 417 of the
 4  laws of 2009, is amended to read as follows:
 5     § 196-a. Complaints by employees to commissioner. (a) Any employee[,];
 6  person or organization acting on the employee's behalf; or  the  recog-
 7  nized and certified collective bargaining agent acting on the employee's
 8  behalf, may file with the commissioner a complaint regarding a violation
 9  of  this article, article five, seven, nineteen, or [article] nineteen-A
10  of this chapter for an investigation of  such  complaint  and  statement
11  setting the appropriate remedy, if any.  The commissioner shall keep the
12  names of employees that are the subject of an investigation confidential
13  until such time that disclosure is necessary for resolution of an inves-
14  tigation or a complaint. Failure of an employer to keep adequate records
15  or provide statements of wages to employees as required under this chap-
16  ter, in addition to exposing such employer to penalties authorized under
17  subdivision  one  of section two hundred eighteen of this chapter, shall
18  not operate as a bar to filing of a complaint by an employee. In such  a
19  case the employer in violation shall bear the burden of proving that the
20  complaining employee was paid wages, benefits and wage supplements.
21     (b)  Any employee, or the recognized and certified collective bargain-
22  ing agent acting on the employee's behalf, contractor, or the recognized
23  and certified labor organization with which the contractor has  executed
24  a  collective  bargaining agreement covering wages, benefits and supple-
25  ments, may file with the commissioner a complaint regarding  an  alleged
26  violation of this article or article nineteen of this chapter occasioned
27  by another person,  corporation,  employer or entities in violation of
28  article thirty-five-E of the general business law for  an  investigation
29  of such complaint and statement setting the appropriate remedy, if any.
30     § 6.  Section  197 of the labor law, as amended by chapter 427 of the
31  laws of 2002, is amended to read as follows:
32     § 197. Civil penalty. Any employer who fails to pay the wages  of  his
33  employees  or  shall  differentiate  in  rate  of pay because of sex, as
34  provided in this article, shall forfeit to the people of  the  state  the
35  sum  of  five  hundred dollars for each such failure, to be recovered by
36  the commissioner in any legal action necessary, including administrative
37  action or a civil action.
38     § 7. Section 198 of the labor law, as added by chapter 548 of the laws
39  of 1966, subdivision 1-a as amended by chapter 372 of the laws  of  2009
40  and  subdivision  3 as  amended  by chapter 605 of the laws of 1997, is
41  amended to read as follows:
42     § 198. Costs, remedies. 1. In any action instituted upon a wage  claim
43  by  an  employee or the commissioner in which the employee prevails, the
44  court may allow such employee in addition to ordinary costs,  a  reason-
45  able sum, not exceeding fifty dollars for expenses which may be taxed as
46  costs. No  assignee  of a wage claim, except the commissioner, shall be
47  benefited by this provision.
48     1-a. On behalf of any employee paid less than the wage to which he  or
49  she  is  entitled under the provisions of this article, the commissioner
50  may bring any legal action necessary, including administrative  action,
51  to  collect  such claim and as part of such legal action, in addition to
52  any other remedies and penalties otherwise available under this article,
53  the commissioner [may] shall assess against the employer the full amount
54  of any such underpayment, and an additional amount as liquidated damages
55  [equal to twenty-five percent of the total amount of wages found  to  be
56  due],  unless  the employer proves a good faith basis for believing that
```

S. 8380                                6

```
 1  its underpayment of wages was in compliance with the law.  Liquidated
 2  damages  shall  be  calculated  by  the commissioner as no more than one
 3  hundred percent of the total amount of wages found to  be  due.  In  any
 4  action  instituted in the courts upon a wage claim by an employee or the
 5  commissioner in which the employee prevails, the court shall allow  such
 6  employee  to recover the full amount of any underpayment, all  reasonable
 7  attorney's fees, prejudgment interest as required under the civil  prac-
 8  tice  law  and rules, and, unless the employer proves a good faith basis
 9  to believe that its underpayment of wages was  in  compliance  with  the
10  law,  an  additional amount as liquidated damages equal to [twenty-five]
11  one hundred percent of the total amount of the wages found to be due.
12     1-b.  If any employee is not provided within ten business days of  his
13  or  her  first day of employment a notice as required by subdivision one
14  of section one hundred ninety-five of  this  article,  he  or  she  may
15  recover  in  a  civil action damages of fifty dollars for each work week
16  that the violations occurred or continue to occur, but not to  exceed  a
17  total  of  two  thousand  five  hundred dollars, together with costs and
18  reasonable attorney's fees. The court may also  award  other  relief,
19  including  injunctive  and  declaratory  relief,  that  the court in its
20  discretion deems necessary or appropriate.
