UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DONALD HESS and ELIZABETH PADILLA,
individually and on behalf of all others similarly
situated,

Case No. 21-cv-04099(AT)(RWL)

Plaintiffs,

-against-

BED BATH & BEYOND INC.,

Defendant.

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT**

# TABLE OF CONTENTS

**Page(s)**

PRELIMINARY STATEMENT ..................................................................................... 1

FACTUAL BACKGROUND..................................................................................... 2

APPLICABLE LEGAL PRINCIPLES...................................................................... 3

I.      RULE 12(B)(1) MOTION TO DISMISS STANDARD ................................ 3

II.     RULE 12(B)(6) MOTION TO DISMISS STANDARD ................................ 3

ARGUMENT .............................................................................................................. 4

III.    THE COURT MUST DECLINE TO EXERCISE JURISDICTION OVER THE TAC UNDER CAFA'S HOME-STATE EXCEPTION.................................... 4

IV.     PLAINTIFFS LACK STANDING TO PURSUE THEIR CLAIMS. ............... 5

        A.      Article III Standing Requires Plaintiffs to Plausibly Allege an Injury in Fact........................................................................................................... 5

        B.      The Court Should Dismiss Plaintiffs' § 191 Claims for Lack of Standing .......... 6

        C.      The Court Should Dismiss Hess, Jones, and Lichtman's § 195's Claims Because They Lack Standing to Pursue Them. .................................... 8

V.      PLAINTIFFS LACK A PRIVATE RIGHT OF ACTION TO PURSUE NYLL § 191 CLAIMS. ............................................................................................. 9

        A.      There Is No Express Private Right of Action to Enforce NYLL § 191. ................ 9

        B.      There Is Likewise No Basis to Imply a Private Right of Action ........................ 15

VI.     THE FOURTEENTH AMENDMENT'S DUE PROCESS CLAUSE BARS THE RELIEF PLAINTIFFS SEEK....................................................................... 22

CONCLUSION.......................................................................................................... 24

# TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page(s)**

Agerbrink v. Model Serv. LLC,
    No. 14-cv-7841 (JPO), 2015 WL 3750674 (S.D.N.Y. June 16, 2015)....................................16

Amidax Trading Grp. v. S.W.I.F.T. SCRL,
    671 F.3d 140 (2d Cir. 2011)..............................................................................................3, 7

Ashcroft v. Iqbal,
    556 U.S. 662 (2009).......................................................................................................3, 4, 7

Aurecchione v. Schoolman Transp. Sys., Inc.,
    426 F.3d 635 (2d Cir. 2005).................................................................................................3

Awan v. Durrani,
    No. 14-cv-4562, 2015 WL 4000139 (E.D.N.Y. July 1, 2015).................................................19

Belizaire v. RAV Investigative & Sec. Servs. Ltd.,
    61 F.Supp.3d 336 (S.D.N.Y. 2014) .....................................................................................14

Bell Atl. Corp. v. Twombly,
    550 U.S. 544 (2007).........................................................................................................3, 4

Bldg. Trades Emplys. Educ. Ass'n v. McGowan,
    311 F.3d 501 (2d Cir. 2002)...............................................................................................18

Blockbuster, Inc. v. Galeno,
    472 F.3d 53 (2d Cir. 2006)...................................................................................................4

Bostock v. Clayton Cnty., Ga.,
    590 U.S. ---, 140 S.Ct. 1731 (2020)......................................................................9, 13, 15, 19

Brian Hoxie's Painting Co. v. Cato-Meridian Cent. Sch. Dist.,
    556 N.E.2d 1087 (N.Y. 1990).............................................................................................15

Career and Education Consultants, Inc. . Comm'r of Labor,
    Docket No. PR 20-047 (N.Y. Indus. Bd. of Appeals Apr. 7, 2021) ........................................18

Carrier v. Salvation Army,
    667 N.E.2d 328 (N.Y. 1996)..............................................................................................15

Carter v. HealthPort Techs., LLC,
    822 F.3d 47 (2d Cir. 2016)...................................................................................................3

Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,
    467 U.S. 837 (1984)..........................................................................................................18

Chuk on Chan v. Good Chows Inc.,
  No. 16-cv-2794,
  2017 WL 6550689 (S.D.N.Y. Dec. 21, 2017) ...........................................................19

Coley v. Vannguard Urban Improvement Ass'n, Inc.,
  No. 12-CV-5565 (PKC) (RER),
  2018 WL 1513628 (E.D.N.Y. Mar. 27, 2018) .........................................................14

Commonwealth of N. Mar. I. v. Canadian Imperial Bank of Commerce,
  21 N.Y.3d 55 (N.Y. 2013) .................................................................................10, 15

Connecticut Nat. Bank v. Germain,
  503 U.S. 249 (1992) ..................................................................................................9

Cruz v. TD Bank, N.A.,
  2 N.E.3d 221 (N.Y. 2013) ........................................................................................16

Dep't of Revenue of Or. v. ACF Indus., Inc.,
  510 U.S. 332 (1994) ................................................................................................12

EEOC v. Vamco Sheet Metals, Inc.,
  No. 13 Civ. 6088 (JPO),
  2014 WL 2619812 (S.D.N.Y. June 5, 2014) ...........................................................15

Francisco v. NY Tex Care, Inc.,
  No. 19CV1649PKCST,
  2022 WL 900603 (E.D.N.Y. Mar. 28, 2022) .............................................................8

Gerson v. Comm'r of Labor,
  Docket No. PR 10-361,
  Resolution of Decision, at 8 (N.Y. Indus. Bd. of Appeals Nov. 5, 2014) ...............17

Golan v. FreeEats.com, Inc.,
  930 F.3d 950 (8th Cir. 2019) ...................................................................................22

Harry v. Total Gas & Power N. Am., Inc.,
  889 F.3d 104 (2d Cir. 2018)........................................................................................3

Harty v. W. Point Realty, Inc.,
  28 F.4th 435 (2d Cir. 2022) ....................................................................................7, 8

Hill v. City of New York,
  136 F.Supp.3d 304, 351 (E.D.N.Y. 2015),
  amended & supplemented by 13-CV-6147 (PKC) (JO),
  2019 WL 1900503 (E.D.N.Y. Apr. 29, 2019) ..........................................................19

Hunter v. Planned Bldg. Servs., Inc.,
    No. 715053/2017,
    2018 WL 3392476 (N.Y. Sup. Ct. Queens Cnty. June 20, 2018)......................................14, 16

Hussain v. Pakistan Int'l Airlines Corp.,
    No. 11-CV-932,
    2012 WL 5289541 (E.D.N.Y. Oct. 23, 2012).........................................................................14

IKEA U.S., Inc., Order under Arts. 4 & 6 of N.Y. Lab Law (N.Y. Dep't of Lab,
    Div. of Lab. Statistics  Oct. 7, 1994) ...................................................................................17

Konkur v. Utica Acad. of Sci. Charter Sch.,
    38 N.Y.3d 38,
    reargument denied, 38 N.Y.3d 1002 (N.Y. 2022) .................................................................17

Kurovskaya v. Project O.H.R., Inc.,
    251 F. Supp. 3d 699 (S.D.N.Y. 2017).....................................................................................5

Lujan v. Defs. of Wildlife,
    504 U.S. 555 (1992)..........................................................................................................5, 6, 7

Maddox v. Bank of New York Mellon Tr. Co., N.A.,
    19 F.4th 58 (2d Cir. 2021) .................................................................................................3, 8

Maraia v. Orange Reg'l Med. Ctr.,
    63 A.D.3d 1113 (2d Dep't 2009) ..........................................................................................15

Mattera v. Clear Channel Commc'ns, Inc.,
    239 F.R.D. 70 (S.D.N.Y. 2006) .............................................................................................5

Missouri Pacific Railway Co. v. Tucker,
    230 U.S. 340 (1913)...............................................................................................................23

