UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DONALD HESS and ELIZABETH PADILLA, individually and on behalf of all others similarly situated,

Plaintiffs,

-against-

BED BATH & BEYOND INC.,

Defendant.

Case No. 21-cv-04099(AT)(RWL)

**DEFENDANT'S REPLY TO PLAINTIFFS' OPPOSITION TO ITS MOTION TO DISMISS THEIR THIRD AMENDED COMPLAINT**

New York, New York
October 21, 2022

EPSTEIN BECKER & GREEN, P.C.

By: /s/ *Jeffrey H. Ruzal*

Jeffrey H. Ruzal
875 Third Avenue
New York, New York 10022
Tel: 212.351.4500
Fax: 212.878.8600
jruzal@ebglaw.com

Francesco A. DeLuca
125 High Street, Suite 2114
Boston, Massachusetts 02110
Tel: 617.603.1100
Fax: 617.249.1573
fdeluca@ebglaw.com

*Attorneys for Bed Bath & Beyond, Inc.*

# TABLE OF CONTENTS

ARGUMENT .......... 1

I. Bed Bath & Beyond ("BBB") Has Timely Raised CAFA's Home-State Exception. .......... 1

A. BBB raised its CAFA defense at a reasonable time. .......... 1

B. Filing of the TAC further supports BBB's right to assert the home state exception to CAFA. .......... 3

II. Plaintiffs' Article III Standing Arguments Fail. .......... 4

A. Plaintiffs failed to argue they have standing on their NYLL § 195 claims. .......... 4

B. Plaintiffs have failed at the four attempts they have had to properly plead an injury-in-fact pursuant to their NYLL §§ 191 and 195 claims. .......... 4

C. TransUnion does not provide that a legislature's creating a private right of action for a statutory violation automatically gives rise to Article III standing. .......... 6

D. A delayed wage payment does not have a "close relationship" to the common law tort of conversion. .......... 7

E. Plaintiffs' reliance on Atlantic Mutual Insurance is misplaced because that case has nothing to do with Article III standing. .......... 7

III. Plaintiffs' Arguments for a Private Right of Action Are Unpersuasive. .......... 8

A. The New York Court of Appeals' recent Konkur decision is a reason why this Court can—and should—reject Vega and the decisions following it. .......... 8

B. Plaintiffs exaggerate the extent to which courts within the Second Circuit and New York State have followed Vega. .......... 9

CONCLUSION .......... 10

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

Ashcroft v. Iqbal,
556 U.S. 662 (2009)....................9, 11

Atlantic Mutual Insurance Co. v. Commissioner of Internal Revenue,
523 U.S. 382 (1998)....................12, 13

Barker v. Rokosz,
No. 19-CV-00514,
2021 WL 1062246 (E.D.N.Y. Mar. 18, 2021)....................11

Bell Atlantic Corp. v. Twombly,
550 U.S. 544 (2007)....................9, 11

Caul v. Petco Animal Supplies, Inc.,
No. 20-CV-3534, 2021 WL 4407856 (E.D.N.Y. Sept. 27, 2021)....................13

Conley v. Gibson,
355 U.S. 41 (1957)....................9

Gilmore v. Shearson/Am. Exp. Inc.,
811 F.2d 108 (2d Cir. 1987),
overruled on other grounds by Gulfstream Aerospace Corp. v. Mayacamas Corp., 485 U.S. 271 (1988)....................8

Gold v. New York Life Insurance Co.,
730 F.3d 137 (2d Cir. 2013)....................6, 7, 15

Grant v. Global Aircraft Dispatch, Inc.,
No. 2021-03202 (2d Dept.)....................14

Grant v. Global Aircraft Dispatch, Inc.,
No. 720074/2019,
2021 WL 6777500 (N.Y. Sup. Ct., Queens Cnty. April 20, 2021)....................14

Harry v. Total Gas & Power N. Am., Inc.,
889 F.3d 104 (2d Cir. 2018)....................10

Harty v. Greenwich Hosp. Grp., LLC,
536 F. App'x 154 (2d Cir. 2013)....................10

