USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 1/9/2023

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DONALD HESS, ELIZABETH PADILLA, JUDITH HOLLAND, TIKA JONES, HARRY LICHTMAN, DAWN MESA, ALEXANDRIA SMITH and EMILY VAHUE, individually and on behalf of all others similarly situated,

Plaintiffs,

- against -

BED BATH & BEYOND INC.,

Defendant.

21-CV-4099 (JLR) (RWL)

**REPORT AND RECOMMENDATION TO HON. JENNIFER L. ROCHON: <u>MOTION TO DISMISS</u>**

**ROBERT W. LEHRBURGER, United States Magistrate Judge.**

Plaintiffs, on behalf of themselves and all others similarly situated, seek damages for violations of New York Labor Law ("NYLL") §§ 191 and 195, alleging that Defendant Bed Bath & Beyond, Inc. ("BBB") improperly paid wages every two weeks instead of weekly and failed to provide hiring notices complying with the statutory requirements of NYLL § 195(1)(a). BBB moves to dismiss Plaintiffs' Third Amended Complaint ("TAC," Dkt. 105) pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons that follow, I recommend that BBB's motion to dismiss under Rule 12(b)(1) be GRANTED and the action dismissed without prejudice.

## FACTUAL BACKGROUND

The following facts are drawn from the TAC. As required on a motion to dismiss, the Court accepts as true all well-pled allegations of the TAC and draws all reasonable inferences in favor of Plaintiffs as the non-moving parties.

## A. The Parties

Defendant BBB is incorporated in New York with a principal place of business in New Jersey. (TAC ¶ 33.) BBB owns and operates a chain of retail stores in, among other states, New York, at which the named Plaintiffs were employed prior to commencement of the action. (TAC ¶¶ 34-36, 39-40, 42, 44, 45, 47-48, 50, 52, 54, 55, 57-58, 60.) Plaintiff Donald Hess resides in Texas, while all other named Plaintiffs reside in New York. (TAC ¶¶ 31-32.) Collectively, the named Plaintiffs held various job titles, including, for example, sales associate, stock associate, cashier, merchandise manager, department manager, and assistant store manager. (TAC ¶¶ 37, 41, 43, 46, 49, 53, 56, 59.) Plaintiffs seek certification of one class and one subclass.

## B. The Delayed Wages Class

NYLL § 191 requires employers to pay "manual workers" weekly unless granted an exception by the Commissioner of Labor.[1] *See* NYLL § 191(1)(a)(ii). BBB first sought an exception to the weekly pay requirement on October 22, 1998. (TAC ¶ 2.) BBB was granted an exception on November 13, 2018. (TAC ¶ 4.) Plaintiffs allege that in the intervening twenty years before being granted an exception, BBB paid manual workers every other week in violation of NYLL § 191. (TAC ¶ 3.)

Plaintiffs allege that they were all manual workers under the NYLL, notwithstanding the variation in their job titles. (TAC ¶ 63.) Specifically, all Plaintiffs spent more than 25%

---

[1] "Manual worker" is defined as "a mechanic, workingman or laborer." NYLL § 190(4). The New York Department of Labor has long considered any employee who spends more than 25% of their work time engaged in physical labor to be a manual worker under the NYLL. *See* New York State Department of Labor, "Frequency of Pay Frequently Asked Questions," at 2, https://dol.ny.gov/system/files/documents/2021/03/frequency-of-pay-frequently-asked-questions.pdf (last visited December 30, 2022).

of their time handling stock and merchandise and performed physical tasks at least 25% of their work time. (TAC ¶¶ 61-62.) Rather than being paid weekly, however, Plaintiffs were paid biweekly, resulting in wages earned in the first week of each biweekly pay period being paid more than seven calendar days after the end of the week in which those wages were earned. (TAC ¶¶ 64-65.)

Plaintiffs make these allegations on their own behalf and on behalf of a putative class of more than 3,700 people,[2] defined as "[a]ll manual workers who worked for Bed Bath & Beyond, Inc. in New York State between September 24, 2014 and November 12, 2018" (the "Delayed Wages Class"). (TAC ¶¶ 11-15, 69-77.)