21     On behalf of any employee not provided a notice as required by  subdi-
22  vision  one  of  section  one  hundred  ninety-five of this article, the
23  commissioner may bring any legal action necessary, including administra-
24  tive action, to collect such claim, and as part of such legal action, in
25  addition to any other remedies and penalties otherwise  available  under
26  this  article,  the commissioner may assess against the employer damages
27  of fifty dollars for each work week  that  the  violations  occurred  or
28  continue to occur. In any action or administrative proceeding to recover
29  damages for violation of paragraph (d) of subdivision one of section one
30  hundred  ninety-five of this article, it shall be an affirmative defense
31  that (i) the employer made complete and timely payment of all wages  due
32  pursuant  to  this  article or article nineteen or article nineteen-A of
33  this chapter to the employee who was not provided notice as required  by
34  subdivision  one  of  section one hundred ninety-five of this article or
35  (ii) the employer reasonably believed in good  faith  that  it  was  not
36  required to provide the employee with notice pursuant to subdivision one
37  of section one hundred ninety-five of this article.
38     1-d.  If  any  employee  is  not provided a statement or statements as
39  required by subdivision three of section one hundred ninety-five of this
40  article, he or she shall recover  in  a  civil  action  damages  of  one
41  hundred  dollars  for  each  work  week  that the violations occurred or
42  continue to occur, but not to exceed a total of twenty-five  hundred
43  dollars,  together  with costs and reasonable attorney's fees. The court
44  may also  award  other  relief,  including  injunctive  and  declaratory
45  relief, that the court in its discretion deems necessary or appropriate.
46     On  behalf  of  any  employee  not provided a statement as required by
47  subdivision three of section one hundred ninety-five of  this  article,
48  the  commissioner may bring any legal action necessary, including admin-
49  istrative action, to collect such claim,  and  as  part  of  such  legal
50  action, in addition to any other remedies and penalties otherwise avail-
51  able under this article, the commissioner may assess against the employ-
52  er damages of one hundred dollars for each work week that the violations
53  occurred or continue to occur.  In any action or administrative proceed-
54  ing to recover damages for violation of subdivision three of section one
55  hundred  ninety-five of this article, it shall be an affirmative defense
56  that (i) the employer made complete and timely payment of all wages  due
```

1 pursuant  to  this  article  or  articles nineteen or nineteen-A of this
2 chapter to the employee who was not provided statements as  required  by
3 subdivision  three of section one hundred ninety-five of this article or
4 (ii)  the  employer  reasonably  believed  in good faith that it was not
5 required to provide the employee with statements pursuant  to  paragraph
6 (e) of subdivision one of section one hundred ninety-five of this arti-
7 cle.
8    2.  The remedies provided by this article may be  enforced  simultane-
9 ously or consecutively so far as not inconsistent with each other.
10    3.    Notwithstanding any other provision of law, an action to recover
11 upon a liability imposed by this article must be  commenced  within  six
12 years.   The statute of limitations shall be tolled from the date an
13 employee files a complaint with the commissioner  or  the  commissioner
14 commences  an  investigation,  whichever  is  earlier, until an order to
15 comply issued by the commissioner becomes final, or  where  the  commis-
16 sioner does not issue an order, until the date on which the commissioner
17 notifies  the complainant that the investigation has concluded. Investi-
18 gation by the commissioner shall not be a prerequisite to nor a  bar
19 against a person bringing a civil action under this section. All employ-
20 ees  shall  have  the  right  to  recover  full wages, benefits and wage
21 supplements and liquidated damages accrued during the six years previous
22 to the commencing of such action, whether such action is  instituted  by
23 the employee or by the commissioner.
24    4.  In  any  civil  action  by an employee or by the commissioner, the
25 employee or commissioner shall have the right to collect attorney's fees
26 and costs incurred in enforcing any court judgment.   Any  judgment  or
27 court  order  awarding remedies under this section shall provide that if
28 any amounts remain unpaid upon the expiration of ninety  days  following
29 issuance  of  judgment,  or  ninety days after expiration of the time to
30 appeal and no appeal is then pending,  whichever  is  later,  the  total
31 amount of judgment shall automatically increase by fifteen percent.