Popermhem v. Comm'r of Labor,
    Docket No. PR 13-153,
    Corrected and Reissued Resolution of Decision
    (N.Y. Indus. Bd. of Appeals Feb. 5, 2016) ...........................................................................17

Yaniveth R. ex rel. Ramona S. v. LTD Realty Co.,
    27 N.Y.3d 186 (N.Y. 2016) ..................................................................................................11

Rosario v. Icon Burger Acquisition, LLC,
    No. 21-CV-4313(JS)(ST),
    2022 WL 198503 (E.D.N.Y. Jan. 21, 2022) ........................................................................6, 7

Scott v. Whole Foods Market Group, Inc.,
    No. 18-CV-0086 (SJF) (AKT),
    2019 WL 1559424 (E.D.N.Y. Apr. 9, 2019) ............................................................15, 19, 22

Sevilla v. House of Salads One LLC,
No. 20CV6072PKCCLP,
2022 WL 954740 (E.D.N.Y. Mar. 30, 2022) .........................................................8

Sheehy v. Big Flats Cmty. Day, Inc.,
541 N.E.2d 18 (N.Y.1989) ...............................................................................16

Sheng Wang Zhang v. Comm'r of Labor,
Docket No. PR 12-180,
Resolution of Decision (N.Y. Indus. Bd. of Appeals July. 13, 2016) ...................17

Skidmore v. Swift & Co.,
323 U.S. 134 (1944) ........................................................................................18

Southwest Telephone and Telegraph Co. v. Danaher,
238 U.S. 482 (1915) ........................................................................................24

Spokeo, Inc. v. Robins,
578 U.S. 330 (2016) ..........................................................................................6

St. Louis, I.M. & S. Ry. Co. v. Williams,
251 U.S. 63 (1919) ..........................................................................................22

Standard Fire Ins. Co. v. Knowles,
568 U.S. 588 (2013) ..........................................................................................4

State v. Dep't of Justice,
951 F.3d 84 (2d Cir. 2020),
cert. dismissed, 141 S.Ct. 1291 (2021) ..............................................................11

Steel Co. v. Citizens for Better Env.,
523 U.S. 83 (1998) ............................................................................................6

Stellato v. Hofstra Univ.,
No. CV201999GRBARL,
2022 WL 2222875 (E.D.N.Y. June 17, 2022) ...................................................4, 5

Stephens v. U.S. Airways Grp., Inc.,
644 F.3d 437 (D.C. Cir. 2011) ............................................................................6

Matter of Tommy and Tina, Inc. v. Dep't of Consumer Affairs,
95 A.D.2d 724 (1st Dep't 1983),
aff'd, 62 N.Y.2d 671 (N.Y. 1984) .....................................................................18

TransUnion LLC v. Ramirez,
594 U.S. ---, 141 S. Ct. 2190, 210 L. Ed. 2d 568 (2021) .................................6, 9

U.S. v. Worldwide Indus. Enters., Inc.,
    220 F.Supp.3d 335 (E.D.N.Y. 2016) ................................................................9, 15

Vega v. CM & Assoc. Constr. Mgmt., LLC,
    175 A.D.3d 1144 (1st Dep't 2019) ............................................................14, 15, 22

Wah Chan Wong v. Comm'r of Labor,
    Docket No. PR 12-090,
    Resolution of Decision (N.Y. Indus. Bd. of Appeals Oct. 26, 2016) .....................17

Wang v. XBB, Inc.,
    No. 18CV7341PKCST,
    2022 WL 912592 (E.D.N.Y. Mar. 29, 2022) ...........................................................8

**Statutes and Rules**

28 U.S.C. 112 ..................................................................................................................5

28 U.S.C. § 1332 ........................................................................................................4, 5

Fed. R. Civ. P. 12 ........................................................................................................3, 7

L.1967, c. 294, § 5 ........................................................................................................21

L.1967, c. 310, § 1 ........................................................................................................21

L.1997, c. 605, § 4 ........................................................................................................21

L.2009, c. 372, § 1 ........................................................................................................21

L.2010, c. 564, § 7 ........................................................................................................21

L.2014, c. 537, §§ 2, 5 ..................................................................................................21

L.2015, c. 2, § 3 ............................................................................................................21

L.2015, c. 362, § 2 ........................................................................................................21

L.2021, c. 397, § 3, 5 ....................................................................................................21

N.Y. Gen. Laws, Ch. 32, Art. 1 § 11 ...........................................................................20

N.Y. Lab. Law § 191 .............................................................................................. *passim*

N.Y. Lab. Law § 218 .......................................................................................16, 17, 18

N.Y. Labor Law § 193 ....................................................................................................5

N.Y. Labor Law § 195 ........................................................................................... *passim*

N.Y. Labor Law § 198 ................................................................................. *passim*

Session Law 1890, Ch. 388 §§ 1–2 ................................................................ 20

Session Law 1966, Ch. 548 § 191 ................................................................ 20

**Other Authorities**

Mirriam Webster Dictionary, https://www.merriam-
    webster.com/dictionary/underpay (last visited November 1, 2021) ....................... 11

N.Y. Bill Jacket, 2010 S.B. 8380, Ch. 564 .................................................... 21

## PRELIMINARY STATEMENT

In their Third Amended Complaint ("TAC"), Plaintiffs Donald Hess, Elizabeth Padilla, Judith Holland, Tika Jones, Harry Lichtman, Dawn Mesa, Alexandria Smith, and Emily Vahue allege, on behalf of themselves and all other manual workers employed by Defendant Bed Bath & Beyond, Inc. ("BBB") in New York from September 24, 2014 to November 12, 2018, that they were "manual workers" within the meaning of New York Labor Law ("NYLL") § 191 and should have been paid weekly instead of bi-weekly under that law. Hess, Jones, and Lichtman further assert, on behalf of themselves and all members of the putative manual-worker class whom BBB hired on or after April 9, 2011 and who did not receive a legally compliant wage notice under NYLL § 195(1), violations of that section of the NYLL. The Court should dismiss these claims for at least the following four reasons:[1]

1)      This Court lacks jurisdiction over the claims asserted in the TAC under the Class Action Fairness Act's ("CAFA") home-state exception because BBB and at least two-thirds of the putative class members are citizens of New York.

2)      Even if CAFA provided a basis for jurisdiction, Plaintiffs have not adequately alleged that a one-week delay in payment of their wages under NYLL § 191 or their failure to receive timely and accurate wage notices under NYLL § 195 actually harmed them as required to support Article III standing.

---

[1] BBB initially intended to move to dismiss Hess and Padilla's Second Amended Complaint and oppose their request for leave to file the TAC. BBB has reconsidered its position on the TAC and withdraws its opposition to Plaintiffs' request for leave to file it in large part because of efficiency concerns and the Court's comments during the May 12, 2022 status conference about its view that Plaintiffs' counsel's efforts to solicit additional class members is not the type of bad faith that would preclude amendment. (See ECF No. 75 at 4:9–16, 9:13–22.) In the event that the Court does not allow Plaintiffs to file the TAC, BBB respectfully requests that the Court dismiss the SAC and deny Plaintiffs' request for leave to file the TAC on the grounds of futility for the reasons set forth herein.

3)     Assuming that this Court had jurisdiction over Plaintiffs' claims, their claims under NYLL § 191 fail as a matter of law because they do not have a private right of action to pursue such claims.

4)     Where, as here, employees have not suffered any actual harm as a result of purported violations of NYLL § 191's pay frequency provisions or of NYLL § 195's notice requirements, awarding them statutory damages in excess of $5,000,000 violates the Fourteenth Amendment's Due Process Clause.