Hawse v. Page,
7 F.4th 685 (8th Cir. 2021)....................10

Hishon v. King & Spalding,
467 U.S. 69 (1984) .... 9

Kattan v. 119 Christopher LLC,
135 N.Y.S.3d 628 (N.Y. Sup. Ct. 2020) .... 14

Konkur v. Utica Academy of Science Charter School,
38 N.Y.3d 38, reargument denied, 38 N.Y.3d 1002 (2022) .... 13, 14, 15

Krinsk v. SunTrust Banks, Inc.,
654 F.3d 1194 (11th Cir. 2011) .... 8

Lujan v. Defenders of Wildlife,
504 U.S. 555 (1992) .... 9, 10

Lujan v. Nat'l Wildlife Federation,
497 U.S. 871 (1990) .... 9

Mabe v. Wal-Mart Assocs., Inc.,
No. 1:20-CV-00591, 2022 WL 874311 (N.D.N.Y. Mar. 24, 2022) .... 15

MacDonnell v. Buffalo Loan, Tr. & Safe Deposit Co.,
193 N.Y. 92 (1908) .... 12

Mock v. St. David's Healthcare Partnership, LP,
No. A-19-CV-611, 2021 WL 75699 (W.D. Tex. Jan. 8, 2021),
report and recommendation adopted,
No. 1:19-CV-611, 2021 WL 8080549 (W.D. Tex. Mar. 4, 2021) .... 6, 7

National Organization for Women, Inc. v. Scheidler,
510 U.S. 249 (1994) .... 9

Pelman ex rel. Pelman v. McDonald's Corp.,
396 F.3d 508 (2d Cir. 2005) .... 11

Phillips v. Max Finkelstein, Inc.,
153 N.Y.S.3d 750 (2021) .... 14

Porsch v. LLR, Inc.,
380 F. Supp. 3d 418 (S.D.N.Y. 2019) .... 13

Precision Imaging of N.Y., P.C. v. Allstate Ins. Co.,
263 F. Supp. 3d 471 (S.D.N.Y. 2017) .... 11

Schoenefeld v. New York,
748 F.3d 464 (2d Cir. 2014) .... 13

Scott v. Whole Foods Mkt. Grp., Inc.,
No. 18CV0086, 2019 WL 1559424 (E.D.N.Y. Apr. 9, 2019) ... 13

Sorto v. Diversity Maint. Sys.,
No. 20-CV-1302, 2020 WL 8413553 (E.D.N.Y. Nov. 15, 2020),
report and recommendation adopted,
2020 WL 7693108 (E.D.N.Y. Dec. 28, 2020) ... 15

Statharos v. New York City Taxi & Limousine Comm'n,
198 F.3d 317 (2d Cir. 1999) ... 13

Thole v. U. S. Bank N.A.,
140 S. Ct. 1615 (2020) ... 10

Toretto v. Donnelley Financial Solutions, Inc.,
523 F. Supp. 3d 464 (S.D.N.Y. 2021) ... 10

TransUnion LLC v. Ramirez,
141 S. Ct. 2190 (2021) ... 10, 11, 12, 15

Vega v. CM & Associates Construction Management, LLC,
175 A.D.3d 1144 (1st Dept. 2019) ... 13, 14, 15

Warth v. Seldin
422 U.S. 490 (1975) ... 10

**Statutes and Rules**

Americans with Disabilities Act of 1990 (ADA) ... 10

Class Action Fairness Act of 2005 (CAFA) ... 6, 7, 8

Fed. R. Civ. P. 8 ... 11

Fed. R. Civ. P. 9 ... 11

N.Y. Gen. Bus. Law § 349 ... 11

N.Y. Labor Law § 191 ... 9, 12, 13

N.Y. Labor Law § 195 ... 9

N.Y. Labor Law § 198 ... 14

# ARGUMENT

## I. Bed Bath & Beyond ("BBB") Has Timely Raised CAFA's Home-State Exception.

### A. BBB raised its CAFA defense at a reasonable time.

In Gold v. New York Life Insurance Co., the Second Circuit held that CAFA's home-state exception "must be … raised within a reasonable time." 730 F.3d 137, 142 (2d Cir. 2013). While Plaintiffs base their waiver argument on cherry-picked quotations from that case, they eschew any analysis of its facts or holding because, quite simply, Gold undermines their argument.