**C. The Hiring Notice Subclass**

NYLL § 195(1) requires an employer to provide employees a notice containing certain information set forth in the statute, in the employee's primary language, to be signed by the employee. NYLL § 195(1). Employees who do not receive such a notice within ten business days of their first day of employment may recover damages of fifty dollars per day the violation persisted, for a total not to exceed $5,000. NYLL § 198(1-b). Plaintiffs Hess, Jones, and Litchtman allege that the notices they received from BBB lacked information required by statute and/or were not provided within ten business days of their first day of employment. (*See* TAC ¶¶ 38, 51, 66-68.)

Plaintiffs Hess, Jones, and Lichtman make these allegations on their own behalf and on behalf of a putative subclass of more than 1,000 similarly situated plaintiffs, defined as "[a]ll members of the Delayed Wages Class who were hired on or after April

[2] BBB contends that the putative class as defined by the TAC could encompass more than 10,000 individuals. (*See* Dkt. 119 ¶ 3; Dkt. 121 at 2-3.)

9, 2011 and who did not receive a notice that complied within NYLL § 195(1) within 10 business days of the date of hire." (TAC ¶¶ 20-26, 80-85.)

**PROCEDURAL BACKGROUND**

Plaintiffs Hess and Elizabeth Padilla filed this action on May 7, 2021. (Dkt. 1, "Compl.") Plaintiffs asserted violations of the NYLL § 191 weekly pay requirement and defined putative classes as:

> (a) All Sales Associates who were/are employed by Defendant BBB in the State of New York at any time from six years prior to the filing of this complaint to the present (the "Sales Associate Class");
>
> (b) All Replenishers who were/are employed by Defendant BBB in the State of New York at any time from six years prior to the filing of this complaint to the present (the "Replenisher Class"); and
>
> (c) All Store Managers who were/are employed by Defendant BBB in the State of New York at any time from six years prior to the filing of this complaint to the present (the "Store Manager Class") (with the Sales Associate Class and the Replenisher Class, the "Classes").

(Compl. ¶ 49.)

On June 18, 2021, Plaintiffs filed a letter pursuant to District Judge Analisa Torres's Individual Practices explaining the basis for the Court's jurisdiction.[3] Plaintiffs explained that the Court had subject matter jurisdiction under the Class Action Fairness Act ("CAFA," codified at 28 U.S.C. § 1332(d)). (Dkt. 11.) In the absence of federal subject matter jurisdiction, CAFA vests United States District Courts with original jurisdiction to hear a class action if the class has more than 100 members, the parties are minimally diverse (i.e. at least one plaintiff is a citizen of a state different from at least one defendant); and the aggregate amount in controversy for the entire class exceeds

[3] This case was reassigned to United States District Judge Jennifer L. Rochon on September 16, 2022.

$5,000,000. 28 U.S.C. § 1332(d)(2). Plaintiffs alleged that there were approximately 1,863 individuals in the Sales Associate Class, $33 million in controversy based on statutory damages accrued from May 7, 2015 to November 13, 2018, and that Plaintiff Hess was a citizen of Texas while BBB was a citizen of New York and New Jersey. (Dkt. 11.) BBB did not file a response to Plaintiffs' letter and did not explicitly challenge Plaintiffs' asserted basis for jurisdiction in the parties' joint letter preceding an initial pretrial conference. (*See* Dkt. 14 at 2-3.)

On September 8, 2021, Plaintiffs filed their First Amended Complaint ("FAC," Dkt. 19). Among other amendments, the FAC corrected facts relating to the named Plaintiffs' job titles and made related changes to the description of the putative classes.[4] BBB filed a motion to dismiss the FAC on November 4, 2021, asserting that Plaintiffs failed to adequately plead standing and that NYLL § 191 does not provide a private right of action to enforce the weekly payment requirement. (Dkts. 31-34.)

Before the motion to dismiss the FAC was fully briefed, Plaintiffs were permitted to file a Second Amended Complaint to include allegations related to tolling of the statute of limitations by executive or other order during the COVID-19 pandemic. (*See* Dkt. 45.)

---

[4] The FAC defined the classes as follows:

> (a) All Retail Stock Associates who were employed by Defendant BBB in the State of New York at any time during the relevant time period (the "Retail Stock Associate Class");
> (b) All Retail Sales Associates who were employed by Defendant BBB in the State of New York at any time during the relevant time period (the "Retail Sales Associate Class");
> (c) All Overnight Department Managers who were employed by Defendant BBB in the State of New York at any time during the relevant time period (the "Overnight Department Manager Class")(with the Retail Stock Associate Class and the Retail Sales Associate Class, the "Classes").