32    § 8. Section 198-a of the labor law, as amended by chapter 241 of the
33 laws of 2002, is amended to read as follows:
34    § 198-a. Criminal penalties. 1.  Every employer who does not  pay  the
35 wages  of all of his employees in accordance with the provisions of this
36 chapter, and the officers and agents of any corporation, partnership, or
37 limited liability company who knowingly permit the corporation, partner-
38 ship, or limited liability company to violate this chapter by failing to
39 pay the wages of any of its employees in accordance with the  provisions
40 thereof, shall be guilty of a misdemeanor for the first offense and upon
41 conviction  therefor  shall be fined not less than five hundred nor more
42 than twenty thousand dollars or imprisoned for not more than  one  year,
43 and,  in  the  event that any second or subsequent offense occurs within
44 six years of the date of conviction for a prior offense, shall be guilty
45 of a felony for the second or subsequent offense,  and  upon  conviction
46 therefor, shall be fined not less than five hundred nor more than twenty
47 thousand  dollars or imprisoned for not more than one year plus one day,
48 or punished by both such fine and imprisonment, for each  such  offense.
49 An indictment of a person or corporation operating a steam surface rail-
50 road  for an offense specified in this section may be found and tried in
51 any county within the state in which such railroad ran at  the  time  of
52 such offense.
53    2.  Every  employer  who violates or fails to comply with the require-
54 ments of subdivision four of section one  hundred  ninety-five  of  this
55 article, and the officers and agents of any corporation, partnership, or
56 limited liability company who knowingly permit the corporation, partner-

S. 8380                          8

1  ship,  or limited liability company to violate or fail to comply there-
2  with, shall be guilty of a misdemeanor and upon conviction therefor
3  shall be fined not less than five hundred nor more than five thousand
4  dollars or imprisoned for not more than one year.
5      3.  Every employer who knowingly violates or fails to comply with the
6  requirements of subdivision four of section one hundred ninety-five of
7  this article,  and the officers and agents of any corporation, **partner-**
8  **ship, or limited liability company** who knowingly permit the corporation,
9  **partnership, or limited liability company** to violate or fail to comply
10 therewith, shall be guilty of a felony where such employer, officer or
11 agent has been convicted of a violation of such subdivision within the
12 previous six years, and upon conviction therefor shall be fined not less
13 than five hundred nor more than twenty thousand dollars or imprisoned
14 for not more than one year plus one day, or punished by both such fine
15 and imprisonment, for each such offense. In determining the penalty, the
16 court shall consider the severity of the violation, the size of the
17 employer, and the employer's good faith effort to comply with the
18 requirements of subdivision four of section one hundred ninety-five of
19 this article.
20     § 9. Section 199-a of the labor law, as added by chapter 605 of the
21 laws of 1997, is amended to read as follows:
22     § 199-a. Notification of process. 1. Each employee who files a
23 complaint regarding a violation of a provision of this article [six]
24 (payment of wages), article nineteen (minimum wage act), or article
25 nineteen-A **(minimum wage standards and protective labor practices for**
26 **farm workers), section one hundred sixty-one, section one hundred**
27 **sixty-two,** section two hundred twelve-a [or], section two hundred
28 twelve-b, **or section two hundred fifteen** of this chapter, or a rule or
29 regulation promulgated thereunder, shall be provided with a written
30 description of the anticipated processing of the complaint, including
31 investigation, case conference, potential civil and criminal penalties,
32 and collection procedures.
33     2.  Each employee and his or her **authorized** representative shall be
34 notified in writing of any case conference before it is held and given
35 the opportunity to attend.
36     3.  Each employee and his or her **authorized** representative shall be
37 notified in writing of any award and collection of back wages and civil
38 penalties, and of any intent to seek criminal penalties. In the event
39 that criminal penalties are sought the employee and his or her **author-**
40 **ized** representative shall be notified of the outcome of prosecution.
41     § 10.  Section 215 of the labor law, as amended by chapter 744 of the
42 laws of 1986, subdivision 1 as amended by chapter 372 of the laws of
43 2009, is amended to read as follows:
44     § 215.  Penalties and civil action; [~~employer who penalizes employees~~
45 ~~because of complaints of employer violations~~] **prohibited retaliation.** 1.
46 (a) No employer or his or her agent, or the officer or agent of any
47 corporation, partnership, or limited liability company, **or any other**
48 **person,** shall discharge, **threaten,** penalize, or in any other manner
49 discriminate or retaliate against any employee (i) because such employee
50 has made a complaint to his or her employer, or to the commissioner or
51 his or her authorized representative, **or to the attorney general or any**
52 **other person,** that the employer has [~~violated any provision of~~] **engaged**
53 **in conduct that the employee, reasonably and in good faith,** believes
54 **violates any provision of** this chapter, or **any order issued by the**
55 **commissioner** (ii) **because such employer or person believes that such**
56 **employee has made a complaint to his or her employer, or to the commis-**

S. 8380                              9

1  sioner or his or her  authorized  representative,  or  to  the  attorney
2  general,  or  to  any  other  person  that the employer has violated any
3  provision of this chapter, or any order issued by the commissioner (iii)
4  because  such employee has caused to be instituted or is about to insti-
5  tute a proceeding under or related to  this  chapter,  or  [(iii)]  (iv)
6  because  such  employee  has provided information to the commissioner or
7  his or her authorized representative or the attorney general, or  [(iv)]
8  (v)  because  such  employee  has testified or is about to testify in an
9  investigation or proceeding under this chapter, or  [(v)]  (vi)  because
10 such  employee has otherwise exercised rights protected under this chap-
11 ter, or [(vi)] (vii) because the employer has received an adverse deter-
12 mination from the commissioner involving the employee.