## FACTUAL BACKGROUND

In the TAC, Plaintiffs allege that they worked for BBB in various positions at numerous stores throughout New York State.  (ECF No. 89-1 ¶¶ 35–60.)  Despite their disparate employment settings, they claim that they spent at least 25% of their working time engaged in physical labor, making them "manual workers" under NYLL § 191, and that BBB's paying them on a bi-weekly, as opposed to weekly, basis violated NYLL § 191.  (Id. ¶¶ 5, 61–65.)  Based on these allegations, they assert violations of NYLL § 191's pay frequency provisions on behalf of themselves and a class of all other "manual workers" employed by BBB in New York State from September 24, 2014 to November 12, 2018 (the "Delayed Wages Class").  (Id. ¶¶ 11, 70–76.)  They superficially contend that BBB's alleged violations of NYLL § 191 "injured and harmed" them because "they were not timely paid their wages and were thus deprived of the timely receipt and ability to use their money."  (Id. ¶ 77.)  Notably, they do not seek any actual damages on this claim, opting instead to seek maximum liquidated damages and other forms of statutory relief.  (Id. ¶ 78.)

Additionally, Hess, Jones, Lichtman allege that BBB's wage-theft notices did not contain the information required, and were not provided to them by the time mandated, by NYLL § 195 on behalf of themselves and certain members of the Delayed Wages Class who were hired on or after April 9, 2011 but who purportedly did not receive compliant or timely wage-theft notices (the

"Hiring Notice Subclass"). (Id. ¶ 20.) They baldly assert that BBB's alleged failure to comply with NYLL § 195's notice requirements "injured" them because it inexplicably led to their being "paid wages in an untimely manner." (Id. ¶ 24.) Like Plaintiffs' NYLL § 191 claim, Hess, Jones, and Lichtman seek only statutory damages—namely, $50 per day for each alleged violation of NYLL § 195, up to a maximum of $5,000 per employee—on their notice claims. (Id. ¶ 86.)

In total, Plaintiffs claim that their statutory damages exceed $5,000,000. (Id. ¶ 6.) As such, they invoke this Court's jurisdiction under CAFA. (Id.)

## APPLICABLE LEGAL PRINCIPLES

### I.     Rule 12(b)(1) Motion to Dismiss Standard

This Court "may properly dismiss a case for lack of subject matter jurisdiction under Rule 12(b)(1) if it lacks the statutory or constitutional power to adjudicate it." Aurecchione v. Schoolman Transp. Sys., Inc., 426 F.3d 635, 638 (2d Cir. 2005) (internal quotation marks and citations omitted). When a Rule 12(b)(1) motion is based on the face of the complaint, the Court must determine whether the complaint "'allege[s] facts that affirmatively and plausibly suggest that [the plaintiff] has standing to sue.'" Carter v. HealthPort Techs., LLC, 822 F.3d 47, 56 (2d Cir. 2016) (quoting Amidax Trading Grp. v. S.W.I.F.T. SCRL, 671 F.3d 140, 145 (2d Cir. 2011)); accord Maddox v. Bank of New York Mellon Tr. Co., N.A., 19 F.4th 58, 65–66 (2d Cir. 2021) (stating that, at the pleadings stage, a plaintiff "must 'plead enough facts to make it plausible that they did indeed suffer the sort of injury that would entitle them to relief'" (quoting Harry v. Total Gas & Power N. Am., Inc., 889 F.3d 104, 110 (2d Cir. 2018))).

### II.    Rule 12(b)(6) Motion to Dismiss Standard

To survive a Rule 12(b)(6) motion to dismiss, a complaint must plead sufficient factual allegations that, if accepted as true, "'state a claim to relief that is plausible on [their] face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544,

570 (2007)) (internal quotation marks omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. (citing Twombly, 550 U.S. at 556).  A plaintiff is not required to provide "detailed factual allegations" in the complaint, but must assert "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555 (citation omitted).  Ultimately, the facts pleaded in the complaint "must be enough to raise a right to relief above the speculative level."  Id. (citation omitted).

## ARGUMENT

### III.     The Court Must Decline to Exercise Jurisdiction Over the TAC Under CAFA's Home-State Exception.

"CAFA provides the federal district courts with 'original jurisdiction' to hear a 'class action' if the class has more than 100 members, the parties are minimally diverse, and the 'matter in controversy exceeds the sum or value of $5,000,000.'"  Standard Fire Ins. Co. v. Knowles, 568 U.S. 588, 592 (2013) (quoting 28 U.S.C. § 1332(d)(2), (d)(5)(B)).  Its "purpose was to expand the availability of federal jurisdiction over class actions with nationwide import even in the absence of complete diversity."  Stellato v. Hofstra Univ., No. CV201999GRBARL, 2022 WL 2222875, at *1 (E.D.N.Y. June 17, 2022) (citing Blockbuster, Inc. v. Galeno, 472 F.3d 53, 56 (2d Cir. 2006)).  "Consistent with this purpose, CAFA contains *mandatory* exceptions that direct a district court to 'decline jurisdiction' over class actions that primarily concern local or state interests."  Id. (emphasis added).  One of those exceptions is the home-state exception, which "*requires* the court to decline jurisdiction if two-thirds or more of the proposed class and the primary defendants are citizens of the state in which the action was filed."  Id. (citing 28 U.S.C. § 1332(d)(4)(B)) (emphasis added). Both elements are met here.

Plaintiffs filed this case in New York.  See 28 U.S.C. 112(b).  The only named defendant, BBB, is "incorporated in New York."  (See ECF No. 89-1 ¶ 33.)  Thus, it is a citizen of New York for diversity purposes.  See 28 U.S.C. § 1332(c)(1).  As for the citizenship of the putative class members, Plaintiffs' counsel has conceded that at least two-thirds of them are citizens of New York.  (See ECF No. 96 at 1 ("Plaintiffs will not contest that 2/3 of the class members reside in New York."); see also id. at 2 ("Plaintiffs … agree for the purposes of the motion that at least 2/3 of the class members are residents of New York, and therefore statistical evidence as to the residence of the class members is unnecessary.").)[2]  Hence, this Court must "decline to exercise jurisdiction" over this case under the home-state exception to CAFA.  See 28 U.S.C. § 1332(d)(4)(B) (stating courts "shall" decline to exercise jurisdiction); see also e.g., Stellato, 2022 WL 2222875, at *2 (declining to exercise jurisdiction "as required by" the home-state exception).

## IV.  Plaintiffs Lack Standing to Pursue Their Claims.

### A.  Article III Standing Requires Plaintiffs to Plausibly Allege an Injury in Fact.

To satisfy the "irreducible constitutional minimum" of Article III standing, a plaintiff bears the burden of establishing (i) "injury in fact," (ii) a "causal connection" between that injury and the complained-of conduct, and (iii) a likelihood "that the injury will be redressed by a favorable decision."  Lujan v. Defs. of Wildlife, 504 U.S. 555, 560–61 (1992) (internal quotation marks and

---

[2] Even if Plaintiffs did not concede that at least two-thirds of the putative class members were citizens of New York, this Court could infer that fact.  See Kurovskaya v. Project O.H.R., Inc., 251 F. Supp. 3d 699, 703 (S.D.N.Y. 2017) ("A [c]ourt may infer citizenship for the purposes of evaluating whether the citizenship requirement of a CAFA exception has been met by the moving party.") (collecting cases).  Indeed, in a putative class action alleging improper deductions from wages under NYLL § 193, then-District Judge Chin held that it was "reasonably likely that more than two-thirds of the putative class members of the proposed class—all of whom work in New York—are citizens of New York."  See Mattera v. Clear Channel Commc'ns, Inc., 239 F.R.D. 70, 80 (S.D.N.Y. 2006).  In the absence of Plaintiffs' concession as to the citizenship of the putative class members, the Court could draw the same inference as Judge Chin in Mattera because the putative class members are individuals who worked for BBB in New York.  (See ECF No. 89-1 ¶ 11.)  Notably, seven out of the eight named Plaintiffs (or 87.5% of them) reside in New York.  (See ECF No. 89-1 ¶¶ 31–32.)  To the extent the Court requires additional information concerning the citizenship of the putative class members, BBB respectfully requests leave to compile that information within three weeks of the Court's order granting such leave.