In Gold, the defendant moved to dismiss the plaintiffs' New York Labor Law ("NYLL") claims under CAFA's home-state exception nearly *three years* after plaintiffs there filed suit *and* after the court had ruled on the parties' cross-motions for partial summary judgment. 730 F.3d at 141. The defendant there failed to raise the exception earlier because it was unaware of a basis to do so until the beginning of class discovery when it generated a list of the putative class members' addresses. Id. at 141. The district court found that the defendant's "delay was excused" and granted the motion to dismiss. Id. at 142. The Second Circuit affirmed that decision. Id. at 143.

Recently, the Western District of Texas applied Gold and rejected a waiver argument similar to Plaintiffs'. In Mock v. St. David's Healthcare Partnership, LP, the defendant removed the plaintiff's complaint to federal court under CAFA. No. A-19-CV-611, 2021 WL 75699, at *1 (W.D. Tex. Jan. 8, 2021), report and recommendation adopted, No. 1:19-CV-611, 2021 WL 8080549 (W.D. Tex. Mar. 4, 2021). The defendant filed two motions to dismiss, the first of which the plaintiff mooted with an amended complaint and the second of which the court largely denied. *Id.* at *1, *4. The plaintiff then filed a motion for voluntarily dismissal under CAFA's local-controversy and home-state exceptions. Id. The defendant opposed that motion, arguing that the plaintiff had waived her CAFA argument by failing to raise it sooner. Id. Applying Gold's "reasonable time" standard, the court rejected that argument. Id. at *4. Specifically, the court reasoned that

although the case had been pending for 19 months, it was "still in its very initial stages" because the court had only ruled on a motion to dismiss and had stayed discovery while that motion was pending. Id.

The procedural posture and circumstances here present greater justification for BBB's timing in asserting a CAFA exception than in Gold and Mock. The defendant in Gold waited nearly *three times* as long as BBB to raise the home-state exception. When it did, the parties had already completed individual discovery, begun class discovery, and received rulings on their cross-motions for summary judgment. Similarly, in Mock, the plaintiff objected to CAFA jurisdiction after the court had denied the defendant's motion to dismiss on substantive grounds.

Here, by contrast, BBB has not even answered any of Plaintiffs' four complaints or received a substantive ruling on a motion to dismiss.[1] Additionally, the parties are still in the early phases of discovery. The parties have not conducted any depositions. (Id. ¶ 3.) While BBB has produced documents, they largely concerned a 309-employee sample of the Second Amended Complaint's ("SAC") now-obsolete classes consisting of a total of 890 employees who held three specific positions. (Ruzal Dec. ¶ 2; ECF No. 47 ¶ 55.) And since Plaintiffs greatly expanded their class definition in the Third Amended Complaint ("TAC"), discovery has stagnated. Indeed, neither BBB nor Plaintiffs have propounded any discovery requests concerning the TAC's allegations or conducted any discovery into the propriety of certifying the putative class of over 10,000 employees[2] defined in the TAC. (Ruzal Dec. ¶ 4; Bors Dec. ¶ 3.) In short, this lawsuit has not progressed much at all, and far from establishing waiver, Gold and its progeny confirm that BBB has timely objected to CAFA jurisdiction.

---

[1] Although BBB filed a motion to dismiss the First Amended Complaint ("FAC"), Plaintiffs further amended the FAC thereby rendering that motion moot. (See ECF Nos. 53.)