(FAC ¶ 55.)

Plaintiffs filed their Second Amended Complaint on December 12, 2021. ("SAC," Dkt. 47.) The SAC redefined the "relevant time period" for the alleged facts but otherwise did not substantively amend the FAC. (*Compare* FAC ¶ 3 *with* SAC ¶ 3.)

On January 4, 2022, Judge Torres denied BBB's then-pending motion to dismiss the FAC without prejudice and set a briefing schedule for BBB to file a motion to dismiss the SAC. (Dkt. 53.) On February 7, 2022, BBB informed the Court that Plaintiffs had recently indicated that they intended to move to file a third amended complaint. (Dkt. 57.) BBB requested, and the Court granted, an adjournment of the deadline to file their motion to dismiss the SAC until the Court decided whether to permit Plaintiffs to file the TAC. (Dkts. 57-58.)

On April 18, 2022, Plaintiffs requested a conference to discuss filing the TAC, noting that Defendants planned to oppose the motion to amend as futile. (Dkt. 66.) The Court then ordered consolidated briefing, such that BBB would submit a consolidated brief opposing Plaintiffs' motion to amend and supporting BBB's motion to dismiss the SAC, and Plaintiffs would file a consolidated brief opposing the motion to dismiss and further supporting their motion to amend. (Dkt. 84.) On June 16, 2022, Judge Torres referred the motion to amend and anticipated motion to dismiss to me for report and recommendation. (Dkt. 87.)

Plaintiffs filed their motion to amend on June 24, 2022. (Dkts. 89-90.) On July 18, 2022, BBB requested an extension of the deadline to file its consolidated brief to allow it time to secure a vendor to provide updated addresses for its former employees and putative class members in order to bolster support for its argument to dismiss the case under CAFA's "home state" exception, which requires the court to decline jurisdiction if, inter alia, two-thirds of Plaintiffs are citizens of the same state as the Defendant. (Dkt.

93.) Plaintiffs replied, agreeing that, for purposes of the motion to dismiss, at least two-thirds of the class members are residents of New York, and obviating the need for statistical evidence of the class members' residency. (Dkt. 96.) Plaintiffs contended, however, that BBB untimely raised the home state exception. (*Id.*) The Court granted BBB's request to extend the briefing schedule. (Dkt. 97.)

On August 12, 2022, BBB filed its motion to dismiss the TAC, withdrawing its opposition to the amended pleading being filed. (Dkt. 100.) The Court thereafter denied Plaintiffs' motion to amend as moot and directed the Plaintiffs to file the TAC. (Dkt. 104.)

Plaintiffs filed the TAC on August 26, 2022. (Dkt. 105.) Among other changes, the TAC significantly altered the putative class to include "[a]ll manual workers who worked for Bed Bath & Beyond, Inc. in New York State between September 24, 2014 and November 12, 2018" (TAC ¶ 11), which encompasses more than 3,700 people. (TAC ¶ 13.) The TAC also added allegations of violations of NYLL §§ 195(1)(a) and 198(1-b) and defined a putative subclass of over one thousand employees affected by such violations. (TAC ¶¶ 20, 22, 81-87.)

After two extensions, Plaintiffs filed their opposition to BBB's motion to dismiss the TAC on October 7, 2022. (Dkts. 116-17.) BBB filed its reply and supporting declarations on October 21, 2022, at which point the motion was fully briefed. (Dkts. 119-21.) Plaintiffs filed a letter attaching supplemental authority for their opposition to the motion to dismiss on November 10, 2022. (Dkt. 122.)

## DISCUSSION

BBB moves to dismiss the TAC pursuant to Rule 12(b)(1), for lack of subject matter jurisdiction, and 12(b)(6), for failure to state a claim. BBB advances four arguments for

dismissal: (1) the Court should decline to exercise jurisdiction over the action under the home state exception to CAFA jurisdiction; (2) Plaintiffs failed to allege actual injury-in-fact as is required to plead standing under Article III of the United States Constitution; (3) Plaintiffs do not have a private right of action to pursue violations of NYLL § 191; and (4) awarding the statutory damages sought by Plaintiffs would violate the Due Process Clause of the Fourteenth Amendment. (*See* Def. Mem. at 1-2.[5]) The Court agrees that the home state exception to CAFA applies and recommends Defendant's motion to dismiss be granted on that ground. The Court thus does not address BBB's remaining arguments and Plaintiff's arguments counter thereto. *See Moore v. IOD Inc.*, No. 14-CV-8406, 2016 WL 8941200, at *4 (S.D.N.Y. March 24, 2016) ("because I find, as a threshold matter, that one of the exceptions to the Class Action Fairness Act apply, I need not reach the Defendants' other grounds for dismissal").