13    An employee complaint or other communication need  not  make  explicit
14 reference  to  any  section  or provision of this chapter to trigger the
15 protections of this section.
16    (b) If after investigation the commissioner finds that an employer  or
17 person has violated any provision of this section, the commissioner may,
18 by  an  order  which shall describe particularly  the  nature  of  the
19 violation, assess the employer or person a civil  penalty  of  not  less
20 than one thousand nor more than ten thousand dollars[, and]. The commis-
21 sioner may also order [the employer to pay lost compensation] all appro-
22 priate relief including enjoining the conduct of any person or employer;
23 ordering  payment of liquidated damages to the employee by the person or
24 entity in violation; and, where the person or entity in violation is  an
25 employer  ordering  rehiring  or reinstatement of the employee to his or
26 her former position or an equivalent position,  and  an  award  of  lost
27 compensation  or  an  award of front pay in lieu of reinstatement and an
28 award of lost compensation. Liquidated damages shall  be  calculated  as
29 an  amount  not  more  than ten thousand dollars.  The commissioner may
30 assess liquidated damages on behalf of every  employee  aggrieved  under
31 this  section,  in  addition  to  any  other  remedies permitted by this
32 section.
33    (c) [Notwithstanding the provisions of section two hundred thirteen of
34 this article, the penalties set forth  in  this  section  shall  be  the
35 exclusive remedies available for violations of this section.
36    (d)] This  section  shall  not apply to employees of the state or any
37 municipal subdivisions or departments thereof.
38    2. (a) An employee may bring a civil action in a  court  of  competent
39 jurisdiction  against  any  employer or persons alleged to have violated
40 the provisions of this section. The court  shall  have  jurisdiction  to
41 restrain  violations  of  this  section,  within  two  years after such
42 violation, regardless of the dates of employment of the employee, and to
43 order all appropriate relief, including enjoining  the  conduct  of  any
44 person  or  employer; ordering payment of liquidated damages, costs and
45 reasonable attorneys' fees to the employee by the person  or  entity  in
46 violation;  and, where the person or entity in violation is an employer,
47 ordering rehiring or reinstatement of the employee to his or  her  former
48 position  with restoration of seniority or an award of front pay in lieu
49 of reinstatement, [payment] and an award  of  lost  compensation[,]  and
50 damages,  costs  and reasonable attorneys' fees.  Liquidated damages shall
51 be  calculated  as  an  amount  not more than ten thousand dollars.  The
52 court shall award liquidated damages to every employee  aggrieved  under
53 this  section,  in  addition  to  any  other  remedies permitted by this
54 section. The statute of limitations shall be tolled  from  the  date  an
55 employee  files  a  complaint  with the commissioner or the commissioner
56 commences an investigation, whichever is  earlier,  until  an  order  to

S. 8380                                10

1   comply  issued  by  the commissioner becomes final, or where the commis-
2   sioner does not issue an order, until the date on which the commissioner
3   notifies the complainant that the investigation has concluded.  Investi-
4   gation  by  the  commissioner  shall  not be a prerequisite to nor a bar
5   against a person bringing a civil action under this section.
6      (b) At or before the commencement of any action  under  this  section,
7   notice  thereof shall be served upon the attorney general by the employ-
8   ee.
9      3.  Any employer or his or her agent, or the officer or agent  of  any
10  corporation,  partnership,  or  limited  liability company, or any other
11  person who violates subdivision one of this section shall be guilty of a
12  class B misdemeanor.