citations omitted); accord Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016). "[T]he '[f]irst and foremost' of standing's three elements" is the injury-in-fact requirement. Spokeo, 578 U.S. at 338–39 (quoting Steel Co. v. Citizens for Better Env., 523 U.S. 83, 103 (1998)). To satisfy this requirement, a plaintiff must establish a harm that is "'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" Spokeo, 578 U.S. at 339 (quoting Lujan, 504 U.S. at 560). Applying this requirement, the Supreme Court has held that bare statutory violations, devoid of any actual harm, are insufficient to confer Article III standing on a plaintiff, even where the relevant statute authorizes the recovery of statutory damages. See TransUnion LLC v. Ramirez, 594 U.S. ---, 141 S. Ct. 2190, 2205, 210 L. Ed. 2d 568 (2021) ("Article III grants federal courts the power to redress harms that defendants cause plaintiffs, not a freewheeling power to hold defendants accountable for legal infractions." (quoting Casillas v. Madison Ave. Assocs., Inc., 926 F.3d 329, 332 (7th Cir. 2019) (Barrett, J.))); Spokeo, 578 U.S. at 341 ("[Plaintiff] could not … allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III."). Plaintiffs have not carried their burden to allege standing.

**B.      The Court Should Dismiss Plaintiffs' § 191 Claims for Lack of Standing.**

Plaintiffs contend that they were manual workers who should have been paid weekly under NYLL § 191 but were paid bi-weekly. In Rosario v. Icon Burger Acquisition, LLC, the Eastern District dismissed a nearly identical claim for want of standing. See No. 21-CV-4313(JS)(ST), 2022 WL 198503 (E.D.N.Y. Jan. 21, 2022). There, the plaintiff sought "liquidated damages, interest, and attorneys' fees" because of the defendant's alleged failure "to pay him weekly as required by the NYLL." See id. at *1, *3. Although the court recognized the economic axiom that "'[m]oney later is not the same as money now,'" the plaintiff's complaint simply did not include any "factual allegations that [he] forewent the opportunity to invest or otherwise use the money to which he was legally entitled." Id. at *3 (quoting Stephens v. U.S. Airways Grp., Inc.,

6

644 F.3d 437, 442 (D.C. Cir. 2011) (Kavanaugh, J., concurring)). Accordingly, the court found that he could not "plausibly claim he suffered a harm sufficiently concrete to establish Article III standing." Id. As the same is true here, the Court should dismiss Plaintiffs' § 191 claims.

In a futile effort to avoid this reality, Plaintiffs baldly allege that they "were injured and harmed" because they "were not timely paid their wages and were thus deprived of the timely receipt and ability to use their money." (ECF No. 89-1 ¶ 77.) But they have not identified any specific plan to invest or otherwise use the allegedly late payments during the time from when they contend they should have been paid to when they were paid, or how, in fact, they suffered any concrete harm based on any purported lost investment opportunity. As a result, the Court should disregard their conclusory allegation that they were "injured," find that they failed to plausibly allege Article III standing, and dismiss their § 191 claims. See Amidax Trading Grp., 671 F.3d at 146 (refusing to "'credit a complaint's conclusory statements without reference to its factual context'" on Rule 12(b)(1) motion to dismiss for lack of standing (quoting Iqbal, 556 U.S. at 686)).

Indeed, the Second Circuit has recently dismissed two similar cases because the plaintiffs had failed to allege specific facts regarding how the defendant's conduct allegedly harmed them. In Harty v. W. Point Realty, Inc., a plaintiff claimed that the defendant's website violated the Americans with Disabilities Act and alleged that, "in the near future," he intended to use it "to reserve a guest room." 28 F.4th 435, 443 (2d Cir. 2022). The Second Circuit held that he lacked standing to pursue that claim, reasoning that "[s]uch 'some day' intentions – without any description of concrete plans, or indeed even any specification of when the some day will be – do not support a finding of the 'actual or imminent injury' that Article III requires." Id. (quoting Lujan, 504 U.S. at 564) (internal quotation marks omitted).

Similarly, in <u>Maddox</u>, a plaintiff alleged that she had suffered emotional distress attributable to the defendant's failure to record a mortgage satisfaction within the time required by New York law. 19 F.4th at 66. She did not, however, explain how the "delayed recordation would cause" such distress. <u>Id.</u> Accordingly, the Second Circuit found that her "perfunctory allegation of emotional distress … [was] insufficient to plausibly allege constitutional standing." <u>Id.</u>

Like the plaintiffs in <u>Harty</u> and <u>Maddox</u>, Plaintiffs have offered no specifics as to how BBB's alleged legal violation harmed them. They have not identified a specific investment opportunity that they lost on account of the purported late payment. They have not pleaded that they intended to deposit their paycheck in an interest-bearing account. And they have not alleged that the late-paid money was earmarked for any particular investment or use, such that it resulted in any concrete harm. As they have not carried their burden to allege a concrete harm, the Court should dismiss their pay frequency claims. See <u>Maddox</u>, 19 F.4th at 66.

**C.** **The Court Should Dismiss Hess, Jones, and Lichtman's § 195's Claims Because They Lack Standing to Pursue Them.**

Hess, Jones, and Lichtman claim that BBB's wage-theft notices did not comply with, and were not provided to them in the time required by, NYLL § 195. Such claims are bare procedural violations devoid of actual harm and cannot give rise to Article III standing. <u>See</u>, <u>e.g.</u>, <u>Sevilla v. House of Salads One LLC</u>, No. 20CV6072PKCCLP, 2022 WL 954740, at *7 (E.D.N.Y. Mar. 30, 2022) (dismissing claims for violations of NYLL § 195(1)(a) and § 195(3) for want of standing); <u>Wang v. XBB, Inc.</u>, No. 18CV7341PKCST, 2022 WL 912592, at *13 (E.D.N.Y. Mar. 29, 2022) (same); <u>Francisco v. NY Tex Care, Inc.</u>, No. 19CV1649PKCST, 2022 WL 900603, at *7 (E.D.N.Y. Mar. 28, 2022) (same). Tellingly, they make no serious effort to contend that the alleged violations of NYLL § 195(1)(a) harmed them. Rather, they ostensibly assert that the harm they purportedly suffered as a result of the alleged NYLL § 191 violations—i.e., "that they have been

paid wages in an untimely manner"—is sufficient to create standing on their NYLL § 195 claims. (See ECF No. 89-1 ¶ 24.)  That is not the law.  As the Supreme Court has repeatedly recognized, "standing is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)." TransUnion, 141 S.Ct. at 2208 (collecting cases).  Thus, even if Plaintiffs had alleged an injury in fact sufficient to create standing on their NYLL § 191 claims, absent any harm attributable to BBB's alleged violations of NYLL § 195, Hess, Jones, and Lichtman do not have standing to pursue § 195 claims.  Thus, the Court should dismiss those claims.

## V.     Plaintiffs Lack a Private Right of Action to Pursue NYLL § 191 Claims.

### A.     There Is No Express Private Right of Action to Enforce NYLL § 191.

In the TAC, Plaintiffs seek liquidated damages for allegedly late-paid wages, purportedly pursuant to NYLL §§ 191 and 198.  (ECF No. 89-1 ¶¶ 69–78.)  NYLL § 191 ("Frequency of payments"), however, does not provide for any remedy or civil action; thus, for Plaintiffs to sue for a violation of NYLL § 191, their claims (or remedies) necessarily must be authorized by NYLL § 198 ("Costs, remedies").  A review of the plain language of NYLL § 198(1-a) proves that no such claim or remedy exists.