[2] Because the TAC defines the putative class as "[a]ll manual workers," which is essentially an improper failsafe class, BBB has no way of determining the membership of the putative class at this stage. However, for purposes of

**B. Filing of the TAC further supports BBB's right to assert the home state exception to CAFA.**

Whether a defendant's omission of a defense in response to a complaint waives its right to assert that defense in response to an amended complaint depends on whether the "amended complaint contains charges that, in fairness, should nullify its earlier waiver and allow it to reassess its strategy." Gilmore v. Shearson/Am. Exp. Inc., 811 F.2d 108, 113 (2d Cir. 1987), overruled on other grounds by Gulfstream Aerospace Corp. v. Mayacamas Corp., 485 U.S. 271 (1988). In Krinsk v. SunTrust Banks, Inc., the Eleventh Circuit applied the Second Circuit's Gilmore analysis to an analogous situation to BBB's and rejected the plaintiff's argument that the defendant had waived its right to compel arbitration because it did not move to compel until the plaintiff amended his class action complaint. 654 F.3d 1194, 1202–04 (11th Cir. 2011). Although the amended complaint asserted similar claims to and contained the same facts as the original complaint, like Plaintiffs' TAC here, it introduced a new class definition that "greatly broadened the potential scope of th[e] litigation by opening the door to thousands—if not tens of thousands—of new plaintiffs not contemplated in the original class definition." Id. at 1203. Before the plaintiff amended his complaint, the defendant had litigated "on the expectation that, if the class action were certified, it would defend itself against only the relatively small plaintiff class defined in the [o]riginal [c]omplaint." Id. at 1204. Because the amended complaint dashed that expectation, the court held that the defendant "in plain fairness, should have been allowed to rescind its earlier waiver" of its right to compel arbitration. Id.

Here, assuming BBB had waived its CAFA objection, which it has not, there are even more compelling reasons to revive it than in Krinsk. Not only have Plaintiffs potentially increased the

---

this motion, BBB has identified on all hourly employees it employed at a retail location in New York during the relevant timeframe. By doing so, BBB does not admit or concede that any or all of these employees were "manual workers" or can be properly considered members of the same class.

number of putative class members by *over ten times* from just under 900 to potentially over 10,000, but they have also added six new Plaintiffs and asserted a new claim for improper notices under NYLL § 195 that depends on different facts from their NYLL § 191 pay frequency claims. (Compare ECF No. 47 ¶¶ 55, 57; and Ruzal Dec. ¶ 2; with ECF No. 105 ¶¶ 11, 13, 20; and Bors Dec. ¶ 3.) These changes in the TAC have fundamentally altered the scope of this lawsuit and BBB's previous litigation strategy, and upended any expectations BBB had about potential exposure under the prior complaints. Thus, the Court should find that Plaintiffs' filing of the TAC nullified any arguable waiver of BBB's right to assert CAFA's home-state exception.

## II. Plaintiffs' Article III Standing Arguments Fail.

### A. Plaintiffs failed to argue they have standing on their NYLL § 195 claims.

Plaintiffs' opposition is tellingly silent as to any argument that they have standing to pursue statutory damages for improper or untimely wage notices under NYLL § 195. Indeed, their silence is a tacit acknowledgement that they, in fact, lack standing on those claims, which, accordingly, should be dismissed

### B. Plaintiffs have failed at the four attempts they have had to properly plead an injury-in-fact pursuant to their NYLL §§ 191 and 195 claims.

First, primarily relying on National Organization for Women, Inc. v. Scheidler, 510 U.S. 249 (1994) and Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992), Plaintiffs contend that the Court can "presume" that BBB's alleged NYLL § 191 violation harmed them. But those cases predate Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) and Ashcroft v. Iqbal, 556 U.S. 662 (2009) and relied on the permissive "any set of facts" pleading standard that Iqbal and Twombly abrogated. See Nat'l Org. for Women, 510 U.S. at 256 (quoting Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)); Lujan, 504 U.S. at 561 (quoting Lujan v. Nat'l Wildlife Federation, 497 U.S. 871, 889 (1990), in turn citing Conley v. Gibson, 355 U.S. 41, 45–46 (1957)). For that reason, the

Eighth Circuit recently rejected Lujan's pleading standard, finding there is "no reason why an analytical approach taken specifically from an abrogated decision would survive the abrogation." Hawse v. Page, 7 F.4th 685, 689 n.6 (8th Cir. 2021). This Court should do the same and require Plaintiffs to specifically plead how BBB's alleged legal violations harmed them.[3]