## A. Legal Standards

### 1. CAFA And The Home State Exception

As noted above, CAFA provides District Courts with original jurisdiction over class actions if the putative class has more than 100 members, the parties are minimally diverse, and the amount in controversy exceeds $5,000,000. 28 U.S.C. § 1332(d)(2)(A). CAFA contains several exceptions describing circumstances where courts may or must decline to exercise their jurisdiction over certain actions. 28 U.S.C. § 1332(d)(3)-(d)(4). Relevant to the instant motion, the "home state" exception to CAFA provides that "a district court shall decline to exercise jurisdiction" where "two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants,

[5] "Def. Mem." refers to BBB's Memorandum Of Law In Support Of Its Motion To Dismiss Plaintiffs' Third Amended Complaint, at Dkt. 102.

are citizens of the State in which the action was originally filed." 28 U.S.C. § 1332(d)(4)(B); *accord Gold v. New York Life Insurance Co.*, 730 F.3d 137, 141 (2d Cir. 2013).

The Second Circuit has held that "Congress's use of the term 'decline to exercise' means that the [home state] exception is not jurisdictional." *Gold*, 730 F.3d at 142. Rather, where the parameters of the home state exception are satisfied, the Court has subject matter jurisdiction over the action but must "actively decline to exercise it." *Id.* at 141. "CAFA contains no time limit for when remand motions must be made," but the Second Circuit requires that "motions to dismiss under CAFA's home state exception must … be made within a reasonable time." *Id.* at 142. "While what is reasonable will vary according to the relevant facts, it is preferable that such motions be made at the earliest practicable time." *Id.*

**2. Motion To Dismiss Under Rule 12(b)(1)**

Even though the home state exception to CAFA is not jurisdictional, motions for the court to decline to exercise its jurisdiction pursuant to the home state exception are analyzed under Rule 12(b)(1), with some additional considerations. *See*, *e.g.*, *Gibson v. Bartlett Dairy, Inc.*, No. 20-CV-2848, 2022 WL 784746, at *3 (E.D.N.Y. March 15, 2022); *Metcalf v. TransPerfect Global, Inc.*, No. 19-CV-10104, 2020 WL 7028644, at *3 (S.D.N.Y. Nov. 30, 2020); *Moore*, 2016 WL 8941200, at *3-4; *Anirudh v. CitiMortgage, Inc.*, 598 F. Supp. 2d 448, 451 (S.D.N.Y. 2009).

In deciding a Rule 12(b)(1) motion to dismiss, the Court "must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff." *Morrison v. National Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (quoting *Natural Resources Defense Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006) (internal

quotation marks omitted)); *accord Gibson*, 2022 WL 784746, at *2 (applying this standard to a motion to dismiss under CAFA's home state exception). To "resolve the jurisdictional issue[s]" the court "may consider affidavits and other materials beyond the pleadings." *J.S. ex rel. N.S. v. Attica Central Schools*, 386 F.3d 107, 110 (2d Cir. 2004). "[W]hile generally when a defendant asserts a challenge to the district court's subject matter jurisdiction pursuant to a Rule 12(b)(1) motion to dismiss, the plaintiff bears the burden of showing that the district court has jurisdiction, when jurisdiction is based on CAFA, the party seeking to avail itself of an exception to CAFA jurisdiction over a case originally filed in federal court bears the burden of proving the exception applies." *Anirudh*, 598 F. Supp.2d at 451 (internal quotation marks and citations omitted); *accord Hart v. Rick's NY Cabaret International, Inc.*, 967 F. Supp.2d 955, 960 (S.D.N.Y. 2014) ("Once CAFA jurisdiction is established, the burden of proof to establish an exception to such jurisdiction rests with 'the party opposing the exercise of the Court's established jurisdiction'") (quoting *Brook v. UnitedHealth Group Inc.*, No. 06-CV-1295, 2007 WL 2827808, at *3 (S.D.N.Y. Sept. 27, 2007)).