13     § 11. Subdivisions 1 and 3 of section 218 of the labor  law,  subdivi-
14  sion  1 as amended by chapter 190 of the laws of 1990, the opening para-
15  graph of subdivision 1 as amended by chapter 304 of the laws of 2007 and
16  subdivision 3 as added by chapter 697 of the laws of 1980,  are  amended
17  to read as follows:
18     1.  If  the  commissioner  determines that an employer has violated a
19  provision of article six (payment of wages), article  nineteen  (minimum
20  wage  act),  article  nineteen-A  (minimum wage standards and protective
21  labor practices for farm workers), section two hundred twelve-a, section
22  two hundred twelve-b, section one hundred sixty-one  (day  of  rest)  or
23  section  one hundred sixty-two (meal periods) of this chapter, or a rule
24  or regulation promulgated thereunder, the commissioner  shall  issue  to
25  the  employer an order directing compliance therewith, which shall
26  describe particularly the nature of the alleged  violation.  A  copy  of
27  such  order  shall be provided to any employee who has filed a complaint
28  and any authorized representative of him or her. In addition to  direct-
29  ing  payment of wages, benefits or wage supplements found to be due, and
30  liquidated damages in the amount of one hundred percent of unpaid wages,
31  such order, if issued to an employer who previously has  been  found  in
32  violation  of  those provisions, rules or regulations, or to an employer
33  whose violation is willful or egregious, shall  direct  payment  to  the
34  commissioner of an additional sum as a civil penalty in an amount [equal
35  to]  not  to  exceed double the total amount of wages, benefits, or wage
36  supplements found to be due. In no case shall the order  direct  payment
37  of  an  amount  less  than the total wages, benefits or wage supplements
38  found by the commissioner to be due, plus the liquidated damages in  the
39  amount  of  one  hundred  percent of unpaid wages, the appropriate civil
40  penalty, and interest at  the  rate  of  interest  then  in  effect,  as
41  prescribed by the superintendent of banks pursuant to section fourteen-a
42  of  the  banking  law per annum from the date of the underpayment to the
43  date of the payment.  Where the violation is for a reason other than the
44  employer's failure to pay wages, benefits or wage supplements  found  to
45  be  due,  the  order shall direct payment to the commissioner of a civil
46  penalty in an amount not to exceed one  thousand  dollars  for  a  first
47  violation, two thousand dollars for a second violation or three thousand
48  dollars  for a third or subsequent violation. In assessing the amount of
49  the penalty, the commissioner shall give due consideration to  the  size
50  of  the  employer's business, the  good faith basis of the employer to
51  believe that its conduct was in compliance with the law, the gravity  of
52  the  violation,  the  history of previous violations and, in the case of
53  wages, benefits or supplements violations, the failure  to  comply  with
54  recordkeeping or other non-wage requirements.
55     Where  there  is  a violation of section one hundred ninety-eight-b of
56  this chapter, the order shall direct payment back to the employee of the

S. 8380                                11

1  amount of wages, supplements or other thing of value unlawfully received
2  plus **liquidated damages in the amount of one hundred percent of unpaid**
3  **wages, and** interest at the rate of interest then in effect, as
4  prescribed by the superintendent of banks pursuant to section fourteen-a
5  of the banking law per annum from the date of the payback, return,
6  donation or contribution to the date of payment, and shall include  such
7  other  relief as may be appropriate, including rehiring or reinstatement
8  of the employee to his or her former position, back wages, and  restora-
9  tion of seniority. In addition, the commissioner shall order payment of
10 a civil penalty of at least twenty-five hundred dollars but not  more
11 than five thousand dollars per violation. In assessing the amount of the
12 penalty,  the  commissioner  shall give due consideration to the size of
13 the employer's business, the good faith **basis** of the employer **to believe**
14 **that its conduct was in compliance with the law,** the gravity of  the
15 violation, the history of previous violations.
16 __At  the  discretion  of  the commissioner, the commissioner shall have__
17 __full authority to provide for inclusion of an automatic fifteen  percent__
18 __additional  amount  of  damages to come due and owing upon expiration of__
19 __ninety days from an order to comply becoming final.  The  commissioner__
20 __shall  provide  written notice to the employer in the order to comply of__
21 __this additional damage.__
22    3. Provided that no proceeding for administrative or  judicial  review
23 as  provided  in  this chapter shall  then be pending and the time for
24 initiation of such proceeding shall have expired, the  commissioner  may
25 file  with  the county clerk of the county where the employer resides or
26 has a place of business the order of the commissioner, or the  decision
27 of the industrial board of appeals containing the amount found to be due
28 including   the  civil penalty, if  any, **and  at  the  commissioner's**
29 **discretion, an additional fifteen percent damages upon  any  outstanding**
30 **monies owed. At the request of an employee, and at the discretion of the**
31 **commissioner,  the commissioner may assign that portion of the money due**
32 **that constitutes wages, wage supplements,  interest  on  wages  or  wage**
33 **supplements,  or  liquidated damages due that employee, to that employee**
34 **and file an order in that amount in the name of that employee  with  the**
35 **county  clerk  of  the county where the employer resides or has a place of**
36 **business.**  The  filing of  such order  or decision  shall  have  the  full
37 force  and  effect  of  a  judgment  duly docketed in the office of such
38 clerk. The order or decision may be enforced by and in the name  of  the
39 commissioner  in  the  same manner,  and  with  like  effect,  as  that
40 prescribed by the civil practice law and rules for the enforcement of  a
41 money judgment.