A statute's unambiguous language is the beginning and end of any inquiry into its meaning:

> When interpreting a statute, "a court should always turn first to one, cardinal canon before all others. [The Supreme Court has] stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete."

U.S. v. Worldwide Indus. Enters., Inc., 220 F.Supp.3d 335, 338 (E.D.N.Y. 2016) (quoting Connecticut Nat. Bank v. Germain, 503 U.S. 249, 254 (1992)); accord Bostock v. Clayton Cnty., Ga., 590 U.S. ---, 140 S.Ct. 1731, 1738 (2020) ("This Court normally interprets a statute in accord

with the ordinary public meaning of its terms at the time of its enactment.  After all, only the words on the page constitute the law."); Commonwealth of N. Mar. I. v. Canadian Imperial Bank of Commerce, 21 N.Y.3d 55, 60 (N.Y. 2013) (explaining that, when interpreting a statute, "our starting point is the language itself, giving effect to the plain meaning thereof") (internal quotation marks and citation omitted).  Here, the unambiguous text of NYLL § 198 (1-a) authorizes employees to bring claims for liquidated damages pertaining only to the "underpayment" of wages, not to the alleged late payment of wages.

The first two sentences of NYLL § 198(1-a) address the New York State Department of Labor Commissioner's authority to bring an enforcement action against employers:

> On behalf of any employee paid less than the wage to which he or she is entitled under the provisions of this article, the commissioner may bring any legal action necessary, including administrative action, to collect such claim and as part of such legal action, in addition to any other remedies and penalties otherwise available under this article, the commissioner shall assess against the employer the full amount of any such underpayment, and an additional amount as liquidated damages, unless the employer proves a good faith basis for believing that its underpayment of wages was in compliance with the law.  Liquidated damages shall be calculated by the commissioner as no more than one hundred percent of the total amount of wages found to be due, except such liquidated damages may be up to three hundred percent of the total amount of the wages found to be due for a willful violation of section one hundred ninety-four of this article.

NYLL § 198(1-a).  The third sentence authorizes civil lawsuits by employees or the Commissioner:

> In any action instituted in the courts upon a wage claim by an employee or the commissioner in which the employee prevails, the court shall allow such employee to recover the full amount of any underpayment, all reasonable attorney's fees, prejudgment interest as required under the civil practice law and rules, and, unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law, an additional amount as liquidated damages equal to one hundred percent of the total amount of the wages found to be due, except such liquidated damages may be up to three hundred percent of the total amount of the wages found to be due for a willful violation of section one hundred ninety-four of this article.

Id.

As its plain text demonstrates, NYLL § 198(1-a) permits an employee to sue "upon a wage claim" to recover "the full amount of any such underpayment." NYLL § 198(1-a). The term "underpayment" is not defined in NYLL § 198(1-a). But given the commonly understood meaning of the prefix "under," it is not surprising that the Merriam-Webster dictionary definition of "underpay" is "to pay less than what is normal or required." Underpay, Merriam-Webster's Dictionary, https://www.merriam-webster.com/dictionary/underpay (last visited August 1, 2022); see also State v. Dep't of Justice, 951 F.3d 84, 106 (2d Cir. 2020), cert. dismissed, 141 S.Ct. 1291 (2021) (providing that words in a statute that are not "statutorily defined" are "properly construed according to [their] contemporary dictionary definition") (citations omitted); Yaniveth R. ex rel. Ramona S. v. LTD Realty Co., 27 N.Y.3d 186, 192 (N.Y. 2016) ("In the absence of a statutory definition, we construe words of ordinary import with their usual and commonly understood meaning, and in that connection have regarded dictionary definitions as useful guideposts in determining the meaning of a word or phrase.") (internal quotation marks and citation omitted). Plaintiffs do not allege that they were paid less than what was required. Therefore, they do not seek to recover an "underpayment." Stated differently, the ordinary public meaning of "underpayment" compares the amount of payment received against the required amount. It says nothing about the timeliness of any such payment.

That "underpayment" pertains to amount, and not timeliness, is further supported by the plain text of NYLL § 198(1-a) in other ways. The first sentence of NYLL § 198(1-a) provides that the Commissioner shall, in any legal action brought by the Commissioner "[o]n behalf of any employee paid less than the wage to which he or she is entitled," "assess against the employer the full amount of any such underpayment." NYLL § 198(1-a). The New York Legislature's use of the term "such" to modify "underpayment" is a clear reference to the phrase "paid less than the

wage to which he or she is entitled" appearing earlier in the same sentence. Thus, the Legislature's use of the term "such" demonstrates that "underpayment" and "paid less than the wage to which he or she is entitled" have the same meaning. As a result, "underpayment" cannot mean "late payment." See Dep't of Revenue of Or. v. ACF Indus., Inc., 510 U.S. 332, 342 (1994) (referring to the "normal rule of statutory construction" that "identical words used in different parts of the same act are intended to have the same meaning") (internal quotation marks and citation omitted).

The same conclusion flows from a close reading of the third sentence of NYLL § 198(1-a). That sentence provides, in part, that "unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law," a prevailing employee can recover "an additional amount as liquidated damages equal to one hundred percent of the total amount of the wages found to be due." NYLL § 198(1-a). That language confirms that the phrases "underpayment of wages" and "the wages found to be due" have the same meaning. Again, then, "underpayment" must mean a payment of wages that is "less than … required"—not merely a late payment of the required amount.

Likewise, the reference to a "wage claim" in the beginning of the third sentence of NYLL § 198(1-a) confirms this reading. A "wage claim" must be one that seeks to recover an "underpayment," and, as explained above, by reference to the first sentence in NYLL § 198(1-a), an "underpayment" means an employee was "paid less than the wage to which he or she is entitled." Accordingly, the "wage claim" referenced in the third sentence of NYLL § 198(1-a) is one that seeks the difference between the "the wage to which [an employee] is entitled" and the amount that he or she received. That is not Plaintiffs' claim here. They do not allege any difference between the amount of wages they were paid and the amount of wages they were owed, and therefore, they do not seek a remedy for an "underpayment" pursuant to NYLL § 198(1-a).

Finally, the third sentence confirms that an "underpayment" is a prerequisite for a private suit. Specifically, that sentence does not authorize employees to sue for liquidated damages generally; rather, it permits them to sue for an "underpayment" and, in the context of such a suit, to recover "an additional amount" (i.e., a sum *in addition* to the underpayment) in the form of liquidated damages. See id. Stated differently, no underpayment, no liquidated damages. As such, Plaintiffs' anticipated argument that statutory liquidated damages in an amount equal to 100% of the alleged late-paid wages are automatic (upon the late payment) and therefore constitutes an "underpayment" is of no moment.

Put simply, application of the "plain and settled" meaning of "underpayment" demonstrates that it does not encompass late, but fully, paid wages. "Less than" does not mean "later than." See Bostock, 140 S.Ct. at 1743 ("At bottom, these cases involve no more than the straightforward application of legal terms with plain and settled meanings."). In the Supreme Court's words, "when the meaning of the statute's terms is plain," a court's "job is at an end." Bostock, 140 S.Ct. at 1749. Because the New York Legislature chose to permit a claim under NYLL § 198(1-a) only for an "underpayment," not a late payment, BBB respectfully submits that this Court should enforce the plain language enacted by the New York Legislature. See id. at 1739 (explaining that Congress "could have" written statute differently in several ways, "[b]ut none of this is the law we have"); see also id. at 1738 ("If judges could add to, remodel, update, or detract from old statutory terms inspired only by extratextual sources and our own imaginations, we would risk amending statutes outside the legislative process reserved for the people's representatives. And we would deny the people the right to continue relying on the original meaning of the law they have counted on to settle their rights and obligations.") (citation omitted).