Second, relying on Toretto v. Donnelley Financial Solutions, Inc., Plaintiffs argue that "[a] plaintiff's pleading burden to establish the elements of standing is lower than that for pleading the merits of a claim." See 523 F. Supp. 3d 464, 472 (S.D.N.Y. 2021). Toretto, however, is inconsistent with the Supreme Court's admonition in TransUnion LLC v. Ramirez that "[a] plaintiff must demonstrate standing 'with the manner and degree of evidence required at the successive stages of the litigation.'" See 141 S. Ct. 2190, 2208 (2021) (quoting Lujan, 504 U.S. at 561).[4] Because Plaintiffs cannot meet the plausibility standard that governs the current stage of these proceedings, the Court should dismiss the TAC.

Third, Plaintiffs ask this Court to infer that they "and all workers use their wages." That inference is insufficiently specific to establish a concrete harm arising from an alleged one-week delay in payment of wages. See Harty v. Greenwich Hosp. Grp., LLC, 536 F. App'x 154, 155 (2d Cir. 2013) (finding plaintiff's allegation that he constantly traveled nationwide "lack[ed] the specificity necessary to establish an ongoing injury caused by" a particular hotel's alleged Americans

[3] Plaintiffs implicitly recognized they must meet this standard when they wrote in their opposition, "Cite complaint paragraphs; add a few facts." (See ECF No. 117, at 13.) And they implicitly recognized they cannot satisfy it when they added no such facts.

[4] In reaching its flawed conclusion, Toretto relied on Harry v. Total Gas & Power N. Am., Inc., 889 F.3d 104 (2d Cir. 2018). See 523 F. Supp. 3d at 572. In Harry, the Second Circuit stated that, under the Supreme Court's decision in Warth v. Seldin, the plaintiffs had to "clearly allege" standing, which was a lower bar than the Iqbal-Twombly standard. 889 F.3d at 110–11 (citing 422 U.S. 490, 518 (1975)). That is inconsistent with TransUnion and no longer the law. In fact, even before TransUnion, the Supreme Court recognized that a plaintiff must satisfy *both* Iqbal-Twombly's "plausibly allege" and Warth's "clearly allege" standards to allege standing. See Thole v. U. S. Bank N.A., 140 S. Ct. 1615, 1621 (2020) ("[P]laintiffs have failed to *plausibly and clearly* allege a concrete injury.") (emphasis added).

with Disabilities Act violations). Plaintiffs have not asked the Court to draw a more specific inference that might establish standing, namely, that they would have used their wages for a particular purpose during the one-week period between when BBB allegedly should have paid them and when it actually paid them. Even if they had, that inference would be unreasonable since it would be equally plausible that Plaintiffs, like countless other workers, deposit their paychecks in noninterest bearing checking accounts. See Iqbal, 556 U.S. at 682 (finding inference that discrimination motivated arrests implausible given the "obvious alternative explanation" that they were lawful).

Finally, Plaintiffs assert they need only satisfy "bare-bones notice pleading" under Rule 8 to allege an injury in fact. This argument also fails. The cases Plaintiffs rely on involved a question that has no relevance here, specifically, whether Rule 9's heightened pleading standard applied to claims under New York General Business Law § 349. Pelman ex rel. Pelman v. McDonald's Corp., 396 F.3d 508, 511 (2d Cir. 2005); Barker v. Rokosz, No. 19-CV-00514, 2021 WL 1062246, at *7 (E.D.N.Y. Mar. 18, 2021). They said nothing about Article III standing. And even if they did, "the 'bare-bones notice-pleading requirements' for GBL § 349 claims described in Pelman have been superseded by the more rigorous plausibility standards set forth in [Iqbal] and [Twombly]." Precision Imaging of N.Y., P.C. v. Allstate Ins. Co., 263 F. Supp. 3d 471, 476 n.4 (S.D.N.Y. 2017).