**B. The Court Must Decline Jurisdiction Under The Home State Exception**

As an initial matter, the requirements for jurisdiction under CAFA are met here. The TAC alleges that Plaintiff Hess is a citizen of Texas, that the other named Plaintiffs are citizens of New York, and that BBB is incorporated in New York with a principal place of business in New Jersey.[6] (TAC ¶¶ 31-33.) The parties are therefore minimally diverse as required by CAFA. The TAC also alleges a class larger than 100 plaintiffs and an

[6] For jurisdictional purposes, a corporation is a citizen of the state in which it is incorporated and the state in which it has its principal place of business. 28 U.S.C. § 1332(c)(1).

amount in controversy of over $5,000,000. (TAC ¶ 6.) The number of putative class members alleged and statutory damages sought supports this allegation. (TAC ¶¶ 13 (alleging more than 3,700 members of the Delayed Wages Class), 22 (alleging more than 1,000 members of the Hiring Notice Subclass), 77-78 (seeking liquidated damages in the amount of late paid wages for the Delayed Wages Class), 86 (seeking statutory damages of an additional $5,000 for each member of the Hiring Notice Subclass); *see also* Dkt. 11 at 2 (estimating class-wide liquidated damages for the at least 1,863 Sales Associates in the original Complaint's Sales Associate Class at $32,965,785).)

BBB does not dispute that the requirements for original jurisdiction under CAFA are met, but argues that the Court must decline jurisdiction under the home state exception because more than two-thirds of the putative class are citizens of New York, the state in which BBB is a citizen and where the case was filed. (Def. Mem. at 4-5.) The Court agrees.

Plaintiffs concede that two-thirds of the members of the putative class are citizens of New York. (Dkt. 96 at 1 ("Plaintiffs will not contest that 2/3 of the class members reside in New York and therefore … BBB may file the motion [to dismiss] without any third-party data concerning the residence of class members").) And as both BBB and Plaintiffs note, the Court can infer that fact from the TAC because seven of the eight named Plaintiffs are citizens of New York and all of the putative class members worked in New York. (Def. Mem. at 5 n.2; Pl. Mem. at 3 n.2[7]); *accord Kurovskaya v. Project O.H.R., Inc.*, 251 F. Supp.3d 699, 703 (S.D.N.Y. 2017) ("A Court may infer citizenship for the purposes of evaluating whether the citizenship requirement of a CAFA exception has been met by the

[7] "Pl. Mem." refers to Plaintiffs' Memorandum Of Law In Opposition To Defendant's Motion To Dismiss at Dkt. 117.

moving party" and "[w]hile it is certainly possible that some home care workers and putative class members employed by Defendant may commute to New York from neighboring states, this Court is persuaded that it is reasonable to infer from the facts … that two-thirds or more of the putative class members—home care workers engaged to work in New York for Defendant—are citizens of New York State"); *Simmons v. Ambit Energy Holdings, LLC*, No. 13–CV–6240, 2014 WL 5026252, at *3 (S.D.N.Y. Sept. 30, 2014) (applying home state exception where defendants "have shown that at least two-thirds of the class members are – or at least very likely are – citizens of New York" where the class consisted of New York energy customers enrolled in New York-specific savings plans); *Mattera v. Clear Channel Communications, Inc.*, 239 F.R.D. 70, 80 (S.D.N.Y. 2006) ("While Defendants have not provided evidence, in the form of an affidavit or otherwise, establishing such citizenship, it is reasonably likely that more than two-thirds of the putative class members of the proposed class—all of whom work in New York—are citizens of New York").

In short, there can be no dispute over whether the case falls within the home state exception. It does. The question remains, however, whether the exception has been timely asserted. *See Moore*, 2016 WL 8941200, at *5 (where the plaintiffs conceded elements of a CAFA exception, the court "will focus [its] analysis on the factors of the [CAFA] exception that Plaintiffs do contest").

**C. BBB Asserted The Home State Exception Within A Reasonable Time**

Rather than contest whether the home state exception applies, Plaintiffs argue only that BBB has raised the exception unreasonably late and thereby waived its right to assert the exception. (Pl. Mem. at 2-3.) The argument does not stand up to scrutiny.