42    § 12.  Section  219  of the labor law, as added by chapter 697 of the
43 laws of 1980 and subdivision 1 as amended by chapter 417 of the laws  of
44 1987, is amended to read as follows:
45    § 219. Violations of certain wage payment provisions; interest, filing
46 of order as judgment.  1. If the commissioner determines that an employ-
47 er has failed to pay wages, benefits or wage supplements required pursu-
48 ant  to  article  six (payment of wages), article nineteen (minimum wage
49 act) or article [~~nineteen-a~~] **nineteen-A (minimum  wage  standards  and**
50 **protective  labor practices for farm workers)** of this chapter, or a rule
51 or regulation promulgated thereunder, the commissioner  shall  issue  to
52 the  employer  an  order directing compliance therewith, which shall
53 describe particularly the nature of the alleged violation. **A  copy  of**
54 **such  order  shall be provided to any employee who has filed a complaint**
55 **and to his or her authorized representative.** Such  order  shall  direct
56 payment of wages or supplements found to be due, [~~including~~] **liquidated**

S. 8380                                12

1    damages in the amount of one hundred percent of unpaid wages, and inter-
2    est  at  the rate of interest then in effect as prescribed by the super-
3    intendent of banks pursuant to section fourteen-a of the banking law per
4    annum from the date of the underpayment to the date of the payment.
5       At  the  discretion  of  the commissioner, the commissioner shall have
6    full authority to provide for inclusion of an automatic fifteen  percent
7    additional  amount  of  damages to come due and owing upon expiration of
8    ninety days from an order to comply becoming final.  The  commissioner
9    shall  provide  written notice to the employer in the order to comply of
10   this additional damage.
11      2. An order issued under subdivision one  of  this  section  shall  be
12   final  and not subject to review by any court or agency unless review is
13   had pursuant to section one hundred one of this chapter.
14      3. Provided that no proceeding for administrative or  judicial  review
15   as  provided  in  this  chapter shall  then be pending and the time for
16   initiation of such proceeding shall have expired, the  commissioner  may
17   file  with  the county clerk of the county where the employer resides or
18   has a place of business the order of the commissioner or the decision of
19   the industrial board of appeals containing the amount found to  be  due,
20   including,  at  the  commissioner's  discretion,  an  additional fifteen
21   percent damages upon any outstanding monies owed. At the request  of  an
22   employee,  and  at  the discretion of the commissioner, the commissioner
23   may assign that portion of the money due that  constitutes  wages,  wage
24   supplements,  interest  on  wages  or  wage  supplements,  or liquidated
25   damages due the employee, to that employee and file  an  order  in  that
26   amount  in the name of such employee with the county clerk of the county
27   where the employer resides or has a place of business.   The  filing  of
28   such  order  or decision shall have the full force and effect of a judg-
29   ment duly docketed in the office of such clerk. The  order  or  decision
30   may  be  enforced  by  and  in  the name of the commissioner in the same
31   manner, and with like effect, as that prescribed by the  civil  practice
32   law and rules for the enforcement of a money judgment.
33      § 13.  The labor law is amended by adding a new section 219-c to read
34   as follows:
35      § 219-c.  Public notice of employer violations. The commissioner shall
36   have the following powers:
37      1. where an employer is found in violation of article six, nineteen or
38   nineteen-A of this chapter, to post and/or affix for a  period  not  to
39   exceed  one  year  a notice of no less than eight and one-half by eleven
40   inches in an area visible to employees summarizing the violations  found
41   and other information deemed pertinent by the commissioner, according to
42   such form and manner ordered by the commissioner; and
43      2.  where  the  violation is for a willful failure to pay all wages as
44   required by article six, nineteen, or nineteen-A  of  this  chapter,  to
45   post  and/or  affix  for  a  period not to exceed ninety days in an area
46   visible to the general public, as ordered by the commissioner, a  notice
47   of no less than eight and one-half by eleven inches as to the violations
48   found,  according  to  such form and manner ordered by the commissioner.
49   Any person other  than  the  commissioner  or  the  commissioner's  duly
50   authorized  representative  who  removes,  alters,  defaces or otherwise
51   interferes with a notice posted and/or affixed under this section  shall
52   be guilty of a misdemeanor.