Notably, before the First Department's decision in <u>Vega v. CM & Assoc. Constr. Mgmt.,</u> <u>LLC</u>, 175 A.D.3d 1144 (1st Dep't 2019), the majority of courts that considered this issue found that NYLL § 198(1-a) did not create a private right of action to recover liquidated damages in cases where a wage payment was merely delayed. <u>See</u>, <u>e.g.</u>, <u>Coley v. Vannguard Urban</u> <u>Improvement Ass'n, Inc.</u>, No. 12-CV-5565 (PKC) (RER), 2018 WL 1513628, at *13 (E.D.N.Y. Mar. 27, 2018) (denying liquidated damages for late wages under § 191 because § 198 does not provide remedy); <u>Belizaire v. RAV Investigative & Sec. Servs. Ltd.</u>, 61 F.Supp.3d 336, 360 n.22 (S.D.N.Y. 2014) (noting that § 198(1-a)'s liquidated damages provision "is geared to afford relief for unpaid wages, not for late-paid wages") (citation omitted); <u>Hussain v. Pakistan Int'l Airlines</u> <u>Corp.</u>, No. 11-CV-932, 2012 WL 5289541, at *3 (E.D.N.Y. Oct. 23, 2012) (holding that § 198 provides liquidated damages for "underpayment of wages" but not for "private recovery" for "technical violations" of pay frequency requirements); <u>Hunter v. Planned Bldg. Servs., Inc.</u>, No. 715053/2017, 2018 WL 3392476, at *2–3 (N.Y. Sup. Ct. Queens Cnty. June 20, 2018) (interpreting § 198(1-a) to provide a private right of action to recover "nonpayment of wages," not "for [a] violation of NYLL § 191(1)(a)(i) where the plaintiff has not alleged unpaid wages exclusive of liquidated damages").

In <u>Vega</u>, however, the First Department summarily rejected this line of cases, finding an express private right of action to enforce NYLL § 191(1)(a)(i). <u>See</u> 175 A.D.3d at 1146. The <u>Vega</u> court held that the term "underpay" encompassed situations involving late payment. <u>Id.</u> at 1145. <u>Vega</u> recognized that settled statutory interpretation principles require courts to remain faithful to the "usual and commonly understood meaning" of the relevant statutory text and, in fact, quoted the Merriam-Webster definition of "underpay." <u>Id.</u> But it then ignored that definition by treating "less than" as synonymous with "later than." Thus, <u>Vega</u> impermissibly "read into the

statute that which was specifically omitted by the Legislature." See Canadian Imperial Bank, 21 N.Y.3d at 62.

Similarly, in Scott v. Whole Foods Market Group, Inc., the court found a private right of action to enforce NYLL § 191(1)(a) without any analysis of the statutory text. No. 18-CV-0086 (SJF) (AKT), 2019 WL 1559424, at *2–3 (E.D.N.Y. Apr. 9, 2019). That failure to analyze the plain language of the statute is reason alone to reject Scott. See, e.g., Bostock, 140 S.Ct. at 1738; Worldwide Indus. Enters., 220 F.Supp.3d at 338; Canadian Imperial Bank, 21 N.Y.3d at 60.

Respectfully, Vega and Scott are inconsistent with the text of NYLL § 198(1-a). Thus, this Court should decline to follow those decisions, remain faithful to the statutory text, and find that Plaintiffs do not have a private right of action to enforce NYLL § 191's pay frequency provision.

**B.      There Is Likewise No Basis to Imply a Private Right of Action.**

In addition to finding an express right of action to bring pay frequency claims, Scott and Vega also found an implied right of action to enforce NYLL § 191's pay frequency requirements. Vega, 175 A.D.3d at 1146; Scott, 2019 WL 1559424, at *3–4. That conclusion, too, is incorrect.

To determine whether a private right of action is "'fairly implied' in [a] statute and its legislative history, New York courts consider '(1) whether the plaintiff is one of the class for whose particular benefit the statute was enacted; (2) whether recognition of a private right of action would promote the legislative purpose; and (3) whether the creation of such a right would be consistent with the legislative scheme.'" EEOC v. Vamco Sheet Metals, Inc., No. 13 Civ. 6088 (JPO), 2014 WL 2619812, at *7 (S.D.N.Y. June 5, 2014) (quoting Maraia v. Orange Reg'l Med. Ctr., 63 A.D.3d 1113, 1116 (2d Dep't 2009)). Of these three factors, courts interpreting New York law have recognized that:

> The third factor "'is generally the most critical.'" [Carrier v. Salvation Army, 667 N.E.2d 328, 329 (N.Y. 1996)] (quoting Brian Hoxie's Painting Co. v. Cato-Meridian Cent. Sch. Dist., 556 N.E.2d

1087, 1089 (N.Y. 1990)). This is because "the Legislature has both the right and the authority to select the methods to be used in effectuating its goals, as well as to choose the goals themselves. Thus, regardless of its consistency with the basic legislative goal, a private right of action should not be judicially sanctioned if it is incompatible with the enforcement mechanism chosen by the Legislature or with some other aspect of the over-all statutory scheme." Sheehy v. Big Flats Cmty. Day, Inc., 541 N.E.2d 18, 21 (N.Y.1989). Accordingly, *New York courts have "declined to recognize a private right of action in instances where the Legislature specifically considered and expressly provided for enforcement mechanisms in the statute itself."* [Cruz v. TD Bank, N.A., 2 N.E.3d 221, 226 (N.Y. 2013)] (internal quotation marks and brackets omitted).

Agerbrink v. Model Serv. LLC, No. 14-cv-7841 (JPO), 2015 WL 3750674, at *3 n.5 (S.D.N.Y. June 16, 2015) (emphasis added).

Here, the New York Legislature "specifically considered and expressly provided for enforcement mechanisms" for violations of NYLL § 191—namely, it enacted NYLL § 218(1), which provides in relevant part:

> If the commissioner determines that an employer has violated a provision of article six (payment of wages)[3] [or other employment-related laws], the commissioner shall issue to the employer an order directing compliance therewith…. Where the violation is for a reason other than the employer's failure to pay wages, benefits or wage supplements found to be due, the order shall direct payment to the commissioner of a civil penalty in an amount not to exceed one thousand dollars for a first violation, two thousand dollars for a second violation or three thousand dollars for a third or subsequent violation.

NYLL § 218(1); see also, e.g., Planned Bldg. Servs., 2018 WL 3392476, at *2 (rejecting private right of action theory and noting that civil penalties are available against employers through Commissioner of Labor). Indeed, the Court of Appeals recently held that an employee did not have an implied private right of action to enforce NYLL § 198-b, which prohibits wage kickbacks,

---

[3] Article Six of the New York Labor Law includes §§ 191 and 198.

because the "statutory scheme … expressly provides two robust enforcement mechanisms," including an administrative action under § 218, and because the Legislature specifically enumerated private rights of action to enforce provisions of Article Six in NYLL § 198 without any reference to NYLL § 198-b. See Konkur v. Utica Acad. of Sci. Charter Sch., 38 N.Y.3d 38, 42–45, reargument denied, 38 N.Y.3d 1002, (N.Y. 2022). The same is true here: the New York Legislature decided that the Commissioner "shall direct payment" of civil penalties by employers who violate NYLL § 191 and chose ***not*** to authorize employees to recover liquidated damages under NYLL § 198(1-a) for the same conduct. As a result, the Court should respect the Legislature's judgment and not imply a private right of action to enforce NYLL § 191.