**C. TransUnion does not provide that a legislature's creating a private right of action for a statutory violation automatically gives rise to Article III standing.**

Seemingly recognizing the weaknesses in their standing argument, Plaintiffs quote TransUnion out of context to argue that a legislature may "elevate to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law." See 141 S.Ct. at 2205 (internal citations omitted). Spuriously, they leave out what immediately follows: "But even though Congress may 'elevate' harms that 'exist' in the real world before Congress recognized

them to actionable legal status, it may not simply enact an injury into existence, using its lawmaking power to transform something that is not remotely harmful into something that is." Id. (internal quotation marks and citations omitted). Read in context, TransUnion merely recognized the unremarkable proposition that a legislature may create a private right of action—which BBB expressly disputes with respect to NYLL §§ 191—but it may not create Article III standing. In other words, it in no way supports Plaintiffs' standing argument.

**D. A delayed wage payment does not have a "close relationship" to the common law tort of conversion.**

In TransUnion, the Supreme Court clarified that standing requires plaintiffs to demonstrate that they suffered "a harm with a close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts." TransUnion, 141 S.Ct. at 2213. Plaintiffs pay lip service to this requirement by baldly contending that a one-week delay in the payment of wages is closely related to the tort of conversion. But they fail to cite a *single* case where a court found that an employer's one-week delay in paying an employee her wages gave rise to a claim for conversion. The only explanation for that failure is that no such case exists. Absent a valid analogy to the tort of conversion, Plaintiffs cannot show that a one-week delay in the payment of wages bears a close relationship to a harm redressable at common law.[5]

**E. Plaintiffs' reliance on Atlantic Mutual Insurance is misplaced because that case has nothing to do with Article III standing.**

Attempting yet again to remedy the deficiencies in their clearly deficient pleadings, Plaintiffs here argue the Supreme Court purportedly took judicial notice of the time value of money in

[5] Furthermore, BBB's initial possession of its monies was lawful, Plaintiffs earned their wages in exchange for their work pursuant to which BBB used their monies to pay them wages. As such, to state a claim for conversion, Plaintiffs would have to allege that they demanded payment earlier and BBB refused to make it. See MacDonnell v. Buffalo Loan, Tr. & Safe Deposit Co., 193 N.Y. 92, 101 (1908). A claim under NYLL § 191 does not impose a similar requirement on employees, making Plaintiffs' analogy to conversion is unpersuasive.

in Atlantic Mutual Insurance Co. v. Commissioner of Internal Revenue, 523 U.S. 382 (1998). But that case was about whether a Treasury regulation was a reasonable interpretation of the statutory term "reserve strengthening." Id. at 383. The Supreme Court first reviewed the statutory background and simply referred to the "time value of money" to shed light on its explanation that "Section 1023 of the 1986 Act amended the Code to require [property and casualty] insurers … to discount unpaid losses to present value when claiming them as a deduction." Id. at 384. It did not concern Article III standing at all. As a result, it is irrelevant, and the cases relying on it in the standing context[6] had no basis to conclude that the "common knowledge" of the time value of money excused plaintiffs from satisfying their obligation to plead facts in support of standing.

## III. Plaintiffs' Arguments for a Private Right of Action Are Unpersuasive.

### A. The New York Court of Appeals' recent Konkur decision is a reason why this Court can—and should—reject Vega and the decisions following it.

In arguing a private right of action exists under NYLL § 191, Plaintiffs contend this Court is required to follow Vega v. CM & Associates Construction Management, LLC, 175 A.D.3d 1144 (1st Dept. 2019). Plaintiffs, however, fail to recognize that federal courts may disregard New York intermediate appellate decisions, such as Vega, when they are "convinced there is persuasive data that the highest court of the state would decide otherwise." Schoenefeld v. New York, 748 F.3d 464, 469 (2d Cir. 2014) (quoting Statharos v. New York City Taxi & Limousine Comm'n, 198 F.3d 317, 321 (2d Cir. 1999)). Here, such a persuasive datum exists: the New York Court of Appeals' recent decision in Konkur v. Utica Academy of Science Charter School, 38 N.Y.3d 38, reargument denied, 38 N.Y.3d 1002 (2022).