Plaintiffs are correct that in the Second Circuit, and in other circuits to consider the issue, a motion to dismiss or remand based on the home state or related local controversy exception to CAFA must be made "within a reasonable time." *Gold*, 730 F.3d at 142; *accord Watson v. City of Allen, Texas*, 821 F.3d 634, 640 (5th Cir. 2016); *Graphic Communications Local 1B Health & Welfare Fund A v. CVS Caremark Corporation*, 636 F.3d 971, 975-76 (8th Cir. 2011). "[W]hat is reasonable will vary according to the relevant facts." *Gold*, 730 F.3d at 142. And while "it is preferable that such motions be made at the earliest practicable time," that is not a requirement. *Id.*

The sole case Plaintiffs cite as support for their argument that BBB did not act within a reasonable time is the Second Circuit's decision in *Gold*. But *Gold* actually supports the opposite conclusion. In *Gold*, the district court dismissed a putative class action based on the home state exception when the defendant employer raised the argument after ***three years*** of litigation – including class discovery. *Id.* at 142-43. On appeal, the Second Circuit expressed some skepticism that three years is a reasonable time, noting that "there are numerous instances where the home state exception was raised much more promptly than it was in this case, and without full blown class discovery" and citing cases where the exception was raised within five or six months of the filing of the complaint. *Id.* at 143, 143 n.2. Yet, the Court affirmed the district court's decision, finding no abuse of discretion. *Id*. at 146. Here, the litigation has been pending for half the time as that in *Gold*.

The length of time the case has been pending, however, cannot evaluated in a vacuum. No less important than the age of the case is its procedural posture. *See Abdale v. North Shore-Long Island Jewish Health System, Inc.*, No. 13-CV-1238, 2014 WL 2945741, at *9 (E.D.N.Y. June 30, 2014) ("the Court finds that the motion to remand was

not made at an unreasonably late stage of this litigation"); *Christensen v. Saint Elizabeth Medical Center, Inc.*, No. 2:19-CV-0043, 2020 WL 3491371, at *6 (E.D. Ky. June 26, 2020) (examining procedural posture of the case); *Jeter v. Wild West Gas, LLC*, No. 12-CV-411, 2014 WL 3890308, at *6 (N.D. Okla. Aug. 7, 2014) ("motions to remand or dismiss based upon a CAFA exception must be made within a reasonable time and typically before 'full blown class discovery'") (quoting *Gold*, 730 F.3d at 143).

For example, in *Abdale*, the court concluded that a motion to remand under the home state exception was timely because "[t]he case is still in its preliminary stages, the Court has not held an initial conference, and, with the exception of the pending motion to remand, the Court has not expended significant resources on this case." 2014 WL 2945741, at *9. In *Christensen*, the court found assertion of the exception to be timely because "[n]o depositions or discovery have occurred yet, and the Court has yet to rule on any dispositive motions." 2020 WL 349137 at *6. The court noted that the case was "far different from cases where the moving party waited to raise the issue until an appeal or after several years of litigation had already occurred." *Id*. And, in *Gold*, the court took into account that bifurcated discovery delayed class discovery and thus discovery of the citizenship of class members. 730 F.3d at 142.

In contrast, in *Barfield v. Sho-Me Power Electric Cooperative*, the court held that a motion to dismiss based on CAFA exceptions was untimely and prejudicial to the plaintiffs because it was filed twenty-six months after the complaint, "extensive" discovery had been taken, and the court and the parties had "invested hundreds of hours on motions to dismiss, a motion to sever, issues of class certification, and motions for summary judgment, as well as many ongoing procedural details." No. 2:11-CV-04321, 2014 WL 1343092, at *2 (W.D. Mo. April 4, 2014). Similarly, in *Martin v. Trott Law*, *P.C.*, the court

determined that a motion to dismiss under the home state exception was untimely where the issue was raised two years after the complaint was filed, one round of dispositive motions had been decided, depositions had taken place, and defendant relied on a thin factual basis available to it from the start of the litigation. 265 F. Supp.3d 731, 744-45 (E.D. Mich. 2017).