53      § 14.  Section  661  of the labor law, as added by chapter 619 of the
54   laws of 1960, is amended to read as follows:
55      § 661. Records of employers.  [Every] For all  employees  covered  by
56   this  article,  every  employer shall [keep] establish, maintain, and

S. 8380                          13

1   preserve for not less than six years contemporaneous, true, and accurate
2   payroll records [of] showing for each week worked the hours   worked   [by
3   each   employee   covered by an hourly minimum wage rate], the [wages paid
4   to   all   employees; and] rate or rates of pay and basis thereof, whether
5   paid by the hour, shift, day, week, salary, piece, commission, or  other
6   basis; gross  wages; deductions; allowances, if any, claimed as part of
7   the minimum wage; and net wages  for each  employee, plus  such other
8   information  as  the  commissioner  deems  material  and necessary[, and
9   shall, on]. For all employees who are not exempt from overtime compen-
10  sation as established in the commissioner's minimum wage orders or
11  otherwise provided by New York state law or regulation, the payroll
12  records  must include the regular hourly rate or rates of pay, the over-
13  time rate or rates of pay, the number of regular hours worked,  and  the
14  number  of  overtime  hours worked. For all employees paid a piece rate,
15  the payroll records shall include the applicable piece rate or rates of
16  pay  and  number of pieces completed at each piece rate.  On demand, the
17  employer shall furnish to the commissioner or his duly authorized repre-
18  sentative a sworn statement of the [same] hours worked, rate or rates of
19  pay and basis thereof, whether paid by the hour, shift, day, week, sala-
20  ry, piece, commission, or other basis; gross wages; deductions; and
21  allowances, if any, claimed as part of the minimum wage, for each
22  employee, plus other information as the commissioner deems material
23  and necessary. Every employer shall keep such records open to inspection
24  by the commissioner or his duly authorized representative at any reason-
25  able time. Every employer of an employee shall keep a digest and summary
26  of this article or applicable wage order, which shall be prepared by the
27  commissioner, posted in a conspicuous place in his establishment and
28  shall also keep posted such additional copies of said digest and summary
29  as the commissioner prescribes. Employers shall, on request, be
30. furnished with copies of this article and of orders, and of digests and
31  summaries thereof, without charge. Employers shall permit the commis-
32  sioner or his duly authorized representative to question without inter-
33  ference any employee of such employer in a private location at the place
34  of employment and during working hours in respect to the wages paid to
35  and the hours worked by such employee or other employees.
36     § 15. Section 662 of the labor law, as amended by chapter 587 of the
37  laws of 1983 and subdivision 4 as added by chapter 776 of the laws of
38  1983, is amended to read as follows:
39     § 662. Penalties. 1. [Discrimination against employee. Any employer
40  or his agent, or the officer or agent of any corporation, who discharges
41  or in any other manner discriminates against any employee because such
42  employee has made a complaint to his employer, or to the commissioner or
43  his authorized representative, that he has not been paid in accordance
44  with the provisions of this article, or because such employee has caused
45  to be instituted a proceeding under or related to this article, or
46  because such employee has testified or is about to testify in an inves-
47  tigation or proceeding under this article, shall be guilty of a class B
48  misdemeanor.
49     2. Payment of less than minimum wage] Failure to pay minimum wage or
50  overtime compensation. Any employer or his or her agent, or the officer
51  or agent of any corporation, partnership, or limited liability company,
52  who pays or agrees to pay to any employee less than the wage applicable
53  under this article shall be guilty of a [class B] misdemeanor and [each]
54  upon conviction therefor shall be fined not less than five hundred nor
55  more than twenty thousand dollars or imprisoned for not more than one
56  year, and, in the event that any second or subsequent offense occurs

S. 8380                                  14

```
 1  within six years of the date of conviction for a prior offense, shall be
 2  guilty of a felony for  the  second  or  subsequent  offense,  and  upon
 3  conviction  therefor, shall be fined not less than five hundred nor more
 4  than  twenty  thousand  dollars  or imprisoned for not more than one year
 5  plus one day, or punished by both such fine and imprisonment,  for  each
 6  such  offense. Each payment to any employee in any week of less than the
 7  wage applicable under this article shall constitute a separate offense.