Additionally, the Commissioner of Labor and the State's Industrial Board of Appeals (which reviews orders issued by the Commissioner) have recognized, over and over, that violations of § 191's pay frequency requirement fall within § 218(1)'s category of a violation "other than … failure to pay wages." See, e.g., IKEA U.S., Inc., Order under Arts. 4 & 6 of N.Y. Lab Law (N.Y. Dep't of Lab, Div. of Lab. Statistics  Oct. 7, 1994) (assessing civil penalty pursuant to § 218 for violations of § 191(1)(a)); Wah Chan Wong v. Comm'r of Labor, Docket No. PR 12-090, Resolution of Decision, at 13 (N.Y. Indus. Bd. of Appeals Oct. 26, 2016) (affirming $1,000 civil penalty for violation of § 191(1)(a)); Sheng Wang Zhang v. Comm'r of Labor, Docket No. PR 12-180, Resolution of Decision, at 13 (N.Y. Indus. Bd. of Appeals July. 13, 2016) (affirming $1,000 civil penalty for violation of § 191(1)(a)); Popermhem v. Comm'r of Labor, Docket No. PR 13-153, Corrected and Reissued Resolution of Decision, at 12–13 (N.Y. Indus. Bd. of Appeals Feb. 5, 2016) (affirming $1,000 civil penalty for violation of § 191(1)(a)); cf. also Gerson v. Comm'r of Labor, Docket No. PR 10-361, Resolution of Decision, at 8 (N.Y. Indus. Bd. of Appeals Nov. 5, 2014) (affirming $1,000 civil penalty for violation of § 191(1)(d), a pay frequency requirement

pertaining to "clerical and other worker[s]"); <u>Career and Education Consultants, Inc. . Comm'r of Labor</u>, Docket No. PR 20-047 (N.Y. Indus. Bd. of Appeals Apr. 7, 2021) (post-<u>Vega</u> decision affirming $1,000 civil penalty for violation of § 191(1)(d)).[4]  In other words, every single one of these decisions treated the § 191 violation as one "other than the employer's failure to pay wages" and assessed a civil penalty pursuant to § 218(1) consistent with that category of violations.  Not one of them imposed liquidated damages—pursuant to §§ 198(1-a), 218, or any other provision of the Labor Laws—for the § 191 violation.  Thus, consistent with the plain language of these statutes, the Commissioner of Labor and the Industrial Board of Appeals routinely interpret § 218, rather than § 198(1-a), as the remedy for violations of § 191's frequency of pay requirements. And their interpretation deserves deference. <u>See</u> <u>Bldg. Trades Emps. Educ. Ass'n v. McGowan</u>, 311 F.3d 501, 507 (2d Cir. 2002) ("We defer to a state agency's interpretation of its own regulations, unless the interpretation is arbitrary or capricious.") (citation omitted); <u>Matter of Tommy and Tina, Inc. v. Dep't of Consumer Affairs</u>, 95 A.D.2d 724, 724 (1st Dep't 1983), <u>aff'd</u>, 62 N.Y.2d 671 (N.Y. 1984) ("Absent an arbitrary and capricious regulation or interpretation of said regulations, courts should defer to the agency.").  The above-cited law suggests a level of deference akin to that in the case of <u>Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.</u>  <u>See</u> 467 U.S. 837, 844 (1984) (holding an arbitrary and capricious standard should apply to federal agencies interpreting federal law).  Even under the more permissive standards of <u>Skidmore v. Swift & Co.</u>, 323 U.S. 134 (1944), the Commissioner of Labor and Industrial Board decisions would be owed deference on account of the consistency of those decisions over the course of time, the validity of their reasoning in interpreting the text of the statute, and other persuasive factors.  <u>See</u> <u>id.</u> at 140.

---

[4] Copies of the decisions cited in this paragraph are attached to the Ruzal Declaration as Exhibits A to F.

In sum, there is no basis for this Court to upend the Legislature's chosen remedial scheme (which the Commissioner of Labor and the Industrial Board of Appeals have applied time and time again) and supplant the Legislature's judgment with its own.[5]  Ultimately, the <u>Scott</u> court's concern that the absence of a "private right of action under § 191 redressable under § 198" would "leave[] an aggrieved employee with no recourse" against violations of § 191, <u>Scott</u>, 2019 WL 1559424 at *2, 4,  was neither correct as a matter of law nor a sound basis for implying a private right of action.  <u>See</u>, <u>e.g.</u>, <u>Bostock</u>, 140 S.Ct. at 1745 (beliefs about what "the law was meant to do, or should do" do not "allow [the court] to ignore the law as it is"); <u>id.</u> at 1737 ("When the express terms of a statute give us one answer and extratextual considerations suggest another, it's no contest.").

Further, the legislative history demonstrates that that the Legislature never intended to create a private right of action for liquidated damages to redress an alleged pay frequency violation.  A weekly pay requirement was first enacted in the New York Law in 1890.  That law stated:

> Every manufacturing … [and] mercantile … corporation … shall pay weekly, each and every employee engaged in its business, the wages earned by such employee within six days of the date of such payment…. Any corporation violating any of the provisions of this act shall be liable to a penalty not exceeding fifty dollars and not less than ten dollars for each violation, to be paid to the people of the state and which may be recovered in a civil action; provided an action for such violation is commenced within thirty days from the date thereof.  The factory inspectors of this state, their assistants or deputies may bring an action in the name of the people of the state as plaintiff against any corporation which neglects to comply with the provisions of this act for a period of two weeks, after having been notified in writing by such inspectors, assistants or deputies, that such action will be brought.

---

[5] Notably, this is not the only place in the New York Labor Law where the Legislature chose to create enforcement mechanisms to be pursued by the State instead of private remedies to be pursued by aggrieved employees.  <u>See</u>, <u>e.g.</u>, <u>Awan v. Durrani</u>, No. 14-cv-4562, 2015 WL 4000139, at *9 n.12 (E.D.N.Y. July 1, 2015) ("[N]o private statutory right of action exists to enforce [NYLL § 162]."); <u>Hill v. City of New York</u>, 136 F.Supp.3d 304, 351 (E.D.N.Y. 2015), <u>amended</u> & <u>supplemented by</u> 13-CV-6147 (PKC) (JO), 2019 WL 1900503 (E.D.N.Y. Apr. 29, 2019) (same) (citations omitted); <u>Chuk on Chan v. Good Chows Inc.</u>, No. 16-cv-2794, 2017 WL 6550689, at *2 (S.D.N.Y. Dec. 21, 2017) (noting that "the NYLL provides only the Commissioner of Labor, not employees themselves, with a cause of action to enforce" § 195's requirement of annual wage statements when those were required prior to February 2015) (collecting cases).

Session Law 1890, Ch. 388 §§ 1–2.[6]  Thus, from the beginning, the remedy for violation of the weekly pay requirement was that a corporation would pay a penalty to the state.  The Legislature authorized the government actors tasked with enforcing the weekly pay provision, the factory inspectors, to seek those penalties.  That same conceptual regulatory scheme has existed since that first law was enacted, and it still exists today.

On May 13, 1897, the weekly pay requirement was codified in the Labor Laws, with similar provisions.  N.Y. Gen. Laws, Ch. 32, Art. 1 § 11.[7]  That version of the law specifically stated:

> Penalty for violation of preceding sections.—If a corporation or joint stock association, its lessee or other person carrying on the business thereof, shall fail to pay the wages of an employe[e] as provided in this article, it shall forfeit to the people of the state the sum of fifty dollars for each such failure, to be recovered by the factory inspector in his name of office in a civil action; but an action shall not be maintained therefor, unless the factory inspector shall have given to the employer at least ten days' written notice, that such an action will be brought if the wages due are not sooner paid as provided in this article.

Id.  Again, in that iteration of the law, the penalty provision was a payment to the state.  Significantly, the statute used similar language to the present-day version, i.e., that an action can be brought only "if the wages due are not sooner paid."  Id.  The weekly pay requirement was re-codified in 1966 as § 191, and again, as with the prior statutes, a private right of action was not provided.  See Session Law 1966, Ch. 548 § 191.[8]

Section 198 of the NYLL was first enacted in 1966.  In its original form, it was lean as compared with the modern version.  It stated:

> § 198. Costs, remedies. 1. In any action instituted upon a wage claim by an employee or the commissioner in which the employee prevails, the court may allow such employee in addition to ordinary costs, a reasonable sum, not exceeding fifty

---

[6] A copy of this statute is attached to the Ruzal Declaration as Exhibit G.