---

[6] Porsch v. LLR, Inc., 380 F. Supp. 3d 418 (S.D.N.Y. 2019); Caul v. Petco Animal Supplies, Inc., No. 20CV3534, 2021 WL 4407856 (E.D.N.Y. Sept. 27, 2021), Scott v. Whole Foods Mkt. Grp., Inc., No. 18CV0086, 2019 WL 1559424 (E.D.N.Y. Apr. 9, 2019).

In Konkur, the plaintiff alleged that his employer had improperly collected "portions of [his] wage, salary, and … overtime, which constituted 'illegal kickbacks' in violation of [NYLL] § 198–b" and sought damages, including liquidated damages, under NYLL § 198. 38 N.Y.3d at 40. In other words, he explicitly alleged that he was paid *less than* what the NYLL requires. Nevertheless, the Court of Appeals rejected the argument that his claim was a "wage claim" under NYLL § 198. Id. at 44. As such, Konkur held—in opposition to a vigorous dissent—that the private right of action in § 198(1-a) did *not* apply, and that the plaintiff was *not*, in fact, bringing a "wage claim." See id. at 43–44, 55. It also held that the existence of alternative remedies prohibited the judiciary from implying a right of action to enforce NYLL § 198–b. See id. at 44–45. Vega's unjustified expansion of "wage claims" as to encompass late, but fully paid, wages and usurpation of the legislative function by implying a private right of action are inconsistent with the strict statutory reading required by Konkur.

**B. Plaintiffs exaggerate the extent to which courts within the Second Circuit and New York State have followed Vega.**

State and federal courts have not adopted Vega's rationale as consistently and readily as Plaintiffs contend. In addition to the fact that most of the decisions they cite precede Konkur, Plaintiffs fail to mention Grant v. Global Aircraft Dispatch, Inc., which held that "NYLL § 191 does not provide for private recovery for violations of its provisions regarding frequency of payment and recordkeeping or for liquidated damages for wages that were previously paid though untimely[.]" See No. 720074/2019, 2021 WL 6777500, at *3 (N.Y. Sup. Ct., Queens Cnty. April 20, 2021) (quotation omitted).[7]

[7] An appeal of the Grant decision is currently pending before the Second Department, Appellate Division. See Grant v. Global Aircraft Dispatch, Inc., No. 2021-03202. Notably, the Second Department, Appellate Division is not bound by the Second Department, Appellate Term's decision in Phillips v. Max Finkelstein, Inc., 153 N.Y.S.3d 750 (2021) that Plaintiffs cite. See Kattan v. 119 Christopher LLC, 135 N.Y.S.3d 628, 156876/2016, at *3 (N.Y. Sup. Ct. 2020) ("[D]ecisions of the Appellate Term are merely persuasive, rather than binding, authority on this court.").

Moreover, courts that have followed Vega have done so with little to no analysis—much less the exhaustive textual and legislative review BBB provided in its initial brief—and instead incorrectly noted that they were required to follow Vega even if they disagreed with it. See, e.g., Sorto v. Diversity Maint. Sys., No. 20-CV-1302, 2020 WL 8413553, at *3 (E.D.N.Y. Nov. 15, 2020) (noting that there is "case law supporting both sides of this issue," but deferring to Vega), report and recommendation adopted, 2020 WL 7693108 (E.D.N.Y. Dec. 28, 2020); Mabe v. Wal-Mart Assocs., Inc., No. 1:20-CV-00591, 2022 WL 874311, at *7 (N.D.N.Y. Mar. 24, 2022) (stating that Konkur's reasoning was "similar" to Vega and that "[w]hile the New York Court of Appeals might conclude that Section 191(1)(a) violations are not privately actionable under Section 198(1-a)," the court would still follow Vega).[8]

## CONCLUSION

While Plaintiffs might ignore the holdings of several binding precedents, including Gold, TransUnion, and Konkur, they cannot escape them. As BBB demonstrated in its initial brief, those cases, as well as a slew of others, require this Court to dismiss Plaintiffs' TAC.

[8] In Mabe, the defendant filed a motion to amend and certify this order for immediate interlocutory appeal to the Second Circuit, which motion is currently pending. See No. 1:20-CV-00591 at ECF Nos. 40 & 48.