The instant case is more like the cases finding assertion of the home state exception to be timely than those in which it has been found untimely. Plaintiffs only recently (August 26, 2022) filed the operative pleading (the TAC), which significantly changed the scope of the putative class, added a new putative subclass, and added a new statutory basis for damages. While Defendant had previously moved to dismiss the FAC, that motion was mooted by Plaintiffs seeking to file the SAC before the Court ruled on the merits. The discovery in the action to date concerns mainly the putative classes defined in earlier versions of the complaint. (*See* Def. Reply at 2,[8] Ruzal Decl. ¶ 2;[9] Dkt. 114 (September 26, 2022 status report describing documents produced from sampling the putative class defined by the SAC).) No depositions have taken place, and no discovery has been demanded or exchanged since Plaintiffs filed the TAC. (Ruzal Decl. ¶¶ 3-4; *see generally* Moser Decl.[10]) The time the case has been pending and the relative

[8] "Def. Reply" refers to Defendant's Reply To Plaintiffs' Opposition To Its Motion To Dismiss Their Third Amended Complaint at Dkt. 121.

[9] "Ruzal Decl." refers to the Declaration Of Jeffrey H. Ruzal In Support Of Defendant's Reply to Plaintiffs' Opposition to Defendant's Motion to Dismiss at Dkt. 120.

[10] "Moser Decl." refers to the Declaration Of Steven J. Moser at Dkt. 116. The Court understands the discovery described in the Moser Declaration (propounding and responding to document requests and interrogatories) to have taken place before filing of the TAC.

progress made in litigation are both well within the bounds of "reasonable" established by the cases cited above. And unlike in *Barfield*, there is no evidence that dismissal without prejudice to re-filing in state court would prejudice Plaintiffs.[11]

Plaintiffs argue that BBB could and should have raised the home state exception at an earlier point in time. BBB likely could have done so, particularly considering that it possessed employee records, and even the initial complaint asserted claims pursuant to NYLL on behalf of individuals who worked in New York for a New York corporation. The standard for avoiding waiver, however, is "within a reasonable time," not as soon as possible. *Gold*, 730 F.3d at 142-43. BBB has met the applicable standard. Considering all the circumstances, BBB moved to dismiss on the basis of the home state exception within a reasonable time.

Finally, invocation of the home exception here well serves the policy considerations underlying the home state and related local controversy exceptions to CAFA. "The home state … exception[ is] designed to draw a delicate balance between making a federal forum available to genuinely national litigation and allowing the state courts to retain cases when the controversy is strongly linked to that state … and to keep purely local matters and issues of particular state concern in the state courts." *Brook v. UnitedHealth Group Inc.*, No. 06-CV-12954, 2007 WL 2827808, at *3 (S.D.N.Y. Sept. 27, 2007) (internal citations and quotations omitted). The present case concerns alleged violations of New York labor laws by a New York corporation affecting mostly New York

[11] Plaintiffs assert that BBB "collected and produced almost 10,000 pages of discovery" but say nothing of any burden, time, or expense shouldered by Plaintiffs. (Moser Decl. ¶9.) While no doubt time and resources have been expended by Plaintiffs in the action to date, Plaintiffs have succeeded in refining their putative class and complaint to its current form while the action has been pending.

citizens and raises issues of statutory interpretation of New York statutes. (*See* Def. Mem. at 9-22; Pl. Mem. at 5-14; Def. Reply at 8-10.) This is exactly the type of case the exceptions to CAFA were designed to include. *See Simmons*, 2014 WL 5026252, at *6 (S.D.N.Y. Sept. 30, 2014) ("this suit involves New York citizens suing a New York company for injuries caused in New York by alleged wrongdoing under New York law in New York. In enacting the local controversy exception, Congress made clear that such a suit should not be litigated in federal court. It is not for this Court to second guess Congress's judgment") (original emphasis omitted).

## CONCLUSION

For the foregoing reasons, I recommend BBB's motion be GRANTED and the case dismissed without prejudice to Plaintiffs filing in state court. To the extent not discussed herein, the Court has considered all of the Plaintiffs' arguments on the CAFA issue and determined them to be without merit. Because the Court recommends declining jurisdiction under CAFA, it does not assess the remaining grounds for dismissal raised by BBB's motion.

## DEADLINE FOR FILING OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the Chambers of the Honorable Jennifer L. Rochon, United States Courthouse, 500 Pearl Street, New York, New York 10007, and to the Chambers of the undersigned, at United States Courthouse, 500 Pearl Street, New York,

New York 10007. **Failure to file timely objections will result in a waiver of the right to object and will preclude appellate review.**

Respectfully submitted,

ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE

Dated: January 9, 2023
New York, New York

Copies transmitted this date to all counsel of record.