 8     [3.] 2. Failure to keep records. Any employer or his or her agent,  or
 9  the officer or agent of any corporation, partnership, or limited liabil-
10  ity  company,  who fails to keep the records required under this article
11  or to furnish such records or any information required to  be  furnished
12  under  this  article to the commissioner or his or her authorized repre-
13  sentative upon request, or who hinders or delays the commissioner or his
14  or her authorized representative in the performance of his or her duties
15  in the enforcement of this article, or refuses to admit the commissioner
16  or his or her authorized representative to any place of  employment,  or
17  falsifies any such records or refuses to make such records accessible to
18  the  commissioner or his or her authorized representative, or refuses to
19  furnish a sworn statement of  such  records  or  any  other  information
20  required  for the proper enforcement of this article to the commissioner
21  or his or her authorized representative, shall be guilty of a [class  B]
22  misdemeanor  and [each] upon conviction therefor shall be fined not less
23  than five hundred nor more than five thousand dollars or imprisoned  for
24  not  more than one year, and, in the event that any second or subsequent
25  offense occurs within six years of the date of conviction  for  a  prior
26  offense,  shall  be  guilty  for  the second or subsequent
27  offense, and upon conviction therefor, shall be fined not less than five
28  hundred nor more than twenty thousand dollars or imprisoned for not more
29  than one year plus one day, or punished by both such fine and  imprison-
30  ment,  for  each  such  offense.  Each day's failure to keep the records
31  requested under this article or to furnish such records or  information
32  to  the  commissioner  or  his  or her  authorized representative shall
33  constitute a separate offense.
34     [4. Where any person has previously been convicted of a  violation  of
35  this  section  within  the  preceding  five years, upon conviction for a
36  second or subsequent violation such person may be fined up to ten  thou-
37  sand  dollars  in addition to any other penalties including fines other-
38  wise provided by law; provided, however, that the total additional  fine
39  that  may  be imposed pursuant to this subdivision for separate offenses
40  committed in any consecutive twelve month  period  may  not  exceed  ten
41  thousand dollars.]
42     § 16.  Section 663  of the labor law, as added by chapter 619 of the
43  laws of 1960, subdivisions 1 and 2 as amended by chapter 372 of the laws
44  of 2009 and subdivision 3 as added by chapter 497 of the laws  of  1966,
45  is amended to read as follows:
46     § 663. Civil action. 1. By employee. If any employee is paid by his or
47  her employer less than the wage to which he or she is entitled under the
48  provisions  of  this  article,  he or she [may] shall recover in a civil
49  action the amount of any such underpayments, together  with  costs  [and
50  such]  all  reasonable attorney's fees [as may be allowed by the court],
51  prejudgment interest as required under the civil practice law and rules,
52  and unless the employer proves a good faith basis to  believe  that  its
53  underpayment  of  wages  was  in  compliance  with the law, an additional
54  amount as liquidated damages equal to [twenty-five] one hundred  percent
55  of  the  total  of  such underpayments found to be due [the employee and
```

S. 8380                               15

```
 1  any].  Any agreement between the employee, and the employer to work for
 2  less than such wage shall be no defense to such action.
 3    2.  By commissioner. On behalf of any employee paid less than the wage
 4  to which the employee is entitled under the provisions of this article,
 5  the commissioner may bring any legal action necessary, including admin-
 6  istrative action, to collect such claim, and the employer shall be
 7  required to pay the  full amount of the underpayment, plus costs, and
 8  unless the employer proves a good faith basis to believe that its under-
 9  payment was in compliance with the law, an additional amount as liqui-
10  dated damages [equal to twenty-five percent of the total of such under-
11  payments found to be due the employee].  Liquidated damages shall be
12  calculated by the commissioner as no more than one hundred percent of
13  the total amount of underpayments found to be due the employee.  In any
14  action brought by the commissioner in a court of competent jurisdiction,
15  liquidated damages shall be calculated as an amount equal to one hundred
16  percent of underpayments found to be due the employee.
17    3.  Limitation of time. Notwithstanding any other provision of law, an
18  action to recover upon a liability imposed by this article must be
19  commenced within six years.  The statute of limitations shall be tolled
20  from the date an employee files a complaint with the commissioner or the
21  commissioner commences an investigation, whichever is earlier, until an
22  order to comply issued by the commissioner becomes final, or where the
23  commissioner does not issue an order, until the date on which the
24  commissioner notifies the complainant that the investigation has
25  concluded. Investigation by the commissioner shall not be a prerequisite
26  to nor a bar against a person bringing a civil action under this arti-
27  cle.
28    4.  Attorneys' fees.  In any civil action by an employee or by the
29  commissioner, the employee or commissioner shall have the right to
30  collect attorneys' fees and costs incurred in enforcing any court judg-
31  ment.  Any judgment or court order awarding remedies under this section
32  shall provide that if any amounts remain unpaid upon the expiration of
33  ninety days following issuance of judgment, or ninety days after expira-
34  tion of the time to appeal and no appeal therefrom is then pending,
35  whichever is later, the total amount of judgment shall automatically
36  increase by fifteen percent.
37    § 17. This act shall take effect on the one hundred twentieth day
38  after it shall have become a law.
```