[7] A copy of this statute is attached to the Ruzal Declaration as Exhibit H.

[8] A copy of this statute is attached to the Ruzal Declaration as Exhibit I.

dollars for expenses which may be taxed as costs. No assignee of a wage claim, except the commissioner, shall be benefited by this provision.

2. The remedies provided by this article may be enforced simultaneously or consecutively so far as not inconsistent with each other.

Since then, § 198 has been amended eight separate times. Through every amendment, the Legislature has never added language authorizing a private litigant to bring suit for a violation of § 191 or otherwise pursue liquidated damages for the late payment of wages. See L.1967, c. 294, § 5; L.1967, c. 310, § 1; L.1997, c. 605, § 4, eff. Nov. 16, 1997; L.2009, c. 372, § 1, eff. Nov. 24, 2009; L.2010, c. 564, § 7, eff. April 9, 2011; L.2014, c. 537, §§ 2, 5, eff. Feb. 27, 2015; L.2015, c. 2, § 3, eff. Feb. 27, 2015; L.2015, c. 362, § 2, eff. Jan. 19, 2016, L.2021, c. 397, § 3, 5, eff. Aug. 19, 2021.[9]

In 2010, the Legislature passed the Wage Theft Prevention Act ("WTPA"), which, in part, amended § 198(1-a) to address the problem of "wage theft" by employers. Specifically, § 198(1-a) was amended to allow a prevailing employee to recover liquidated damages reflecting "the full amount of any underpayment," increased from the previously authorized amount of 25% of any underpayment. N.Y. Bill Jacket, 2010 S.B. 8380, Ch. 564, Introducer's Statement, at 000006 (Jun. 29, 2010).[10] The Commissioner of Labor supported the passage of the WTPA because of the harm that "wage theft" caused throughout the economy. Specifically, the Commissioner characterized the WTPA as "increas[ing] penalties for violation of various provisions of the Labor Law intended to protect workers from *nonpayment and underpayment* of wages." Id., Mem. of Comm'r to the Governor, at 000009 (Dec. 10, 2010) (emphasis added). In other words, the Commissioner of Labor recognized that certain provisions of the NYLL are intended to address violations involving

---

[9] A copy of these amendments is attached to the Ruzal Declaration as Exhibit J.

[10] A copy of this document is attached to the Ruzal Declaration as Exhibit K.

"nonpayment and underpayment," while others are intended to address other types of violations that do not involve nonpayment or underpayment. Further, the Commissioner stated that the WTPA was intended to penalize employers that (i) paid employees less than the minimum wage or their agreed-upon wage; (ii) created a competitive disadvantage for law-abiding employers by reducing the cost of their own business; and (iii) hurt the state and local economy by reducing wages that would otherwise "make their way into the economy and generate income and sales taxes." Id. at 000010. Again, this history confirms that the Legislature designed the enhanced penalties in § 198(a-1) to deter the non-payment of wages, *not* the routine payment of wages on a bi-weekly pay schedule, as Plaintiffs allege here.

Given the absence of any evidence whatsoever that the Legislature has ever intended to create a private right of action to pursue liquidated damages for allegedly late-paid wages, the courts in Vega and Scott wrongly inferred that the legislative purpose of §§ 191 and 198(1-a) would be furthered by finding an implied right. In combination with those courts' failures to consider § 218(1), their misapprehension of the legislative purpose of these statutes is another reason to reject their holdings regarding the creation of an implied right of action. Accordingly, the Court should dismiss Plaintiffs' § 191 claims.

## VI. The Fourteenth Amendment's Due Process Clause Bars the Relief Plaintiffs Seek.

"The Supreme Court long ago held that a penalty assessed pursuant to a statute violates the Due Process Clause if it is 'so severe and oppressive as to be wholly disproportioned to the offense and obviously unreasonable.'" Golan v. FreeEats.com, Inc., 930 F.3d 950, 962 (8th Cir. 2019) (quoting St. Louis, I.M. & S. Ry. Co. v. Williams, 251 U.S. 63, 67 (1919)). Here, Plaintiffs' claims violate this well-established principle.

Beginning with the NYLL § 191 claims, Plaintiffs' proffered misinterpretation of NYLL § 198(1-a) as permitting employees to recover liquidated damages in the amount of 100% of late-paid wages, even though they were ultimately paid those wages in full, violates the Fourteenth Amendment's Due Process Clause. Although Plaintiffs have not alleged *any* actual harm, they seek to recover, on behalf of themselves and putative class members, over *$5 million.* (ECF No. 89-1 ¶ 6.) In <u>Missouri Pacific Railway Co. v. Tucker</u>, the Supreme Court found a remarkably less drastic disparity between actual damages and statutorily mandated liquidated damages inconsistent with due process. There, a railway charged a consignee $3.02 more than a statutory rate schedule allowed to transport petroleum products. 230 U.S. 340, 346 (1913). The consignee sued seeking $500 in statutory liquidated damages. <u>Id.</u> The Supreme Court found that the statute's liquidated damages provision violated due process because the amount was "not only grossly out of proportion to the possible actual damages, but [was] so arbitrary and oppressive that its enforcement would be nothing short of the taking of property without due process of law." <u>Id.</u> at 351. In finding a due process violation, the Court noted that the liquidated damages provision was "not proportioned to the actual damages," unlike statutes allowing "double or treble damages," which the Court noted "properly could have been done." <u>Id.</u> at 348. The same is true here.

Properly construed, NYLL § 198(1-a) permits the recovery of double damages—namely, the recovery of the amount of an underpayment as actual damages plus an additional amount equal to 100% of the amount of the underpayment as liquidated damages. <u>See</u> NYLL § 198(1-a). So, if an employee was underpaid by $500, she may recover $500 in actual damages and an additional $500 in liquidated damages. Here, by contrast, Plaintiffs do not seek double the amount of an actual underpayment. Instead, they seek a windfall in the amount of 100% of their late-paid wages as liquidated damages in the absence of any actual damages. Because they were paid all of the

23

wages owed to them for each work week of their employment, the amount they seek is untethered to the actual harm, if any, they may have suffered, and is arbitrary and greatly exceeds the bounds of reasonableness prescribed by due process. Thus, the Court should dismiss their NYLL § 191 claims.

Turning to the NYLL § 195 claim, Plaintiffs seek to recover $50 for each day BBB allegedly failed to provide them with proper wage-theft notices, up to a maximum of $5,000. (See ECF No. 89-1 ¶ 86.) In <u>Southwest Telephone and Telegraph Co. v. Danaher</u>, the Supreme Court found that a statutory penalty of $100 per day imposed for 63 days violated due process where the plaintiff's only harm was being without telephone service for 40 days and overcharged for service by 50¢ for 23 days. 238 U.S. 482, 486, 491 (1915). Here, the Plaintiffs do not—and cannot— allege that the BBB's alleged violations of NYLL § 195 harmed them at all. As such, penalizing BBB with penalties of $50 per day, up to $5,000 per class member, for more than 1,000 putative class members is arbitrary, oppressive, and inconsistent with due process. (See ECF No. 89-1 ¶ 22.) Hence, the Court should dismiss these claims as well.

## CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiffs' Third Amended Complaint.

New York, New York
August 12, 2022

EPSTEIN BECKER & GREEN, P.C.

By: /s/ *Jeffrey H. Ruzal*

Jeffrey H. Ruzal
875 Third Avenue
New York, New York 10022
Tel: 212.351.4500
Fax: 212.878.8600
jruzal@ebglaw.com

Francesco A. DeLuca
125 High Street, Suite 2114
Boston, Massachusetts 02110
Tel: 617.603.1100
Fax: 617.249.1573
fdeluca@ebglaw.com

*Attorneys for Bed Bath & Beyond, Inc.*